# EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
09/07/2017
CT Log Number 531894500

**TO:** David Ball / Speedway Service of Process
Speedway SuperAmerica, LLC
500 Speedway Dr
Enon, OH 45323-1056

**RE:** **Process Served in Illinois**

**FOR:** Speedway LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | CHRISTOPHER HOWE, etc., Pltf. vs. Speedway LLC, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summonses, Attachment(s), Complaint |
| **COURT/AGENCY:** | Cook County Circuit Court - County Department - Chancery Division, IL<br>Case # 2017CH11992 |
| **NATURE OF ACTION:** | Defendants also breached their duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying the biometric data of Plaintiff and the Class |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Chicago, IL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 09/07/2017 at 11:00 |
| **JURISDICTION SERVED :** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of this Summons, not counting the day of service |
| **ATTORNEY(S) / SENDER(S):** | Andrew C. Ficzko<br>Stephan Zouras, LLP<br>205 N. Michigan Avenue<br>Suite 2560<br>Chicago, IL 60601<br>312-233-1550 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 09/08/2017, Expected Purge Date: 09/13/2017<br><br>Image SOP<br><br>Email Notification,  David Ball / Speedway Service of Process  SpeedwayServiceofProcess@Speedway.com<br><br>Email Notification,  Suzanne Gagle  sgagle@MarathonPetroleum.com<br><br>Email Notification,  Ashley Kaltenbach  arkaltenbach@marathonpetroleum.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604 |
| **TELEPHONE:** | 312-345-4336 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Summons - Alias Summons

(12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHRISTOPHER HOWE

v.

SPEEDWAY LLC;

MARATHON PETROLEUM COMPANY;

KRONOS INC.

No. 2017-CH-11992

Defendant Address:

SPEEDWAY LLC

R/A C T CORPORATION SYSTEM

208 SO LASALLE ST.

SUITE 814

CHICAGO, IL 60604

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802 ,Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid 1500
Rolling Meadows, IL 60008

☐ District 4 - Maywood
Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60428

☐ Richard J. Daley Center
50 W. Washington, LL-01
Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

## IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 43734

Name: STEPHAN ZOURAS LLP

Atty. for: CHRISTOPHER HOWE

Address: 205 N MICHIGAN 2560

City/State/Zip Code: CHICAGO, IL 60601

Telephone: (312) 233-1550

Primary Email Address: aficzko@stephanzouras.com

Secondary Email Address(es):

kbowers@stephanzouras.com

Witness: Friday, 01 September 2017

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service:

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

DIE DATE
09/24/2017

DOC.TYPE: CHANCERY
CASE NUMBER: 17CH11992
DEFENDANT
SPEEDWAY LLC
208 S LASALLE ST
CHICAGO, IL 60604
STE 814

SERVICE INF
RM 802 R A (

ATTACHED

Summons - Alias Summons                                                                 (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHRISTOPHER HOWE

v.

No. 2017-CH-11992

SPEEDWAY LLC;

MARATHON PETROLEUM COMPANY;

KRONOS INC.

Defendant Address:

SPEEDWAY LLC

R/A C T CORPORATION SYSTEM

208 SO LASALLE ST.

SUITE 814

CHICAGO, IL 60604

☑ **SUMMONS** ☐ **ALIAS - SUMMONS**

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802 _____,Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid 1500
Rolling Meadows, IL 60008

☐ District 4 - Maywood
Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60428

☐ Richard J. Daley Center
50 W. Washington, LL-01
Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 43734

Name: STEPHAN ZOURAS LLP

Atty. for: CHRISTOPHER HOWE

Address: 205 N MICHIGAN 2560

City/State/Zip Code: CHICAGO, IL 60601

Telephone: (312) 233-1550

Primary Email Address: aficzko@stephanzouras.com

Secondary Email Address(es):

kbowers@stephanzouras.com

Witness: Friday, 01 September 2017

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____

(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

DIE DATE
09/24/2017

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
A O 2 5 2 9 3 6 6 A

DOC.TYPE· CHANCERY
CASE NUMBER: 17CH11992
DEFENDANT
SPEEDWAY LLC
208 S LASALLE ST
CHICAGO, IL 60604
STE 814

SERVICE INF
RM 802 R A (

ATTACHED

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
CALENDAR: 10
PAGE 1 of 20
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| CHRISTOPHER HOWE, individually, and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Case No. |
| v. ) ) | |
| SPEEDWAY LLC, MARATHON PETROLEUM COMPANY and KRONOS, INC., ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

## CLASS ACTION COMPLAINT

Plaintiff CHRISTOPHER HOWE ("Plaintiff" or "Howe"), by and through his attorneys, on behalf of himself and the Class set forth below (collectively referred to as "Plaintiffs"), brings the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §5/2-801 and §2-802 against SPEEDWAY LLC, MARATHON PETROLEUM COMPANY and KRONOS, INC. ("Kronos") (collectively referred to as "Defendants" or "Speedway"), their subsidiaries and affiliates, to redress and put a stop to Defendants' unlawful collection, use, storage, and disclosure of Plaintiff's and the proposed Class's sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 2 of 20

1.      Defendant, Speedway LLC, is based in Enon, Ohio and operates gas stations and convenience stores in Illinois and in this Circuit.  Speedway LLC is a wholly owned subsidiary of the Marathon Petroleum Company.

2.      Speedway uses a biometric time tracking system that requires employees to use their fingerprint as a means of authentication.  When Illinois employees begin their jobs at Speedway, they are required to scan their fingerprint and are enrolled in the Kronos employee database.

3.      Although there may be benefits to using biometric time clocks in the workplace, there are also serious risks.  Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee.  These biometrics are biologically unique to the individual; therefore, once compromised, the individual has no recourse and is at a heightened risk for identity theft.  This exposes employees to serious and irreversible privacy risks.  For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means to prevent the misappropriation and theft of their own biometric makeup.

4.      Recognizing the need to protect its citizens from harms like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

5.      Notwithstanding the clear and unequivocal requirements of the law, Speedway LLC and Marathon Petroleum Company disregard their employees' statutorily protected privacy rights and unlawfully collect, store, and use their biometric data in direct violation of BIPA.

Specifically, Speedway LLC and Marathon Petroleum Company have violated and continue to violate BIPA because they failed and continue to fail to:

    a.    Inform Plaintiff or the Class in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

    b.    Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by BIPA; and

    c.    Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by BIPA.

6.    Upon information and belief, Speedway LLC and Marathon Petroleum Company also violate BIPA by disclosing employee fingerprint data to an out-of-state third-party vendor, Kronos.

7.    Like Speedway LLC and Marathon Petroleum Company, Kronos has violated and continues to violate BIPA because it failed and continues to fail to:

    a.    Inform Plaintiff or the Class in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

    b.    Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by BIPA; and

    c.    Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by BIPA.

8.    Defendants had actual knowledge of BIPA as well as their acts and omissions which violate its requirements.

9.    Accordingly, Plaintiff, individually and on behalf of the putative Class, seeks an Order: (1) declaring that Defendants' conduct violates BIPA; (2) requiring Defendants to cease their unlawful conduct as alleged herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 3 of 20

## PARTIES

10.     Plaintiff Christopher Howe is a resident and citizen of the State of Illinois.

11.     Speedway LLC is a Delaware limited liability company with its corporate headquarters located in Enon, Ohio. Speedway is registered to conduct business in Illinois with the Illinois Secretary of State. Speedway conducts business in the County of Cook, the State of Illinois, and the throughout the United States.

12.     Marathon Petroleum Company ("Marathon") is an Ohio corporation with its headquarters located in Findlay, Ohio. Marathon is registered to conduct business with the Illinois Secretary of State. Marathon conducts business in the County of Cook, the State of Illinois, and throughout the United States. Speedway LLC is a wholly owned subsidiary of Marathon.

**13.**     Kronos, Inc. is a Massachusetts corporation registered to do business in Illinois. Kronos conducts business in Illinois by providing biometric timekeeping devices to private entities in Cook County and throughout the state, including Speedway LLC and Marathon Petroleum Company.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because Defendants conduct business in Illinois, are registered to conduct business in Illinois, and committed the statutory violations alleged herein in Illinois.

15.     Venue is proper in Cook County because Defendants maintain places of business in Cook County, conduct business in Cook County, and committed the statutory violations alleged herein in Cook County and throughout Illinois.

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 4 of 20

4

## FACTUAL BACKGROUND

### I.    The Biometric Information Privacy Act.

16.    In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS 14/5.

17.    In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

18.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 5 of 20

19.     BIPA achieves its goal by making it unlawful for a private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

a.      Informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

b.      Informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

c.      Receives a written release executed by the subject of the biometric identifier or biometric information."

*See* 740 ILCS 14/15(b).

20.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

21.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

22.     BIPA also establishes standards for how employers must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosures. *See* 740 ILCS 14/15(d)(1).

23.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires private entities to

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 6 of 20

develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the private entity, whichever occurs first. 740 ILCS 14/15(a).

24.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology.  Biometrics are biologically unique to the individual and, once compromised, an individual has no recourse and is at heightened and permanent risk for identity theft.

25.     Ultimately, BIPA is simply an informed consent statute.  Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data.  For example, BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored.  Nor does BIPA limit to whom biometric data may be collected, sent, transmitted, or stored.  BIPA simply mandates that entities wishing to engage in that conduct must put in place certain reasonable safeguards.

**II.     Defendants Violate the Biometric Information Privacy Act.**

26.     By the time BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented using biometric data as an authentication method stopped doing so.  That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumer fear and apprehension over the use of their biometric data. Despite the recognized dangers of using biometric data in the private sector, employers have failed to follow leads in dropping it as an identification method.  In fact, many employers now

ELECTRONICALY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 7 of 20

7

require their employees to register their biometric data, viewing it as a cost-effective method of authentication.

27.     Speedway failed to take note of the industry-wide shift in Illinois norms – and in Illinois law – governing the collection and use of biometric data. As a result, Speedway continues to collect, store, and use the biometric data of its employees in direct violation of BIPA.

28.     Specifically, when employees are hired at one of Speedway's locations, they are required to have their fingerprints scanned in order to enroll them in Speedway's employee database.

29.     Speedway uses an employee time tracking system that requires employees to use their fingerprint as a means of authentication. Unlike a traditional timeclock, employees have to use their fingerprints to "punch" in and out of work.

30.     Speedway fails to inform its employees of the extent of the purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

31.     Speedway similarly fails to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA. An employee who leaves the company, like Plaintiff here, does so without any knowledge of when their biometric identifiers will be removed from Speedway's databases—or if they ever will.

32.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Speedway's – where employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reason they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 8 of 20

8

for individuals to understand when providing biometric identifiers such as a fingerprint who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long. Defendants disregard these obligations and instead unlawfully collect, store, and use their employees' biometric identifiers and information, without ever receiving the individual informed written consent required by BIPA.

33.     Speedway's employees are not told what might happen to their biometric data if and when their local stores go out of business or, worse, if and when Speedway's entire business folds.

34.     Because Speedway neither publishes a BIPA-mandated data retention policy nor discloses the purposes for its collection of biometric data, Speedway employees have no idea whether Speedway sells, discloses, re-discloses, or otherwise disseminates their biometric data. Nor are Plaintiff and the putative Class told to whom Speedway currently disclose their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

35.     By and through the actions detailed above, Speedway does not only disregard the Class' privacy rights, but Speedway also violate BIPA.

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 9 of 20

**III.    Plaintiff Christopher Howe's Experience**

36.     Plaintiff Christopher Howe worked for Speedway in Addison, Illinois from September 2015 to May 2017.

37.     As an employee, Howe was required to scan his fingerprint to enable Speedway to use it as an authentication method to track his time.

38.     Speedway subsequently stored Howe's fingerprint data in its database(s).

39.     Each time Howe began and ended his workday, he was required to scan his fingerprint.

40.     Howe has never been informed of the specific limited purposes (if any) or length of time for which Speedway collected, stored, or used his fingerprint.

41.     Howe has never been informed of any biometric data retention policy developed by Speedway, nor has he ever been informed of whether Speedway will ever permanently delete his fingerprint.

42.     Howe has never been provided nor did he ever sign a written release allowing Speedway to collect or store his fingerprints.

43.     Howe has continuously and repeatedly been exposed to the harms and risks created by Speedway's violations of BIPA alleged herein.

44.     Howe suffered an invasion of a legally protected interest when Speedway secured his personal and private biometric data at a time when Speedway had no right to do so, an invasion of Howe's right to privacy.  BIPA protects employees like Howe from this precise conduct and Speedway had no right to secure this data absent a specific Congressional license to do so.

45.     Howe also suffered an informational injury because Speedway failed to provide him with information to which he was entitled to by statute.  Through BIPA, Congress has created a right—an employee's right to receive certain information prior to an employer securing their highly personal and private biometric data—and an injury—not receiving this extremely critical information.

46.     Pursuant to 740 ILCS 14/15(b), Howe was entitled to receive certain information prior to Speedway securing his biometric data; namely, information advising him of the specific limited purpose(s) and length of time for which Speedway collects, stores, and uses his fingerprint; information regarding Speedway's biometric retention policy; and, a written release allowing Speedway to collect and store his private biometric data.  By depriving Howe of this information,

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 10 of 20

10

Speedway injured Howe and the putative Class he seeks to represent. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

47. Finally, as a result of Speedway's conduct, Howe has experienced personal injury in the form of mental anguish. For example, Howe experiences mental anguish and injury when contemplating about what would happen to his biometric data if Speedway went bankrupt, whether Speedway will ever delete his biometric information, and whether (and to whom) Speedway shares his biometric information.

48. Howe seeks statutory damages under BIPA as compensation for the injuries Speedway has caused.

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 11 of 20

## CLASS ALLEGATIONS

49. Pursuant to 735 ILCS 5/2-801 and §2-802, Named Plaintiff brings claims on his own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, seeking injunctive relief as well as statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

50. As discussed *supra*, Section 14/15(b) of BIPA prohibits a private entity from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

11

51.     Plaintiff seeks class certification for the following class of similarly-situated employees under BIPA:

> All individuals who worked for Defendants in the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by the Defendants during the applicable statutory period.

52.     This action is properly maintainable as a class action under §2-801 because:

A.     The class is so numerous that joinder of all members is impracticable;

B.     There are questions of law or fact that are common to the class;

C.     The claims of the Named Plaintiff are typical of the claims of the class; and,

D.     The Named Plaintiff will fairly and adequately protect the interests of the class.

**Numerosity**

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 12 of 20

53.     The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Speedway has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from hundreds or more employees who fall into the definition of the Class. The exact number of class members may easily be determined from Speedway's payroll records.

**Commonality**

54.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Named Plaintiff and all members of the Class have been harmed by Speedway's failure to comply with BIPA. The common questions of law and fact include, but not limited to the following:

A.     Whether Speedway collected, captured or otherwise obtained biometric identifiers or biometric information of Plaintiff and the Class;

B.     Whether Speedway informed Plaintiff and the Class of its purposes for

12

collecting, using, and storing their biometric identifiers or biometric information as required by BIPA;

C.     Whether Speedway obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store the biometric identifiers or biometric information of Plaintiff and the Class;

D.     Whether Speedway has disclosed or re-disclosed the biometric identifiers or biometric information of Plaintiff and the Class;

E.     Whether Speedway has sold, leased, traded, or otherwise profited from the biometric identifiers or biometric information of Plaintiff and the Class;

F.     Whether Speedway developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

G.     Whether Speedway comply with any such written policy (if one exists);

H.     Whether Speedway used fingerprints of Plaintiff and the Class to identify them;

I.     Whether Speedway's violations of BIPA were committed negligently; and

J.     Whether Speedway's violations of BIPA were committed willfully.

55.     Plaintiff anticipates that Speedway will raise defenses that are common to the class.

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 13 of 20

### Adequacy

56.     The Named Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Named Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

### Typicality

57.     The claims asserted by the Named Plaintiff are typical of the class members he seeks to represent. The Named Plaintiff has the same interests and suffers from the same unlawful

13

practices as the class members.

58.　　Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer.

## Predominance and Superiority

59.　　The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

60.　　On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 14 of 20

14

appropriate, the Court can and is empowered to, fashion methods to efficiently manage this action as a class action.

## FIRST CAUSE OF ACTION
### Violation of 740 ILCS 14/1, *et seq.*
### (On Behalf of Plaintiff and the Class)

61.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

62.    BIPA requires private entities to obtain informed written consent from consumers before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…." 740 ILCS 14/15(b) (emphasis added).

63.    BIPA also prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

64.    BIPA also mandates that private entities in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those entities must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the entity's last interaction with the customer); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 15 of 20

65.     Defendants fail to comply with these BIPA mandates.

66.     Defendant Speedway LLC is a Delaware limited liability company registered to do business in Illinois and thus qualifies as a "public entity" under BIPA. *See* 740 ILCS 14/10.

67.     Defendant Marathon is an Ohio corporation registered to do business in Illinois and thus qualifies as a "public entity" under BIPA. *See* 740 ILCS 14/10.

68.     Defendant Kronos, Inc. is a Massachusetts corporation registered to do business in Illinois and thus qualifies as a "public entity" under BIPA. *See* 740 ILCS 14/10.

69.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

70.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

71.     Defendants systematically and automatically collected, used, stored, and disclosed Plaintiff's and the Class's biometric identifiers or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

72.     Upon information and belief, Speedway LLC and Marathon Petroleum Company systematically disclosed Plaintiff's and the Class's biometric identifiers and biometric information to an out-of-state third-party vendor, Kronos.

73.     Defendants did not properly inform Plaintiff or the Class in writing that their biometric identifiers or biometric information were being collected and stored, nor did it inform them in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 16 of 20

16

74. Defendants do not provide a publicly available retention schedule or guidelines for permanently destroying its employees' biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

75. By negligently, recklessly or willfully collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

76. On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 17 of 20

## SECOND CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

77. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78. Defendants owed Plaintiff and the Class a duty of reasonable care. That duty required that Defendants exercise reasonable care in the collection and use of the biometric data of Plaintiff and the Class.

79. Additionally, Defendants owed Plaintiff and the Class a heightened duty – under which Defendants assumed a duty to act carefully and not put Plaintiff and the Class at undue risk of harm – because of the employment relationship of the parties.

80.     Defendants breached their duties by failing to implement reasonable procedural safeguards in connection with their collection and use of the biometric identifiers and biometric information of Plaintiff and the Class.

81.     Specifically, Defendants breached their duties by failing to properly inform Plaintiff and the Class in writing of the specific purpose or length for which their fingerprints were being collected, stored, and used.

82.     Defendants also breached their duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying the biometric data of Plaintiff and the Class.

83.     Defendants' breach of their duties proximately caused and continues to cause an invasion of privacy to Plaintiff and the Class, as well as informational injury to them.

84.     Accordingly, Plaintiff seeks an order declaring that Defendants' conduct constitutes negligence and awarding Plaintiff and the Class damages in an amount to be calculated at trial.

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 18 of 20

### PRAYER FOR RELIEF

Wherefore, Plaintiff Christopher Howe, on behalf of himself, individually, and on behalf of the Class, respectfully requests that this Court enter an Order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Christopher Howe as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.      Declaring that Defendants' actions, as set forth above, violate BIPA;

C.      Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.        Declaring that Defendants' actions, as forth out above, constitute negligence;

E.        Declaring that Defendants' actions, as set forth above, were willful;

F.        Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendants to collect, store, and use biometric identifiers or biometric information in compliance with BIPA;

G.        Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

H.        Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

I.        Awarding such other and further relief as equity and justice may require.

### JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date:   September 1, 2017

Respectfully Submitted,

*/s/ Andrew C. Ficzko*
Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
Haley R. Jenkins
Stephan Zouras, LLP
205 N. Michigan Avenue
Suite 2560
Chicago, Illinois 60601
312.233.1550
312.233.1560 *f*
Firm ID: 43734
lawyers@stephanzouras.com

ELECTRONICALLY FILED
9/1/2017 12:57 PM
2017-CH-11992
PAGE 19 of 20

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER HOWE, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) No. 1:17-cv-07303 |
| v. | ) Hon. Andrea R. Wood |
| SPEEDWAY LLC, MARATHON PETROLEUM COMPANY, and KRONOS, INC., | ) Magistrate Judge Hon. Susan E. Cox ) ) ) |
| Defendants. | ) |

## SPEEDWAY LLC'S AND MARATHON PETROLEUM COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO CLASS ACTION COMPLAINT

Defendants Speedway LLC ("Speedway") and Marathon Petroleum Company

("Marathon"), by and through their attorneys, answer Plaintiff's Class Action Complaint as

follows:[1]

## NATURE OF THE ACTION

1.     Defendant, Speedway LLC, is based in Enon, Ohio and operates gas stations and convenience stores in Illinois and in this Circuit.  Speedway LLC is a wholly owned subsidiary of the Marathon Petroleum Company.

**ANSWER**:     Admitted that Speedway is based in Enon, Ohio, and operates gas stations

and convenience stores in Illinois and in this Circuit. Denied that Speedway is a wholly owned

subsidiary of Marathon.

---

[1] In accordance with this Court's participation in the Northern District of Illinois Mandatory Initial Discovery Pilot Project and October 12, 2017 Order (Dkt. 13), Speedway and Marathon are filing this Answer on the same day as their Motion to Dismiss Plaintiff's Complaint and Memorandum in Support. In filing this Answer, neither Speedway nor Marathon waives its right to seek dismissal of this action in its entirety for the reasons set forth in the Motion to Dismiss, or for any other reason permitted under applicable law.

3994457

2.      Speedway uses a biometric time tracking system that requires employees to use their fingerprint as a means of authentication.  When Illinois employees begin their jobs at Speedway, they are required to scan their fingerprint and are enrolled in the Kronos employee database.

**ANSWER:**      Admitted that Speedway uses finger-scanning enabled equipment to track

the number of hours worked by some of its Illinois employees. Denied that Speedway or

Marathon collect, store, or transfer biometric identifiers or biometric information. Denied that

Speedway's employees are enrolled in a Kronos database. Except as expressly admitted, the

remaining allegations in the foregoing paragraph are denied.

3.      Although there may be benefits to using biometric time clocks in the workplace, there are also serious risks.  Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee.  These biometrics are biologically unique to the individual; therefore, once compromised, the individual has no recourse and is at a heightened risk for identity theft.  This exposes employees to serious and irreversible privacy risks.  For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means to prevent the misappropriation and theft of their own biometric makeup.

**ANSWER:**      Defendants lack sufficient information or knowledge to admit or deny the

allegations in this paragraph.

4.      Recognizing the need to protect its citizens from harms like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*., specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

**ANSWER**:      The allegations of this paragraph are legal conclusions to which no answer

is required. To the extent an answer is required: admitted that BIPA is codified at 740 ILCS 14/1,

*et seq.* and regulates biometric identifiers and information. Except as expressly admitted, the

remaining allegations in the foregoing paragraph are denied.

5.      Notwithstanding the clear and unequivocal requirements of the law, Speedway LLC and Marathon Petroleum Company disregard their employees' statutorily protected privacy rights and unlawfully collect, store, and use their biometric data in direct violation of BIPA. Specifically, Speedway LLC and Marathon Petroleum Company have violated and continue to violate BIPA because they failed and continue to fail to:

2

    a.   Inform Plaintiff or the Class in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

    b.   Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by BIPA; and

    c.   Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by BIPA.

**ANSWER:**    Denied.

6.    Upon information and belief, Speedway LLC and Marathon Petroleum Company also violate BIPA by disclosing employee fingerprint data to an out-of-state third-party vendor, Kronos.

**ANSWER**:    Denied.

7.    Like Speedway LLC and Marathon Petroleum Company, Kronos has violated and continues to violate BIPA because it failed and continues to fail to:

    a.   Inform Plaintiff or the Class in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

    b.   Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by BIPA; and

    c.   Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by BIPA.

**ANSWER:**    Denied that Speedway or Marathon have violated BIPA. Speedway and Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph, including in relation to Kronos, Inc.

8.    Defendants had actual knowledge of BIPA as well as their acts and omissions which violate its requirements.

**ANSWER:**    Denied that Speedway or Marathon have violated BIPA. Speedway and Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph, including in relation to Kronos, Inc.

9.    Accordingly, Plaintiff, individually and on behalf of the putative Class, seeks an Order: (1) declaring that Defendants' conduct violates BIPA; (2) requiring Defendants to cease

Case: 1:19-cv-07303 Document #: 24 Filed: 12/05/19 Page 29 of 98 PageID #:202

their unlawful conduct as alleged herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

**ANSWER:** Denied that Plaintiff, or any member of the putative Class, is entitled to any of the relief requested in the Complaint.

## PARTIES

10.     Plaintiff Christopher Howe is a resident and citizen of the State of Illinois.

**ANSWER:** Speedway and Marathon lack sufficient information or knowledge to admit or deny this allegation.

11.     Speedway LLC is a Delaware limited liability company with its corporate headquarters located in Enon, Ohio.  Speedway is registered to conduct business in Illinois with the Illinois Secretary of State.  Speedway conducts business in the County of Cook, the State of Illinois, and throughout the United States.

**ANSWER:** Admitted.

12.     Marathon Petroleum Company ("Marathon") is an Ohio corporation with its headquarters located in Findlay, Ohio.  Marathon is registered to conduct business with the Illinois Secretary of State.  Marathon conducts business in the County of Cook, the State of Illinois, and throughout the United States.  Speedway LLC is a wholly owned subsidiary of Marathon.

**ANSWER:** Admitted that Marathon is headquartered in Ohio. Denied that Marathon is an Ohio corporation. Denied that Speedway is a wholly owned subsidiary of Marathon. Admitted that Marathon conducts business in Cook County and throughout the United States. Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

13.     Kronos, Inc. is a Massachusetts corporation registered to do business in Illinois. Kronos conducts business in Illinois by providing biometric timekeeping devices to private entities in Cook County and throughout the state, including Speedway LLC and Marathon Petroleum Company.

**ANSWER:** Admitted that Kronos, Inc. is a Massachusetts corporation registered to do business in Illinois that provided finger-scanning enabled equipment to Speedway. Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

4

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because Defendants conduct business in Illinois, are registered to conduct business in Illinois, and committed the statutory violations alleged herein in Illinois.

**ANSWER:**     Admitted that Speedway lawfully conducts business in Illinois. Denied that Speedway or Marathon have violated BIPA. Otherwise denied, as this case has been removed to federal district court.

15.     Venue is proper in Cook County because Defendants maintain places of business in Cook County, conduct business in Cook County, and committed the statutory violations alleged herein in Cook County and throughout Illinois.

**ANSWER:**     Admitted that Speedway lawfully conducts business in Illinois. Denied that Speedway or Marathon have violated BIPA. Otherwise denied, as this case has been removed to federal district court.

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act.

16.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS 14/5.

**ANSWER:**     Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

17.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankruptcy company, and that their unique biometric identifiers could now be sold to unknown third parties.

**ANSWER:** Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

18. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

**ANSWER:** The allegations of this paragraph are legal conclusions to which no answer is required. To the extent an answer is required: denied that the quoted language appears in 740 ILCS 14/5. Admitted that BIPA was enacted in 2008. Speedway and Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph.

19. BIPA achieves its goal by making it unlawful for a private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a. Informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

    b. Informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c. Receives a written release executed by the subject of the biometric identifier or biometric information."

*See* 740 ILCS 14/15(b).

**ANSWER:** The allegations of this paragraph are legal conclusions to which no answer is required. To the extent an answer is required: admitted that the quoted language appears in 740 ILCS 14/15(b). Speedway and Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph.

20. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

**ANSWER:** The allegations of this paragraph are legal conclusions to which no answer is required. To the extent an answer is required: admitted that the quoted language appears in 740

ILCS 14/10. Speedway and Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph.

21.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

**ANSWER:**     The allegations of this paragraph are legal conclusions to which no answer is required. To the extent an answer is required: admitted that 740 ILCS 14/10 defines "biometric identifiers" to include the following: "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." Admitted that 740 ILCS 14/10 states, *inter alia*: "'biometric information' means any information . . . based on an individual's biometric identifier used to identify an individual." Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

22.     BIPA also establishes standards for how employers must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.*, 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosures [sic]. *See* 740 ILCS 14/15(d)(1).

**ANSWER:**     The allegations of this paragraph are legal conclusions to which no answer is required. To the extent an answer is required: admitted that BIPA governs how a "private entity" may use biometric identifiers or biometric information. Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

23.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires private entities to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the private entity, whichever occurs first. 740 ILCS 14/15(a).

**ANSWER:**    The allegations of this paragraph are legal conclusions to which no answer

is required. To the extent an answer is required: admitted that 740 ILCS 14/15(c) states: "No

private entity in possession of a biometric identifier or biometric information may sell, lease,

trade, or otherwise profit from a person's or a customer's biometric identifier or biometric

information." Admitted that 740 ILCS 14/15(a) states: "A private entity in possession of

biometric identifiers or biometric information must develop a written policy, made available to

the public, establishing a retention schedule and guidelines for permanently destroying biometric

identifiers and biometric information when the initial purpose for collecting or obtaining such

identifiers or information has been satisfied or within 3 years of the individual's last interaction

with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a

court of competent jurisdiction, a private entity in possession of biometric identifiers or

biometric information must comply with its established retention schedule and destruction

guidelines." Except as expressly admitted, the remaining allegations in the foregoing paragraph

are denied.

24.    The Illinois legislature enacted BIPA due to the increasing use of biometric data
in financial and security settings, the general public's hesitation to use biometric information,
and – most significantly – the unknown ramifications of biometric technology.  Biometrics are
biologically unique to the individual and, once compromised, an individual has no recourse and
is at heightened and permanent risk for identity theft.

**ANSWER:**    Speedway and Marathon lack sufficient information or knowledge to

admit or deny the allegations in this paragraph.

25.    Ultimately, BIPA is simply an informed consent statute.  Its narrowly tailored
provisions place no absolute bar on the collection, sending, transmitting or communicating of
biometric data.  For example, BIPA does not limit what kinds of biometric data may be
collected, sent, transmitted, or stored.  Nor does BIPA limit to whom biometric data may be
collected, sent, transmitted, or stored.  BIPA simply mandates that entities wishing to engage in
that conduct must put in place certain reasonable safeguards.

**ANSWER:** The allegations of this paragraph are legal conclusions to which no answer is required. To the extent an answer is required: Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

## II. Defendants Violate the Biometric Information Privacy Act.

26. By the time BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented using biometric data as an authentication method stopped doing so. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumer fear and apprehension over the use of their biometric data. Despite the recognized dangers of using biometric data in the private sector, employers have failed to follow leads in dropping it as an identification method. In fact, many employers now require their employees to register their biometric data, viewing it as a cost-effective method of authentication.

**ANSWER:** Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

27. Speedway failed to take note of the industry-wide shift in Illinois norms – and in Illinois law – governing the collection and use of biometric data. As a result, Speedway continues to collect, store, and use the biometric data of its employees in direct violation of BIPA.

**ANSWER:** Denied.

28. Specifically, when employees are hired at one of Speedway's locations, they are required to have their fingerprints scanned in order to enroll them in Speedway's employee database.

**ANSWER:** Denied that Speedway or Marathon collect, store, or transfer biometric identifiers or biometric information. Admitted that Speedway uses finger-scanning enabled equipment with some of its Illinois employees, and that related information is stored electronically. Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

29. Speedway uses an employee time tracking system that requires employees to use their fingerprint as a means of authentication. Unlike a traditional timeclock, employees have to use their fingerprints to "punch" in and out of work.

**ANSWER:** Denied that Speedway or Marathon collect, store, or transfer biometric identifiers or biometric information. Admitted that Speedway uses finger-scanning enabled equipment to track the number of hours worked by some of its Illinois employees. Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

30. Speedway fails to inform its employees of the extent of the purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

**ANSWER:** Denied.

31. Speedway similarly fails to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA. An employee who leaves the company, like Plaintiff here, does so without any knowledge of when their biometric identifiers will be removed from Speedway's databases—or if they ever will.

**ANSWER:** Denied that Speedway or Marathon collect, store, or transfer biometric identifiers or biometric information. Admitted that Speedway uses finger-scanning enabled equipment with some of its Illinois employees, and that the results are electronically stored. Denied that Speedway does not have a policy relating to its finger-scanning enabled equipment. Speedway and Marathon lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph regarding what employees who leave Speedway have or lack "knowledge of." Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

32. The Pay By Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Speedway's – where employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reason they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers such as a fingerprint who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long. Defendants disregard these obligations and instead unlawfully collect, store, and use their employees biometric identifiers and information, without ever receiving the individual informed written consent required by BIPA.

**ANSWER:** Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in the first two sentences of this paragraph. The remaining allegations in the foregoing paragraph are denied.

33. Speedway's employees are not told what might happen to their biometric data if and when their local stores go out of business or, worse, if and when Speedway's entire business folds.

**ANSWER:** Denied that Speedway or Marathon is under any obligation to tell employees "what might happen." The remaining allegations in the foregoing paragraph are denied.

34. Because Speedway neither publishes a BIPA-mandated data retention policy nor discloses the purposes for its collection of biometric data, Speedway employees have no idea whether Speedway sells, discloses, re-discloses, or otherwise disseminates their biometric data. Nor are Plaintiff and the putative Class told to whom Speedway currently disclose their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

**ANSWER:** Denied that Speedway or Marathon collect, store, or transfer biometric identifiers or biometric information. Admitted that Speedway uses finger-scanning enabled equipment to track the number of hours worked by some of its Illinois employees. Denied that Speedway does not have a policy relating to its finger-scanning enabled equipment. Denied that Speedway does not disclose the purposes of its finger-scanning enabled equipment. Speedway and Marathon lack sufficient information or knowledge to admit or deny what Speedway's employees "have no idea" about. Denied that Speedway or Marathon is under any obligation to tell employees "what might happen." Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

35. By and through the actions detailed above, Speedway does not only disregard the Class' privacy rights, but Speedway also violates BIPA.

**ANSWER:** Denied.

11

### III. Plaintiff Christopher Howe's Experience

36.     Plaintiff Christopher Howe worked for Speedway in Addison, Illinois from September 2015 to May 2017.

**ANSWER:**     Admitted that Plaintiff worked for Speedway from September 2015 until he was terminated for repeatedly violating company policies in May 2017. Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

37.     As an employee, Howe was required to scan his fingerprint to enable Speedway to use it as an authentication method to track his time.

**ANSWER:**     Admitted that Howe was instructed to scan his finger to enable Speedway to track his time on the job. Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

38.     Speedway subsequently stored Howe's fingerprint data in its database(s).

**ANSWER:**     Denied.

39.     Each time Howe began and ended his workday, he was required to scan his fingerprint.

**ANSWER:**     Admitted that Howe was required to authenticate himself at the beginning and end of each workday. Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

40.     Howe has never been informed of the specific limited purposes (if any) or length of time for which Speedway collected, stored, or used his fingerprint.

**ANSWER:**     Denied. Furthermore, Speedway and Marathon deny specifically that either has collected, stored, or transferred biometric identifiers or biometric information.

41.     Howe has never been informed of any biometric data retention policy developed by Speedway, nor has he ever been informed of whether Speedway will ever permanently delete his fingerprint.

**ANSWER:**     Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

3994457

42.     Howe has never been provided nor did he ever sign a written release allowing Speedway to collect or store his fingerprints.

**ANSWER:**     Admitted that Speedway did not provide Howe a written release allowing

Speedway to collect or store his fingerprints. Denied that Speedway or Marathon have collected,

stored, or transferred biometric identifiers or biometric information of Plaintiff or any member of

the putative Class. Except as expressly admitted, the remaining allegations in the foregoing

paragraph are denied.

43.     Howe has continuously and repeatedly been exposed to the harms and risks created by Speedway's violations of BIPA alleged herein.

**ANSWER:**     Denied

44.     Howe suffered an invasion of a legally protected interest when Speedway secured his personal and private biometric data at a time when Speedway had no right to do so, an invasion of Howe's right to privacy.  BIPA protects employees like Howe from this precise conduct and Speedway had no right to secure this data absent a specific Congressional license to do so.

**ANSWER:**     Denied.

45.     Howe also suffered an informational injury because Speedway failed to provide him with information to which he was entitled to by statute.  Through BIPA, Congress has created a right—an employee's right to receive certain information prior to an employer securing their highly personal and private biometric data—and an injury—not receiving this extremely critical information.

**ANSWER:**     The allegations of this paragraph are legal conclusions to which no answer

is required. To the extent an answer is required: denied.

46.     Pursuant to 740 ILCS 14/15(b), Howe was entitled to receive certain information prior to Speedway securing his biometric data; namely, information advising him of the specific limited purpose(s) and length of time for which Speedway collects, stores, and uses his fingerprint; information regarding Speedway's biometric retention policy; and, a written release allowing Speedway to collect and store his private biometric data.  By depriving Howe of this information, Speedway injured Howe and the putative Class he seeks to represent.  *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

13

**ANSWER:**     The allegations of this paragraph are legal conclusions to which no answer is required. To the extent an answer is required: denied.

47.     Finally, as a result of Speedway's conduct, Howe has experienced personal injury in the form of mental anguish.  For example, Howe experiences mental anguish and injury when contemplating about what would happen to his biometric data if Speedway went bankrupt, whether Speedway will ever delete his biometric information, and whether (and to whom) Speedway shares his biometric information.

**ANSWER:**     Denied.

48.     Howe seeks statutory damages under BIPA as compensation for the injuries Speedway has caused.

**ANSWER:**     Denied that Plaintiff, or any member of the putative Class, is entitled to any of the relief requested in the Complaint.

## CLASS ALLEGATIONS

49.     Pursuant to 735 ILCS 5/2-801 and § 2-802, Named Plaintiff brings claims on his own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq*., seeking injunctive relief as well as statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

**ANSWER:**     The allegations of this paragraph are legal conclusions to which no answer is required. To the extent an answer is required: denied that Plaintiff, or any member of the putative Class, is entitled to any of the relief requested in the Complaint.

50.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a private entity from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; **and** (3) receives a written release executed by the subject of the biometric identifier or biometric information.  740 ILCS 14/15.

**ANSWER:**     The allegations of this paragraph are legal conclusions to which no answer is required. To the extent an answer is required: denied that items (1)-(3) above completely and accurately paraphrase what is stated in 740 ILCS 14/15(b).

14

51.     Plaintiff seeks class certification for the following class of similarly-situated employees under BIPA:

> All individuals who worked for Defendants in the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by the Defendants during the applicable statutory period.

**ANSWER:**    Denied that a Class should be certified.

52.     This action is properly maintainable as a class action under § 2-801 because:

> A.  The class is so numerous that joinder of all members is impracticable;

> B.  There are questions of law or fact that are common to the class;

> C.  The claims of the Named Plaintiff are typical of the claims of the class; and,

> D.  The Named Plaintiff will fairly and adequately protect the interests of the class.

**ANSWER:**    Denied.

## Numerosity

53.     The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable.  Speedway has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from hundreds or more employees who fall into the definition of the Class.  The exact number of class members may easily be determined from Speedway's payroll records.

**ANSWER:**    Speedway and Marathon lack sufficient information or knowledge to

admit or deny the allegations in the first sentence of this paragraph. The remaining allegations in

the foregoing paragraph are denied.

## Commonality

54.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Named Plaintiff and all members of the Class have been harmed by Speedway's failure to comply with BIPA.  The common questions of law and fact include, but not limited to the following:

> A.  Whether Speedway collected, captured or otherwise obtained biometric identifiers or biometric information of Plaintiff and the Class;

15

    B.   Whether Speedway informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information as required by BIPA;

    C.   Whether Speedway obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store the biometric identifiers or biometric information of Plaintiff and the Class;

    D.   Whether Speedway has disclosed or re-disclosed the biometric identifiers or biometric information of Plaintiff and the Class;

    E.   Whether Speedway has sold, leased, traded, or otherwise profited from the biometric identifiers or biometric information of Plaintiff and the Class;

    F.   Whether Speedway developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

    G.   Whether Speedway comply with any such written policy (if one exists);

    H.   Whether Speedway used fingerprints of Plaintiff and the Class to identify them;

    I.   Whether Speedway's violations of BIPA were committed negligently; and

    J.   Whether Speedway's violations of BIPA were committed willfully.

    **ANSWER:**    Denied.

    55.    Plaintiff anticipates that Speedway will raise defenses that are common to the class.

    **ANSWER:**    Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

<strong><u>Adequacy</u></strong>

    56.    The Named Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Named Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

    **ANSWER:**    Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

16

## Typicality

57.     The claims asserted by the Named Plaintiff are typical of the class members he seeks to represent.  The Named Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

**ANSWER:**     Speedway and Marathon lack sufficient information or knowledge to

admit or deny the allegations in this paragraph.

58.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer.

**ANSWER:**     Speedway and Marathon lack sufficient information or knowledge to

admit or deny the allegations in this paragraph.

## Predominance and Superiority

59.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members.  A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable.  Class action treatment will allow a larger number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually.  Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

**ANSWER:**     Denied.

60.     On the other hand, important public interests will be served by addressing the matter as a class action.  The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action.  Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can and is empowered to, fashion methods to efficiently manage this action as a class action.

**ANSWER:**     Denied.

17

## FIRST CAUSE OF ACTION
### Violation of 740 ILCS 14/1, *et seq*.
### (On Behalf of Plaintiff and the Class)

61.  Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:**  Speedway and Marathon incorporate their responses to the foregoing

allegations as if fully set forth herein.

62.  BIPA requires private entities to obtain informed written consent from consumers before acquiring their biometric data.  Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject … in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information…."  740 ILCS 14/15(b) (emphasis added).

**ANSWER:**  The allegations of this paragraph are legal conclusions to which no answer

is required. To the extent an answer is required: denied that items (1)-(3) above completely and

accurately paraphrase what is stated in 740 ILCS 14/15(b).

63.  BIPA also prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

**ANSWER:**  The allegations of this paragraph are legal conclusions to which no answer

is required. To the extent an answer is required: denied.

64.  BIPA also mandates that private entities in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those entities must:  (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the entity's last interaction with the customer); and (ii) actually adhere to that retention schedule and actually delete the biometric information.  *See* 740 ILCS 14/15(a).

**ANSWER:**  The allegations of this paragraph are legal conclusions to which no answer

is required. To the extent an answer is required: admitted that BIPA requires a private entity to

maintain a public written policy governing the retention and deletion of biometric information

18

and identifiers. Admitted that items (i) and (ii) are required under 740 ILCS 14/15(a). Except as

expressly admitted, the remaining allegations in the foregoing paragraph are denied.

65. Defendants fail to comply with these BIPA mandates.

**ANSWER:** Denied.

66. Defendant Speedway LLC is a Delaware limited liability company registered to do business in Illinois and thus qualifies as a "public entity" under BIPA. *See* 740 ILCS 14/10.

**ANSWER:** Denied.

67. Defendant Marathon is an Ohio corporation registered to do business in Illinois and thus qualifies as a "public entity" under BIPA. *See* 740 ILCS 14/10.

**ANSWER:** Denied.

68. Defendant Kronos, Inc. is a Massachusetts corporation registered to do business in Illinois and thus qualifies as a "public entity" under BIPA. *See* 740 ILCS 14/10.

**ANSWER:** Denied.

69. Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

**ANSWER:** The allegations of this paragraph are legal conclusions to which no answer

is required. To the extent an answer is required: denied that Speedway or Marathon have

collected biometric identifiers from Plaintiff or any member of the putative Class. Speedway and

Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining

allegations in this paragraph, including in relation to Kronos, Inc.

70. Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

**ANSWER:** The allegations of this paragraph are legal conclusions to which no answer

is required. To the extent an answer is required: denied that Speedway or Marathon have used

biometric identifiers to identify Plaintiff or any member of the putative Class. Speedway and

Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph, including in relation to Kronos, Inc.

71.     Defendants systematically and automatically collected, used, stored, and disclosed Plaintiff's and the Class's biometric identifiers or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

**ANSWER:**    The allegations of this paragraph are legal conclusions to which no answer is required. To the extent an answer is required: denied that Speedway or Marathon have collected, used, stored, or disclosed biometric identifiers or biometric information of Plaintiff or any member of the putative Class. Speedway and Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph, including in relation to Kronos, Inc.

72.     Upon information and belief, Speedway LLC and Marathon Petroleum Company systematically disclosed Plaintiff's and the Class's biometric identifiers and biometric information to an out-of-state third-party vendor, Kronos.

**ANSWER:**    Denied.

73.     Defendants did not properly inform Plaintiff or the Class in writing that their biometric identifiers or biometric information were being collected and stored, nor did it inform them in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

**ANSWER:**    Denied.

74.     Defendants do not provide a publicly available retention schedule or guidelines for permanently destroying its employees' biometric identifiers and biometric information as specified by BIPA.  *See* 740 ILCS 14/15(a).

**ANSWER:**    Denied.

75.     By negligently, recklessly or willfully collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA.  *See* 740 ILCS 14/1, *et seq.*

**ANSWER:**    Denied.

76. On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**ANSWER:** Denied that Plaintiff, or any member of the putative Class, is entitled to any of the relief requested in the Complaint.

## SECOND CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

77. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:** Speedway and Marathon incorporate their responses to the foregoing allegations as if fully set forth herein.

78. Defendants owed Plaintiff and the Class a duty of reasonable care. That duty required that Defendants exercise reasonable care in the collection and use of the biometric data of Plaintiff and the Class.

**ANSWER:** Denied.

79. Additionally, Defendants owed Plaintiff and the Class a heightened duty – under which Defendants assumed a duty to act carefully and not put Plaintiff and the Class at undue risk of harm – because of the employment relationship of the parties.

**ANSWER:** Denied.

80. Defendants breached their duties by failing to implement reasonable procedural safeguards in connection with their collection and use of the biometric identifiers and biometric information of Plaintiff and the Class.

**ANSWER:** Denied.

81. Specifically, Defendants breached their duties by failing to properly inform Plaintiff and the Class in writing of the specific purpose or length for which their fingerprints were being collected, stored, and used.

**ANSWER:** Denied.

82.     Defendants also breached their duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying the biometric data of Plaintiff and the Class.

**<u>ANSWER</u>:**     Denied.

83.     Defendants' breach of their duties proximately caused and continues to cause an invasion of privacy to Plaintiff and the Class, as well as informational injury to them.

**<u>ANSWER</u>:**     Denied.

84.     Accordingly, Plaintiff seeks an order declaring that Defendants' conduct constitutes negligence and awarding Plaintiff and the Class damages in an amount to be calculated at trial.

**<u>ANSWER</u>:**     Denied that Plaintiff, or any member of the putative Class, is entitled to

any of the relief requested in the Complaint.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Christopher Howe, on behalf of himself, individually, and on behalf of the Class, respectfully requests that this Court enter an Order:

A.  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Christopher Howe as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.  Declaring that Defendants' actions, as set forth above, violate BIPA;

C.  Awarding statutory damage of $5,000 for *each* willful and/or reckless violation of BIPA, or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.  Declaring that Defendants' actions, as [set] forth out above, constitute negligence;

E.  Declaring that Defendants' actions, as set forth above, were willful;

F.  Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendants to collect, store, and use biometric identifiers or biometric information in compliance with BIPA;

G.  Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

H.  Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

I.  Awarding such other and further relief as equity and justice may require.

**ANSWER:**   Denied that Plaintiff, or any member of the putative Class, is entitled to any of the relief requested in the Complaint.

### JURY TRIAL

Plaintiff demands a trial by jury for all issues so trial.

**ANSWER:**   This paragraph contains only a legal assertion to which no answer is required. To the extent an answer is required: denied that Plaintiff, or any member of the putative Class, is entitled to any of the relief requested in the Complaint.

\*        \*        \*

### ADDITIONAL DEFENSES

Alternatively, and without waiving the foregoing denials, Speedway and Marathon assert the affirmative and additional defenses below. By pleading these defenses, Speedway and Marathon do not intend to alter the burden of proof and/or burden of persuasion that otherwise exists with respect to any issues in this action. Moreover, all defenses are pled in the alternative and do not constitute an admission of liability or an admission that Plaintiff or any member of the putative Class is entitled to any relief whatsoever.

### FIRST AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because Plaintiff and all putative Class members consented to the conduct that is alleged to violate BIPA. Upon information and belief, Plaintiff and each putative Class member voluntarily consented to the practices the Complaint challenges by agreeing to use and participate in Speedway's time-keeping systems and practices, including with respect to scanning a finger.

23

## SECOND AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because it seeks relief that is barred under the Due Process Clause of the Constitution. The Complaint seeks either $1,000 or $5,000 in statutory damages for each alleged BIPA violation, even though neither Plaintiff nor the putative Class has suffered any harm as a result of the conduct alleged. The statutory damages available under BIPA are grossly excessive and disproportionate in light of the absence of any injury or harm to Plaintiff and the putative Class members, and therefore any award of statutory damages to the Plaintiff or putative Class members would violate Speedway's and Marathon's due process rights.

## THIRD AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part under the doctrines of estoppel and waiver. Upon information and belief, Plaintiff and each putative Class member affirmatively approved and participated in the conduct that the Complaint alleges was wrongful. Plaintiff and the Class members are accordingly barred from asserting BIPA claims under the doctrines of estoppel and waiver.

## FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part under the doctrine of laches. The Complaint implies that Speedway and Marathon engaged in the complained-of conduct dating back to 2013, and that Plaintiff and each putative Class member knew of that conduct, and even participated in it. Thus, Plaintiff and each putative Class member unreasonably delayed seeking recovery under BIPA.

## FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part under the doctrine of unclean hands. Upon information and belief, Plaintiff and each putative Class member approved and, in some cases,

24

participated in the complained-of conduct by using, and agreeing to use, Speedway's time-keeping systems and practices, including with respect to scanning a finger.

## SIXTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because neither Plaintiff nor any putative Class member alleges they have been "aggrieved by a violation" of BIPA.

## SEVENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because neither Speedway nor Marathon retained, stored, collected, possessed, captured, purchased, received, transmitted, or disclosed biometric identifiers or biometric information as defined under BIPA.

## EIGHTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part under the doctrines of ratification and acquiescence. Upon information and belief, Plaintiff and each putative Class member approved and, in some cases, participated in the complained-of conduct by using, and agreeing to use, Speedway's time-keeping systems and practices, including with respect to scanning a finger.

## NINTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because, upon information and belief, Plaintiff and each putative Class member failed to assert a cause of action within the periods required by the applicable statute of limitations. *See* 735 ILCS 5/13-202 (two-year limitations period to recover damages for an alleged injury to the person or a statutory penalty); 735 ILCS 5/13-201 (one-year limitations period for publication of matter violating right of privacy).

## TENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because Speedway and Marathon substantially complied with BIPA at all times relevant to the allegations in the Complaint.

25

## ELEVENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part to the extent that any claim of Plaintiff or any putative Class member is barred under the doctrines of issue or claim preclusion.

## TWELFTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part to the extent that any claim of Plaintiff or any putative Class member failed to mitigate its damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because Plaintiff is not entitled to pursue claims as a class action.

## FOURTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff may be barred, in whole or in part, by applicable law relating to spoliation of evidence.

## FIFTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff may be barred, in whole or in part, because the claims are moot as to Plaintiff and some or all members of the putative Class.

## SIXTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff may be barred, in whole or in part, under the doctrines of release and/or accord and satisfaction.

## RESERVATION OF RIGHT TO AMEND

Speedway and Marathon reserve the right to assert additional defenses, counterclaims, cross-claims, or third-party claims as they become known throughout the course of this litigation and as may become available under the substantive laws of Illinois.

26

3994457

WHEREFORE, Speedway and Marathon ask that:

(a)    the Court dismiss the Complaint with prejudice;

(b)    judgment against Plaintiff be entered in favor of Speedway and Marathon;

(c)    any and all claims for damages of any sort or nature be denied; and

(d)    Speedway and Marathon be awarded their costs and attorneys' fees incurred in

defending this action, as well as any other relief that this Court deems just and

appropriate.

Dated: November 9, 2017                    Respectfully submitted,

                                           SPEEDWAY LLC and
                                           MARATHON PETROLEUM COMPANY

                                           By: _/s/ Gary M. Miller_____

Tristan L. Duncan (*pro hac vice*)         Gary M. Miller
SHOOK, HARDY & BACON L.L.P.                Anna S. Knight
2555 Grand Boulevard                       Patrick J. Castle
Kansas City, MO 64108                      SHOOK, HARDY & BACON L.L.P.
(816) 474-6550                             111 South Wacker Drive, 51st Floor
tlduncan@shb.com                           Chicago, IL 60606
                                           Tel: (312) 704-7700
Alfred J. Saikali (*pro hac vice*)         Fax: (312) 558-1195
SHOOK, HARDY & BACON L.L.P.                Firm No. 58950
201 South Biscayne Boulevard, Suite 3200   gmiller@shb.com
Miami, FL 33131                            asknight@shb.com
(305) 358-5171                             pcastle@shb.com
asaikali@shb.com

                                           **Attorneys for Defendants Speedway LLC and
                                           Marathon Petroleum Company**

3994457

# CERTIFICATE OF SERVICE

I, Patrick J. Castle, an attorney, hereby certify that on **November 9, 2017**, I caused a true

and correct copy of **SPEEDWAY LLC'S AND MARATHON PETROLEUM COMPANY'S**

**ANSWER AND AFFIRMATIVE DEFENSES TO CLASS ACTION COMPLAINT** to be

served on counsel of record via ECF pursuant to the General Order on Electronic Filing of the

United States District Court, Northern District of Illinois, addressed as follows:

> Ryan F. Stephan
> James B. Zouras
> Andrew C. Ficzko
> Haley R. Jenkins
> STEPHAN ZOURAS, LLP
> 205 North Michigan Avenue, Suite 2560
> Chicago, IL 60601
> (312) 233-1550
> (312) 233-1560 (Fax)
> lawyers@stephanzouras.com
> rstephan@stephanzouras.com
> jzouras@stephanzouras.com
> aficzko@stephanzouras.com
>
> Benjamin H. Richman
> Sydney M. Janzen
> Ari J. Scharg
> Christopher L. Dore
> EDELSON PC
> 350 North LaSalle Street, Suite 1300
> Chicago, IL 60654
> brichman@edelson.com
> sjanzen@edelson.com
> ascharg@edelson.com
> cdore@edelson.com
>
> ***Attorneys for Christopher Howe***

         */s/ Patrick J. Castle*

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.1.1.2
### Eastern Division

Christopher Howe

Plaintiff,

v.                                        Case No.: 1:17–cv–07303
                                          Honorable Andrea R. Wood

Speedway LLC, et al.

Defendant.

---

## NOTICE OF MANDATORY INITIAL DISCOVERY

The Court is participating in the Mandatory Initial Discovery Pilot (MIDP). The key features and deadlines are set forth in the attached Notice which includes the (MIDP) Standing Order. Also attached is a Checklist for use by the parties. In cases subject to the pilot, all parties must respond to the mandatory initial discovery requests set forth in the Standing Order before initiating any further discovery in this case. Please note: The discovery obligations in the Standing Order supersede the disclosures required by Rule 26(a)(1). Any party seeking affirmative relief must serve a copy of the attached documents (Notice to Parties and the Standing Order) on each new party when the Complaint, Counterclaim, Crossclaim, or Third–Party Complaint is served.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.1.1.2
### Eastern Division

Christopher Howe

                     Plaintiff,

v.                                     Case No.: 1:17−cv−07303
                                     Honorable Andrea R. Wood

Speedway LLC, et al.

                     Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, October 13, 2017:

       MINUTE entry before the Honorable Andrea R. Wood: Defendant's Unopposed Motion for extension of time to answer [6] is granted. Defendants Speedway LLC and Marathon Petroleum Company shall answer or otherwise plead by 11/9/2017. The motion presentment date of 10/17/2017 is stricken. Parties need not appear. Initial status hearing set for 12/12/2017 at 9:00 AM. The parties are directed to meet and conduct a planning conference pursuant to Federal Rule of Civil Procedure 26(f). At least seven days before the initial status hearing, the parties shall file a joint written status report, not to exceed five pages in length. The initial status report shall provide the information described on the Court's website at www.ilnd.uscourts.gov under District Judges, Judge Andrea R. Wood, Initial Status Conference. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.1.1.2
### Eastern Division

Christopher Howe

                      Plaintiff,

v.                                       Case No.: 1:17−cv−07303
                                       Honorable Andrea R. Wood

Speedway LLC, et al.

                      Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, November 2, 2017:

      MINUTE entry before the Honorable Andrea R. Wood: Attorney applications to appear pro hac vice [20] and [21] are granted. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.1.1.2
### Eastern Division

Christopher Howe

                    Plaintiff,

v.
                                   Case No.: 1:17–cv–07303
                                   Honorable Andrea R. Wood

Speedway LLC, et al.

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, November 16, 2017:

       MINUTE entry before the Honorable Andrea R. Wood: Motion hearing held. The Court set the following briefing schedule for Defendants' motion to dismiss [25]: Plaintiff shall respond by 12/14/2017 and Defendants shall reply by 1/5/2018. Initial Status hearing set for 12/12/2017 [14] remains firm. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at **www.ilnd.uscourts.gov**.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.2.1
### Eastern Division

Christopher Howe

                     Plaintiff,

v.                                   Case No.: 1:17–cv–07303

                                   Honorable Andrea R. Wood

Speedway LLC, et al.

                     Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, December 7, 2017:

     MINUTE entry before the Honorable Andrea R. Wood: Motion Hearing set for 12/7/2017 is stricken and reset for 12/12/2017 at 09:00 AM. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.2.1
### Eastern Division

Christopher Howe

                          Plaintiff,

v.                                        Case No.: 1:17−cv−07303
                                        Honorable Andrea R. Wood

Speedway LLC, et al.

                          Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, December 12, 2017:

      MINUTE entry before the Honorable Andrea R. Wood: Motion and Status hearing held. Defendant's motion for extension of time to produce documents [30] is granted. Defendant's hard copy and electronic documents responsive to the Mandatory Initial Discovery Pilot (MIDP) request shall be produced by 2/22/2018. The Court adopts the parties' proposed discovery schedule [32]. Fact discovery shall be completed by 8/1/2018; expert disclosures are due by 9/1/2018; rebuttal disclosures shall be served by 12/1/2018; expert deposition shall be completed by 3/1/2019; and any dispositive motions shall be filed by 5/1/2019. Status hearing set for 3/27/2018 at 9:00 AM. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.2.1
### Eastern Division

Christopher Howe

                  Plaintiff,

v.                                 Case No.: 1:17−cv−07303

                                 Honorable Andrea R. Wood

Speedway LLC, et al.

                  Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, January 16, 2018:

      MINUTE entry before the Honorable Andrea R. Wood: Plaintiff's Agreed Motion for entry of confidentiality order [41] is granted. Enter order. Plaintiff's Motion for leave to file sur−reply [44] is taken under advisement. Plaintiff's Motion for leave to file sur−reply [43] is terminated as duplicative of motion [44]. The motion presentment date of 1/17/2018 is stricken. Parties need not appear. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER HOWE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | No. 17-cv-07303 |
| SPEEDWAY LLC and MARATHON PETROLEUM COMPANY, | Judge Andrea R. Wood |
| Defendants. | |

## AGREED CONFIDENTIALITY ORDER

The parties to this Agreed Confidentiality Order have agreed to the terms of this Order; accordingly, it is ORDERED:

1.     **Scope**.  All materials produced or adduced in the course of discovery by the parties or any third party (a "party"), including initial disclosures, responses to discovery requests, deposition testimony and exhibits, and information derived directly therefrom (hereinafter collectively "documents"), shall be subject to this Order concerning Confidential Information as defined below. This Order is subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

2.     **Confidential Information**. As used in this Order, "Confidential Information" means information designated as "CONFIDENTIAL" by the producing party that falls within one or more of the following categories: (a) information prohibited from disclosure by statute; (b) commercial, financial, operational, customer, and product information that the party has maintained as confidential; (c) medical information concerning any individual; (d) personal identity information; (e) income tax returns (including attached schedules and forms), W-2

forms, and 1099 forms; and (f) personnel or employment records of a person who is not a party to the case. Information or documents that are available to the public may not be designated as Confidential Information. Confidential Information also means information designated as "CONFIDENTIAL-ATTORNEYS' EYES ONLY" by the producing party that falls within one or more of the following categories: (g) information that reveals trade secrets; (h) non-published pricing, cost, and sales information; (i) highly sensitive proprietary hardware, software, or other technical product or operational information; and (j) other highly sensitive confidential or proprietary information that provides a competitive advantage, or highly personal information that could adversely impact a person's privacy interests.

3. **Designation**.

a. A party shall designate a document as Confidential Information for protection under this Order by placing or affixing the words "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" on the document and on all copies in a manner that will not interfere with the legibility of the document. As used in this Order, "copies" include electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information. The marking "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" shall be applied prior to or at the time the documents are produced or disclosed. Applying the marking "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Any copies that are made of any documents marked "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" shall also be so marked, except that indices, electronic databases, or lists of documents that do not contain substantial portions or images of the text of marked

documents and do not otherwise disclose the substance of the Confidential Information are not required to be marked.

   b. The designation of a document as Confidential Information is a certification by an attorney or a party appearing *pro se* that the document contains Confidential Information as defined in this order.[1]

   4. **Depositions**.

  Deposition testimony is protected by this Order only if designated as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" on the record at the time the testimony is taken. Such designation shall be specific as to the portions that contain Confidential Information. Deposition testimony so designated shall be treated as Confidential Information protected by this Order until fourteen days after delivery of the transcript by the court reporter to any party or the witness. Within fourteen days after delivery of the transcript, a designating party may serve a Notice of Designation to all parties of record identifying the specific portions of the transcript that are designated Confidential Information, and thereafter those portions identified in the Notice of Designation shall be protected under the terms of this Order. The failure to serve a timely Notice of Designation waives any designation of deposition testimony as Confidential Information that was made on the record of the deposition, unless otherwise ordered by the Court.

---

[1]An attorney who reviews the documents and designates them as CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" must be admitted to the Bar of at least one state but need not be admitted to practice in the Northern District of Illinois unless the lawyer is appearing generally in the case on behalf of a party. By designating documents confidential pursuant to this Order, counsel submits to the jurisdiction and sanctions of this Court on the subject matter of the designation.

5.      **Protection of Confidential Material**.

        a.      **General Protections**. Confidential Information shall not be used or disclosed by the parties, counsel for the parties, or any other persons identified in subparagraph (b) for any purpose whatsoever other than this litigation, including any appeal thereof. Confidential Information may not be used for any commercial purpose (aside from prosecuting or defending against the claims in this action), for the purpose of obtaining clients or developing business, or in connection with any litigation other than this case. In a putative class action, Confidential Information may be disclosed only to the named plaintiff(s) and not to any other member of the putative class unless and until a class including the putative member has been certified.

        b.      **Limited Third-Party Disclosures**.  The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential Information to any third person or entity except as set forth in subparagraphs (i)-(ix). Subject to these requirements and those described elsewhere in this Order, the following categories of persons may be allowed to review Confidential Information:

    i.      **Counsel**.  Counsel for the parties and employees of counsel who have responsibility for the action;

    ii.     **Parties**.  Individual parties and agents of a party, but only to the extent counsel determines in good faith that the agent's assistance is reasonably necessary to the conduct of the litigation in which the information is disclosed;

    iii.    **The Court and its personnel**;

    iv.     **Court Reporters and Recorders**.  Court reporters and recorders engaged for depositions;

    v.      **Contractors**.  Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;

- 4 -

    vi.    **Consultants and Experts**.  Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound;

    vii.    **Witnesses at depositions**.  During their depositions, witnesses in this action to whom disclosure is reasonably necessary.  Witnesses shall not retain a copy of documents containing Confidential Information, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts.  Pages of transcribed deposition testimony or exhibits to depositions that are designated as Confidential Information pursuant to the process set out in this Order must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

    viii.    **Author or recipient**.  The author or recipient of the document (not including a person who received the document in the course of litigation); and

    ix.    **Others by Consent**.  Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered.

Notwithstanding the foregoing, counsel for the parties shall not disclose or permit the disclosure of any documents designated "CONFIDENTIAL-ATTORNEYS' EYES ONLY" to any third person or entity except for in-house counsel for any party and as set forth in subparagraphs (i), (iii), (iv), (vi), (viii), and (ix).

    c.    **Control of Documents**.  Counsel for the parties shall: (i) make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential Information; (ii) immediately notify a designating party of any disclosure of Confidential Information not permitted by this Order; and (iii) maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

    6.    **Inadvertent Failure to Designate**.  An inadvertent failure to designate a document as Confidential Information does not, standing alone, waive the right to so designate

the document; provided, however, that a failure to serve a timely Notice of Designation of deposition testimony as required by this Order, even if inadvertent, waives any protection for deposition testimony.  If a party designates a document as Confidential Information after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to assure that the document is treated in accordance with the provisions of this Order.  No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential Information, even where the failure to designate was inadvertent and where the material is subsequently designated Confidential Information.

7.      **Filing of Confidential Information**.  Any documents (including briefs), tangible things, or information designated as Confidential that are submitted to the Court in support of or in opposition to a motion or introduced at a hearing or during trial may retain their protected confidential status only by order of the Court in accordance with Judge Wood's case procedures. This Order does not, by itself, authorize the filing of any document under seal. Any party wishing to file a document designated as Confidential Information in connection with a motion, brief or other submission to the Court must bring an appropriate motion for leave to file under seal in accordance with Judge Wood's procedures.  Such party also must provide no less than three court days advance notice of the motion for leave to file under seal to any third-party who has designated Confidential Information that such party seeks to file or otherwise submit in the case.

8.      **No Greater Protection of Specific Documents**.  Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it

requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection.

9. **Challenges by a Party to Designation as Confidential Information**. The designation of any material or document as Confidential Information is subject to challenge by any party. The following procedure shall apply to any such challenge.

a. **Meet and Confer**. A party challenging the designation of Confidential Information must do so in good faith and must begin the process by conferring directly with counsel for the designating party. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation. The designating party must respond to the challenge within five business days.

b. **Judicial Intervention**. If the parties cannot reach an agreement concerning the matter of the objection, then either party may move for a Court order concerning the objection within 14 days after the written objection to a designation was issued. If the designating party fails to move for a Court order within 14 days, or any extension thereof as may be agreed by the parties or ordered by the Court, the challenged designation shall be rescinded. The burden of persuasion in any such challenge proceeding shall be on the designating party. Until the Court rules on the challenge, all parties shall continue to treat the materials as Confidential Information under the terms of this Order.

10. **Action by the Court**. Applications to the Court for an order relating to materials or documents designated Confidential Information shall be by motion. Nothing in this Order or

any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

11. **Use of Confidential Documents or Information at Trial**. Nothing in this Order shall be construed to affect the use of any document, material, or information at any trial or hearing. A party that intends to present or that anticipates that another party may present Confidential Information at a hearing or trial shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum without disclosing the Confidential Information. The Court may thereafter make such orders as are necessary to govern the use of such documents or information at trial.

12. **Confidential Information Subpoenaed or Ordered Produced in Other Litigation**.

      a. If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than five court days after receiving the subpoena or order nor less than seven court days before the response to the subpoena or order is due. Such notification must include a copy of the subpoena or court order.

      b. The receiving party also must immediately inform in writing the party who caused the subpoena or court order at issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena or order at issue.

c.      The purpose of imposing these duties is to alert the interested party to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information in the court from which the subpoena or order issued. The designating party shall bear the burden and the expense of seeking protection in that court of its Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody or control Confidential Information by the designating party to this case.

13.     **Challenges by Members of the Public to Sealing Orders**. A party or interested member of the public has a right to challenge the sealing of particular documents that have been filed under seal, and the party that made the initial confidential designation will have the burden of demonstrating the propriety of filing under seal.

14.     **Reservations of Rights**. This Order and/or the designation, production or receipt of Confidential Information shall not prejudice the rights of any party: (a) to object to the discovery of information or production of documents that such party considers to be not subject to discovery; (b) to object to the authenticity, relevance, materiality and/or admissibility of any information subject to this Order; or (c) to seek further protection from or a determination by the Court as to the matters set forth herein.

15.     **Obligations on Conclusion of Litigation**.

a.      **Order Continues in Force**. Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

b. **Obligations at Conclusion of Litigation**. Within sixty-three days after dismissal or entry of final judgment not subject to further appeal, all Confidential Information and documents marked "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" under this Order, including copies as defined in paragraph 3(a), shall be returned to the producing party unless: (i) the document has been offered into evidence or filed without restriction as to disclosure; or (ii) the documents will be destroyed in lieu of return.

c. **Retention of Work Product and one set of Filed Documents**. Notwithstanding the above requirements to return or destroy documents, counsel may retain (i) attorney work product, including an index that refers or relates to designated Confidential Information and including copies of Confidential Information contained in the electronic files of the parties' attorneys and paralegals, and (ii) one complete set of all documents filed with the Court including those filed under seal. Any retained Confidential Information shall continue to be protected under this Order. An attorney may use his or her work product in subsequent litigation, provided that its use does not disclose or use Confidential Information.

d. **Deletion of Documents filed under Seal**. Filings under seal shall be deleted or otherwise removed from the Court docket only upon order of the Court.

16. **Order Subject to Modification**. This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

17. **No Prior Judicial Determination**. This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document or material designated Confidential Information by counsel or the parties is entitled to protection

under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

18.     **Persons Bound**.  This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

19.     **Clawback of Protected Materials Under Federal Rule of Evidence 502(d)**. The production or disclosure of information subject to the attorney-client privilege, attorney-work product protection, or other similar protection from discovery ("Protected Material") does not operate as a waiver of the privilege or protection by the producing party, in this or any other state or federal proceeding, regardless of the circumstances of disclosure. If any party becomes aware of the production or disclosure of Protected Material, that party shall provide written notice to the other parties of such production or disclosure within 14 days of the discovery of the production or disclosure. The party that produced Protected Material has 14 days from the date of service of the notification in which to request that the other parties return the material. If the parties agree that the material subject to such a clawback request is Protected Material, the receiving parties must return to the producing party the original and all copies of the Protected Material within 14 days of the request. In the event that the parties do not agree on the return of the material subject to the clawback request, any party may bring a motion to the Court for the adjudication of the dispute, and if the material is found by the Court to be subject to the privilege or other protection from discovery, the original and all copies of the material must be returned to the party that produced it.

SO ORDERED.

Dated: January 16, 2018

_____

ANDREA R. WOOD
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHRISTOPHER HOWE, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

SPEEDWAY LLC and MARATHON PETROLEUM COMPANY,

        Defendants.

No. 17-cv-07303

Judge Andrea R. Wood

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

The undersigned hereby acknowledges that he/she has read the Agreed Confidentiality Order dated _____, 20___ in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the Northern District of Illinois in matters relating to the Agreed Confidentiality Order and understands that the terms of the Agreed Confidentiality Order obligate him/her to use materials designated as Confidential Information in accordance with the terms thereof solely for the purposes of the above-captioned action, and not to disclose any such Confidential Information to any other person, firm or concern.

The undersigned acknowledges that violation of the Agreed Confidentiality Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

_____

Date: _____            _____

                                                Signature

Attachment A

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.2.1
### Eastern Division

Christopher Howe

                   Plaintiff,

v.                               Case No.: 1:17–cv–07303
                                 Honorable Andrea R. Wood

Speedway LLC, et al.

                   Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, January 24, 2018:

       MINUTE entry before the Honorable Andrea R. Wood: Joint Motion to set a briefing schedule [52] is granted. Plaintiff's response to motion to remand [50] shall be files by 2/14/2018 and Defendants' reply shall be filed by 2/28/2018. The motion presentment date of 1/25/2018 is stricken. Parties need not appear. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.2.1
### Eastern Division

Christopher Howe

Plaintiff,

v.

Speedway LLC, et al.

Defendant.

Case No.: 1:17–cv–07303
Honorable Andrea R. Wood

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, March 12, 2018:

     MINUTE entry before the Honorable Andrea R. Wood: Defendants' Motion for leave to file surreply [58] is granted. The motion presentment date of 3/13/2018 is stricken. Parties need not appear. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.2.1
## Eastern Division

Christopher Howe

                    Plaintiff,

v.

                                     Case No.: 1:17–cv–07303
                                     Honorable Andrea R. Wood

Speedway LLC, et al.

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, March 26, 2018:

      MINUTE entry before the Honorable Andrea R. Wood: Status hearing set for 3/27/2018 is stricken and reset for 4/25/2018 at 09:00 AM. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.2.1
### Eastern Division

Christopher Howe

                      Plaintiff,

v.                                    Case No.: 1:17–cv–07303
                                    Honorable Andrea R. Wood

Speedway LLC, et al.

                      Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, April 18, 2018:

       MINUTE entry before the Honorable Andrea R. Wood: Motion hearing held. The Court sets the following briefing schedule on Defendants' motion to stay [70]: Plaintiff shall respond by 4/24/2018 and Defendants shall reply by 5/1/2018. Status hearing set for 4/25/2018 [69] is stricken and reset for 5/11/2018 at 9:00 AM. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.2.1
### Eastern Division

Christopher Howe

                          Plaintiff,

v.                                              Case No.: 1:17−cv−07303
                                                Honorable Andrea R. Wood

Speedway LLC, et al.

                          Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, May 10, 2018:

        MINUTE entry before the Honorable Andrea R. Wood: Status hearing set for
5/11/2018 is stricken and reset for 5/31/2018 at 09:00 AM. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.2.1
### Eastern Division

Christopher Howe

                Plaintiff,

v.

                                  Case No.: 1:17−cv−07303
                                  Honorable Andrea R. Wood

Speedway LLC, et al.

                Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, May 22, 2018:

      MINUTE entry before the Honorable Andrea R. Wood: Defendants' Motion for leave to file a Response to Plaintiff's Second Notice of Supplemental Authority [79] is taken under advisement. The motion presentment date of 5/23/2018 is stricken; parties need not appear. Status hearing set for 5/31/2018 [77] remains firm. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at **www.ilnd.uscourts.gov**.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.2.2
### Eastern Division

Christopher Howe

                    Plaintiff,

v.                                          Case No.: 1:17–cv–07303
                                            Honorable Andrea R. Wood

Speedway LLC, et al.

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, May 31, 2018:

     MINUTE entry before the Honorable Andrea R. Wood: For the reasons stated in the accompanying Memorandum Opinion and Order, Plaintiff's motion to remand [50] is granted. The Clerk is directed to remand this case to the Circuit Court of Cook County, Illinois. Defendants' motion for leave to file a response to Plaintiff's second notice of supplemental authority [79] is granted; the Court considered the supplemental authority and response in ruling upon the motion to remand. Defendants' motion to dismiss [25] and motion to stay discovery [70], as well as Plaintiff's motion for leave to file a surreply [44], are all denied as moot. All other pending motions and hearing dates are stricken. Civil case terminated. Mailed notice(ef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HOWE, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 17-cv-07303 |
| SPEEDWAY LLC, et al., | ) ) | Judge Andrea R. Wood |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

At the beginning of his employment at a Speedway gas station, Plaintiff Christopher Howe was required to scan his fingerprint, which his employer used to authenticate his identity and track his time. Howe initially brought this putative class action in Illinois state court against Defendants Speedway LLC ("Speedway") and Marathon Petroleum Co. ("Marathon"),[1] arguing that Defendants collected and stored his and similarly-situated individuals' fingerprints in violation of Illinois's Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* Defendants then removed the lawsuit to federal court (Dkt. No. 1), and shortly thereafter filed a motion to dismiss (Dkt. No. 25). In response, Howe moved to remand the action back to state court, claiming that Defendants' motion to dismiss demonstrated that Howe did not have Article III standing to bring this action in federal court. (Dkt. No. 50.) For the reasons that follow, Howe's motion to remand is granted and Defendants' motion to dismiss is denied as moot.

---

[1] In his Complaint, Howe also named Kronos, Inc. ("Kronos") as a Defendant, but Howe has since voluntarily dismissed Kronos from this action pursuant to Federal Rule of Civil Procedure 41(a). (Dkt. No. 15.)

# BACKGROUND

Howe is an Illinois resident who worked at a Speedway gas station in Addison, Illinois from September 2015 to May 2017. (Compl. ¶¶ 10, 36, Dkt. No. 1-1.) Speedway required its employees to scan their fingerprints, which were stored in a database operated by its vendor, Kronos. (*Id.* ¶¶ 2, 6, 38.) It used the employees' fingerprints to authenticate their identities and to track their time. (*Id.* ¶ 37.) Specifically, at the beginning of each work day, an employee would clock in by scanning his fingerprint and then scan his fingerprint again at the end of the day to clock out. (*Id.* ¶¶ 2–3, 29, 39.) Howe's fingerprint data was used for this purpose during his employment at Speedway. (*Id.* ¶ 39.)

According to Howe, Speedway collected, stored, and used his fingerprints in violation of BIPA. Illinois passed BIPA in 2008 in order to provide certain protections for the biometric identifiers—such as fingerprints—and biometric information of Illinois citizens. (*Id.* ¶¶ 18, 21.) The statute includes provisions requiring any private entity to make two disclosures and receive a written release before collecting a person's biometric identifier or information. (*Id.* ¶ 19; 740 ILCS 14/15(b).) In particular, the entity must disclose in writing to the person whose biometric data is being collected "that a biometric identifier or biometric information is being collected or stored." (Compl. ¶ 19; 740 ILCS 14/15(b)(1).) Then, the person must be informed "in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." (Compl. ¶ 19; 740 ILCS 14/15(b)(2).) Furthermore, a private entity that is in possession of biometric data

> must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in

Case: 1:19-cv-01303 Document #: 1-1 Filed: 03/25/19 Page 33 of 14 PageID #:90

> possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

(Compl. ¶ 23; 740 ILCS 14/15(a).)

Howe filed the present class action against Speedway and Marathon (of which Speedway is a wholly-owned subsidiary) seeking statutory damages under BIPA on behalf of himself and a class of similarly-situated individuals, as well as an injunction forcing Defendants to comply with BIPA. (Compl. ¶¶ 61–76.) In addition, Howe seeks damages for Defendants' negligence. (*Id.* ¶¶ 77–84.) In his complaint, Howe alleges that Speedway violated BIPA because it never provided any disclosures nor did it obtain his written release before scanning and storing his fingerprints. (*Id.* ¶¶ 40, 42.) He further alleges a violation stemming from Speedway's failure to create and make publicly available its retention and destruction policy for biometric data. (*Id.* ¶ 41.) As a result of Speedway's BIPA violations and negligence, Howe claims to have been injured in three respects. His first claimed injury is the invasion of his right to privacy caused by Speedway's collection and storage of his biometric data without proper disclosures or authorization. (*Id.* ¶ 44.) Howe also alleges an informational injury on account of Speedway's failure to provide him information to which he was entitled under BIPA. (*Id.* ¶ 45.) Finally, he claims to have suffered mental anguish and injury from contemplating the possibility that his biometric data might be compromised. (*Id.* ¶ 47.)

This class action was originally filed in the Circuit Court of Cook County, Illinois, however Defendants removed the action to this Court, claiming jurisdiction on the basis of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. (Notice of Removal at 1.) Following removal, Defendants moved to dismiss Howe's action under Federal Rule of Civil Procedure 12(b)(6). In response, Howe moved to remand the case back to state court asserting that Defendants' Rule 12(b)(6) argument raises doubt as to Howe's standing to proceed before a

federal district court. His motion to remand also seeks attorneys' fees and costs incurred as a result of the improper removal, pursuant to 28 U.S.C. § 1447(c).

## DISCUSSION

### I.    Motion to Remand

Any action that could have been originally filed in federal court is properly removable. 28 U.S.C. § 1441. To remove a case to federal court, a defendant need only file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446. Pursuant to CAFA, a federal court has subject-matter jurisdiction over class actions where the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 551–52 (2014). Defendants' notice of removal establishes that the action was removable under CAFA, and Howe does not dispute that.

Yet having removed the action to federal court, Defendants proceeded to file a motion to dismiss that, while styled as a Rule 12(b)(6) motion, appears to cast doubt on Howe's Article III standing. Defendants' motion to dismiss argues that Howe has failed to state a claim under BIPA because the statute's cause of action is only available to a "person aggrieved by a violation" of the statute. (Mem. in Support of Mot. to Dismiss at 3, Dkt. No. 26.) Defendants contend that to be a "person aggrieved," a plaintiff must have been injured by a BIPA violation. (*Id.* at 4–10.) Howe is not "aggrieved," according to Defendants, because he alleges only technical violations of the statute but "alleges no facts to indicate he was injured" by those violations (*Id.* at 3.) While Defendants' motion to dismiss is carefully cabined to issues regarding Howe's ability to state a claim, Howe asserts that their arguments nonetheless implicate Article III standing and thus the Court's ability to hear the case at all. Its jurisdiction having been called into question, the Court

must resolve whether Howe has constitutional standing before it can address whether Howe failed to state a claim upon which relief may be granted. *See Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988) ("Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action.").

Standing is an essential component of Article III's limitation of federal courts' judicial power only to cases or controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). There are three elements that constitute the "irreducible constitutional minimum" of standing. *Lujan*, 504 U.S. at 560. A "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (internal quotation marks omitted). Where a plaintiff does not have Article III standing, a federal district court lacks subject-matter jurisdiction to hear his or her claims. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017).

By contrast, a plaintiff may have constitutional standing yet nonetheless lack statutory standing. Statutory standing asks "whether the statute grants the plaintiff the cause of action that he asserts." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 & n.4 (2014). A plaintiff has statutory standing only when his or her interests "fall within the zone of interests protected by the law invoked." *Lexmark*, 134 S. Ct. at 1388 (internal quotation marks omitted). The zone of interests test, in turn, requires the court "to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular

plaintiff's claim." *Bank of Am.*, 137 S. Ct. at 1302–03. Despite its name, statutory standing does not implicate a court's subject-matter jurisdiction but is better understood as a Rule 12(b)(6) issue. *Lexmark*, 134 S. Ct. at 1387 n.4; *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 951 (N.D. Ill. 2016).

On its face, Defendants' motion to dismiss is directed only to Howe's statutory standing under BIPA—namely, whether Howe is a "person aggrieved" who can maintain an action. Their argument implicitly concedes (at least for purposes of this stage in the proceedings) that they did not follow BIPA's disclosure and authorization requirements, but goes on to contend that because those violations did not injure Howe, BIPA does not supply him with a cause of action. Yet Defendants' argument about Howe's lack of injury raises the issue of whether he has alleged an injury-in-fact for purposes of Article III standing. Indeed, the motion to dismiss is predicated on Defendants' contention that Howe has "allege[d] no facts to indicate that he was injured," (Mem. in Support of Mot. to Dismiss at 3) and contests the sufficiency of the injuries Howe does allege in the Complaint (*id.* at 10–13). Moreover, many of the cases upon which Defendants rely in support of their claim that Howe is not a "person aggrieved" are in fact cases in which courts dismissed complaints for want of constitutional standing. *See, e.g.*, *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499 (S.D.N.Y. 2017), *aff'd in part and vacated in part*, *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12 (2d Cir. Nov. 21, 2017); *McCullough v. Smarte Carte, Inc.*, No. 16 C 03777, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016).

Procedurally, Howe finds himself in an awkward position. To succeed in his lawsuit, he must establish that he is a "person aggrieved" who has statutory standing to assert a cause of action under BIPA. However, if he has a cognizable injury under BIPA, then it follows that he also has constitutional standing and must proceed in a disfavored forum. Therefore, in an effort to

achieve remand without fatally undermining his claims, Howe declines to take a position on
constitutional standing and argues that it is Defendants' burden to establish such standing. Howe
is correct. As the Seventh Circuit recently held, where a party invokes federal jurisdiction by
removing a suit from state court, that party must "establish that all elements of jurisdiction—
including Article III standing—existed at the time of removal. *Collier v. SP Plus Corp.*, No. 17-
2431, 2018 WL 2186786, at *2 (7th Cir. May 14, 2018) (per curiam).[2]

To avoid remand, Defendants find themselves having to establish that Howe has suffered a
sufficient injury for purposes of Article III standing even as their motion to dismiss vigorously
contests the adequacy of his injury for purposes of statutory standing. Yet it is possible for
Defendants to thread this needle. Constitutional standing and statutory standing are distinct
inquiries. *See Lexmark*, 134 S. Ct. at 1386. And a plaintiff may well have Article III standing to
maintain an action, but nonetheless lack statutory standing because the statute under which he or
she is suing does not supply a cause of action to individuals in the plaintiff's position. *See
Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011).

Here, the constitutional standing dispute centers solely on whether Defendants' failure to
provide certain disclosures and obtain Howe's authorization before collecting his fingerprints
satisfies the injury-in-fact element of the standing inquiry. An injury-in-fact is established by
showing that a plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and
particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at
1548 (quoting *Lujan*, 504 U.S. at 560). An injury is particularized when it affects "the plaintiff in

---

[2] *Collier* was decided after the parties had submitted their briefs. But it was submitted by Howe in the form
of a notice of supplemental authority (Dkt. No. 78), and Defendants then sought leave to file a response to
the notice of supplemental authority (Dkt. No. 79). That motion is now granted. The Court agrees with
Defendants that *Collier* does not change the proper analysis of the motion to remand, as Defendants set
forth a colorable argument concerning the existence of Article III standing here. Nonetheless, for reasons
explained below, the Court finds that Howe does not have Article III standing here.

a personal and individual way." *Id.* A concrete injury is one that actually exists. *Id.* However, the concreteness requirement does not mean that the injury must actually be tangible. *Id.* at 1549. Intangible injuries can be concrete. *Id.* Indeed, a legislature can identify intangible harms and elevate them to the status of legally cognizable injuries. *See id.* Still, a plaintiff does not automatically possess an injury-in-fact just because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* What does not suffice is "a bare procedural violation, divorced from any concrete harm." *Id.* Since *Spokeo*, the Seventh Circuit has elaborated that for a statutory violation to constitute an injury-in-fact, it must present an "appreciable risk of harm to the underlying concrete interest that Congress [or the state legislature] sought to protect by enacting the statute." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (internal quotation marks omitted).

In his complaint, Howe alleges three injuries: mental anguish, invasion of privacy, and an informational injury. Two of those injuries clearly do not suffice. Howe alleges that he suffers mental anguish over his uncertainty regarding what Speedway will do with his biometric data. However, he makes no allegations that this data was compromised or is likely to be compromised. This type of mental anguish injury is precisely the type of conjectural or hypothetical injury that cannot support Article III standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."); *Whitmore v. Arkansas*, 495 U.S. 149, 158 ("Allegations of possible future injury do not satisfy the requirements of Art. III."). Howe's invasion of privacy injury also cannot support standing because the complaint gives no indication that Speedway "has released, or allowed anyone to disseminate, any of the

plaintiff's personal information in the company's possession." *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912 (7th Cir. 2017).

That leaves Howe's informational injury as the only possible injury-in-fact. An informational injury is one where a "plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *FEC v. Akins*, 524 U.S. 11, 21 (1998). However, for an informational injury to support standing, "the injury must be 'precisely the form the statute was intended to guard against.'" *Groshek*, 865 F.3d at 888 n.3 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982)).

Howe's informational injury was caused by Defendants' failure to provide him with the required disclosures before collecting his fingerprints, as well as its failure to make publicly available a biometric data retention and destruction policy. For this informational injury to confer standing, it must present a risk of harm to the concrete interest that Illinois sought to protect in enacting BIPA. The statute contains several legislative findings reflecting on the harm it was enacted to prevent. Among other things, it notes that "[b]iometrics . . . are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5(c). The findings further state that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* 14/5(g). The substantive provisions of the statute include provisions prohibiting private entities from selling or otherwise disseminating a person's biometric data without authorization. *Id.* 14/15(c), (d). In addition, it requires private entities in possession of biometric data to store and protect that data using reasonable care. *Id.* 14/15(e). Taken together, these provisions illustrate that the concrete interest underlying BIPA is the

protection and security of biometric data. *See Vigil*, 235 F. Supp. 3d at 510 ("[T]he core object of the BIPA is data protection to curb potential misuse of biometric information collected by private entities.").

The question here then is whether Defendants' alleged disclosure failures constitute a concrete harm to this interest in data protection. Put another way: Is the injury that Howe suffered as a result of his failure to receive disclosures the type of injury the statute seeks to guard against? Absent any additional harm caused by the failure to provide the required disclosures, that question must be answered in the negative. BIPA's disclosure requirements serve the statute's data protection goals, but they do not create a standalone concrete interest in obtaining that information. *Id.* at 513 ("Unlike statutes where the provision of information about statutory rights . . . is an end itself, the BIPA's notice and consent provisions do not create a separate interest in the right-to-information, but instead operate in support of the data protection goal of the statute."). For example, while a private entity is required to make its retention schedule and destruction guidelines publicly available, the public availability requirement is ancillary to the provision's primary purpose—protecting the biometric data by mandating the private entity's compliance with that policy. *See* 740 ILCS 14/15(a).

It is true that some courts have framed BIPA's data protection interest as a data privacy interest and found that a private entity's collection of biometric data without proper disclosure and authorization confers standing. *E.g.*, *Patel v. Facebook Inc.*, No. 3:15-cv-03747-JD, 2018 WL 1050154 (N.D. Cal. Feb. 26, 2018); *see also Vigil*, 235 F. Supp. 3d at 510 (noting that data privacy is an alternative way of formulating BIPA's data protection interest). However, those cases involved the non-consensual collection of biometric information. For example, the *Patel* plaintiffs were Facebook users who uploaded photographs of themselves to the social network.

Unbeknownst to them, Facebook extracted biometric identifiers from its users' photographs in order to create and store digital representations of their faces that would then be used to identify those users' faces in other pictures and generate "Tag Suggestions."[3] *Id.* at *1. Similarly, in *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *1 (N.D. Ill. Sept. 15, 2017), a photo-sharing website used facial recognition technology to scan images uploaded by users and "extract a highly detailed 'map' or 'template' for each face," which was then stored and used to suggest a "tag" for new photos with faces matching that map. The face mapping was performed non-consensually on any individual appearing in a photo uploaded to the website, no matter whether the individual was a user or non-user of the platform. *See id.* Several other cases proceeding in federal court also involved non-consensual collection of biometric data. *See, e.g.*, *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1090–91 (N.D. Ill. 2017); *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1106 (N.D. Ill. 2015).[4] The failure to provide disclosures and obtain written authorization in these cases rose to the level of an injury-in-fact because it resulted in the collection and storage of the plaintiffs' biometric data without their knowledge or consent.

By contrast, Howe's fingerprints were collected in circumstances under which any reasonable person should have known that his biometric data was being collected. At the beginning of his employment at Speedway, Howe voluntarily submitted to a fingerprint scan. He then scanned his fingerprint at the beginning and end of each work day, thereby allowing Defendants' system to identify him and track his hours. It should have been readily apparent to

---

[3] A Facebook "tag" is a way Facebook users identify their friends in photographs they upload to their profiles. *Patel*, 2018 WL 1051054, at *1.

[4] These cases involved Rule 12(b)(6) motions, and the courts' subject-matter jurisdiction was never squarely raised. Nonetheless, the fact that the courts ruled on the Rule 12(b)(6) motions implies that they were satisfied that they had subject-matter jurisdiction.

Howe that his fingerprint was being scanned and stored, otherwise how would Speedway's time system recognize him based on that fingerprint?

The facts in this case are analogous to those in the cases finding no injury-in-fact from a private entity's failure to provide disclosures. In *McCullough v. Smarte Carte, Inc.*, 2016 WL 4077108, the plaintiff had to scan her fingerprint before renting a locker. When she returned to the locker she unlocked it by again scanning her fingerprint. The court observed that the plaintiff "undoubtedly understood when she first used the system that her fingerprint data would have to be retained until she retrieved her belongings from the locker." *Id.* at *3. The court then held that, while the defendant's failure to obtain advance consent and make the required disclosures was a technical violation of BIPA, there was no injury-in-fact because the plaintiff did not allege that her biometric information was disclosed or at risk of disclosure. *Id.* In *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499, a basketball videogame allowed players to create a digital player in their likeness by holding their face to a camera and allowing the game to scan their faces and map it onto an avatar. *Id.* at 505. While the videogame developer did provide limited disclosures before collecting the biometric data, the plaintiffs argued that the disclosures were deficient. Finding that these procedural violations did not implicate BIPA's data protection interest, the court observed that "the plaintiffs, at the very least, understood that [the videogame developer] had to collect data based upon their faces in order to create the personalized basketball avatars, and that a derivative of the data would be stored in the resulting digital faces of those avatars so long as those avatars existed." *Id.* at 515.

In both *McCullough* and *Vigil*, as here, proper compliance with BIPA's disclosure and written authorization requirements would only have made explicit what should have already been obvious. *Patel*, 2018 WL 1050154, at *5 ("In [*McCullough* and *Vigil*], the plaintiffs had sufficient

notice to make a meaningful decision about whether to permit the data collection."). Moreover, the procedural violations in all three instances were not connected to any harm to the security or privacy of the plaintiffs' biometric data, and therefore could not be considered an injury-in-fact for purposes of standing. Even the BIPA cases finding standing are in accord. *See id.* (finding that the factual differences in *McCullough* and *Vigil* made those cases "of little value in addressing the allegations . . . that Facebook afforded plaintiffs no notice and no opportunity to say no"); *Monroy*, 2017 WL 4099846, at *8 n.5 ("The harm alleged in [*McCullough* and *Vigil*] was the defendants' failure to provide them with certain disclosures . . . . [the plaintiff in this action], by contrast, alleges that he had no idea that [the defendant] had obtained his biometric data in the first place.").

Comparing *McCullough* and *Vigil* with *Patel* and *Monroy* elucidates the purpose of BIPA's disclosure requirements: the disclosure requirements support BIPA's data protection interest by preventing individuals from unwittingly sharing their biometric identifiers and information. Thus, a person uploading a photo to Facebook should be provided fair notice that by doing so their faces will be mapped and stored; otherwise, the person might not be aware of the biometric data collection. On the other hand, where individuals are obviously sharing biometric data—whether holding their fingerprint to a scanner or their face to a camera—the procedural violation from disclosure omissions causes negligible harm for Article III purposes. Because Howe's allegations fit with the latter scenario, he has not suffered an injury-in-fact.

Defendants undoubtedly violated BIPA if they failed to provide Howe disclosures and obtain his written authorization prior to collecting and storing his fingerprints and did not create or make publicly available a biometric data retention and destruction policy. However, those

13

procedural violations did not cause him an injury-in-fact.[5] Consequently, Howe does not have

standing to have his claim heard in federal court and the action must be remanded to state court.

## II. Attorneys' Fees and Costs

Having found that the action must be remanded, Howe may be eligible for attorneys' fees

and costs. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just

costs and any actual expenses, including attorney fees, incurred as a result of the removal."

However, attorneys' fees are generally only available under if "the removing party lacked an

objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S.

132, 141 (2005). Here, because Defendants' made a colorable, if not winning, argument for

constitutional standing in their Opposition to Remand, the Court declines to award Howe

attorneys' fees and costs incurred as a result of the removal of this action.


## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand (Dkt. No. 50) is granted.

Furthermore, because the Court cannot rule on the merits of a claim that it lacks subject-matter

jurisdiction to hear, Defendants' motion to dismiss (Dkt. No. 25) is denied as moot. This action is

remanded to the Circuit Court of Cook County, Illinois.

ENTERED:

Dated:  May 31, 2018

Andrea R. Wood
United States District Judge

---

[5] The Court expresses no opinion as to whether Howe qualifies as a "person aggrieved" by a violation of BIPA within the meaning of that statute or on any other merits issue that may be litigated in state court. Indeed, the Court has no power to address the merits given its lack of subject-matter jurisdiction. *See Freedom From Religion Foundation*, 845 F.2d at 1467.

Order

(Rev. 02/24/05) CCG N002

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Howe

v.

Speedway, LLC et al.

No. 17-CH-11992

### ORDER

This matter, coming before the Court on Plaintiff's Motion to Stay, the Court being duly advised on the premises, it is hereby ordered;

- Plaintiff's Motion is entered & continued until the next status hearing scheduled for Sept. 6, 2018 @ 10:30 AM.

Attorney No.: 45734

Name: Andrew Ficzko

Atty. for: ↑

Address: 205 N. Michigan Ave

City/State/Zip: Chicago, IL

Telephone: 312-233-1550

**ENTERED:**

```
    E N T E R E D
JUDGE THOMAS ALLEN-2043
    AUG 17 2018
    DOROTHY BROWN
 CLERK OF THE CIRCUIT COURT
      CITY OF COOK COUNTY
```

Dated: _____, _____

_____

Judge            Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Order                                                       (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Howe

v.

Speedway, LLC et al.

No. 17-CH-11992

### ORDER

This matter, coming before the Court on Plaintiff's Motion to Stay, the Court being duly advised on the premises, it is hereby ordered:

- Plaintiff's motion is entered and continued until the next status hearing scheduled for Oct. 16, 2018 @ 10:30 am.

Attorney No.: 43734

Name: Andrew Ficzko

Atty. for: P

Address: 100 N. Riverside

City/State/Zip: Chicago, IL

Telephone: 312-233-1550

ENTERED:

Dated:

ENTERED
JUDGE THOMAS ALLEN-2043

SEP 06 2018

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

_____     _____
Judge                                 Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Order

(Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Howe

v.

Speedway, LLC et al.

No. 17-CH-11992

### ORDER

This matter, coming before the Court on Plaintiff's Motion to Stay which was previously entered and continued, the Court being duly advised on the premises, it is hereby ordered:

- Plaintiff's Motion to Stay is granted.

- Status scheduled for Feb. 15, 2019 @ 10:30 am.

Attorney No.: 43734

Name: Andrew Ficzko

Atty. for:

Address: 100 N. Riverside Plaza

ENTERED
JUDGE THOMAS ALLEN-2043
OCT 16 2018
ENTERED: DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Dated:

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

CHRISTOPHER HOWE,                  )
individually and on behalf of all others    )
similarly situated,                    )
                                   )
        Plaintiff,               )    No. 2017 CH 11992
                                     )
        v.                        )    Hon. Neil H. Cohen
                                     )
SPEEDWAY LLC and                )
MARATHON PETROLEUM COMPANY,   )
.,                                      )
                                     )
        Defendants.            )

**AGREED ORDER**

THIS CAUSE COMING TO BE HEARD on the parties' request for a continuance of the

February 13, 2019 status hearing, due notice having been given, the Court being advised in the

premises, and by agreement of the parties, IT IS HEREBY ORDERED THAT:

1.     The February 13, 2019 status hearing is stricken;

2.     Defendants to answer or otherwise plead by April 1, 2019; AND

2.     this matter is rescheduled for a status hearing on March 15, 2019 at 9:30 a.m.

SO ORDERED:

_____
Honorable Neil H. Cohen

> ENTERED
> JUDGE Cohen #2021
> FEB 11 2019
> DOROTHY BROWN
> CLERK OF THE CIRCUIT COURT
> OF COOK COUNTY, IL
> DEPUTY CLERK

4116075