**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER HOWE,<br>individually and on behalf of all others<br>similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 1:19-cv-01374 |
| v. | ) ) | Hon. Andrea R. Wood |
| SPEEDWAY LLC,<br>MARATHON PETROLEUM COMPANY, and<br>KRONOS, INC., | ) ) ) ) | Magistrate Judge Hon. Susan E. Cox |
| Defendants. | ) | |

**SPEEDWAY LLC'S AND MARATHON PETROLEUM COMPANY'S**
**FIRST AMENDED ANSWER TO CLASS ACTION COMPLAINT**

Defendants Speedway LLC ("Speedway") and Marathon Petroleum Company

("Marathon"), by and through their attorneys, and as their First Amended Answer to Plaintiff's

Class Action Complaint, state as follows:

**NATURE OF THE ACTION**

1.      Defendant, Speedway LLC, is based in Enon, Ohio and operates gas stations and
convenience stores in Illinois and in this Circuit. Speedway LLC is a wholly owned subsidiary
of the Marathon Petroleum Company.

**ANSWER**:     Admitted that Speedway is based in Enon, Ohio and operates gas stations

and convenience stores in Illinois and in this Circuit. Denied that Speedway is a wholly owned

subsidiary of Marathon.

2.      Speedway uses a biometric time tracking system that requires employees to use
their fingerprint as a means of authentication. When Illinois employees begin their jobs at
Speedway, they are required to scan their fingerprint and are enrolled in the Kronos employee
database.

**ANSWER:**    Denied that "Speedway uses a biometric tracking system that requires

employees to use their fingerprint as a means of authentication."  Admitted that Speedway uses

finger-*scanning* enabled equipment to track the number of hours worked by some of its Illinois

employees.  Denied that Speedway or Marathon collect, store, or transfer "biometric identifiers"

or "biometric information".  Denied that Speedway's employees are enrolled in a Kronos

database.  Except as expressly admitted, the remaining allegations in the foregoing paragraph are

denied.

3.    Although there may be benefits to using biometric time clocks in the workplace, there are also serious risks.  Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee.  These biometrics are biologically unique to the individual; therefore, once compromised, the individual has no recourse and is at a heightened risk for identity theft.  This exposes employees to serious and irreversible privacy risks.  For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means to prevent the misappropriation and theft of their own biometric makeup.

**ANSWER:**    Defendants lack sufficient information or knowledge to admit or deny the

allegations in this paragraph.  Further stated that Defendants did not collect or possess "unique,

permanent biometric identifiers associated with each employee."

4.    Recognizing the need to protect its citizens from harms like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*., specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

**ANSWER**:    The allegations of this paragraph are legal conclusions to which no answer

is required.  To the extent an answer is required:  admitted that BIPA is codified at 740 ILCS

14/1, *et seq.* and regulates biometric identifiers and information.  Except as expressly admitted,

the remaining allegations in the foregoing paragraph are denied.

5.    Notwithstanding the clear and unequivocal requirements of the law, Speedway LLC and Marathon Petroleum Company disregard their employees' statutorily protected privacy rights and unlawfully collect, store, and use their biometric data in direct violation of BIPA. Specifically, Speedway LLC and Marathon Petroleum Company have violated and continue to violate BIPA because they failed and continue to fail to:

2

4838-5196-5583

    a. Inform Plaintiff or the Class in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

    b. Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by BIPA; and

    c. Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by BIPA.

**ANSWER:** Denied.

6. Upon information and belief, Speedway LLC and Marathon Petroleum Company also violate BIPA by disclosing employee fingerprint data to an out-of-state third-party vendor, Kronos.

**ANSWER**: Denied.

7. Like Speedway LLC and Marathon Petroleum Company, Kronos has violated and continues to violate BIPA because it failed and continues to fail to:

    a. Inform Plaintiff or the Class in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

    b. Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by BIPA; and

    c. Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by BIPA.

**ANSWER:** Denied that Speedway or Marathon have violated BIPA. Speedway and Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph, including in relation to Kronos, Inc.

8. Defendants had actual knowledge of BIPA as well as their acts and omissions which violate its requirements.

**ANSWER:** Denied that Speedway or Marathon had actual knowledge of BIPA (due to insufficient publication of the law and its applicability to employers). Denied that Speedway or Marathon has violated BIPA.

9. Accordingly, Plaintiff, individually and on behalf of the putative Class, seeks an Order: (1) declaring that Defendants' conduct violates BIPA; (2) requiring Defendants to cease

4838-5196-5583

their unlawful conduct as alleged herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

**ANSWER:**    Denied that Plaintiff, or any member of the putative Class, is entitled to

any of the relief requested in the Complaint.

## PARTIES

10.    Plaintiff Christopher Howe is a resident and citizen of the State of Illinois.

**ANSWER:**    Speedway and Marathon lack sufficient information or knowledge to

admit or deny this allegation.

11.    Speedway LLC is a Delaware limited liability company with its corporate headquarters located in Enon, Ohio.  Speedway is registered to conduct business in Illinois with the Illinois Secretary of State.  Speedway conducts business in the County of Cook, the State of Illinois, and throughout the United States.

**ANSWER:**    Admitted.

12.    Marathon Petroleum Company ("Marathon") is an Ohio corporation with its headquarters located in Findlay, Ohio.  Marathon is registered to conduct business with the Illinois Secretary of State.  Marathon conducts business in the County of Cook, the State of Illinois, and throughout the United States.  Speedway LLC is a wholly owned subsidiary of Marathon.

**ANSWER:**    Admitted that Marathon is headquartered in Ohio.  Denied that Marathon

is an Ohio corporation.  Denied that Speedway is a wholly owned subsidiary of Marathon.

Admitted that Marathon conducts business in Cook County and throughout the United States.

Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

13.    Kronos, Inc. is a Massachusetts corporation registered to do business in Illinois. Kronos conducts business in Illinois by providing biometric timekeeping devices to private entities in Cook County and throughout the state, including Speedway LLC and Marathon Petroleum Company.

**ANSWER:**    Admitted that Kronos, Inc. is a Massachusetts corporation registered to do

business in Illinois that provided finger-scanning enabled equipment to Speedway.  Except as

expressly admitted, the remaining allegations in the foregoing paragraph are denied.

4

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because Defendants conduct business in Illinois, are registered to conduct business in Illinois, and committed the statutory violations alleged herein in Illinois.

**ANSWER:**     Admitted that Speedway lawfully conducts business in Illinois.  Denied

that Speedway or Marathon have violated BIPA.  Otherwise denied, as this case has been

removed to federal district court.

15.     Venue is proper in Cook County because Defendants maintain places of business in Cook County, conduct business in Cook County, and committed the statutory violations alleged herein in Cook County and throughout Illinois.

**ANSWER:**     Admitted that Speedway lawfully conducts business in Illinois.  Denied

that Speedway or Marathon have violated BIPA.  Otherwise denied, as this case has been

removed to federal district court.

## FACTUAL BACKGROUND

**I.     The Biometric Information Privacy Act.**

16.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias."  740 ILCS 14/5(c).  Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology.  *See* 740 ILCS 14/5.

**ANSWER:**     Speedway and Marathon lack sufficient information or knowledge to

admit or deny the allegations in this paragraph.

17.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy.  That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens.  The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankruptcy company, and that their unique biometric identifiers could now be sold to unknown third parties.

4838-5196-5583

**ANSWER:**    Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

18.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008.  *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

**ANSWER:**    The allegations of this paragraph are legal conclusions to which no answer is required.  To the extent an answer is required:  denied that the quoted language appears in 740 ILCS 14/5.  Admitted that BIPA was enacted in 2008.  Speedway and Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph.

19.    BIPA achieves its goal by making it unlawful for a private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a.  Informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

    b.  Informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c.  Receives a written release executed by the subject of the biometric identifier or biometric information."

*See* 740 ILCS 14/15(b).

**ANSWER:**    The allegations of this paragraph are legal conclusions to which no answer is required.  To the extent an answer is required:  admitted that the quoted language appears in 740 ILCS 14/15(b).  Denied that the language's meaning is as suggested in this Complaint, which quotes it out of context.  Speedway and Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph.

20.    BIPA specifically applies to employees who work in the State of Illinois.  BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment."  740 ILCS 14/10.

**ANSWER:**    The allegations of this paragraph are legal conclusions to which no answer is required.  To the extent an answer is required:  admitted that the quoted language appears in 740 ILCS 14/10.  Speedway and Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph.

21.    Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints.  *See* 740 ILCS 14/10.  Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual.  *Id.*

**ANSWER:**    The allegations of this paragraph are legal conclusions to which no answer is required.  To the extent an answer is required:  admitted that 740 ILCS 14/10 defines "biometric identifiers" to include the following:  "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry."  Admitted that 740 ILCS 14/10 states, *inter alia*:  "'biometric information' means any information . . . based on an individual's biometric identifier used to identify an individual."  Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

22.    BIPA also establishes standards for how employers must handle Illinois citizens' biometric identifiers and biometric information.  *See, e.g.*, 740 ILCS 14/15(c)-(d).  For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosures [sic].  *See* 740 ILCS 14/15(d)(1).

**ANSWER:**    The allegations of this paragraph are legal conclusions to which no answer is required.  To the extent an answer is required:  admitted that BIPA governs how a "private entity" may use a biometric identifier or biometric information.  Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

23.    BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires private entities to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has

been satisfied or within three years of the individual's last interaction with the private entity, whichever occurs first.  740 ILCS 14/15(a).

**ANSWER:**    The allegations of this paragraph are legal conclusions to which no answer is required.  To the extent an answer is required:  admitted that 740 ILCS 14/15(c) states:  "No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information."  Admitted that 740 ILCS 14/15(a) states:  "A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.  Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines."  Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

24.    The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology.  Biometrics are biologically unique to the individual and, once compromised, an individual has no recourse and is at heightened and permanent risk for identity theft.

**ANSWER:**    Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

25.    Ultimately, BIPA is simply an informed consent statute.  Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data.  For example, BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored.  Nor does BIPA limit to whom biometric data may be collected, sent, transmitted, or stored.  BIPA simply mandates that entities wishing to engage in that conduct must put in place certain reasonable safeguards.

**ANSWER:**    The allegations of this paragraph are legal conclusions to which no answer is required.  To the extent an answer is required:  Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

## II.    Defendants Violate the Biometric Information Privacy Act.

26.    By the time BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented using biometric data as an authentication method stopped doing so.  That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumer fear and apprehension over the use of their biometric data.  Despite the recognized dangers of using biometric data in the private sector, employers have failed to follow leads in dropping it as an identification method.  In fact, many employers now require their employees to register their biometric data, viewing it as a cost-effective method of authentication.

**ANSWER:**    Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

27.    Speedway failed to take note of the industry-wide shift in Illinois norms – and in Illinois law – governing the collection and use of biometric data.  As a result, Speedway continues to collect, store, and use the biometric data of its employees in direct violation of BIPA.

**ANSWER:**    Denied.  Further stated that no reasonable employer would have known about and interpreted BIPA in the manner articulated by Plaintiff in this Complaint.

28.    Specifically, when employees are hired at one of Speedway's locations, they are required to have their fingerprints scanned in order to enroll them in Speedway's employee database.

**ANSWER:**    Denied that Speedway or Marathon collect, store, or transfer biometric identifiers or biometric information.  Admitted that Speedway uses finger-scanning enabled equipment with some of its Illinois employees, and that information is stored electronically. Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

29.    Speedway uses an employee time tracking system that requires employees to use their fingerprint as a means of authentication.  Unlike a traditional timeclock, employees have to use their fingerprints to "punch" in and out of work.

**ANSWER:**     Denied that Speedway or Marathon collect, store, or transfer biometric identifiers or biometric information.  Admitted that Speedway uses finger-scanning enabled equipment to track the number of hours worked by some of its Illinois employees.  Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

30.     Speedway fails to inform its employees of the extent of the purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

**ANSWER:**     Denied.

31.     Speedway similarly fails to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.  An employee who leaves the company, like Plaintiff here, does so without any knowledge of when their biometric identifiers will be removed from Speedway's databases—or if they ever will.

**ANSWER:**     Denied that Speedway or Marathon collect, store, or transfer biometric identifiers or biometric information.  Admitted that Speedway uses finger-scanning enabled equipment with some of its Illinois employees, and that the results are electronically stored.  Denied that Speedway does not have a policy relating to its finger-scanning enabled equipment.  Speedway and Marathon lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph regarding what employees who leave Speedway have or lack "knowledge of."  Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

32.     The Pay By Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Speedway's – where employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reason they are doing so – is dangerous.  That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers such as a fingerprint who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long.  Defendants disregard these obligations and instead unlawfully collect, store, and use their employees biometric identifiers and information, without ever receiving the individual informed written consent required by BIPA.

10

**ANSWER:**     Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in the first two sentences of this paragraph.  The remaining allegations in the foregoing paragraph are denied.

33.     Speedway's employees are not told what might happen to their biometric data if and when their local stores go out of business or, worse, if and when Speedway's entire business folds.

**ANSWER:**     Denied that Speedway or Marathon is under any obligation to tell employees "what might happen."  The remaining allegations in the foregoing paragraph are denied.

34.     Because Speedway neither publishes a BIPA-mandated data retention policy nor discloses the purposes for its collection of biometric data, Speedway employees have no idea whether Speedway sells, discloses, re-discloses, or otherwise disseminates their biometric data. Nor are Plaintiff and the putative Class told to whom Speedway currently disclose their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

**ANSWER:**     Denied that Speedway or Marathon collect, store, or transfer biometric identifiers or biometric information.  Admitted that Speedway uses finger-scanning enabled equipment to track the number of hours worked by some of its Illinois employees.  Denied that Speedway does not have a policy relating to its finger-scanning enabled equipment.  Denied that Speedway does not disclose the purposes of its finger-scanning enabled equipment.  Speedway and Marathon lack sufficient information or knowledge to admit or deny what Speedway's employees "have no idea" about.  Denied that Speedway or Marathon is under any obligation to tell employees "what might happen."  Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

35.     By and through the actions detailed above, Speedway does not only disregard the Class' privacy rights, but Speedway also violates BIPA.

**ANSWER:**     Denied.

### III. Plaintiff Christopher Howe's Experience

36. Plaintiff Christopher Howe worked for Speedway in Addison, Illinois from September 2015 to May 2017.

**ANSWER:** Admitted that Plaintiff worked for Speedway from September 2015 until he was terminated for repeatedly violating company policies in May 2017. Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

37. As an employee, Howe was required to scan his fingerprint to enable Speedway to use it as an authentication method to track his time.

**ANSWER:** Admitted that Howe was instructed to scan his finger to enable Speedway to track his time on the job. Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

38. Speedway subsequently stored Howe's fingerprint data in its database(s).

**ANSWER:** Denied.

39. Each time Howe began and ended his workday, he was required to scan his fingerprint.

**ANSWER:** Admitted that Howe was required to authenticate himself at the beginning and end of each workday. Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

40. Howe has never been informed of the specific limited purposes (if any) or length of time for which Speedway collected, stored, or used his fingerprint.

**ANSWER:** Denied. Furthermore, Speedway and Marathon deny specifically that either has collected, stored, or transferred biometric identifiers or biometric information.

41. Howe has never been informed of any biometric data retention policy developed by Speedway, nor has he ever been informed of whether Speedway will ever permanently delete his fingerprint.

**ANSWER:** Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

12

42.     Howe has never been provided nor did he ever sign a written release allowing Speedway to collect or store his fingerprints.

**ANSWER:**     Admitted that Speedway did not provide Howe a written release allowing Speedway to collect or store his fingerprints.  Denied that a written release was required in the employment context, and denied that Speedway "collect[ed] or stor[ed] his fingerprints." Denied that Speedway or Marathon have collected, stored, or transferred biometric identifiers or biometric information of Plaintiff or any member of the putative Class.  Except as expressly admitted, the remaining allegations in the foregoing paragraph are denied.

43.     Howe has continuously and repeatedly been exposed to the harms and risks created by Speedway's violations of BIPA alleged herein.

**ANSWER:**     Denied.

44.     Howe suffered an invasion of a legally protected interest when Speedway secured his personal and private biometric data at a time when Speedway had no right to do so, an invasion of Howe's right to privacy.  BIPA protects employees like Howe from this precise conduct and Speedway had no right to secure this data absent a specific Congressional license to do so.

**ANSWER:**     Denied.

45.     Howe also suffered an informational injury because Speedway failed to provide him with information to which he was entitled to by statute.  Through BIPA, Congress has created a right—an employee's right to receive certain information prior to an employer securing their highly personal and private biometric data—and an injury—not receiving this extremely critical information.

**ANSWER:**     The allegations of this paragraph are legal conclusions to which no answer is required.  To the extent an answer is required:  denied.

46.     Pursuant to 740 ILCS 14/15(b), Howe was entitled to receive certain information prior to Speedway securing his biometric data; namely, information advising him of the specific limited purpose(s) and length of time for which Speedway collects, stores, and uses his fingerprint; information regarding Speedway's biometric retention policy; and, a written release allowing Speedway to collect and store his private biometric data.  By depriving Howe of this information, Speedway injured Howe and the putative Class he seeks to represent.  *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

13

**ANSWER:** The allegations of this paragraph are legal conclusions to which no answer is required. To the extent an answer is required: denied.

47. Finally, as a result of Speedway's conduct, Howe has experienced personal injury in the form of mental anguish. For example, Howe experiences mental anguish and injury when contemplating about what would happen to his biometric data if Speedway went bankrupt, whether Speedway will ever delete his biometric information, and whether (and to whom) Speedway shares his biometric information.

**ANSWER:** Denied.

48. Howe seeks statutory damages under BIPA as compensation for the injuries Speedway has caused.

**ANSWER:** Denied that Plaintiff, or any member of the putative Class, is entitled to any of the relief requested in the Complaint.

## CLASS ALLEGATIONS

49. Pursuant to 735 ILCS 5/2-801 and § 2-802, Named Plaintiff brings claims on his own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq*., seeking injunctive relief as well as statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

**ANSWER:** The allegations of this paragraph are legal conclusions to which no answer is required. To the extent an answer is required: denied that Plaintiff, or any member of the putative Class, is entitled to any of the relief requested in the Complaint.

50. As discussed *supra*, Section 14/15(b) of BIPA prohibits a private entity from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

**ANSWER:** The allegations of this paragraph are legal conclusions to which no answer is required. To the extent an answer is required: denied that items (1)–(3) above completely and accurately paraphrase what is stated in 740 ILCS 14/15(b).

4838-5196-5583

51.     Plaintiff seeks class certification for the following class of similarly-situated employees under BIPA:

> All individuals who worked for Defendants in the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by the Defendants during the applicable statutory period.

**ANSWER:**     Denied that the Class should be certified.

52.     This action is properly maintainable as a class action under § 2-801 because:

> A.  The class is so numerous that joinder of all members is impracticable;
>
> B.  There are questions of law or fact that are common to the class;
>
> C.  The claims of the Named Plaintiff are typical of the claims of the class; and,
>
> D.  The Named Plaintiff will fairly and adequately protect the interests of the class.

**ANSWER:**     Denied.

### Numerosity

53.     The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable.  Speedway has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from hundreds or more employees who fall into the definition of the Class.  The exact number of class members may easily be determined from Speedway's payroll records.

**ANSWER:**     Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in the first sentence of this paragraph.  The remaining allegations in the foregoing paragraph are denied.

### Commonality

54.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Named Plaintiff and all members of the Class have been harmed by Speedway's failure to comply with BIPA.  The common questions of law and fact include, but not limited to the following:

> A.  Whether Speedway collected, captured or otherwise obtained biometric identifiers or biometric information of Plaintiff and the Class;

4838-5196-5583

B.   Whether Speedway informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information as required by BIPA;

C.   Whether Speedway obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store the biometric identifiers or biometric information of Plaintiff and the Class;

D.   Whether Speedway has disclosed or re-disclosed the biometric identifiers or biometric information of Plaintiff and the Class;

E.   Whether Speedway has sold, leased, traded, or otherwise profited from the biometric identifiers or biometric information of Plaintiff and the Class;

F.   Whether Speedway developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

G.   Whether Speedway comply with any such written policy (if one exists);

H.   Whether Speedway used fingerprints of Plaintiff and the Class to identify them;

I.   Whether Speedway's violations of BIPA were committed negligently; and

J.   Whether Speedway's violations of BIPA were committed willfully.

**ANSWER:**   Denied.

55.   Plaintiff anticipates that Speedway will raise defenses that are common to the class.

**ANSWER:**   Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

### Adequacy

56.   The Named Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Named Plaintiff and class members.  Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

**ANSWER:**   Speedway and Marathon lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

16

**Typicality**

57.     The claims asserted by the Named Plaintiff are typical of the class members he seeks to represent.  The Named Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

    **ANSWER:**     Speedway and Marathon lack sufficient information or knowledge to

admit or deny the allegations in this paragraph.

58.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer.

    **ANSWER:**     Speedway and Marathon lack sufficient information or knowledge to

admit or deny the allegations in this paragraph.

**Predominance and Superiority**

59.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members.  A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable.  Class action treatment will allow a larger number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually.  Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

    **ANSWER:**     Denied.

60.     On the other hand, important public interests will be served by addressing the matter as a class action.  The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action.  Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can and is empowered to, fashion methods to efficiently manage this action as a class action.

    **ANSWER:**     Denied.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

61.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:**     Speedway and Marathon incorporate their responses to the foregoing

allegations as if fully set forth herein.

62.     BIPA requires private entities to obtain informed written consent from consumers
before acquiring their biometric data.  Specifically, BIPA makes it unlawful for any private
entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a
customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the
subject … in writing that a biometric identifier or biometric information is being collected or
stored; (2) informs the subject … in writing of the specific purpose and length of term for which
a biometric identifier or biometric information is being collected, stored, and used; ***and***
(3) receives a written release executed by the subject of the biometric identifier or biometric
information…."  740 ILCS 14/15(b) (emphasis added).

**ANSWER:**     The allegations of this paragraph are legal conclusions to which no answer

is required.  To the extent an answer is required:  denied that items (1)–(3) above completely and

accurately paraphrase what is stated in 740 ILCS 14/15(b).

63.     BIPA also prohibits private entities from disclosing a person's or customer's
biometric identifier or biometric information without first obtaining consent for that disclosure.
*See* 740 ILCS 14/15(d)(1).

**ANSWER:**     The allegations of this paragraph are legal conclusions to which no answer

is required.  To the extent an answer is required:  denied.

64.     BIPA also mandates that private entities in possession of biometric data establish
and maintain a satisfactory biometric data retention – and, importantly, deletion – policy.
Specifically, those entities must:  (i) make publicly available a written policy establishing a
retention schedule and guidelines for permanent deletion of biometric data (at most three years
after the entity's last interaction with the customer); and (ii) actually adhere to that retention
schedule and actually delete the biometric information.  *See* 740 ILCS 14/15(a).

**ANSWER:**     The allegations of this paragraph are legal conclusions to which no answer

is required.  To the extent an answer is required:  admitted that BIPA requires a private entity to

maintain a public written policy governing the retention and deletion of biometric information

18

and identifiers. Admitted that items (i) and (ii) are required under 740 ILCS 14/15(a). Except as

expressly admitted, the remaining allegations in the foregoing paragraph are denied.

65.     Defendants fail to comply with these BIPA mandates.

**ANSWER:**     Denied.

66.     Defendant Speedway LLC is a Delaware limited liability company registered to do business in Illinois and thus qualifies as a "public entity" under BIPA. *See* 740 ILCS 14/10.

**ANSWER:**     Denied.

67.     Defendant Marathon is an Ohio corporation registered to do business in Illinois and thus qualifies as a "public entity" under BIPA. *See* 740 ILCS 14/10.

**ANSWER:**     Denied.

68.     Defendant Kronos, Inc. is a Massachusetts corporation registered to do business in Illinois and thus qualifies as a "public entity" under BIPA. *See* 740 ILCS 14/10.

**ANSWER:**     Denied.

69.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

**ANSWER:**     The allegations of this paragraph are legal conclusions to which no answer

is required. To the extent an answer is required: denied that Speedway or Marathon have

collected biometric identifiers from Plaintiff or any member of the putative Class. Speedway

and Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining

allegations in this paragraph, including in relation to Kronos, Inc.

70.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

**ANSWER:**     The allegations of this paragraph are legal conclusions to which no answer

is required. To the extent an answer is required: denied that Speedway or Marathon have used

biometric identifiers to identify Plaintiff or any member of the putative Class. Speedway and

Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph, including in relation to Kronos, Inc.

71.     Defendants systematically and automatically collected, used, stored, and disclosed Plaintiff's and the Class's biometric identifiers or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

**ANSWER:**     The allegations of this paragraph are legal conclusions to which no answer is required.  To the extent an answer is required:  denied that Speedway or Marathon have collected, used, stored, or disclosed biometric identifiers or biometric information of Plaintiff or any member of the putative Class.  Speedway and Marathon otherwise lack sufficient information or knowledge to admit or deny the remaining allegations in this paragraph, including in relation to Kronos, Inc.

72.     Upon information and belief, Speedway LLC and Marathon Petroleum Company systematically disclosed Plaintiff's and the Class's biometric identifiers and biometric information to an out-of-state third-party vendor, Kronos.

**ANSWER:**     Denied.

73.     Defendants did not properly inform Plaintiff or the Class in writing that their biometric identifiers or biometric information were being collected and stored, nor did it inform them in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

**ANSWER:**     Denied.

74.     Defendants do not provide a publicly available retention schedule or guidelines for permanently destroying its employees' biometric identifiers and biometric information as specified by BIPA.  *See* 740 ILCS 14/15(a).

**ANSWER:**     Denied.

75.     By negligently, recklessly or willfully collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA.  *See* 740 ILCS 14/1, *et seq.*

**ANSWER:**     Denied.

76.     On behalf of himself and the Class, Plaintiff seeks:  (1) declaratory relief;
(2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class
by requiring Defendants to comply with BIPA's requirements for the collection, storage, and use
of biometric identifiers and biometric information as described herein; (3) statutory damages of
$5,000 for each willful and/or reckless violation of BIPA or, in the alternative, statutory damages
of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and
(4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS
14/20(3).

**ANSWER:**     Denied that Plaintiff, or any member of the putative Class, is entitled to

any of the relief requested in the Complaint.

## SECOND CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

77.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:**     Speedway and Marathon incorporate their responses to the foregoing

allegations as if fully set forth herein.

78.     Defendants owed Plaintiff and the Class a duty of reasonable care.  That duty
required that Defendants exercise reasonable care in the collection and use of the biometric data
of Plaintiff and the Class.

**ANSWER:**     Denied.

79.     Additionally, Defendants owed Plaintiff and the Class a heightened duty – under
which Defendants assumed a duty to act carefully and not put Plaintiff and the Class at undue
risk of harm – because of the employment relationship of the parties.

**ANSWER:**     Denied.

80.     Defendants breached their duties by failing to implement reasonable procedural
safeguards in connection with their collection and use of the biometric identifiers and biometric
information of Plaintiff and the Class.

**ANSWER:**     Denied.

81.     Specifically, Defendants breached their duties by failing to properly inform
Plaintiff and the Class in writing of the specific purpose or length for which their fingerprints
were being collected, stored, and used.

**ANSWER:**     Denied.

82.     Defendants also breached their duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying the biometric data of Plaintiff and the Class.

**ANSWER:**    Denied.

83.     Defendants' breach of their duties proximately caused and continues to cause an invasion of privacy to Plaintiff and the Class, as well as informational injury to them.

**ANSWER:**    Denied.

84.     Accordingly, Plaintiff seeks an order declaring that Defendants' conduct constitutes negligence and awarding Plaintiff and the Class damages in an amount to be calculated at trial.

**ANSWER:**    Denied that Plaintiff, or any member of the putative Class, is entitled to any of the relief requested in the Complaint.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Christopher Howe, on behalf of himself, individually, and on behalf of the Class, respectfully requests that this Court enter an Order:

A.  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Christopher Howe as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.  Declaring that Defendants' actions, as set forth above, violate BIPA;

C.  Awarding statutory damage of $5,000 for *each* willful and/or reckless violation of BIPA, or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.  Declaring that Defendants' actions, as [set] forth out above, constitute negligence;

E.  Declaring that Defendants' actions, as set forth above, were willful;

F.  Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendants to collect, store, and use biometric identifiers or biometric information in compliance with BIPA;

G.  Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

H.  Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

I.  Awarding such other and further relief as equity and justice may require.

**ANSWER:**    Denied that Plaintiff, or any member of the putative Class, is entitled to any of the relief requested.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so trial.

**ANSWER:**    Denied that Plaintiff, or any member of the putative Class, is entitled to any of the relief requested in the Complaint.

## ADDITIONAL DEFENSES

Alternatively, and without waiving the foregoing denials, Speedway and Marathon assert the affirmative and additional defenses below. By pleading these defenses, Speedway and Marathon do not intend to alter the burden of proof and/or burden of persuasion that otherwise exists with respect to any issues in this action. Moreover, all defenses are pled in the alternative and do not constitute an admission of liability or an admission that Plaintiff or any member of the putative Class is entitled to any relief whatsoever.

## FIRST AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because Plaintiff and all putative Class members consented to the conduct that is alleged to violate BIPA. Upon information and belief, Plaintiff and each putative Class member voluntarily consented to the practices the Complaint challenges by agreeing to use and participate in Speedway's timekeeping systems and practices, including with respect to scanning a finger.

## SECOND AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because it seeks relief that is barred under the United States and/or Illinois Constitutions. The Complaint seeks either $1,000 or $5,000 in statutory damages for each alleged BIPA violation, even though neither Plaintiff nor the putative Class has suffered any harm as a result of the conduct alleged. The statutory damages available under BIPA are grossly excessive and disproportionate in light of the absence of any injury or harm to Plaintiff and the putative Class members, and therefore any award of statutory damages to the Plaintiff or putative Class members would violate Speedway's and Marathon's due process rights, as well as other constitutional rights such as the right to fair notice and protections against excessive fines, punishments, and takings. In regulating the commercial exchange of information in private hands and requiring significant disclosures, moreover, BIPA infringes First Amendment protections of commercial speech and against compelled speech. Additionally, to the extent the Complaint or the BIPA statute purports to require Defendants to change their conduct outside of Illinois, the Complaint is barred by constitutional rights and doctrines such as the dormant Commerce Clause, procedural and substantive due process, fair notice, and protections against excessive fines, punishments, and takings.

## THIRD AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part under the doctrines of estoppel and waiver. Upon information and belief, Plaintiff and each putative Class member affirmatively approved and participated in the conduct that the Complaint alleges was wrongful. Plaintiff and the putative Class members are accordingly barred from asserting BIPA claims under the doctrines of estoppel and waiver.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part under the doctrine of laches. The Complaint implies that Speedway and Marathon engaged in the complained-of conduct dating back to 2013, and that Plaintiff and each putative Class member knew of that conduct, and even participated in it. Thus Plaintiff and each putative Class member unreasonably delayed seeking recovery under BIPA. This delay materially prejudiced Speedway and Marathon, including because Plaintiff now seeks damages for the entire period of his delay.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part under the doctrine of unclean hands. Upon information and belief, Plaintiff and each putative Class member approved of and, in some cases, participated in the complained-of conduct by using, and agreeing to use, Speedway's timekeeping systems and practices—including with respect to scanning a finger—without objecting at any point. Plaintiff thus acted in bad faith and on that basis is precluded from recovering against Speedway or Marathon.

### SIXTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because neither Speedway nor Marathon retained, stored, collected, possessed, captured, purchased, received, transmitted, or disclosed biometric identifiers or biometric information as defined under BIPA. Speedway's timekeeping system scans an employee's finger, not his or her "fingerprint" as BIPA requires and the Complaint alleges. 740 ILCS 14/10. Speedway's time-tracking system does not retain, collect, or disclose fingerprints, and thus does not retain, collect, or disclose "biometric identifiers" or "biometric information" under BIPA.

## SEVENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part under the doctrines of ratification and acquiescence.  Upon information and belief, Plaintiff and each putative Class member approved of and, in some cases, participated in the complained-of conduct by using, and agreeing to use, Speedway's time-keeping systems and practices, including with respect to scanning a finger.  In so doing, Plaintiff accepted and complied with these practices in exchange for the benefits of continued employment at Speedway.  He cannot now seek recovery for the same conduct to which he acquiesced.

## EIGHTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because, upon information and belief, Plaintiff and each putative Class member failed to assert a cause of action within the periods required by the applicable statute of limitations.  *See* 735 ILCS 5/13-202 (two-year limitations period to recover damages for an alleged injury to the person or a statutory penalty); 735 ILCS 5/13-201 (one-year limitations period for publication of matter violating right of privacy). Plaintiff accordingly cannot seek relief for conduct that allegedly occurred before either September 1, 2016 or 2015, respectively, depending upon which period applies.

## NINTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because Speedway and Marathon substantially complied with BIPA at all times relevant to the allegations in the Complaint. Plaintiff alleges only that Speedway and Marathon violated BIPA in technical, procedural senses. It does not allege that either Speedway or Marathon committed a substantive or consequential violation.  For example, it does not allege that Plaintiff was unaware that he was scanning his finger at work.  To the contrary, Plaintiff admits that he knew he was doing so.  Relief is accordingly barred because Speedway and Marathon substantially complied with BIPA.

## TENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part to the extent that any claim of Plaintiff or any putative Class member is barred under the doctrines of issue or claim preclusion. Many other BIPA lawsuits are currently pending, and the putative classes in some of them may overlap with this putative class. *See, e.g.*, *Figueroa v. Kronos, Inc.*, No. 19-cv-01306 (N.D. Ill.). This overlap raises the specter of issue or claim preclusion here.

## ELEVENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part to the extent that any claim of Plaintiff or any putative Class member failed to mitigate their damages. For example, Plaintiff at no time informed Speedway or Marathon of his alleged "mental anguish," but instead continued scanning his finger. Plaintiff is accordingly not entitled to recover damages because he failed to exercise reasonable diligence and ordinary care in trying to minimize his damages.

## TWELFTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because, for reasons that will be set forth in opposition to any motion for class certification, Plaintiff is not entitled to pursue claims as a class action. Among other things, the injuries Plaintiff attempts to allege, such as "mental anguish," prevent the Complaint from satisfying the typicality and commonality requirements under Rule 23(a).

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent they are or become moot as to Plaintiff and some or all members of the putative Class. Settlements or dispositive rulings in other overlapping BIPA actions such as *Figueroa*, No. 19-cv-01306 (N.D. Ill.) may moot the claims at issue here.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrines of release and/or accord and satisfaction to the extent that Plaintiff or any putative Class member has executed, or executes, an effective release. Speedway and Marathon have BIPA-compliant release policies in place, and many members of the putative class may have executed it.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, under the doctrines of comparative negligence and assumption of risk. Plaintiff was aware of and voluntarily undertook any risks associated with using the timekeeping devices at issue. By voluntarily using the timekeeping devices at issue, Plaintiff implicitly consented to encounter any such risks and thereby excused Speedway and Marathon from any legal duties that they may have otherwise owed under BIPA.

## SIXTEENTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by preemption under the Illinois Workers' Compensation Act, given that it alleges injuries arising out of Plaintiff's employment as a result of the conduct of Plaintiff's employer.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because Plaintiff lacks standing to bring his claims in the state courts of Illinois. To bring suit in Illinois, a plaintiff must allege a distinct and palpable injury sustained as a result of the complained-of conduct. Plaintiff has failed to do so and thus cannot maintain this lawsuit in Illinois state court.[1]

---

[1] By including this Affirmative Defense here, Speedway and Marathon merely intend to preserve it should this case be remanded to Illinois state court (an event Speedway and Marathon view as unmerited).

4838-5196-5583

## RESERVATION OF RIGHT TO AMEND

Speedway and Marathon reserve the right to assert additional defenses, counterclaims, cross-claims, or third-party claims as they become known throughout the course of this litigation and as may become available under the substantive laws of Illinois.

WHEREFORE, Speedway and Marathon ask that:

(a)     the Court dismiss the Complaint with prejudice;

(b)     judgment against Plaintiff be entered in favor of Speedway and Marathon;

(c)     any and all claims for damages of any sort or nature be denied; and

(d)     Speedway and Marathon be awarded their costs and attorneys' fees incurred in defending this action, as well as any other relief that this Court deems just and appropriate.

Dated:  May 29, 2019

Respectfully submitted,

SPEEDWAY LLC and
MARATHON PETROLEUM COMPANY

By: _/s/ Tristan L. Duncan_____

Tristan L. Duncan (*pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO  64108
(816) 474-6550
tlduncan@shb.com

Gary M. Miller
Matthew C. Wolfe
Ian M. Hansen
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive
Chicago, IL  60606
Tel:  (312) 704-7700
Fax:  (312) 558-1195
gmiller@shb.com
mwolfe@shb.com
ihansen@shb.com

***Attorneys for Defendants Speedway LLC and Marathon Petroleum Company***

4838-5196-5583

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew C. Wolfe , an attorney, hereby certify that on **May 29, 2019**, I caused a true

and correct copy of **SPEEDWAY LLC'S AND MARATHON PETROLEUM COMPANY'S**

**FIRST AMENDED ANSWER TO CLASS ACTION COMPLAINT** to be filed

electronically.  Notice of this filing will be sent to all parties registered on this Court's CM/ECF

system.  Parties may access this filing through the Court's system



_/s/ Matthew C. Wolfe_

4838-5196-5583