**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER HOWE,<br>individually and on behalf of all others<br>similarly situated, | ) )<br>)<br>) |
| | ) |
| Plaintiff, | ) No. 1:19-cv-01374 |
| | ) |
| v. | ) Hon. John F. Kness |
| | ) |
| SPEEDWAY LLC, | ) |
| | ) |
| Defendant. | ) |

**SPEEDWAY LLC'S MEMORANDUM IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

Tristan L. Duncan
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Tel: (816) 474-6550
tlduncan@shb.com

Gary M. Miller
Matthew C. Wolfe
Ian M. Hansen
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
Fax: (312) 558-1195
Firm No. 58950
gmiller@shb.com
mwolfe@shb.com
ihansen@shb.com

*Attorneys for Defendant Speedway LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................. 1

SUMMARY OF UNDISPUTED FACTS .......................................................................... 2

ARGUMENT .................................................................................................................... 3

I.   Through His Conduct, Plaintiff Waived His Biometric Privacy Rights. ........................... 3

    A.   Plaintiff's actions constitute waiver. ......................................................................... 3

    B.   Decisions in other BIPA cases support that waiver applies here. ........................... 6

II.  Plaintiff's Claims Are Barred By Assumption Of The Risk. ............................................. 9

III. BIPA Should Be Construed Narrowly To Avoid Absurd Results and
    Constitutional Problems. ................................................................................................ 10

    A.   Avoid absurd results. ............................................................................................ 11

    B.   Avoid constitutional problems. ............................................................................. 11

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona State Legislature v. Arizona Indep. Redistricting Com'n*,
135 S. Ct. 2652 (2015).............................................................................................8

*Bryant v. Compass Grp. USA, Inc.*,
958 F.3d 617 (7th Cir. 2020) ...................................................................................8

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
447 U.S. 557 (1980)................................................................................................13

*Clark v. Rogers*,
137 Ill. App. 3d 591 (4th Dist. 1985)......................................................................9

*Colon v. Dynacast, LLC*,
No. 19-CV-4561, 2019 WL 5536834 (N.D. Ill. Oct. 17, 2019) ..............................7

*Cooper Indus., Inc. v. Leatherman Tool Grp.*,
532 U.S. 424 (2001)................................................................................................12

*Cothron v. White Castle System, Inc.*,
2020 WL 3250706 (N.D. Ill. June 16, 2020) ...........................................................9

*Craftwood, Inc. v. Generac Power Sys., Inc.*,
920 F.3d 479 (7th Cir. 2019) ...................................................................................8

*Edwards v. Lombardi*,
2013 IL App (3d) 120518 .....................................................................................9, 10

*Engquist v. Oregon Dept. of Agr.*,
553 U.S. 591 (2008)...........................................................................................14, 15

*Fraley v. Batman*,
638 F. App'x 594 (9th Cir. 2016) ...........................................................................12

*Gallagher v. Lenart*,
226 Ill. 2d 208 (2007) ...............................................................................................4

*Honda Motor Co. v. Oberg*,
512 U.S. 415 (1994)................................................................................................12

*Howe v. Speedway LLC*,
No. 17-CV-07303, 2018 WL 2445541 (N.D. Ill. May 31, 2018) (Wood, J.)............7

ii

*Howell v. Tribune Entm't Co.*,
106 F.3d 215 (7th Cir. 1997) ................................................................4

*Ill. Ins. Guar. Fund v. Nwidor*,
2018 IL App (1st) 171378.......................................................................4

*Johnson v. Johnson*,
386 Ill. App. 3d 522 (1st Dist. 2008) ..................................................10

*Lenoir v. Little Caesar Enterprises, Inc.*,
2020 WL 4569695 (N.D. Ill. Aug. 7, 2020) ..........................................9

*Maddux v. Blagojevich*,
233 Ill. 2d 508 (2011) ...........................................................................11

*McCollough v. Smarte Carte, Inc.*,
No. 16 C 03777, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016).................8

*McGinnis v. United States Cold Storage, Inc.*,
382 F. Supp. 3d 813 (N.D. Ill. 2019) ....................................................8

*Pac. Gas and Elec. v. Pub. Util. Comm'n*,
475 U.S. 1 (1986) ..................................................................................13

*People v. Hanna*,
800 N.E.2d 1201 (Ill. 2003) ..................................................................11

*People v. Nastasio*,
19 Ill.2d 524 (1960) ...............................................................................11

*Pratt v. Everalbum, Inc.*,
283 F. Supp. 3d 664 (N.D. Ill. 2017) ....................................................4

*Riley v. Nat'l Fed'n of Blind of N.C., Inc.*,
487 U.S. 781 (1988)...............................................................................13

*Rosenbach v. Six Flags Ent'mt Corp.*,
2019 IL 123186..............................................................................1, 3, 15

*Santana v. Take-Two Interactive Software, Inc.*,
717 F. App'x 12 (2d Cir. 2017) ..........................................................7, 8

*St. Joan Antida High School Inc. v. Milwaukee Pub. School Dist.*,
919 F.3d 1003 (7th Cir. 2019) ..............................................................14

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
251 U.S. 63 (1919)................................................................................12

*Stillmock v. Weis Mkts., Inc.*,
  385 F. App'x 267 (4th Cir. 2010) (Wilkinson, J., concurring) ................................12

*Texaco Inc. v. Short*,
  454 U.S. 516 (1982) ............................................................................................12

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
  471 U.S. 626 (1985) ............................................................................................13

**Statutes**

740 ILCS 14/5 ......................................................................................................3, 14

740 ILCS 14/10 ..................................................................................................11, 14

740 ILCS 14/15(a) .....................................................................................................3

740 ILCS 14/15(b) ..................................................................................................3, 8

740 ILCS 14/25(c) ....................................................................................................14

740 ILCS 14/25(e) ....................................................................................................14

Federal Rule of Civil Procedure 12(b)(6) .................................................................9

Government Discrimination: Equal Protection Law & Litig., § 4:30 (2018)............14

Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/10, *et seq.* ...................... *passim*

**Rules**

Local Rule 56.1 ..........................................................................................................2

**Other Authorities**

U.S. Const. am.1 ......................................................................................................13

United States Constitution ........................................................................................12

# **INTRODUCTION**

The Illinois Biometric Information Privacy Act ("BIPA") is a notice-and-consent privacy statute that gives people who have their biometric identifiers or information collected the "power to say no by withholding consent." *Rosenbach v. Six Flags Ent'mt Corp.*, 2019 IL 123186, ¶ 34. BIPA provides a private right of action allowing recovery of $1,000 per negligent violation of the statute and $5,000 per reckless or intentional violation of the statute. These statutory damages have inspired a surge of litigation brought under the statute. The litigation surge has hit not just providers of consumer-facing biometric technology, but also hundreds of Illinois employers who asked their employees to use simple finger-scan time clocks in order to track their time and get paid for working.

In this case, Plaintiff worked as a store manager at a Speedway convenience store for a little less than two years. When hired in September 2017, Plaintiff enrolled himself on the finger-scan time clock used by his store, scanned his finger on the clock daily, and enrolled others onto the clock. He also instructed and then assisted dozens of other store employees, who reported to him, to enroll in the time clocks. At his deposition, Plaintiff testified he understood that every time he used the time clock, the clock used "the ridges and marks on [Plaintiff's] finger to identify [him] and track [his] hours." With this understanding, Plaintiff continued to use the clocks every day without objection. In fact, Plaintiff testified that if he had received a BIPA-compliant notice from Speedway (Speedway does not concede he didn't), it would not have changed his behavior whatsoever. He would have kept working at Speedway, would not have asked for higher pay, and would have kept scanning his finger on the time clocks.

Based on Plaintiff's testimony, judgment should be entered on his claims. By voluntarily scanning his finger with an understanding of how the time clock worked, Plaintiff voluntarily

relinquished any privacy right he held in his finger data as to Speedway.

## SUMMARY OF UNDISPUTED FACTS

The pertinent facts are set out in detail in the accompanying Local Rule 56.1 Statement of Facts.  Speedway summarizes them here.

Plaintiff worked as a Speedway store manager from September 2015 to May 2017.  SOF No. 3; Ex. 3 at 13.  Plaintiff received training on how to use the finger-scan time clocks and scanned his finger on those clocks daily to track his hours worked.  SOF Nos. 4, 5; Ex. 3 at 21, 41, 55-60, 80, 102.

At his deposition, Plaintiff testified he used the relevant time clocks to punch in and out every day he worked at Speedway.  SOF No. 5; Ex. 3 at 21, 57-58, 80.  He understood that hours data derived from his punches was transmitted to a server where it could be edited via computer, then eventually transmitted to Speedway's payroll department so he could be paid by Speedway. SOF No. 6; Ex. 3 at 58-59.  Plaintiff personally trained new employees on how to use the time clocks and enrolled them into the system so they, too, could use the time clocks in order to get paid.  SOF No. 7; Ex. 3 at 59-60.

Plaintiff understood that each time he put his finger on the clock, the clock was relying on "the ridges and marks on [Plaintiff's] finger to identify [him] and track [his] hours."  SOF No. 8; Ex. 3 at 80.  With this understanding, Plaintiff continued to use the clocks every day.  *Id*. Plaintiff testified that he does not believe Speedway should have provided him extra compensation in exchange for using finger-scan technology, and that if Speedway had provided him with more specific disclosures about what it was doing with the finger-scan information, that would not have caused him to change his behavior whatsoever.  SOF No. 10; Ex. 3 at 80–82. Plaintiff further testified that he has routinely reduced his expectation of privacy in the

employment context, including in his current position as a deliveryman, where he is continually monitored by GPS.  SOF No. 11; Ex. 3 at 10-12.

<u>**ARGUMENT**</u>

Plaintiff, a store manager, knew exactly what he was doing when he scanned his finger each day to clock in and out of work.  He admitted he was aware his finger data was being used to verify his identity and track his hours.  With that knowledge, Plaintiff voluntarily placed his finger on the time clock at the beginning and end of every shift.  He thus has waived claims arising out of his voluntary actions.

I.     **Through His Conduct, Plaintiff Waived His Biometric Privacy Rights.**

A.     **Plaintiff's actions constitute waiver.**

Plaintiff brings two causes of action, one under BIPA and a negligence count based on the same facts.  BIPA is a notice-and-consent privacy statute.  It was enacted to facilitate the use of biometrics by regulating the collection and possession of "biometric identifiers" and "biometric information," as defined in the statute.  *See* 740 ILCS 14/5.  The linchpin of BIPA is notice and consent.  Section 15(b) sets up a notice-and-consent regime governing collection of biometric identifiers or information.  Section 15(a) requires private entities in possession of biometric identifiers or information to have, make available, and adhere to a retention and deletion policy, and other sections similarly place requirements on private entities in possession of biometrics.  Thus, BIPA's goal is not to prevent the use of biometrics.  Rather, BIPA "vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent."  *Rosenbach*, 2019 IL 123186, ¶ 34.

Here, it is undisputed that Plaintiff understood his finger data had been collected and was being used to confirm his identity every time he clocked in and out.  SOF No. 8; Ex. 3 at 80.

Furthermore, Plaintiff testified that had Speedway provided different disclosures than it did, he would not have done anything differently. He would have continued to work for Speedway for the same pay, would not have protested use of the time clocks, and would have continued to use them in the same way every day. SOF No. 10; Ex. 3 at 80-82.

Under Illinois law, waiver is "the intentional relinquishment of a known right." *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). Waiver may be either express or implied. *Ill. Ins. Guar. Fund v. Nwidor*, 2018 IL App (1st) 171378, ¶ 21. A party can waive privacy rights through his conduct. *See*, *e.g.*, *Pratt v. Everalbum, Inc.*, 283 F. Supp. 3d 664, 669 (N.D. Ill. 2017) (plaintiff consented to the use of his name in text messages by clicking through prompts, so owner of smartphone application did not violate Illinois Right of Publicity Act); *Howell v. Tribune Entm't Co.*, 106 F.3d 215, 221 (7th Cir. 1997) (party waived privacy claims by failing to object to publication of allegedly defamatory matter when she had the chance).

Here, Plaintiff knowingly and repeatedly used the time clocks at issue during every shift he worked. SOF No. 5; Ex. 3 at 21, 57-58, 80. Not only did he use the time clocks himself, but he trained other employees on how to use the clocks and enrolled them in the timekeeping system:

> Q: So you showed the new employees how to use the clocks?
>
> A: Correct.
>
> Q: Did you enroll them into the clock so that they would have their employee ID stored with their finger?
>
> A: Correct.

SOF No. 7; Ex. 3 at 59.

Plaintiff further admitted that he understood the time clocks used the physical appearance of his finger to track his time:

Q: My question is did you not understand that when you put your finger on the clock every day that it was relying on, you know, the ridges and marks of your finger to identify you and track your hours?

A: Did I not understand that?

Q: Yeah.

A: No, I understood that.

SOF No. 8; Ex. 3 at 80.

Despite this understanding, Plaintiff does not believe he should have been paid more in exchange for putting his finger on the time clocks. Nor would he have done anything differently had he received the disclosure that he alleges Speedway did not provide:

Q: Is there something that you think Speedway should have done differently that would have, you know, taken away the need for you to file the lawsuit?[1]

A: Yes.

Q: What do you think Speedway should have done differently?

A: Told me what they were doing with my personal information.

Q: . . . Let's say that Speedway should have told you what they were doing with your . . . personal information. Would you have then done something differently?[2]

A: If they would have told me?

Q: Yeah.

A: No.

Q: You wouldn't have quit?

A: No.

Q: You wouldn't have asked for more money?

---

[1] Plaintiff's counsel's objection ("seeks a legal conclusion") omitted.
[2] Plaintiff's counsel's objection ("hypothetical") omitted.

A:  No.

Q:  You wouldn't have protested the use of those clocks?

A:  No.

SOF No. 10; Ex. 3 at 81-82.

Plaintiff also acknowledged that he was regularly videotaped at Speedway locations, that he is monitored by GPS at his current job as a deliveryman, and that he had to provide Speedway with personal information in order to be hired by it.  SOF No. 11; Ex. 3 at 10-12.

Simply put, Plaintiff knew that when he scanned his finger on the time clocks used by Speedway, the clocks were identifying him by the appearance of his finger.  Plaintiff also recognized that he had a reduced expectation of privacy in the employment context.  With that knowledge, Plaintiff proceeded to use his finger to clock in and out of work each day – and even today, after suing Speedway, Plaintiff continues to admit that even if he had received the notice and consent to which he claims he was entitled, that would not have changed his behavior. Based on these facts, Plaintiff's conduct constitutes knowing relinquishment of his "power to say no" to the collection of his finger data.

**B.  Decisions in other BIPA cases support that waiver applies here.**

In this case and others, courts have recognized that in circumstances like these, "any reasonable person" would have known his finger data was being collected.[3]  A prior decision in this case pointed this out:

> Howe's fingerprints were collected in circumstances under which any reasonable person should have known that his biometric data was being collected.  At the beginning of his employment at Speedway, Plaintiff voluntarily submitted to a fingerprint scan.  He then scanned his fingerprint at the beginning and end of each work day, thereby allowing Defendants' system to identify him and track

---

[3] Speedway does not concede that it collected biometric identifiers or biometric information as defined by BIPA and preserves its right to assert any and all defenses and arguments related thereto.

his hours. It should have been readily apparent to Plaintiff that his fingerprint was being scanned and stored, otherwise how would Speedway's time system recognize him based on that fingerprint?

*Howe v. Speedway LLC*, No. 17-CV-07303, 2018 WL 2445541, at *6 (N.D. Ill. May 31, 2018) (Wood, J.).

Other courts have similarly doubted that where a plaintiff has knowingly consented to the use of his biometric data, he can claim injury based on technical violations of BIPA. *E.g.*, *Colon v. Dynacast, LLC*, No. 19-CV-4561, 2019 WL 5536834, at *4 (N.D. Ill. Oct. 17, 2019) (collecting cases). In *Colon*, the court, analyzing Article III standing, held that the plaintiff had not alleged any injury in fact because she "knew her data was being collected," so her employer's "failure to go through each procedural formality outlined in BIPA did not present any appreciable risk of harm to the underlying concrete interest in privacy." *Id.* (internal quotations omitted) (explaining that the plaintiff knew exactly what she was doing: "No one alleges that Defendant snooped around like Nicholas Cage in *National Treasure*, surreptitiously gathering Plaintiff's biometric data off discarded goods."). The evidence in this case makes clear that Plaintiff had actual knowledge of the collection of his data, "something that would have been obvious to any employee subject to a fingerprint or hand-scan." *Id.* at *5.

The Second Circuit reached a similar conclusion in a case in which the plaintiffs voluntarily allowed their faces to be scanned to create video-game avatars. *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12, 14-15 (2d Cir. 2017). To scan their faces, the plaintiffs held their faces within six to 12 inches of a camera and slowly turned their heads to the left and right. The face-scanning process took about 15 minutes, after which the plaintiffs played video-game basketball using avatars that looked like them (but presumably had better athletic ability). *Id.* The plaintiffs sued, alleging that the video-game maker had not adequately disclosed the collection of their facial geometry or obtained plaintiffs' consent to collection. *See*

*id*.  Dismissing the case for failure to allege injury in fact sufficient for standing, the Second

Circuit noted:  "No reasonable person . . . would believe that the MyPlayer feature was

conducting other than [a face] scan."  *Id*. at 16.  The "degree of invasiveness far exceeded that of

a simple photo."  *Id*.  Moreover, plaintiffs did not allege that they would have withheld consent

had the video-game maker provided a more detailed written consent.  *Id*.  Thus, there was no

"material risk of harm" to BIPA's concrete data-protection interest.  *Id*.

    In another case, a plaintiff sued an electronic locker company that employs finger

scanners so that renters may use their fingers as a key.  The court recognized that no real harm

resulted when the plaintiff "undoubtedly understood when she first used the system that her

fingerprint data would have to be retained until she retrieved her belongings from the locker."

*McCollough v. Smarte Carte, Inc.*, No. 16 C 03777, 2016 WL 4077108, at *3 (N.D. Ill. Aug. 1,

2016) (dismissing case for lack of Article III standing).  Indeed, the court stated, "[t]his Court

assumes that a customer would understand that Smarte Carte collects and retains their fingerprint

data for at least the duration of the rental.  The system would not work otherwise."  *Id.* at *1, n.1.

*See also McGinnis v. United States Cold Storage, Inc.*, 382 F. Supp. 3d 813, 819 (N.D. Ill. 2019)

(dismissing case for lack of Article III standing; "[Plaintiff] knew his fingerprints were being

collected because he scanned them in every time he clocked in or out of work, and he knew they

were being stored because the time-clock-scanned prints were obviously being compared to a

stored set of prints.").

    Although the foregoing cases arose in the context of Article III standing[4], the same

common-sense analysis applies here.  Any reasonable person would understand how the time

---

[4] Article III standing is present in this case.  This case is distinguishable from BIPA cases in which Article
III standing has been found lacking, including because of intervening authority from the Illinois Supreme
Court and the Seventh Circuit.  *See* Notice of Removal (Dkt. 1), citing *Rosenbach*, 2019 IL123186; *see
also Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617 (7th Cir. 2020) (alleging a violation of section

clocks used by Speedway worked and what they were doing. As his testimony shows, Plaintiff himself certainly did. Since the evidence demonstrates that Plaintiff knowingly and voluntarily scanned his finger with full understanding that his finger-scan was being collected and used—and that he would not have changed his behavior had Speedway done anything differently—he waived his right to biometric privacy as to his finger-scan while working at Speedway.[5] Speedway is entitled to summary judgment on the merits.

## II. Plaintiff's Claims Are Barred By Assumption Of The Risk.

Alternatively, Plaintiff's claims are barred by the doctrine of primary assumption of the risk. Primary assumption of the risk applies where the plaintiff's conduct indicates that he "has implicitly consented to encounter an inherent and known risk, thereby excusing another from a legal duty which would otherwise exist." *Edwards v. Lombardi*, 2013 IL App (3d) 120518, ¶ 18. An employee assumes risks that are inherent in his employment. *Clark v. Rogers*, 137 Ill. App. 3d 591, 594 (4th Dist. 1985).

---

15(b) is sufficient, without more, for Article III standing); *Miller*, 926 F.3d at 902. "Standing to sue is established by allegations . . . of injury," and "a plaintiff's failure on the merits does not divest a federal court of jurisdiction." *Craftwood, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019); *see also Arizona State Legislature v. Arizona Indep. Redistricting Com'n*, 135 S. Ct. 2652, 2663 (2015) ("[O]ne must not 'confuse weakness on the merits with absence of Article III standing.") (citation omitted). Plaintiff's allegations—that Speedway violated BIPA and that he sustained personal injuries including invasion of privacy, mental anguish, and informational injury as a result (*see* Compl. ¶¶ 45-46, 47)—suffice for standing. This court therefore has jurisdiction to adjudicate the merits, and on the merits, Plaintiff's claims fail.

[5] The recent opinions in *Lenoir v. Little Caesar Enterprises, Inc.*, 2020 WL 4569695, at *3 (N.D. Ill. Aug. 7, 2020) and *Cothron v. White Castle System, Inc.*, 2020 WL 3250706, at *4 (N.D. Ill. June 16, 2020) are not to the contrary. Those opinions held, on Rule 12(b)(6) motions to dismiss, that in that procedural posture, subsequent consent to the collection of one's biometric data does not result in waiver of one's right to sue for earlier non-consenting collections. Here, Plaintiff knowingly and voluntarily consented to the use of the finger-scan time clocks from his first day at work. In other words, unlike in *Lenoir* and *Cothron*, here the undisputed facts show that Plaintiff never used the finger-scan time clocks without knowingly and voluntarily doing so, and would not have behaved differently had he received the disclosures over which he is suing.

In his Complaint, Plaintiff alleges that he was "required to scan his fingerprint" as a condition of employment. (Compl. ¶ 37.) He claims that this exposed him and other Speedway employees to "serious and irreversible privacy risks." (*Id.* ¶ 3.) Any alleged "privacy risks" stemming from the use of finger-scan timekeeping technology were thus inherent in the activity Plaintiff voluntarily chose to undertake: his employment.

At his deposition, Plaintiff acknowledged that he received training on the finger-scan time clock technology, understood how they worked, and enrolled and trained other employees to use the clocks. SOF Nos. 4, 6, 7; Ex. 3 at 21, 41, 55-60, 102. He knew that the clocks used the ridges of his finger to identify him and track his time. SOF No. 8; Ex. 3 at 80.

Once an employee assumes the risk inherent in the employment, the employer does not owe any duty to the employee, so the assumption-of-risk doctrine operates as a complete defense to claims for negligence. *Edwards*, 2013 IL App (3d) 120518, ¶ 18. The defense extends to bar BIPA claims alleging negligent conduct.[6] Here, Plaintiff, when hired, and at all times thereafter, was aware of and voluntarily undertook any risks associated with the use of finger-scan technology. By choosing and continuing to work at Speedway, Plaintiff assumed the risks alleged in his Complaint. He therefore cannot maintain his claims.

## III. BIPA Should Be Construed Narrowly To Avoid Absurd Results and Constitutional Problems.

Speedway expects that Plaintiff will respond to the above by arguing that his conduct doesn't matter and BIPA is, in effect, a strict-liability statute that imposes statutory penalties on

---

[6] A statute does not abrogate common-law defenses like assumption of the risk unless it is plain that the intent of the statute is to impose strict liability. *See Johnson v. Johnson*, 386 Ill. App. 3d 522, 535 (1st Dist. 2008) (recognizing assumption of the risk as a valid affirmative defense to a statute despite the statute's failure to specifically provide for that defense). BIPA contemplates degrees of fault by providing for standards of negligence, recklessness, and intent, and therefore does not explicitly abrogate common law defenses like assumption of the risk.

any company that fails to comply with even its most mundane and technical requirements, no matter what Plaintiff knew or did. Plaintiff's position implicates significant statutory-construction and constitutional issues. As Speedway discusses below, the Court should construe BIPA narrowly to avoid the problems Plaintiff's position may create.

### A.    Avoid absurd results.

Absurd results are to be avoided. *People v. Hanna*, 800 N.E.2d 1201, 1207 (Ill. 2003). The Court must abide by the "cardinal rule of statutory construction," which is to "ascertain and give effect to the legislature's intent." *Id.* "The most reliable indicator of legislative intent is found in the language of the statute itself." *Id.*

The Court should view BIPA "within the real-world activity that [the statute] was intended to regulate." *Hanna*, 800 N.E.2d at 1209. The General Assembly clearly contemplated that BIPA would apply within the employment context. *See* 740 ILCS 14/10. It also recognized the "promise" of biometric technology. *Id.* § 10. It therefore by no means meant to foreclose the use of biometric time clocks in the workplace or broadly punish employers without any consideration of the Plaintiff's own knowledge, consent, or conduct. The Court should take that into consideration here.

### B.    Avoid constitutional problems.

Moreover, Illinois courts routinely apply the canon of constitutional avoidance when interpreting statutory terms that have more than one potential meaning. *People v. Nastasio*, 19 Ill.2d 524, 529 (1960) (courts must "interpret [a] statute as to . . . avoid, if possible, a construction that would raise doubts as to its validity"); *Maddux v. Blagojevich*, 233 Ill. 2d 508, 516 (2011) ("the General Assembly cannot acquiesce to a construction that is at odds with the constitution"). The constitutional-avoidance canon requires the Court to construe BIPA so its constitutionality is not placed in doubt. Here, construing BIPA, as Plaintiff proposes, to award

potentially millions of dollars in damages based on Plaintiff's knowing, voluntary, scan of his finger would run afoul of the United States Constitution for three reasons.

*Due process.* First, it is impossible to reconcile Plaintiff's interpretation of BIPA's statutory damages provisions with basic principles of due process. The U.S. Constitution protects individuals and private entities against "arbitrary deprivations of liberty or property." *Honda Motor Co. v. Oberg*, 512 U.S. 415, 416 (1994). As interpreted by Plaintiff, BIPA would authorize potentially massive recoveries for plaintiffs who have suffered no actual damages, even where, as here, Defendant did not collect or store personal biometric data, but instead stored only a string of numbers. This interpretation fails to comport with due process. *See Fraley v. Batman*, 638 F. App'x 594, 597 (9th Cir. 2016) (disproportionate statutory award "implicate[s] due process concerns"). Due process "of its own force . . . prohibits the States from imposing 'grossly excessive' punishments." *Cooper Indus., Inc. v. Leatherman Tool Grp.*, 532 U.S. 424, 434 (2001). When statutory damages are dissociated from actual harm and then aggregated via class action, they become "essentially penal." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66 (1919). A statutory award violates due process when it is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* at 66–67; *see also Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 278 (4th Cir. 2010) (Wilkinson, J., concurring) ("Certifying a class that would impose annihilative damages where there has been no actual harm . . . could raise serious constitutional concerns.").

Moreover, the Illinois legislature failed to "afford the citizenry a reasonable opportunity to familiarize itself with [BIPA's] terms and to comply." *Texaco Inc. v. Short*, 454 U.S. 516, 532 (1982). BIPA is buried in the "Civil Liabilities" chapter of the Illinois Code; it does not appear in the "Employment" chapter. As a result, hundreds of companies have been sued as a result of

their technical non-compliance with BIPA. Despite this, Plaintiff claims that Speedway should held liable to a tune of $1,000 or more per violation, regardless of Plaintiff's conduct. To avoid these results, the Court should construe BIPA narrowly, including by ruling that BIPA rights are subject to black-letter Illinois law on waiver.

***First Amendment.*** Second, Plaintiff's interpretation of BIPA, as applied to Speedway, also raises serious First Amendment concerns. Because BIPA regulates information and compels speech, including restrictions on uses of information in the employment context, BIPA must operate within the bounds set by the First Amendment. A restraint on commercial speech must meet three conditions: (1) the government must have a "substantial interest" in regulating the speech; (2) the regulation must directly and materially advance that interest; and (3) the regulation must be no "more extensive than is necessary to serve that interest." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980); *see also Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985) ("We recognize that unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech."); *Riley v. Nat'l Fed'n of Blind of N.C., Inc.*, 487 U.S. 781, 797 (1988) (the First Amendment protects "the decision of both what to say and what not to say"); *Pac. Gas and Elec. v. Pub. Util. Comm'n*, 475 U.S. 1 (1986) (state regulation requiring utility company to include information in its billing envelopes constituted compelled speech and violated First Amendment). Here, Illinois does not have a substantial interest in regulating Defendants' alleged collection of finger-scan data with the full knowledge of Plaintiff. Even if Illinois did have such an interest, BIPA does not materially advance it, and, as applied to Defendants, BIPA is far more extensive than is necessary to accomplish that

governmental interest.  The Court therefore should construe BIPA narrowly and apply typical common-law principles such as waiver to Plaintiff's claims.

*Equal Protection.*  Third, Plaintiff's proposed application of BIPA also runs afoul of the Equal Protection Clause.  The "core concern of the Equal Protection Clause" is to "shield against arbitrary classifications."  *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 598 (2008).  Where a statute imposes different burdens on similarly situated groups, equal protection requires courts to ask whether the classification bears a "rational relationship" to "some legitimate government purpose."  *St. Joan Antida High School Inc. v. Milwaukee Pub. School Dist.*, 919 F.3d 1003, 1010 (7th Cir. 2019).  Statutes that, like BIPA, contain numerous exceptions often are deemed impermissibly arbitrary.  *See* Government Discrimination: Equal Protection Law & Litig., § 4:30 (2018) (collecting cases).  Because BIPA imposes burdensome regulations on certain entities while arbitrarily excepting others, it violates equal protection.

Here, Plaintiff claims that Speedway's collection of his finger-scan data violated his BIPA rights when he scanned his finger to clock in and out of his job as a convenience store manager.  But BIPA also exempts several entities from its scope:  (1) financial institutions and any affiliates of a financial institution "subject to Title V of the federal Gramm-Leach-Bliley Act of 1999" (740 ILCS 14/25(c)); (2) contractors, subcontractors, and agents of a state agency or local unit of government (§ 14/25(e)); (3) state and local government agencies and courts (§ 14/10); and (4) those that collect biometric data in connection with "health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996"—arguably practically every entity in the health care industry.  *Id.*

These exemptions potentially undermine the purpose of BIPA, which is to protect individuals against the risk that their biometric data might be compromised.  *See* § 14/5;

*Rosenbach*, 2019 IL 123186, ¶¶ 33-34.  The foregoing exemptions mean that, as to employees or customers of financial institutions, affiliates of a financial institution, government contractors or subcontractors, public agencies, and health care entities, it is as if BIPA had never been passed at all.  BIPA thus establishes an impermissible scheme: individuals possess a right to privacy in their biometric data, but only some entities must respect that right.  These "arbitrary classifications," *Engquist*, 553 U.S. at 598, bear no rational relationship to the objective of safeguarding individuals' biometric data.

The Court, however, can avoid these constitutional problems in this case by simply applying well-settled Illinois law on waiver.  Through his conduct, Plaintiff voluntarily relinquished his rights.  The Court should reject any attempts by Plaintiff to stretch BIPA beyond its constitutional breaking point and instead should simply apply Illinois law on waiver.

## CONCLUSION

For the reasons above, Speedway respectfully requests that the Court enter summary judgment in its favor.

Dated:  August  18, 2020

Respectfully submitted,

SPEEDWAY LLC

By: _/s/ Tristan L. Duncan_____
    One of Its Attorneys

Tristan L. Duncan (*pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO  64108
(816) 474-6550
tlduncan@shb.com

Gary M. Miller
Matthew C. Wolfe
Ian M. Hansen
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL  60606
Tel:  (312) 704-7700
Fax:  (312) 558-1195
Firm No. 58950
gmiller@shb.com
mwolfe@shb.com
ihansen@shb.com

## CERTIFICATE OF SERVICE

I, Matthew C. Wolfe , an attorney, hereby certify that on **August 18, 2020**, I caused a true and correct copy of **SPEEDWAY LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be served on counsel of record via ECF pursuant to the General Order on Electronic Filing of the United States District Court, Northern District of Illinois.



*/s/ Matthew C. Wolfe*