# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER HOWE, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) No. 1:19-cv-01374 ) |
| v. | ) Hon. John F. Kness ) |
| SPEEDWAY LLC, | ) ) |
| Defendant. | ) |

### SPEEDWAY'S MEMORANDUM IN SUPPORT OF ITS
### MOTION TO EXCLUDE THE TESTIMONY OF CHRISTOPHER DAFT

Tristan L. Duncan
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Tel: (816) 474-6550
tlduncan@shb.com

Matthew C. Wolfe
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
mwolfe@shb.com

*Attorneys for Defendant Speedway LLC*

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

I.     Daft's opinions. .............................................................................................................. 2

II.    Key undisputed facts. .................................................................................................... 2

III.   Daft's methodology. ..................................................................................................... 3

IV.   Daft's experience. ......................................................................................................... 5

ARGUMENT ............................................................................................................................... 6

I.     Daft's methodology is flawed and renders his testimony unreliable. ................................ 7

     A.    Daft did not investigate or know key facts and thus his opinion lacks foundation. 7

     B.    Daft's "testing" was fatally deficient. ..................................................................... 8

II.    Daft's qualifications are insufficient and do not cure his insufficient methodology. ....... 10

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bakov v. Consol. World Travel, Inc.*,
   No. 15 C 2980, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019) ...............................................10

*Clark v. Takata Corp.*,
   192 F.3d 750 (7th Cir. 1999) ....................................................................................7, 8, 9, 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ..............................................................................................................6, 7

*Gopalratnam v. Hewlett-Packard Co.*,
   877 F.3d 771 (7th Cir. 2017) .......................................................................................................3

*Keyes v. Ocwen Loan Servicing, LLC*,
   335 F. Supp. 3d 951 (E.D. Mich. 2018) ................................................................................10

*Kirk v. Clark Equip. Co.*,
   991 F.3d 865 (7th Cir. 2021) ........................................................................................ passim

*Riley v. Stihl, Inc.*,
   No. Civ. A. 04-1732, 2005 WL 2304464 (W.D. La. Aug. 22, 2005) ......................................10

*Smith v. Ford Motor Co.*,
   215 F.3d 713 (7th Cir. 2000) ................................................................................................10

**RULES**

Federal Rule of Evidence 702 ...................................................................................................6, 7

**STATUTES**

740 ILCS 14/10 ...............................................................................................................................1

**INTRODUCTION**

A key threshold issue in this BIPA[1] case is whether Speedway collected or possessed a "fingerprint." If Speedway did not, it had no duties under BIPA and Plaintiff's claims fail.

Thus, whether the Timeclocks used by Speedway collect a "fingerprint" is key to this case. As is explained in Speedway's Motion for Summary Judgment, also filed today, there is no genuine factual dispute that the Timeclocks do not capture a full "rolled" fingerprint like that used by law enforcement. Rather, they scan key features on a fraction of the fingertip and convert it to a "Template." A Template is a series of letters and numbers, similar to a social security number or a drivers' license—which, although they are confidential and sensitive information, are not regulated by BIPA. *See* 740 ILCS 14/10 (distinguishing between a "biometric identifier" regulated by the statute and "confidential and sensitive information" not regulated by the statute).

Faced with the statute's requirement that a "fingerprint" be collected or possessed, Plaintiff tries to argue that the Templates are based on a fingerprint, and used to identify an individual, making them "biometric information." To make this argument, Plaintiff must rely on expert testimony to demonstrate, among other things, that the Timeclocks in fact collect a fingerprint.

The testimony of Plaintiff's proposed expert, Dr. Christopher Daft, should be excluded. The Seventh Circuit has repeatedly emphasized that even a supremely qualified expert must test his theories, such as by actually working with and testing the technology at issue. Dr. Daft failed to do this. He neither inspected nor tested the Timeclocks at issue in this case. Simply relying

---

[1] Capitalized terms not otherwise defined in this Memorandum have the meaning given them in Speedway's Memorandum in Support of Motion for Summary Judgment, also filed today.

on lay user manuals is not enough. Yet that is exactly what Dr. Daft did. Daft did not inspect the Timeclocks or review their technical specifications. Instead, all he did was read a few manuals written for lay users. This glaring omission in methodology leaves Daft utterly unknowledgeable about the key fact on which he proposes to testify—whether the Timeclocks can or do collect a BIPA regulated "fingerprint." Because his methodology is unreliable, his opinions should be excluded.

## BACKGROUND

### I. Daft's opinions.

Daft proposes to offer three primary opinions:

1. "Each of the time clocks used by Speedway collect, store, and use biometric identifiers and/or biometric information." Ex. 1, Daft Opening Report ¶ 24; Ex. 2, Daft Rebuttal Report ¶¶ 5-6.

2. "The software provided for use with the Timelink and Kronos time clocks can and do distribute biometric information via local area networks and/or the Internet." Ex. 1, Daft Opening Report ¶ 24; Ex. 2, Daft Rebuttal Report ¶ 7.

3. It is not impossible to reverse-engineer a fingerprint from a biometric template. Ex. 2, Daft Rebuttal Report ¶¶ 8-9.

Each of these opinions is predicated on Daft's overall opinion that the timeclocks collect a fingerprint. Without that opinion, his three primary opinions fall apart.

### II. Key undisputed facts.

Key undisputed facts[2] include:

---

[2] Speedway incorporates by reference paragraphs 21-35 of its Local Rule 56.1 Statement of Undisputed Facts, also filed today; and the exhibits cited in those paragraphs. Citations to "SOF" refer to Speedway's Local Rule 56.1 Statement filed today.

2

- Plaintiff's claims arise entirely out of his use of a Timeclock, upon which he put his finger to clock in and out of work.

- The Timeclocks used by Speedway convert an initial scan of a portion of a finger into a Template. A Template is a series of letters and numbers that identifies key aspects of the finger ridges.

- A Template is not the same thing as a fingerprint.

- A Template can be made from something less than a fingerprint.

- The size of the scan surface on a Timeclock will dictate whether an entire fingerprint can be scanned or captured.

- No Timeclock used by Speedway had a scan surface large enough to scan or capture an entire typical human fingerprint.

None of these facts are within the knowledge of lay persons. Instead, they are technical facts, which require expert testimony. *E.g.*, *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 790 (7th Cir. 2017) ("because the inner workings of a laptop and its components, including the battery pack and its cells, are highly technical, expert testimony is necessary for plaintiffs to prevail on their claims"). For example, expert testimony is necessary to assess how much of the finger pad the Timeclocks scan and what is used to generate a Template; and what a Template is and how it works. If no fingerprint is ever captured or collected by the Timeclocks to generate the Template, Plaintiff's claims fail.

**III.     Daft's methodology.**

Daft's opinions are based completely on his review of Timeclock user manuals and his experience. Ex. 1 at ¶ 14 (opening report); Ex. 2 at ¶ 12 (rebuttal report); SOF Ex. 15 at 95:5-95:13, 150:17-154:2 (testimony of Daft). The user manuals are aimed at lay users—here,

3

convenience store employees—and explain to the lay user the mechanics of how to use the Timeclocks to clock in and out. *See*, *e.g.*, SOF Ex. 20 (user manual relied upon by Daft). The user manuals do not contain technical specifications or source code. *See id*. They do not contain any information from which Daft could identify the size of the scan surface on the Timeclocks, which he would need to know to tell what the Timeclocks collected in the first instance:

> Q: If the scan surface is smaller than a typical fingerpad, the scan surface would not capture the whole fingerprint, right?
>
> A: That's right. And that would be a good reason to make the sensor large enough to capture the whole data for all of the population who's going to use it, because the more you capture, the better the device is going to work.

SOF Ex. 15 at 142:4-142:11 (testimony of Daft).

Nor do the user manuals explain how the Timeclocks generate a Template. *See* SOF Ex. 20. In fact, <u>at his deposition Daft admitted that he does not know the size of the scan surface on the Timeclocks and does not know how they generate a Template</u>:

> I don't know what fraction of the finger is captured. Obviously only the portion of the finger that is on the sensor is going to be recorded.

SOF Ex. 15 at 177:20-178:2, 145:13-145:19 (testimony of Daft, admitting he does not know how the Timeclock Templates are made).

Daft did not inspect the Timeclocks, either. SOF Ex. 15 at 150:17-153:16 (testimony of Daft). In contrast to Speedway's expert witness, who requested, inspected, took apart, and researched every Timeclock model possibly at issue in this case, *see* SOF Ex. 17 (opening report of Speedway's expert witness), Daft did nothing of the sort.

Daft's decision that he didn't need to bother inspecting the Timeclocks was the complete opposite of the approach he took in his only recent work on finger-scan devices outside of this litigation, a project in which he consulted on image collection relating to a finger-scan

4

component used in cell phones. In that project, Daft testified, he needed and received unfettered access to people working with and knowledgeable about the prototype devices. SOF Ex. 15 at 69:19-70:6 (testimony of Daft). Here, he neither requested nor had any such access, and he did not inspect the devices. In fact, he has no experience at all with finger-scan timeclocks. He has never even used one. SOF Ex. 15 at 150:17-153:16 (testimony of Daft).

IV. **Daft's experience.**

At his deposition, Daft tried to elide the above flaws in his methodology by relying on his experience. Daft has a doctorate in materials science from Oxford University in the United Kingdom, and has spent his career working in ultrasonic imaging, mostly relating to medical devices. SOF Ex. 15 at 23:24-24:20, 116:11-117:21 (testimony of Daft); Ex. 1 at Exhibit A (Daft's CV). In the last five years, Daft also has begun working as an expert witness, which he started doing to make more money. SOF Ex. 15 at 25:3-30:13 (testimony of Daft). His website offers up his "expert witnessing" services on many subjects. *See* www.riversonicconsulting.com/expert.

In connection with Daft's recent pivot to expert witnessing, he has been qualified as an expert in litigation over the kinds of medical devices on which he has worked for years, such as mammography devices. *See* Ex. 1 at Exhibit A. But he has little experience with finger-scanning technology and no experience with the post-imaging parts of finger-scanning or biometrics.

Daft's experience with finger-scanning comes from consulting on two projects. The first was in 1990 and was, in Daft's words, a "quite short" stint consulting on a fingerprinting device being developed for government use. SOF Ex. 15 at 15:22-18:12 (testimony of Daft). That device captured a "rolled" fingerprint image of the type stored in the IAFIS system used by the government. *Id*. at 15:22-18:12, 139:7-139:20 (testimony of Daft). At his deposition, Daft

5

acknowledged that the Timeclocks here do not capture rolled fingerprints and do not keep images in a database (which IAFIS does). *Id*. at 131:4-136:11, 139:7-139:20 (testimony of Daft). His thirty-year-old experience with rolled fingerprints therefore is not relevant.

More recently, Daft consulted for Qualcomm on the development of an ultrasonic finger-scan device used in mobile phones. *Id*. at 49:16-83:20 (testimony of Daft). Though this project lasted longer, Daft's work on it was very limited. His job was to advise Qualcomm's imaging team on adjustments that might be needed to the ultrasonic sensors to capture the most precise image possible. *Id*. at 53:11-56:1, 75:16-75:18 (testimony of Daft). That image was then optimized for feature extraction, where finger features are extracted and converted into a numerical "template" used to determine whether a user should be allowed into the device. *Id*. at 61:17-69:9, 75:19-78:21 (testimony of Daft). This process is common in biometric technology, but Daft did not have any involvement with the feature extraction and matching portion:

> Q: Was there a team at Qualcomm that was in charge of the feature extraction, template generation, and matching portion of this?
>
> A: I believe there was, but I didn't have interaction with them.

*Id*. at 78:17-78:21 (testimony of Daft).

In other words, in his work for Qualcomm, Daft did not have any exposure to the creation of the template ultimately used by the cell phone. And he readily admitted that he has never been involved in biometric matching or security. *Id*. at 89:18-90:2 (testimony of Daft).

Besides his work on this litigation and the two projects above, Daft has no other experience with finger-scan sensors.

## ARGUMENT

The admission of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Kirk v. Clark Equip. Co.*,

991 F.3d 865, 871–72 (7th Cir. 2021). Under Rule 702, the Court has a "gatekeeping responsibility to ensure that the proposed expert testimony 'is not only relevant, but reliable.'" *Kirk*, 991 F.3d at 872 (quoting *Daubert*, 509 U.S. at 589). In performing this responsibility, the Court must evaluate "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Id*. All three factors must be considered, and failure to meet any one of them may mean that the expert's testimony is unreliable. *Id*.

The Court's analysis "must focus on the principles and methodologies underlying the expert's conclusions." *Kirk*, 991 F.3d at 872. This inquiry focuses on "the soundness and care with which the expert arrived at her opinion." *Id*. at 873. Even a supremely qualified expert must be excluded if his methodology is unreliable. *Id*.

I. **Daft's methodology is flawed and renders his testimony unreliable.**

    A. **Daft did not investigate or know key facts and thus his opinion lacks foundation.**

An expert must test his theories. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 874 (7th Cir. 2021). And even an expert with uncontested qualifications must "'substantiate his opinion,' rather than assume it to be true." *Kirk*, 991 F.3d at 876 (quoting *Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999)).

Here, Daft, whose experience is insufficient, *see* Argument Section II *infra*, did not test his theories. Rather, he read the lay user manuals, saw the word "fingerprint" and leapt to his opinion that the Timeclocks collected a fingerprint. SOF Ex. 15 at 122:14-124:12 (testimony of Daft). Daft's logical leap was faulty because, as he admitted at his deposition, it is possible for a Template to be made from less than a fingerprint. *Id*. at 79:15-81:3, 86:10-87:14 (testimony of Daft, Q: "You could create a template from the scan of a fraction of a fingerpad, right?" A:

7

"That's possible."). Since it is possible for a Template to be made from less than a fingerprint, the Timeclocks can generate Templates and function without collecting a fingerprint. *Id*. at 114:9-115:1 (testimony of Daft: the Timeclocks work through matching of Templates).

Daft, however, does not know if the Timeclocks actually collect a full fingerprint, because he never bothered to inspect the Timeclocks. SOF Ex. 15 at 150:23-154:2, 177:20-178:2 (testimony of Daft). If he had, he would have known the size of the scan surface is not large enough to collect a full typical human fingerprint. SOF Ex. 18 at 9-10 (rebuttal report of Speedway's expert, which Daft admitted he could not rebut based on his failure to inspect the timeclocks). Daft's admission that he does not know whether the Timeclocks at issue here <u>in fact</u> can collect fingerprints means his opinion amounts to nothing more than untested speculation; he simply assumes his opinion to be true. *See Clark*, 192 F.3d at 757. As such, his opinions lack foundation and are inadmissible.

**B.  Daft's "testing" was fatally deficient.**

Additionally, Daft's investigation was totally lacking and its deficiencies add up to a disqualifying failure to adequately test his theories. Indeed, the Seventh Circuit and courts in this District, as well as around the country, have rejected purported experts employing similar methodologies in similar contexts.

For example, in *Kirk*, a product-liability case involving a specific piece of heavy construction equipment (a "loader"), the plaintiff offered an engineering expert who offered two opinions. <u>First</u>, the expert opined that the loader was designed in a way that made it likely to tip over, leading to the plaintiff's injuries. 991 F.3d at 870–71. The purported expert had never used such a loader. *Id*. at 874. He did not cite any generally accepted industry standards, data from similar accidents, or peer-reviewed materials to support his opinion. *Id*. at 874. The only industry literature upon which the expert relied simply stated general facts about the causes of

8

loader accidents, and said nothing about the precise product defect that the expert claimed existed. *Id*. at 875. The District Court found that the expert's lack of direct experience with the product at issue, combined with the lack of testing of the product or citation of any materials directly addressing the specific defect, rendered the expert's opinion unreliable. *Id*. at 874. The Seventh Circuit affirmed. *Id*.

<u>Second</u>, the expert opined that the unreasonably dangerous condition of the loader directly contributed to the plaintiff's injuries. 991 F.3d at 875. But the expert admitted that he did not know key facts about the connection between the loader and plaintiff's injuries and "that he performed no testing on the loader or a similar loader to confirm his causation theory, and the District Court excluded this opinion as well. *Id*. at 875. The Seventh Circuit affirmed again:

> [The expert's] testimony provided ample reason to question the "soundness and care" with which he arrived at his opinion on causation. He did not view, inspect, or operate the Loader in person. He never visited the . . . factory or inspected the accident site beyond photographs. He did not interview . . . the only eyewitness to the accident and only person with knowledge of how it occurred.

*Id.*

A similar analysis applies here. Daft opines that the Timeclocks collect a fingerprint, but he did not inspect the Timeclocks in this case. Instead, he relied completely on lay user manuals and snippets of textbooks. Making matters worse, he has never used or inspected <u>any</u> finger-scan timeclock. He admits that he does not know the answers to key questions about how the Timeclocks work. He admits he did not bother to conduct any inspection or testing that would have told him the answers. Instead, his "methodology" amounts to a tautology, just circular reasoning that the Timeclocks collect fingerprints "because I say so." That type of circular, conclusory reasoning is black-letter unreliable expert testimony. *E.g.*, *Kirk*, 991 F.3d at 873; *Clark*, 192 F.3d at 757.

9

The Seventh Circuit's guidance in *Kirk* thus shows that Daft's opinions must be excluded. Many other cases are in accord. *E.g.*, *Bakov v. Consol. World Travel, Inc.*, No. 15 C 2980, 2019 WL 1294659, at *9 (N.D. Ill. Mar. 21, 2019) (excluding expert who merely reviewed testimony and documents and did not test or experience technology at issue); *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 957–58 (E.D. Mich. 2018) (excluding expert who "did not inspect or test" the telephone autodialer technology at issue); *Riley v. Stihl, Inc.*, No. Civ. A. 04-1732, 2005 WL 2304464, at *3 (W.D. La. Aug. 22, 2005) (excluding testimony of expert who did not inspect allegedly defective chainsaw as "merely speculation").

**II.     Daft's qualifications are insufficient and do not cure his insufficient methodology.**

The Seventh Circuit has repeatedly explained that "even a supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method." *Kirk*, 991 F.3d at 873 (internal alterations and quotations omitted); *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (same); *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999) (same).

Daft is far from "supremely qualified" to offer opinions in this case. He has no experience at all with timeclocks besides this case, and did not bother to inspect the Timeclocks here because retaining counsel didn't ask him to:

> Q: Have you ever taken a biometric time clock apart and looked inside it?
>
> A: No.
>
> Q: Have you ever inspected the scanner component on a biometric timeclock?
>
> A: No.
>
> Q: Have you ever inspected the hardware components of the biometric time clock?

10

> A: No.
>
> Q: Do you have any firsthand experience with the actual optical scanners used in the timeclocks we just talked about?
>
> A: I have not.
>
> Q: Why didn't you ask to inspect the time clocks?
>
> A: The scope of my work as an expert witness is defined by retaining counsel. They asked me to do certain things which I did.

SOF Ex. 15 at 150:23-151:16 (testimony of Daft).

Daft claims that inspecting the Timeclocks or investigating their technical details "was not necessary to support the conclusions in my report" because "[t]he user manuals combined with my experience in the area," plus limited review of a few textbooks and articles, was enough. *Id*. at 152:3-154:2 (testimony of Daft). As the foregoing section abundantly demonstrates, this minimal experience is not enough.

Daft's lack of relevant experience matters because the Timeclocks actually store and match a Template, not a fingerprint. SOF Ex. 15 at 114:16-115:1 (testimony of Daft, admitting this); *see also* SOF ¶¶ 21-35 (collecting evidence). Daft cannot rely on experience to say how the Templates are made and match each other, because he has none. As a result, his failure to actually inspect the devices and research their technical specifications is fatal.

Simply put, Daft's methodology is insufficient, and his experience does not solve the problem.

## **CONCLUSION**

Speedway respectfully requests that the Court enter an order excluding all testimony of Dr. Christopher Daft.

| | |
|---|---|
| Dated: October 25, 2021 | Respectfully submitted, |
| | SPEEDWAY LLC |
| | By: */s/ Tristan L. Duncan* |
| |       One of Its Attorneys |
| Tristan L. Duncan<br>SHOOK, HARDY & BACON L.L.P.<br>2555 Grand Boulevard<br>Kansas City, MO 64108<br>Tel: (816) 474-6550<br>tlduncan@shb.com | Matthew C. Wolfe<br>SHOOK, HARDY & BACON L.L.P.<br>111 South Wacker Drive, Suite 4700<br>Chicago, IL 60606<br>Tel: (312) 704-7700<br>mwolfe@shb.com |
| | ***Attorneys for Defendant Speedway LLC*** |

**CERTIFICATE OF SERVICE**

I, Matthew C. Wolfe, an attorney, hereby certify that on **October 25, 2021**, I caused a true and correct copy of **SPEEDWAY LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF CHRISTOPHER DAFT** to electronically filed and served on counsel of record via ECF pursuant to the General Order on Electronic Filing of the United States District Court, Northern District of Illinois.

                                                     */s/ Matthew C. Wolfe*

# EXHIBIT 1

**[FILED UNDER SEAL PURSUANT TO MOTION]**

# EXHIBIT 2

**[FILED UNDER SEAL PURSUANT TO MOTION]**