# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHRISTOPHER HOWE, individually, and on behalf of all others similarly situated,

    Plaintiff,

v.

    No. 19-cv-01374

SPEEDWAY LLC,

    Honorable John F. Kness

        Defendants.

## PLAINTIFF'S [RENEWED] MOTION FOR RULE 23 CLASS CERTIFICATION

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

J. Eli Wade-Scott
Alexander G. Tievsky
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, IL 60654
Telephone: 312-589-6370
Facsimile: 312-589-6378
ewadescott@edelson.com
atievsky@edelson.com

**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................1

II. RELEVANT BACKGROUND ...........................................................................2

    A.  The Illinois Biometric Information Privacy Act. ..................................2

    B.  Speedway's Use of Biometric Timeclocks and Evidence of Lack of
        Compliance with BIPA. .........................................................................3

        1.  Speedway required all of its employees to use materially-identical
            finger scanners during the class period. ...................................3

        2.  Speedway's compliance efforts (or lack thereof) were the same for
            each class member during the class period. ...........................6

III. PROPOSED CLASS DEFINITION ...................................................................7

IV. THE CLASS MEETS ALL RULE 23 REQUIREMENTS FOR CERTIFICATION .8

    A.  Standard for Certification Under Rule 23(b)(3). .................................8

    B.  The Class Meets the Requirements of Rule 23. ...................................8

        1.  The class is so numerous that joinder of all members is impracticable
            – Rule 23(a)(1). ........................................................................9

        2.  There are questions of law and fact that are common to the class –
            Rule 23(a)(2). ..........................................................................9

        3.  Plaintiff's claims are typical of the claims or defenses of the class –
            Rule 23(a)(3). ........................................................................12

        4.  The Named Plaintiff will fairly and adequately assert and protect the
            interests of the class – Rule 23(a)(4). ....................................13

            i.  There is no conflict of interest between Named Plaintiff and the
                class members. ...........................................................14

            ii. Class counsel is experienced and qualified. ..............................15

    C.  Named Plaintiff's Claims Satisfy the Requirements of Rule 23(b)(3)............17

        **1.**        **Common questions of law and fact predominate.**.................................18

        **2.**        **A class action is superior to individual lawsuits.**...................................20

**V.**      **<u>CONCLUSION</u>** ...................................................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Alvarado v. International Laser Products, Inc.*,
   2019 WL 337995 (N.D. Ill. June 19, 2019) ............................................................................... 9

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .......................................................................................................... 14, 18, 20

*Amgen Inc. v. Conn. Retirement Plans and Trust Funds*,
   133 S. Ct. 1184 (2013) ............................................................................................................... 8

*Andersen v. Weinert Enterprises, Inc.*,
   986 F.3d 773 (7th Cir. 2020) .................................................................................................... 9

*Bell v. PNC Bank, Nat. Ass'n*,
   800 F.3d 360 (7th Cir. 2015) .................................................................................................. 19

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
   280 F.R.D. 408 (N.D. Ill. 2012) ............................................................................................. 12

*Bruhn v. New Albertson's Inc., et al.*,
   No. 2018-CH-01737 (Cir. Ct. Cook Cty. July 2, 2019) .......................................................... 16

*Bruhn v. New Albertson's, Inc., et al.*,
   No. 2018-CH-01737 (Cir. Ct. Cook Cty. Jan. 30, 2020) ........................................................ 16

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*,
   797 F.3d 426 (7th Cir. 2015) .................................................................................................. 18

*Cothron v. White Castle System, Inc.*,
   477 F. Supp. 3d 723 (N.D. Ill. 2020) ..................................................................................... 16

*Doporcyk v. Roundy's Supermarkets, Inc., et al.*,
   No. 2017-CH-08092 (Cook Cty. Cir. Ct. Jun. 09, 2017) ........................................................ 16

*Driver v. AppleIllinois, LLC*,
   265 F.R.D. 293, 304 (N.D. Ill. 2010) ...................................................................................... 20

*Flynn v. FCA US LLC*,
   327 F.R.D. 206 (S.D. Ill. 2018) ......................................................................................... 10, 18

*Healy v. Int'l Bhd. of Elec. Workers, Local Union No. 134*,
   296 F.R.D. 587 (N.D. Ill. 2013) ............................................................................................. 10

*In re Facebook Biometric Info. Privacy Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018) ............................................................... 9, 12, 19

*In re Facebook Biometric Info. Privacy Litig.*,
No. 15-CV-03747-JD, dkt. 537 (N.D. Cal. Feb. 26, 2021) ..................................... 17

*Jamie S. v. Milwaukee Pub. Schs.*,
668 F.3d 481 (7th Cir. 2012) ................................................................................ 10

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) ................................................................................ 12

*Korte v. Pinnacle Food Groups LLC*,
2019 WL 4305464 (S.D. Ill. Sept. 11, 2019) ....................................................... 13

*Licata v. Facebook, Inc.*,
No. 2015-CH-05427 (Cir. Ct. Cook Cty. Apr. 1, 2015) ......................................... 17

*Liu v. Four Seasons Hotel, Ltd.*,
2019 IL App (1st) 182645 ..................................................................................... 16

*Magpayo v. Advocate Health & Hosps. Corp.*,
2018 WL 950093 (N.D. Ill. Feb. 20, 2018) ........................................................... 10

*McDonald v. Symphony Bronzeville Park LLC*,
2020 IL App (1st) 192398 ..................................................................................... 17

*Messner v. Northshore Univ. Healthsystem*,
669 F.3d 802 (7th Cir. 2012) ............................................................................. 8, 18

*Moreno v. Napolitano*,
2014 WL 4911938 (N.D. Ill. Sept. 30, 2014) ....................................................... 13

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ................................................................................ 19

*Mulvania v. Sheriff of Rock Island Cnty.*,
850 F.3d 672 (7th Cir. 2009) .................................................................................. 9

*Parko v. Shell Oil Co.*,
739 F.3d 1083 (7th Cir. 2014) .............................................................................. 18

*Patel v. Facebook, Inc.*,
932 F.3d 1264, 1277 (9th Cir. 2019) .................................................................. 9, 17

*Pietrzycki v. Heights Tower Serv., Inc.*,
  197 F. Supp. 3d 1007 (N.D. Ill. 2016) ............................................................. 13, 14

*Reed v. Brex., Inc.*,
  2020 WL 584298 (S.D. Ill. Feb. 6, 2020) ................................................. 8, 19, 21

*Retired Chicago Police Ass'n v. City of Chicago*,
  7 F.3d 584 (7th Cir. 1993) ................................................................................ 12

*Roberson v. Symphony Post Acute Care*,
  Case No. 17-L-733 (Cir. Ct. St. Clair County, Mar. 12, 2019) ............................. 20

*Rottner v. Palm Beach Tan, Inc.*,
  2019 IL App (1st) 180691-U ............................................................................. 17

*Sekura v. Krishna Schaumburg Tan, Inc.*,
  2018 IL App (1st) 180175................................................................................... 17

*Sekura v. L.A. Tan Enters., Inc.*,
  2015-CH-16694 (Cir. Ct. Cook Cty.) .................................................................. 17

*Starr v. Chicago Cut Steakhouse, LLC*,
  75 F. Supp. 3d 859 (N.D. Ill. 2014) .................................................................... 10

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ............................................................................. 10

*Tims v. Black Horse Carriers*,
  2021 IL App (1st) 200563................................................................................... 16

*Wahl v. Midland Credit Mgmt., Inc.*,
  243 F.R.D. 291 (N.D. Ill. 2007)......................................................................... 15

*Wal-Mart Stores v. Dukes*,
  131 S. Ct. 2541 (2011)............................................................................. 1, 9, 10

**Statutes**
Illinois Biometric Information Privacy Act,
  740 ILCS 14/1, *et seq.*........................................................................... passim

**Other Authorities**
Illinois House Transcript, 2008 Reg. Sess. No. 276 ..................................................... 2

**Rules**
Fed. R. Civ. P. 23 ................................................................................... passim

**Treatises**
7AA Charles Alan Wright & Arthur R. Miller,
  Federal Practice and Procedure § 1778 (3d ed. 2011) ............................................. 18

# I.    __INTRODUCTION__

Plaintiff Christopher Howe is one of many employees who was required to scan his fingerprint on Defendant Speedway LLC's finger scanners while working at their gas stations and convenience stores. This happened, Plaintiff alleges, without Speedway obtaining the consent of its employees and without posting a retention policy, as required by the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* Based on this common course of essentially identical conduct as to each class member, Plaintiff now seeks to certify the following class of employees: all individuals who used a finger scanner on a timeclock while working for Speedway in the State of Illinois between September 1, 2012 and November 1, 2017.

Because Plaintiff and each such employee was the subject of the same conduct by Speedway, the class well meets the standard for certification under Rule 23. The numerosity, adequacy, and superiority requirements are all met. And because of Speedway's conduct, the case poses a host of common questions: (1) whether Speedway collected protected biometric information from him and each member of the Proposed Class, 740 ILCS 14/10, (2) whether Speedway failed to get a written release from him or the members of the Proposed Class, 740 ILCS 14/15(b), and (3) whether Speedway created (or adhered to) a publicly-available retention policy, 740 ILCS 14/15(a). Speedway, for its part, will argue that the answer is "no" to each of these merits questions, but would do so in the same way as to each class member. The Court need not decide who is right for purposes of this class certification motion. The point is that both Parties will be using the same evidence to answer the same questions in the case—making the class an ideal one for certification. *See Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011). ("That common contention . . . must be of such a nature that it is capable of classwide resolution—which

means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."). Plaintiff's motion for class certification should be granted.

## II.    RELEVANT BACKGROUND

### A.    The Illinois Biometric Information Privacy Act.

In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). One company, Pay By Touch, provided Illinois retailers with fingerprint scanners that allowed consumers to pay for goods and services. (*See* Compl. ¶ 17). In 2007, Pay By Touch filed for bankruptcy. (*Id.*) The Illinois legislature was alarmed by the risk that the millions of fingerprint records amassed by Pay By Touch would be sold as an asset, distributed or otherwise disclosed through the bankruptcy. (*Id.*) Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; *see also* 740 ILCS 14/5. BIPA's legislative findings make clear that the General Assembly sought to protect Illinois residents from the unique vulnerability that biometrics pose:

> Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

740 ILCS 14/5(c).

Under BIPA, private entities are prohibited from capturing, possessing, purchasing, or disseminating an individual's biometric data without first complying with specific, though easy-to-follow requirements. *See* 740 ILCS 14/10.  Private entities, like Speedway, must obtain an

2

express written release from the individual following a written disclosure informing them of the collection, use, and storage (and specific purpose and duration of such collection, use, and storage) of their biometric data. 740 ILCS 14/15(a)-(b). BIPA also specifically prohibits private entities in possession of biometric data from "disclos[ing], redisclose[ing], or otherwise disseminat[ing] a person's or customer's biometric identifiers or biometric information" unless disclosed to and authorized by the individual. 740 ILCS 14/15(d). The Illinois legislature provided a private right of action to enforce BIPA rights, as well as a statutory remedy. 740 ILCS 14/20.

### B. Speedway's Use of Biometric Timeclocks and Evidence of Lack of Compliance with BIPA.

#### 1. Speedway required all of its employees to use materially-identical finger scanners during the class period.

Plaintiff brought this class action against Speedway for invading his and other similarly-situated employees' privacy by unlawfully collecting, using, storing, and disseminating their biometric data in violation of BIPA. *See generally*, Compl. Throughout the class period, Speedway required employees, including Plaintiff and the putative class members, to scan their fingerprints on biometric timeclocks, enabling Speedway to use them as an authentication method to track work time. Exhibit 1, Dep. Tr. of Christopher Howe ("Howe Tr.") at 56:3-8; 91:9-12; 97:2-10; 99:24-100:9; 103:3-8; Exhibit 2, Declaration of Holly McMahan ("McMahan Dec.") at ¶ 4; Exhibit 3, Dep. Tr. of Matthew Green ("Green Tr.") at 27:15-29:15; Exhibit 4, Dep. Tr. of Nicole Karlson ("Karlson Tr.") at 33:12-17; 35:23-36:19; 42:23-43:8; 50:20-24; Exhibit 5, Dep. Tr. of Kelli Jones ("Jones Tr.") at 55:23–56:7. During the proposed class period, more than 7,000 employees enrolled in Speedway's finger-scan timekeeping system between September 1, 2012 and November 1, 2017. Exhibit 6, Def's Answers to Pl.'s Interrogatories at ¶ 22.

Plaintiff began working for Speedway as a management trainee in September 2015 and worked at various Speedway locations in Illinois until May 2017. Howe Tr. at 13:10–16:20. Like the other members of the class, he provided his fingerprints to Speedway. *Id.* at 21:9-13. As a condition of employment, Speedway required Howe, and all other similarly-situated employees, to use the biometric timekeeping system to track their time worked at its locations throughout Illinois. Compl. at ¶¶ 2, 29; Howe Tr. at 56:3-8; 80:9-11; 91:9-12; 97:2-10; 99:24-100:9; 103:3-8; McMahan Dec. at ¶ 4; Green Tr. at 87:14-24; Karlson Tr. at 22:3-5; 35:23-36:19; Exhibit 7, Dep. Tr. of Diana Anderson ("Anderson Tr.") at 19:9-22; Jones Tr. at 134:11-16. Speedway purchased its biometric timekeeping devices from TimeLink until it was acquired by Kronos in 2013, at which time Kronos began supplying additional biometric timekeeping devices known as "InTouch." Jones Tr. at 47:21-25; 48:1-7; Green Tr. at 14:22–15:5, 15:6-9, 25:3-19; Exhibit 8, Dep. Tr. of Kostas Mallias ("Mallias Tr.") at 17:6-8. The Kronos devices use the same software and function in the same manner as the TimeLink devices. Mallias Tr. at 138:15–139:5; Green Tr. 41:6-10; Jones Tr. at 47:21-25. Regardless of the device, Speedway did not secure written consent from employees before enrolling them. Green 46:13-17; Howe Tr. at 37:6-11; 75:10-14; 81:7-10; McMahon Dec. at ¶ 12; Karlson Tr. at 35:23-36:19.

Speedway required each of its similarly-situated employees to enroll their fingerprints into one of its biometric timeclocks. Green Tr. 28:25-29:15; Jones Tr. 59:20–60:3; Karlson Tr. 35:23-36:19; 37:4-38:9; Howe Tr. 56:3-8; 91:9-12; 97:2-10; 99:24-100:9; 103:3-8; McMahan Dec. at ¶ 4. Employees who worked at more than one Speedway location were required to re-enroll their fingerprints into the timeclock at each new location. Green Tr. 34:16–35:1; Jones Tr. 90:15–91:1; Howe Tr. 41:16-22; 59:15-60:16; 103:3-8; McMahan Dec. at ¶ 7; Karlson Tr. 59:13-20; 103:24-

104:2. The enrollment practices are consistent across all Speedway locations throughout Illinois. Karlson Tr. 37:4-38:9; Howe Tr. 41:16-22; 59:15-60:16; 103:3-8; McMahan Dec. at ¶ 7.

Karlson Tr. 37:4-38:9; Green Tr. 29:4-15; Jones Tr. 56:13–57:3; 58:2-9; 97:18-98:7; Howe Tr. 41:16-22; 59:15-60:16; 103:3-8; McMahan Dec. at ¶ 5; Exhibit 9, To enroll an employee, a manager would first log into the device. Howe Tr. 59:18-60:16; Karlson Tr. at 37:17-38:9. Next, the manager would enter the employee's ID number and have the individual place their finger on the biometric scanner, which reads the ridges and patterns on the bottom of the person's fingertip. Howe Tr. at 59:18-60:16; Green Tr. at 29:7–30:9; 31:8-13; Jones Tr. at 56:13–59:23; Karlson Tr. at 37:11-38:9; 50:20-51:15. The device would then prompt the individual to scan their fingerprint three times. Howe Tr. at 60:9-10; Green Tr. at 29:4-15; McMahan Dec. at ¶ 5. Karlson Tr. at 66:22-67:3. To use the timeclock, employees place the same finger used during enrollment on the scanner. Howe Tr. at 60:13-16. The enrollment process was consistent throughout the entire statutory period, as was the method used to clock in and out for work each day. Howe Tr. at 59:18-60:16; 103:3-8; McMahan Dec. at ¶ 9; Karlson Tr. at 37:12–38:9; Green Tr. at 28:25-29:15; Jones Tr. 59:20–60:3. During the proposed class period, Speedway utilized a couple different models of biometric timeclocks in Illinois. Jones: 47:21-25; 65:19–67:25; Green Tr. 15:6-9; 25:3-19; 46:5–47:10. While there were insignificant differences in the hardware, the software deployed by Speedway used the same method for collecting, storing, and using employee biometric data. Mallias Tr. 138:15–139:5. Green Tr. 41:6-10; 46:5–47:10; Jones Tr. 65:19–67:25.

In fact, the same manufacturer that TimeLink used is the same as that used by Kronos. Mallias Tr. 138:24-139:5. Plainly, Speedway's policies and practices for utilizing the biometric timeclocks was consistent and uniform throughout the entire proposed class period subjecting Plaintiff and putative class members to identical BIPA violations.

### 2. Speedway's compliance efforts (or lack thereof) were the same for each class member during the class period.

During the class period, Speedway did not seek or obtain the written consent of its employees before enrolling them on its biometric timeclocks and collecting their fingerprints. Howe Tr. at 37:6-11; 80:1-7; 81:7-10; McMahan Dec. at ¶ 12; Green Tr. at 32:18–33:2; 46:13-17; 88:21-25; Jones Tr. at 71:5–72:2. Karlson Tr. at 26:20–27:4. Testimony in the case shows that Speedway did not adopt any measures to ensure its use of biometric timeclocks was BIPA-compliant until November 2017 at the earliest. Jones Tr. at 23:11-20; 24:12-15; 105:21-106:16; 112:25-113:18; 126:5-12; Karlson Tr. at 23:5-24:17; 25:13-15; 26:6-10; 26:20-27:4; 28:1-4; 43:24-44:14; 80:7-16; Howe Tr. 37:6-11. There is, similarly, no evidence that Speedway made any effort to develop any biometric policy that complies with BIPA prior to November 2017. Karlson Tr. at 24:8-13; 26:20-27:4; 43:24-44:20; 81:5-11; 89:12-90:8; Anderson Tr. at 39:3-5; 65:7-13; Jones Tr. at 38:10-11; 71:5-72:14; 76;18-19; 108:3-8; 112:25–113:18; 135:13-16; 136:2-19; 137:6-17; Green Tr. at 32:18-22; 46:13-17; 47:21-24; 51:7-11; 88:20-89:8; Howe Tr. at 37:6-11; 80:1-7; 81:7-10; McMahon Dec. at ¶¶ 12-15.[1] Speedway rolled out its first BIPA consent form on November 1, 2017. Jones Tr. at 45:3-10; Green Tr. at 32:18-22; 46:13-17; 47:21-24; 51:7-11; 84:9-13; 88:21-25; Karlson Tr. at 26:20-24; 27:2-4; 43:24-44:4; Exhibit 10, Speedway

---

[1] It was not until an August 2017 news article about a BIPA lawsuit filed against one of its timekeeping vendors that Speedway finally investigated whether its conduct in harvesting, storing, and using its employees' biometric data ran afoul of the statute. Jones Tr. at 23:11-20; 24:12-15; 126:8-12. Karlson Tr. at 22:13–23:14; Green Tr. 78:7-21.

Acknowledgement and Release Regarding Information Collection Practices. Speedway instituted a biometric retention schedule and destruction guidelines in November 2017 at the earliest. Karlson Tr. at 44:11-20. Green Tr. at 32:23-33:2; 89:1-8; Jones Tr. at 72:3-14; Howe Tr. at 37:6-11; 81:7-10; McMahon Dec. at ¶ 14. The class period accordingly ends on November 1, 2017.

Plaintiff seeks to certify a class to determine whether Speedway violated two provisions of BIPA on a class-wide basis: Section 15(b) (requiring informed written consent) and 15(a) (requiring a publicly-available retention and destruction policy). First, Plaintiff alleges that Speedway violated Section 15(b) by collecting employees' biometric data without providing them written disclosures about Speedway's collection and use of the data, and without obtaining the employees' written consent. *See* 740 ILCS 14/15(b)(3); *See also* Compl. ¶ 71; Howe Tr. at 80:1-7; 81:7-10; McMahon Dec. at ¶¶ 12-13; Green Tr. at 88:21-25; Jones Tr. at 71:5-14; Karlson Tr. at 43:24-44:14. Second, Plaintiff alleges that Speedway violated Section 15(a) by possessing employees' biometric data without creating and adhering to a biometric retention schedule and destruction guidelines, including failing to destroy their data once the purpose of collection was satisfied. *See* 740 ILCS 14/15(a); *See also* Compl. At ¶¶ 41, 74; Jones Tr. at 72:3-14; Green Tr. at 32:23–33:2; Howe Tr. at 61:16-62:4; McMahan Dec. at ¶ 14; Karlson Tr. at 44:15-20.

## III.   PROPOSED CLASS DEFINITION

Plaintiff seeks to certify the following class under Fed. R. Civ. P. 23(b)(3):

All individuals who used a finger scanner on a timeclock while working for Speedway in the State of Illinois between September 1, 2012 and November 1, 2017.

The members of the putative class are easily ascertainable based on Speedway's personnel and timekeeping system records.

**IV.**     **THE CLASS MEETS ALL RULE 23 REQUIREMENTS FOR CERTIFICATION**

**A.  Standard for Certification Under Rule 23(b)(3).**

Plaintiff seeks to certify a class under Rule 23(b)(3). Accordingly, plaintiff must first demonstrate the action satisfies the four threshold requirements of Rule 23(a): (1) numerosity (the class must be so large that individual joinder is "impracticable"); (2) commonality (questions of law or fact common to the class); (3) typicality (named plaintiff's claims are typical of the class's claims); and; (4) adequacy of representation (the class representative must be able to fairly and adequately protect class interests). *Id*.; Fed. R. Civ. P. 23(a) (1)-(4). Second, the plaintiff must also show that the class meets the 23(b)(3) certification requirements: (1) the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and, (2) a class action is superior to other available methods of resolving the controversy. *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 811 (7th Cir. 2012); Fed. R. Civ. P. 23(b)(3).

Plaintiff bears the burden of showing that class certification is appropriate. *Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013). But the showing need not be "to a degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence*." Messner*, 669 F.3d at 811. The district court possesses broad discretion in determining whether that burden is met. *Reed v. Brex., Inc*., 2020 WL 584298, at *1 (S.D. Ill. Feb. 6, 2020).

**B.  The Class Meets the Requirements of Rule 23.**

Plaintiff's claims are especially suited for class certification because Speedway treated all putative class members identically with respect to the alleged BIPA violations. Specifically, Speedway required everyone to use materially-identical finger scanners, and had the same position

with regard to BIPA compliance with respect to each class member—none. The class of more than 7,000 employees also meets the numerosity requirements, and both Plaintiff and his counsel are more than adequate to prosecute the action. Because of the nature of the conduct, courts have routinely certified more complex BIPA actions than this one, and this Court should similarly grant the motion. *See Alvarado v. International Laser Products, Inc.,* 2019 WL 337995 (N.D. Ill. June 19, 2019); *In re Facebook Biometric Information Privacy Litig.*, 326 F.R.D. 535, 542 (N.D. Cal. 2018) *aff'd sub nom. Patel v. Facebook Inc.,* 932 F.3d 1264, 1277 (9th Cir. 2019).

1. **The class is so numerous that joinder of all members is impracticable - Rule 23(a)(1).**

A class must be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). Impracticability is not a synonym for impossibility; rather, joinder is impracticable if it would be difficult or inconvenient. *Andersen v. Weinert Enterprises, Inc.,* 986 F.3d 773, 777 (7th Cir. 2020). Although there is no magic number for establishing numerosity, a class including more than 40 members is generally sufficient. *Mulvania v. Sheriff of Rock Island Cnty.,* 850 F.3d 672, 677 (7th Cir. 2009). Here, there can be no serious dispute that the proposed class meets the numerosity requirement. Speedway avers that from Sept. 1, 2012 to Sept. 1, 2017, 7,246 employees enrolled in and used its biometric timeclocks in Illinois, which does not even account for those enrolled after this time but before the consent forms were eventually rolled out. Exhibit 6, Def's Answers to Pl.'s Interrogatories at ¶ 22.

2. **There are questions of law and fact that are common to the class – Rule 23(a)(2).**

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Even a single common question is enough to satisfy the commonality requirement. *Dukes*, 131 S. Ct. at 2556. Commonality requires a common issue capable of class-wide resolution, "which means that a determination of its truth or falsity will resolve an issue that

is central to the validity of each one of the claims in one stroke." *Id.* at 2551. Plaintiffs must show "that they share some question of law or fact that can be answered *all at once* and that the *single answer* to that question will resolve a central issue in all class members' claims." *Jamie S. v. Milwaukee Pub. Schs.,* 668 F.3d 481, 497 (7th Cir. 2012); *Starr v. Chicago Cut Steakhouse, LLC*, 75 F. Supp. 3d 859, 872 (N.D. Ill. 2014). A common question may be shown where claims of individual members are based on the common application of a statute or where class members are aggrieved by the same or similar conduct. *Flynn v. FCA US LLC*, 327 F.R.D. 206, 222 (S.D. Ill. 2018). Where the plaintiff presents evidence that the defendant engages in standardized conduct against the proposed class members, the legality of which is an "outcome determinative issue," commonality is met. *Healy v. Int'l Bhd. of Elec. Workers, Local Union No. 134,* 296 F.R.D. 587, 592 (N.D. Ill. 2013). "The 'critical point' is the 'need for *conduct* common to members of the class.'" *Magpayo v. Advocate Health & Hosps. Corp.*, 2018 WL 950093, at *11 (N.D. Ill. Feb. 20, 2018) (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)) (emphasis in original).

At the heart of this litigation is the culpable conduct of Speedway under BIPA. The issues are simple and straightforward legal questions that plainly lend themselves to class-wide resolution, including: (1) whether Speedway collected, captured, or otherwise obtained Plaintiff's and putative class members' protected biometric data; (2) whether Speedway properly informed Plaintiff and putative class members of its purposes for collecting, using, and storing their biometric data; (3) whether Speedway obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and putative class members' biometric data; and (4) whether Speedway developed a publicly-available written policy establishing a retention schedule and guidelines for permanently destroying biometric data when the initial purpose for collecting or

obtaining such biometric data has been satisfied or within three years of their last interaction, whichever occurs first.

As discussed above, Speedway treated the entire Proposed Class in exactly the same manner: it required them to enroll on biometric timeclocks, and did not have consent or retention policies in place. Throughout the class period, Speedway required Plaintiff and the putative class members to provide their fingerprints to enable Speedway to use them as an authentication method to track time worked. Howe Tr. at 56:3-8; 91:9-12; 97:2-10; 99:24-100:9; 103:3-8; McMahan Dec. at ¶ 4; Green Tr. at 27:15-29:15; Karlson Tr. at 33:12-17; 35:23-36:19; 42:23-43:8; 50:20-24; Jones Tr. at 55:23-56:7. However, before taking fingerprints from Plaintiff and the putative class, Speedway did not inform them in writing that their biometric information was being collected, inform them of the purposes and length of time for which their fingerprints were being harvested and used, and did not secure a written release to do so. Howe Tr. at 37:6-11; 80:1-7; 81:7-10; McMahan Dec. at ¶ 12; Green Tr. at 32:18-33:2; 88:21-25; Jones Tr. at 71:5-72:2; Karlson Tr. at 26:20-27:4. Finally, Speedway failed to develop and adhere to a biometric retention schedule and destruction guidelines, including failure to destroy Plaintiff's and putative class members' biometric information once the purpose of collection was satisfied. Jones Tr. at 72:3-14; Green Tr. at 32:23-33:2; Howe Tr. at 61:16-62:4; McMahan Dec. at ¶ 14; Karlson Tr. at 44:15-20.

To be clear: the Court need not make a merits determination as to whether Speedway's classwide conduct violated BIPA now. Instead, it is sufficient that Speedway's approach to BIPA compliance was materially the same with respect to the members of the Proposed Class. Speedway is sure to make its arguments that it was not required to comply with BIPA, or that its actions were sufficient, but these too will be common across the class. The merits adjudication of these questions, accordingly, will be common across the class. Not only are there common questions,

but as discussed below, those common questions are the entire litigation: the Court will effectively be able to decide liability in one stroke.[2]

### 3. Plaintiff's claims are typical of the claims or defenses of the class – Rule 23(a)(3).

Typicality and commonality are closely related. *Flynn,* 327 F.R.D. at 223. Claims of the class representatives and class members are typical if they arise from the same practice or course of conduct and are based on the same legal theory. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). "Typical does not mean identical, and the typicality requirement is liberally construed.*" In re General Motors Corp. Dex-Cool Products Liab. Litig*., 241 F.R.D. 305, 312 (S.D. Ill. 2007) Typicality is meant to ensure that the claims of the class representatives have the "same essential characteristics as the claims of the class at large." *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 412 (N.D. Ill. 2012) (citing *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993)).

Given that common issues of law and fact abound, Plaintiff's BIPA claims are "typical" of those of putative class members because they arise from the same course of action (or inaction) by Speedway: the failure to comply with BIPA when collecting, obtaining, using, and storing its employees' biometric data. While there may be immaterial factual differences between claims of the Plaintiff and those of other putative class members—for example, different store location in Illinois—their claims are nevertheless based on the same legal theory. *Pietrzycki v. Heights Tower*

---

[2] The Ninth Circuit affirmed a district court's order granting class certification under BIPA where the plaintiffs raised common questions that overlap with those raised here: whether the defendant's biometric technology harvested "biometric identifiers" as contemplated by BIPA and, if so, did the defendant give prior notice of the practice and obtain consent. *See In re Facebook Biometric Information Privacy Litig.*, 326 F.R.D. 535, 545 (N.D. Cal. 2018) (finding commonality and predominance was met by a proposed class made of Facebook users in Illinois for whom Facebook created and stored a face template) *aff'd by Patel v. Facebook*, 932 F.3d 1264, 1275-77 (9th Cir. 2010), *cert denied* 2020 WL 283288 (Jan. 21, 2020).

*Serv., Inc.*, 197 F. Supp. 3d 1007, 1022 (N.D. Ill. 2016) (typicality requirement met where plaintiff's claims are "based on the exact same alleged practice and course of conduct that gives rise to the other proposed class members' claims" and "claims are based on the same legal theory"); *Moreno v. Napolitano*, 2014 WL 4911938, at *9 (N.D. Ill. Sept. 30, 2014) ("[S]imilarity of legal theory may control even in the face of differences of fact") (internal quotations omitted).

Plaintiff, like each of the other putative class members, was required to disclose his fingerprint each time he clocked in and out of work. Howe Tr. at 41:16-22; 56:3-8; 80:9-22; 91:9-12; 97:2-10; 99:24-100:9; 103:3-8; McMahan Dec. at ¶ 4; Green Tr. at 27:15-29:15; Karlson Tr. at 33:12-17; 35:23-36:19; 42:23-43:8; 50:20-24; Jones Tr. at 55:23-56:7. Each putative class member, regardless of their job title or employment location, was subject to the same uniform timekeeping policies of Speedway. Green Tr. at 27:22-23, 28:8-12; Howe Tr. at 41:16-22; 56:3-8; 80:9-22; 91:9-12; 97:2-10; 99:24-100:9; 103:3-8; McMahan Dec. at ¶ 4; Karlson Tr. at 33:12-17; 35:23-36:19; 42:23-43:8; Jones Tr. at 55:23-56:7. These facts establish that Plaintiff's injury is one and the same as all putative class members, and is therefore typical of the entire proposed class.

**4. The Named Plaintiff will fairly and adequately assert and protect the interests of the class – Rule 23(a)(4).**

The adequacy requirement is meant to assure that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Courts determine adequacy by examining two main factors: (1) the plaintiff's ability to ensure vigorous advocacy on behalf of the class without interests antagonistic to the class; and (2) the adequacy of the named plaintiff's counsel to fairly and adequately represent the interests of the class. *Korte v. Pinnacle Food Groups LLC,* 2019 WL 4305464, at *6 (S.D. Ill. Sept. 11, 2019). To be an adequate representative, the named plaintiff "must be part of the class and possess the same interest and suffer the same injury

as the class members." *Pietrzycki*, 197 F. Supp. 3d at 1018 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). Absent any conflict between the interests of the representative and other class members, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed. *Id.* at 1018-19. As explained below, Plaintiff asserts the same claims as the class; he understands his role as proposed class representative and will do what it takes to fulfill that role.

### i. There is no conflict of interest between Named Plaintiff and the class members.

Here, Named Plaintiff Christopher Howe is a member of the putative class he seeks to represent and will fairly and adequately protect the interests of the putative class members. Plaintiff worked for Speedway from September 2015 to May 2017. Howe Tr. at 13:10-16:20. Plaintiff, like all putative class members, was enrolled in Speedway's biometric timekeeping system using his fingerprint, and he did not, as the other putative class members did not, receive proper notice or give written consent. Howe Tr. at 21:9-20; 37:6-11; 41:16-22; 56:5-8; 99:24-100:12; 103:3-8; Green Tr. at 32:18–33:2, 46:13-17, 88:21-25; Karlson Tr. at 26:20–27:4; 27:2-4; 43:24-44:4; Jones Tr. 71:5-14. Nor did Speedway have a publicly-available retention schedule and destruction guidelines when Howe gave his fingerprint. Jones Tr. at 72:3-14; Green Tr. at 32:23-33:2; Howe Tr. at 61:16-62:4; McMahan Dec. at ¶ 14; Karlson Tr. at 44:15-20. Thus, Plaintiff has the same claims for statutory damages as the proposed class. And, Plaintiff is not pursuing any individual claims in the case or claims that conflict with the proposed class. Because Plaintiff is not seeking different relief for himself than he is seeking for the proposed class, there is no tension between his claims and those of the other putative class members.

Plaintiff has shown his commitment to vigorous litigation by assisting Plaintiff's Counsel in preparing the Complaint and the instant motion, and he has also answered interrogatories,

provided documents, sat for deposition, and otherwise assisted Plaintiff's Counsel in understanding his claims and Speedway's defenses. Exhibit 11, Declaration of Andrew C. Ficzko ("Ficzko Dec.") at ¶ 8. Under this standard, it is sufficient for proposed class representatives to have an "understanding of the basic facts underlying the claims, some good general knowledge, and a willingness and ability to participate in discovery." *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007) (quotations and citations omitted). The burden here is "not difficult" to meet. *Id.* In addition, Plaintiff does not have any interests antagonistic to the class. Plaintiff has the same interest and has suffered the same violations of his privacy rights as the proposed class members. This qualifies him as a conscientious representative plaintiff that satisfies the adequacy of representation requirement.

### ii. Class counsel is experienced and qualified.

Plaintiff's Counsel, Stephan Zouras, LLP and Edelson PC are also qualified and able to conduct the proposed litigation on behalf of the class. Under Rule 23(g), courts consider: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g). Those requirements are met here.

Plaintiff's Counsel have developed the facts necessary for class certification through written and oral discovery in this case and are ready and able to prosecute the class claims to completion. Plaintiff's Counsel are highly experienced class action attorneys and have been deemed adequate class counsel in scores of employment cases, including BIPA cases. *See* Exhibit 11, Ficzko Dec. and the Firm Resume attached thereto as Exhibit A-1. For example, in early 2017, Stephan Zouras, LLP filed one of the first BIPA class actions in the employment context. *Doporcyk*

*v. Roundy's Supermarkets, Inc., et al.*, 17-CH-08092 (Cook Cty. Cir. Ct. Jun. 09, 2017). The firm has been appointed class counsel in dozens of BIPA cases and has secured several favorable rulings for aggrieved individuals at both the appellate and trial court levels in connection with novel issues and defenses asserted under BIPA, including that BIPA claims are not subject to arbitration as "wage and hour" claims, *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, the Constitutionality of BIPA, *Bruhn v. New Albertson's*, 2018-CH-01737 (Cir. Ct. Cook Cty. Jan. 30, 2020) (J. Loftus), the inapplicability of BIPA's "HIPAA exemption" to employees, *e.g., Bruhn v. New Albertson's Inc., et al.*, No. 18-CH-01737 (Cir. Ct. Cook Cty. July 2, 2019) (J. Loftus), on when BIPA claims accrue, specifically each time an entity collects or disseminates biometric information without securing prior informed consent and a release, *Cothron v. White Castle System, Inc.*, 477 F. Supp. 3d 723 (N.D. Ill. 2020), and most recently, on the statute of limitations period which governs BIPA claims. *Tims v. Black Horse Carriers*, 2021 IL App (1st) 200563, ¶ 33 (Sept. 17, 2021) (holding that claims under Sections (a), (b) and (e) are subject to a 5-year statutory period, while claims under Sections (c) and (d) are subject to a 1-year statutory period). Ficzko Dec. 7. Stephan Zouras, LLP has also achieved significant BIPA settlements on behalf of hundreds of thousands of Illinoisans. (*See* Ficzko Dec. 6 and Stephan Zouras, LLP Firm Resume.)

Furthermore, proposed class counsel Edelson PC has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Edelson PC is a national leader in high stakes' plaintiffs' work ranging from class and mass actions to public client investigations and prosecutions. Exhibit 12, Declaration of J. Eli Wade-Scott ("Wade-Scott Dec.") and the Firm Resume of Edelson PC, attached as Exhibit A-1 to Wade-Scott Dec.) The firm holds records for the largest jury verdict in a privacy case ($925 million), the largest consumer privacy settlement ($650 million), and the largest Telephone Consumer Protection Act ("TCPA")

settlement ($76 million). (*Id.*) The firm filed the first-ever class action under BIPA against Facebook, *Licata v. Facebook, Inc.*, No. 2015-CH-05427 (Cir. Ct. Cook Cty. Apr. 1, 2015), secured the first-ever adversarially-certified BIPA class in that case and defended the ruling in the Ninth Circuit, *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (upholding adversarial BIPA class certification), *cert. denied Facebook, Inc. v. Patel*, 140 S. Ct. 937 (2020), and obtained final approval of a settlement agreement with Facebook to resolve the case for $650 million. *In re Facebook Biometric Info. Privacy Litig.*, No. 15-CV-03747-JD, dkt. 537 (N.D. Cal. Feb. 26, 2021) (granting final settlement approval). The firm is responsible for the first-ever BIPA settlement, *see Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cty.), and has paved the way to many of the favorable appellate decisions for BIPA plaintiffs. *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175 (pre-*Rosenbach*, holding violation of statute sufficient for plaintiff to be "aggrieved"); *Rottner v. Palm Beach Tan, Inc.*, 2019 IL App (1st) 180691-U (violation of statute sufficient to claim liquidated damages); *McDonald v. Symphony Bronzeville Park LLC*, 2020 IL App (1st) 192398 (holding that the exclusivity provisions of the Illinois Workers' Compensation Act ("IWCA") do not bar employee BIPA claims against employers).

Thus, proposed class counsel, too, are adequate and have the ability and resources to manage this lawsuit.

### C. Named Plaintiff's Claims Satisfy the Requirements of Rule 23(b)(3).

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Certification is appropriate under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and … a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff's claims meet these standards.

### 1. Common questions of law and fact predominate.

The predominance issue goes to the efficiency of a class action as an alternative to individual suits and tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Flynn*, 327 F.R.D. at 224 (quoting *Amchem*, 521 U.S. at 623). Common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense. *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 444 (7th Cir. 2015).

The Seventh Circuit has emphasized that the "predominance requirement is satisfied when 'common questions represent a significant aspect of [a] case and … can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (quoting 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (3d ed. 2011)). If a significant aspect of the case "is capable of proof at trial through evidence that is common to the class rather than individual to its members," predominance is met. *Id.* at 818. This does not mean individual questions must be absent. "The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Id.* at 815. Common questions predominate "[i]f resolving a common issue … greatly simplify[ies] the litigation to judgment or settlement of hundred[s] or thousands of claimants." *Parko v. Shell Oil Co.,* 739 F.3d 1083, 1085 (7th Cir. 2014). "Courts have held that analysis of these factors requires a comparative examination; courts must assess efficiency with an eye toward other available methods of managing the claims of the proposed class members." *Reed,* 2020 WL 584298, at *5 (S.D. Ill. Feb.

6, 2020) (citing *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 664 (7th Cir. 2015)).

Plaintiff's claims satisfy Rule 23(b)(3) because common questions predominate over individual issues. As explained above, proposed class members were uniformly subjected to the same conduct: Speedway required them to provide their fingerprints, while Speedway had the same non-existent approach to BIPA compliance. Speedway required Plaintiff and all other similarly-situated employees, to enroll in its biometric timeclock system when they started working for the company, but Speedway failed to secure his or other putative class member's informed, written consent for Speedway's collection, capture, storage, use, and dissemination of their biometric data. Nor did Speedway develop or adhere to publicly-available retention and destruction guidelines. Any individualized questions as to which Speedway location class members worked when using the biometric timeclocks would not preclude predominance, because the collection of each class members' biometric data is the same irrespective of location. Whether Speedway violated BIPA can therefore be determined for the entire class in a single adjudication, without considering individualized issues.

Because these common questions are subject to generalized proof for all class members, and the answers to those questions will determine liability, they plainly predominate. *See In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 545 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) ("As an initial matter, there is no doubt that a template-based class poses common legal and factual questions, namely: did Facebook's facial recognition technology harvest biometric identifiers as contemplated under BIPA, and if so, did Facebook give users prior notice of these practices and obtain their consent?"); *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 378–79 (7th Cir. 2015) (predominance satisfied because the class members' claims would prevail or fail in unison based on whether the employer had an unofficial

policy that prohibited or discouraged employees from receiving overtime pay); *Roberson v. Symphony Post Acute Care*, Case No. 17-L-733 (Cir. Ct. St. Clair County, Mar. 12, 2019) (attached as Exhibit 13) (granting class certification when the case involved a single statutory scheme – BIPA – and the primary issues were whether defendant captured biometric information and, if so, did they comply with BIPA while doing so) *modified, in part, on other grounds by* 2019 IL App (5th) 190144-U (Nov. 2, 2019). Thus, Plaintiff's claims are based on the same BIPA violations as the rest of the putative class members. As such, once the Court determines whether Speedway's practices constituted violations of BIPA, liability for the claims of all class members will be determined in one stroke.

### 2. A class action is superior to individual lawsuits.

Finally, a class action is the most appropriate method for the fair and efficient adjudication of this controversy, rather than bringing individual suits, which could result in inconsistent determinations and unjust results. The superiority requirement is satisfied when "a class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.*" Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 304 (N.D. Ill. 2010) (*quoting Amchem*, 521 U.S. at 615).

Here, Plaintiff's claims stem from Speedway's common, uniform failure to create and adhere to publicly-available retention and destruction guidelines and to obtain informed written consent prior to collecting, capturing, storing, using, and disseminating Plaintiff's and putative class members' biometric data, which resulted in common violations of BIPA for all members of the class. Thus, class certification will obviate the need for unduly, duplicative litigation that might result in inconsistent judgments concerning Speedway's practices. Without a class, the Court

would potentially have to hear dozens of additional individual cases raising identical questions of liability. Moreover, class members are better served by pooling their resources together, rather than attempting to litigate their claims individually. *Reed*, 2020 WL 584298, at *5 (finding "it is in the best interests of all class members to pursue their claims in the manner resulting in the least individual financial burden."). In the interests of justice and judicial efficiency, it is desirable to concentrate the litigation of all class members' claims into a single forum. For all of these reasons, a class action is the most appropriate and efficient mechanism to adjudicate the claims in this case.

## V.   <u>CONCLUSION</u>

For the reasons stated above, Plaintiff respectfully requests this Honorable Court enter an Order: (1) certifying Plaintiff's BIPA claims as a class action; (2) appoint Plaintiff Christopher Howe as Class Representative; (3) appoint Andrew C. Ficzko of Stephan Zouras, LLP and J. Eli Wade-Scott of Edelson PC as Class Counsel; and (4) authorizing court-facilitated notice of this action to class members.

Date:   October 25, 2021

Respectfully Submitted,

*/s/ Andrew C. Ficzko*
Andrew C. Ficzko

**One of Plaintiff's Attorneys**

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on October 25, 2021, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

*/s/ Andrew C. Ficzko*