# EXHIBIT 1

Christopher Howe vs. Speedway LLC et al.
No. 1:19-CV-01374

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 2 of 27 PageID #:1994

Christopher Howe
6/13/2019

```
 1              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3   CHRISTOPHER HOWE,              )
     individually and on behalf    )
 4   of all others similarly       )
     situated,                     )
 5                                 )   Case No.
            Plaintiff,             )   1:19-cv-01374
 6                                 )   Hon. Andrea R.
            vs.                    )   Wood
 7                                 )   Magistrate
     SPEEDWAY LLC and MARATHON     )   Judge Hon.
 8   PETROLEUM COMPANY,            )   Susan E. Cox
                                   )
 9          Defendants.           )
```

10          The videotaped deposition of CHRISTOPHER

11   HOWE, called by the Defendant for examination,

12   pursuant to Notice, and pursuant to the Rules of

13   Civil Procedure for the United States District

14   Courts, taken before Renee E. Brass, CSR, RPR at

15   111 South Wacker Drive, 47th Floor, Chicago,

16   Illinois, on June 13, 2019, at the hour of

17   10:15 a.m.

18

19

20

21

22

23

24

Christopher Howe vs Speedway LLC et al.
No. 1:19-CV-01374

Christopher Howe
6/13/2019

```
 1          PRESENT:

 2              STEPHAN ZOURAS, LLP
                BY: MR. ANDREW C. FICZKO
 3                  aficzko@stephanzouras.com
                    100 North Riverside, Suite 2150
 4                  Chicago, IL 60606
                    312.233.1550
 5
                        on behalf of the Plaintiffs;
 6
                SHOOK, HARDY & BACON, LLP
 7              BY: MR. MATTHEW C. WOLFE
                    mwolfe@shb.com
 8                  111 South Wacker Drive, 47th Floor
                    Chicago, IL 60606
 9                  312.704.7700

10                      on behalf of the Defendant.

11      ALSO PRESENT:

12          David Dominiak, videographer

13

14

15

16

17

18      Reported by:  Renee E. Brass, CSR, RPR
        CSR No. 084-004119 - Expiration Date:  May 31, 2021.
19

20

21

22

23

24
```

Case 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 4 of 27 PageID #:1596

```
 1              MR. WOLFE:  Matt Wolfe for defendants,

 2       Speedway LLC and Marathon Petroleum Company.

 3              MR. FICZKO:  Andy Ficzko on behalf of

 4       the plaintiffs.

 5              THE VIDEOGRAPHER:  Thank you.  Please

 6       proceed.

 7                    CHRISTOPHER HOWE,

 8  having been first duly sworn, was examined and

 9  testified as follows:

10                    EXAMINATION

11  BY MR. WOLFE:

12       Q.    Good morning, Mr. Howe.

13       A.    Good morning.

14       Q.    Could you state your name for the

15  record, please.

16       A.    Christopher Howe.

17       Q.    Where do you currently live?

18       A.    Bartlett.

19       Q.    Can you give me the full address?

    ███    ███        ████████████████████████████

    ███  ██████

22       Q.    Have you ever had your deposition taken

23  before?

24       A.    No, sir.
```

```
 1          A.    Correct.

 2          Q.    Okay.  And do you use the app to figure

 3    out how much product you have to pick up?

 4          A.    No.

 5          Q.    So how do you determine that?

 6          A.    Guesstimation.

 7          Q.    Where did you work before Pugs?

 8          A.    Speedway.

 9          Q.    How long were you there?

10          A.    A year and six months maybe.  It

11    was September '16 to -- I'm sorry.  September '15

12    into May of '17.

13          Q.    I think you got that exactly right based

14    on the records I have seen.

15                So what was your position at Speedway?

16          A.    General manager.

17          Q.    Did you start as a general manager?

18          A.    Trainee.

19          Q.    Okay.  So you were hired as a manager

20    trainee?

21          A.    Correct.

22          Q.    And were you the general manager of a

23    particular store, like a particular Speedway

24    location?
```

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 6 of 27 PageID #:1996

```
 1              A.      Before or after?

 2              Q.      Well, that's -- that's a good question.

 3     Sorry that was unclear.

 4                      So you started as a trainee?

 5              A.      Correct.

 6              Q.      And where were you -- where were you

 7     located then?

 8              A.      Glen Ellyn, Illinois.

 9              Q.      Okay.  And was there -- were you working

10     at a store location in Glen Ellyn?

11              A.      Yes.

12              Q.      And were you reporting to somebody at

13     that location like as a trainee?

14              A.      Correct.

15              Q.      Okay.  How long were you at the Glen

16     Ellyn location?

17              A.      Maybe a month.

18              Q.      Okay.  Can you describe generally what

19     the training consisted of in Glen Ellyn?

20              A.      Getting to know the register, food, how

21     to expire food, how to cook food, paperwork, daily

22     paperwork that was -- had to be done.

23              Q.      What kind of paperwork?

24              A.      As they would call it, end of day.
```

| 1 | Q. | So what does that mean? |

1      Q.    So what does that mean?

2      A.    You close-out the previous day and have

3  to enter in numbers to make sure that they married

4  up together.

5      Q.    By numbers, you mean like money numbers,

6  inventory?

7      A.    Sales numbers.

8      Q.    Sales numbers.  Okay.

9            After your month at Glen Ellyn, where

10 did you go next?

11     A.    Itasca.

12     Q.    And what was your position in Itasca?

13     A.    Same thing, trainee.

14     Q.    Okay.  And how long were you in Itasca?

15     A.    To October.

16     Q.    Was there anything different between

17 what your responsibilities were at Glen Ellyn and

18 Itasca?

19     A.    Yes.

20     Q.    What was different?

21     A.    He basically gave me the store to run as

22 I was an acting GM.

23     Q.    When you say "he," who do you mean?

24     A.    The GM of that store at the time.

Christopher Howe vs Speedway LLC et al.
No. 1:19-CV-01374

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 8 of 27 PageID #:2806

Christopher Howe
6/13/2019

```
 1        Q.    Okay.  Was that -- do you remember his

 2   name?

 3        A.    Kevin.

 4        Q.    Okay.  Was Kevin present as the GM?

 5        A.    Yes.

 6        Q.    But he was kind of stepping back,

 7   letting you run the store as if you were the GM?

 8        A.    Correct.

 9        Q.    Then was the idea that you would

10   eventually like be the GM of your own store?

11        A.    Correct.

12        Q.    Okay.  Where did you go after Itasca?

13        A.    Addison.

14        Q.    And when was that?

15        A.    October.

16        Q.    Of '16?

17        A.    '16.

18        Q.    Okay.  And did you become the GM of the

19   Addison store?

20        A.    Yes, I did.

21        Q.    So what were your responsibilities as

22   the GM of the Addison store?

23        A.    Run the store like it was my own store.

24        Q.    Okay.  And was that subject to, you
```

Christopher Howe vs Speedway 4 LLC et al.
No. 1:19-CV-01374

Christopher Howe
6/13/2019

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 9 of 27 PageID #:2801

```
 1    required?

 2         Q.    Both.

 3         A.    Almost weekly.

 4         Q.    That Umar would tell you you have to be

 5    working off the clock or that you would actually

 6    work off the clock?

 7         A.    That he would say it would be better to

 8    work off the clock.

 9         Q.    Okay.  And as a store GM, you clocked in

10    and out in order to get paid, right?

11         A.    Correct.

12         Q.    Using a time clock?

13         A.    Correct.

14         Q.    Okay.  Was your pay on an hourly basis?

15         A.    No.

16         Q.    You were paid salary?

17         A.    Correct.

18         Q.    But you had to clock in and out to show

19    the amount of hours you were on duty at the store?

20         A.    Correct.

21         Q.    Okay.  How often did you speak with

22    Umar?

23         A.    Almost daily.

24         Q.    In person or by phone or both?
```

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 10 of 27 PageID #:2002

```
 1          A.      The biometric system.

 2          Q.      Okay.   This -- so this form says -- it

 3    looks to me to be a Speedway form.  Is that your

 4    understanding as well?

 5          A.      Correct.

 6          Q.      Okay.   And it says form effective

 7    November 1, 2017?

 8          A.      Correct.

 9          Q.      Were you working at Speedway on

10    November 1, 2017?

11          A.      No.

12          Q.      How did you get a copy of the form?

13          A.      My girlfriend.

14          Q.      Does she still work there?

15          A.      No.

16          Q.      Did she work there at that time?

17          A.      Yeah.

18          Q.      This is Athena, right?

19          A.      Correct.

20          Q.      Okay.   How did it come about that -- was

21    this form -- was this taken like as a photograph by

22    somebody?

23          A.      Yes.

24          Q.      Who took the photograph?
```

Christopher Howe vs Speedway LLC et al.
No. 1:19-CV-01374

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 11 of 27 PageID #:2003

Christopher Howe
6/13/2019

```
 1    what this photograph is of?

 2         A.    The how you have to punch in and out.

 3         Q.    Okay.  Do you know where this picture

 4    was taken?

 5         A.    I don't remember.

 6         Q.    Do you know who took it?

 7         A.    I don't remember.

 8         Q.    Did you take it?

 9         A.    I believe not.

10         Q.    Did Athena take it?

11         A.    That one I'm unsure of.

12         Q.    Does this look like the clock that you

13    used to punch in and out when you worked at

14    Speedway?

15         A.    Yes.

16         Q.    Did you use a clock like this at every

17    location you worked at?

18         A.    Yes.

19         Q.    And you used a clock like this to punch

20    in and out every day at every location you worked

21    at?

22         A.    Yes.

23         Q.    Look -- just looking at the picture, I

24    understand that you are not sure where -- where it
```

Christopher Howe vs Speedway LLC et al.
No. 1:19-CV-01374

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 12 of 27 PageID #:2004

Christopher Howe
6/13/2019

1    Q.    So how would Rachel communicate to you,

2    you know, here's a new person who we hired?

3    A.    Phone call, email, in person.

4    Q.    Okay.  And then at some point they

5    would, like, show up to work, right?

6    A.    Correct.

7    Q.    And so how did you know when they were

8    coming in for the first time?

9    A.    Email.

10    Q.    From Rachel?

11    A.    Correct.

12    Q.    And so on that first day when the new

13    employee came in, what would you do?

14    A.    Had to punch them in.

15    Q.    Okay.  And that was using the time

16    clock?

17    A.    Correct.

18    Q.    Okay.  We'll go to that in a minute.

19          At the end and under I at the bottom

20    there it says:  All other similarly situated

21    employees who worked for defendants during the

22    relevant period of time.

23          Do you have an understanding of what

24    that means?

```
 1          A.     Yes.

 2          Q.     Can you explain?

 3          A.     It means everyone that was in the same

 4   situation I was at the time of this period.

 5          Q.     By "same situation," do you mean clocked

 6   in and out using one of the clocks in the photo

 7   that we talked about?

 8          A.     Yes.

 9          MR. WOLFE:  Okay.  We have been going

10      about an hour.  Do you want to take a break

11      or do you want to keep going?

12          MR. FICZKO:  Use the restroom real

13      quick.

14          MR. WOLFE:  Sure.  Let's take a quick

15      break.

16          THE VIDEOGRAPHER:  Going off the

17      record at 11:13 a.m.

18              (A recess was had.)

19          THE VIDEOGRAPHER:  Back on the record

20      at 11:20 a.m.

21   BY MR. WOLFE:

22          Q.     Mr. Howe, could you go back to the

23   picture of the time clock that we were looking at.

24   It's the very last page of Exhibit 1.
```

Christopher Howe vs Speedway LLC et al.
No. 1:19-CV-01374

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 14 of 27 PageID #:2008

Christopher Howe
6/13/2019

1     Q.   If -- like if somebody -- so let's say

2 somebody forgot to punch in and they punched in

3 45 minutes late, could you change it to punch in at

4 the right time?

5     A.   Correct.

6     Q.   If somebody forgot to punch in or out

7 entirely, you could go in and edit to put in the

8 correct time?

9     A.   Correct.

10    Q.   Okay.  When you got new employees, did

11 somebody have to show them how to use the clocks?

12    A.   Yes.

13    Q.   Who?

14    A.   Myself.

15    Q.   So you showed the new employees how to

16 use the clocks?

17    A.   Correct.

18    Q.   Did you enroll them into the clock so

19 that they would have their employee ID associated

20 with their finger?

21    A.   Correct.

22    Q.   Do you remember how that worked?

23    A.   Yes and no.

24    Q.   Tell me what you remember about it.

Christopher Howe vs Speedway LLC et al.
No. 1:19-CV-01374

Christopher Howe
6/13/2019

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 15 of 27 PageID #:2007

60

1      A.    I believe I would have to hit F1 and

2    that would be -- that would bring up a screen of

3    different things you could do.  You would have to

4    hit a certain number to do new enrollment, type in

5    their employee number, and then when you hit the

6    checkmark, it would ask you to put down your left

7    index finger, and if you didn't have it on there

8    tight enough, it would tell you to put it -- push

9    down harder.  Tell you to lift it up, tell you to

10    put it down three times.  Then it would ask you to

11    do your right index finger, same thing, and then

12    now -- and then it would say you are now stored.

13      Q.    And then once that information was

14    stored, could the employee clock in and out simply

15    by putting their finger on the clock?

16      A.    Correct.

17      Q.    Let's look at this.  This is going to be

18    Exhibit 3.

19               (Exhibit 3 marked for

20               identification.)

21    BY MR. WOLFE:

22      Q.    So this is a Speedway TimeLink.  Do you

23    remember ever seeing a document or a document like

24    that before?

Christopher Howe vs Speedway LLC et al.
No. 1:19-CV-01374

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 16 of 27 PageID #:2008

Christopher Howe
6/13/2019

1       A.      No, sir.

2       Q.      Okay.  Let's go to the third page of it.

3  It says 3778 at the very bottom under the 3.  So

4  this describes the enrollment process, and it seems

5  to me like you remembered it really well.

6               Do you see anything on here that's

7  inconsistent with the enrollment process as you

8  remember doing it?

9       A.      The enrollment -- enroll your employees

10 is pretty accurate.

11      Q.      Okay.  Do you see anything significant

12 that differs from what you remember?

13      A.      In the enrollment?

14      Q.      Yeah.

15      A.      No.

16      Q.      Did you ever delete employees from the

17 clock?

18      A.      No.

19      Q.      Did you ever have an employee leave

20 Speedway while you were a GM, an employee who

21 reported to you?

22      A.      Correct.

23      Q.      But you did not delete them from the

24 clock when they left?

```
 1        A.     No.

 2        Q.     Would you know how to delete an employee

 3   from the clock?

 4        A.     No.

 5        Q.     Did you ever have an employee who

 6   couldn't use the clock because, you know, their --

 7   their finger just wouldn't work on it?

 8        A.     Yes.

 9        Q.     What did you do then?

10        A.     You had to edit in TimeLink website.

11        Q.     On the back end?

12        A.     Correct.

13        Q.     Using the computer?

14        A.     Correct.

15        Q.     How many employees did you have who

16   couldn't use the clock?

17        A.     One.

18        Q.     What was -- what was that employee's

19   name?

20        A.     We called her CeCe.

21        Q.     Okay.  Did she work at Addison the whole

22   time you were there?

23        A.     We let her go eventually.

24        Q.     Okay.  Do you know approximately when
```

Christopher Howe vs Speedway LLC et al.
No. 1:19-CV-01374

Christopher Howe
6/13/2019

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 18 of 27 PageID #:2616

1     Q.    But you did not take them?

2     A.    No.

3     Q.    Okay.  Besides the break feature, are

4   there any other features on the clock that you are

5   aware of that anyone at Speedway, you or the people

6   you supervised or anybody else would have used?

7     A.    No.

8     Q.    Okay.  What are you -- what are you

9   suing for in this case?

10    A.    I am suing for Speedway and Marathon to

11  abide by the law.

12    Q.    And the law that you want Speedway and

13  Marathon to abide by is the BIPA law?

14    A.    Correct.

15    Q.    You worked for Speedway, right?

16    A.    Correct.

17    Q.    Why did you sue Marathon Petroleum

18  Company?

19          MR. FICZKO:  Objection, seeks a legal

20          conclusion.

21  BY MR. WOLFE:

22    Q.    You can answer.

23    A.    Marathon owns Speedway.

24    Q.    So your understanding is Marathon

Christopher Howe vs Speedway LLC et al.
No. 1:19-CV-01374

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 19 of 27 PageID #:2632

Christopher Howe
6/13/2019

```
 1        A.      After -- yes.

 2        Q.      How much are you looking for?

 3        A.      After doing some research and Googling

 4   things and looking, my understanding it could be

 5   anywhere from 1,000 to maybe 5,000.

 6        Q.      Would you take $1,000 to settle the

 7   case?

 8        A.      I don't know.

 9        Q.      Would you take $5,000?

10        A.      I don't know.

11        Q.      You were paid a salary when you were a

12   GM at Speedway, correct?

13        A.      Correct.

14        Q.      Do you think Speedway should have paid

15   you more in exchange for having you put your finger

16   on the time clock every day?

17             MR. FICZKO:  Objection, seeks a legal

18        conclusion.

19             THE WITNESS:  No.

20   BY MR. WOLFE:

21        Q.      Is it your position that Speedway didn't

22   disclose to you that the time clock was relying on

23   scanning your finger to track your hours?

24        A.      I'm sorry?
```

Christopher Howe vs Speedway LLC et al.
No. 1:19-CV-01374

Christopher Howe
6/13/2019

1      Q.    Is your -- are you saying by filing this

2  lawsuit that Speedway and Marathon didn't disclose

3  to you that the time clock was tracking your hours

4  by having you put your finger on it?

5           MR. FICZKO:  Objection, seeks a legal

6      conclusion.

7           THE WITNESS:  Correct.

8  BY MR. WOLFE:

9      Q.    But you put your finger on the clock

10  every day?

11      A.    It was required.

12      Q.    Different question.

13           My question is did you not understand

14  that when you put your finger on the clock every

15  day that it was relying on, you know, the ridges

16  and marks on your finger to identify you and track

17  your hours?

18      A.    Did I not understand that?

19      Q.    Yeah.

20      A.    No, I understood that.

21      Q.    And you continued to do it every day?

22      A.    It was required.

23      Q.    Is there something that you think

24  Speedway should have done differently that would

Christopher Howe vs Speedway LLC et al.
No. 1:19-CV-01374

Christopher Howe
6/13/2019

1    have, you know, taken away the need for you to file

2    the lawsuit?

3                 MR. FICZKO:  Objection, seeks a legal

4         conclusion.

5                 THE WITNESS:  Yes.

6    BY MR. WOLFE:

7         Q.    What do you think Speedway should have

8    done differently?

9         A.    Told me what they were doing with my

10   personal information.

11        Q.    So that's -- I'm going to -- taking that

12   assumption, okay, let's say that Speedway should

13   have told you what they were doing with your

14   personal -- with your personal information.  Would

15   you have then done something differently?

16                MR. FICZKO:  Objection, hypothetical.

17                THE WITNESS:  If they would have told

18        me?

19   BY MR. WOLFE:

20        Q.    Yeah.

21        A.    No.

22        Q.    You wouldn't have quit?

23        A.    No.

24        Q.    You wouldn't have asked for more money?

Christopher Howe vs Speedway LLC, et al.
No. 1:19-CV-01374

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 22 of 27 PageID #:2634

90

Christopher Howe
6/13/2019

 1          A.     Yes.

 2          Q.     So how did they keep track of your time?

 3          A.     Maybe it -- maybe it was good faith

 4   then, back then.  I'm not -- I'm not -- maybe it

 5   was -- maybe we had a paper one.  I -- you're --

 6          Q.     Long time ago I know.

 7          A.     -- you're talking 1995.  I don't know.

 8          Q.     But it wasn't a finger scan?

 9          A.     No, sir.

10          Q.     Have you ever worked anywhere besides

11   Speedway that had a finger scan time clock?

12          A.     No, sir.

13          Q.     Ms. Wagner works at 7-Eleven now?

14          A.     Yes.

15          Q.     Do they use a finger scan time clock?

16          A.     I don't know.

17          Q.     You -- you understand you are the class

18   representative in this case, right?

19          A.     Correct.

20          Q.     What does that mean to you?

21          A.     That I'm responsible for the actions of

22   the class.  I'm looking out for their best

23   interest.

24          Q.     And you are aware that you're seeking

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 23 of 27 PageID #:2018

```
 1    damages on behalf of all of these other class

 2    members, might be thousands of people?

 3         A.    Correct.

 4         Q.    Are their damages the same as yours?

 5               MR. FICZKO:  Objection, seeks a legal

 6    conclusion.

 7               THE WITNESS:  Yes.

 8    BY MR. WOLFE:

 9         Q.    And is that because the people in the

10    proposed class all used the clock in the same

11    manner you did?

12         A.    Yes.

13               MR. FICZKO:  Same objection.  Sorry.

14    BY MR. WOLFE:

15         Q.    When you applied to work at Speedway,

16    did you have to provide your Social Security

17    number?

18         A.    Yes.

19         Q.    Your birthday?

20         A.    Yes.

21         Q.    Your address?

22         A.    Yes.

23         Q.    To get paid by Speedway, you had to give

24    them your bank information, right?
```

Christopher Howe vs Speedway LLC et al.
No. 1:19-CV-01374

97

Christopher Howe
6/13/2019

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 24 of 27 PageID #:2818

1    BY MR. WOLFE:

2        Q.    Yeah.  Who would be in the class?  If

3    the -- you know, the Court hasn't certified the

4    class, but...

5        A.    Myself.

6        Q.    Uh-huh.

7        A.    And every employee up until they

8    released that paper.

9        Q.    Up until they put a policy in place?

10       A.    Correct.

11       Q.    And when you say "they," you mean

12   Speedway?

13       A.    Speedway and Marathon.

14       Q.    Okay.  Do you know -- and your position

15   is that Speedway -- Marathon is being sued because

16   Marathon owns Speedway?

17            MR. FICZKO:  Objection, seeks a legal

18       conclusion.

19            THE WITNESS:  Yes.

20   BY MR. WOLFE:

21       Q.    Now, the class -- the class definition

22   in the complaint, it says:  All individuals who

23   worked for defendants in the State of Illinois who

24   had their fingerprints collected, captured,

Christopher Howe vs Speedway LC, et al.
No. 1:19-CV-01374

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 25 of 27 PageID #:2614

Christopher Howe
6/13/2019

1    Marathon or any facts supporting the idea that

2    Marathon collected, captured, received, otherwise

3    obtained or disclosed fingerprints?

4              MR. FICZKO:  Same objection, seeks a

5         legal conclusion.

6              THE WITNESS:  No.

7    BY MR. WOLFE:

8         Q.    There are gas stations out there branded

9    Marathon gas station, right?

10        A.    Correct.

11        Q.    Do you have -- do you have any knowledge

12   of what kind of timekeeping system they use?

13        A.    No.

14        Q.    The people who worked for you at

15   Addison, your employees, do you remember like what

16   their title was?  Is it associate, something like

17   that?

18        A.    I believe, yeah, just sales associate.

19        Q.    Okay.  So you -- you were, I think, a

20   store manager, and, like, a store manager trainee,

21   those were your positions there?

22        A.    Yes.  Started at -- they call it GMT,

23   store manage trainee, and then GM.

24        Q.    Okay.  So there's the GM.  There's, I

Christopher Howe vs Speedway LLC et al.
No. 1:19-CV-01374

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 26 of 27 PageID #:2618

Christopher Howe
6/13/2019

1    guess, there's GM trainees or whatever you want to

2    call it.  There's the associates.

3              Are there any other class of employee

4    that you know that would have used the clocks?

5       A.    Assistants.

6       Q.    So what's an assistant?

7       A.    Assistant store manager.

8       Q.    Okay.  Anybody else?

9       A.    Shift lead.

10      Q.    I imagine a shift lead is what it sounds

11   like?

12      A.    Correct.

13      Q.    So it's somebody who is not a manager,

14   but is like a leader of a certain shift?

15      A.    Correct.

16      Q.    Okay.  When the manager is not there?

17      A.    Or when the manager is there.

18      Q.    Okay.  Any other category of employees

19   that you can think of?

20      A.    Right now, no.  They've opened a couple

21   different things, so I don't know.

22      Q.    So your position is all those kinds of

23   employees all had to use these clocks so they all

24   should be in the class?

Christopher Howe vs Speedway, LLC et al.
No. 1:19-CV-01374

Christopher Howe
6/13/2019

Case: 1:19-cv-01374 Document #: 121-1 Filed: 10/25/21 Page 27 of 27 PageID #:2618

```
 1    employees can get paid?

 2        A.    Correct.

 3        Q.    Do you know one way or the other if

 4    every Speedway location in Illinois used a time

 5    clock like the one we talked about?

 6        A.    I know a lot of them did.

 7        Q.    And how do you know that?

 8        A.    Being in different stores.

 9        Q.    And specifically you would need to be in

10    the back -- back room at those stores to see the

11    clock, right?

12        A.    Correct.

13        Q.    About how many stores have you been in

14    the back room of in Illinois?

15        A.    Maybe seven-ish.

16        Q.    What's your fee arrangement with the

17    Stephan Zouras firm?

18        A.    I don't know.

19        Q.    Have you paid them anything?

20        A.    No.

21        Q.    Is it your understanding that they're

22    working on a contingency fee?

23        A.    Yes.

24        Q.    If you recover money or the class
```