# EXHIBIT 4

## DEPOSITION OF NICOLE KARLSON

1        IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3    CHRISTOPHER HOWE,              )
     individually, and on behalf   )
4    of all others similarly       )
     situated,                     )
5                                  )
                    Plaintiffs,    )
6                                  )
          vs.                      )    No. 1:19-cv-01374
7                                  )
     SPEEDWAY, LLC and MARATHON     )
8    PETROLEUM COMPANY,            )
                                   )
9                   Defendants.    )

10

11              THE DEPOSITION OF NICOLE KARLSON, called

12   for examination pursuant to the Rules of Civil

13   Procedure for the United States District Courts

14   pertaining to the taking of depositions, taken before

15   Nohemi Salazar Pitts, Certified Shorthand Reporter for

16   the State of Illinois, on March 12, 2020, at the

17   Offices of StephanZouras, LLP, 100 North Riverside

18   Plaza, Suite 2150, Chicago, Illinois, commencing at

19   10:30 a.m.

20

21

22

23

24

## DEPOSITION OF NICOLE KARLSON

1          (Whereupon, the witness was

2           administered an oath.)

3          NICOLE KARLSON,

4   called as a witness herein, having been first

5   administered an oath, was examined and testified as

6   follows:

7          EXAMINATION

8   BY MR. FICZKO:

9       Q.    Good morning.

10      A.    Good morning.

11      Q.    If you could please state and spell your

12  full name for the record.

13      A.    Nicole Karlson, N-I-C-O-L-E K-A-R-L-S-O-N.

14      Q.    Do you mind if I call you "Nicole" today?

15      A.    That's fine.

16      Q.    Nicole, have you ever sat for a deposition

17  before?

18      A.    Not been the person, but I have sat in on

19  one.

20      Q.    Sat in on one?  Okay.

21          So you may be familiar with the process,

22  but what I want to do first is just go over some ground

23  rules.  As you can see, there's a court reporter here.

24  She can only take down verbal responses.  So if you

## DEPOSITION OF NICOLE KARLSON

1   to review the information and electronically sign off

2   that they're aware of the policies.

3       Q.    And, do you know, these finger scan devices,

4   are they used to keep track of employees' time?

5       A.    Yes, they monitor their punches.

6       Q.    Did you play any role in preparing the

7   consent forms for that topic?

8       A.    I did not.

9       Q.    Did you play any role in rolling out the

10  consent forms regarding the timekeeping devices in

11  Illinois stores?

12      A.    I did not.

13      Q.    Are you aware of an article regarding

14  Kronos Corporation being sued for violations of the

15  Illinois Biometric Information Privacy Act?

16      A.    I am not.

17      Q.    Are you aware of any meetings that took

18  place in 2007 at Speedway regarding Illinois' Biometric

19  Privacy Act?

20      A.    I am not.

21      Q.    Are you familiar with the Illinois

22  Information Privacy Act?

23      A.    I am.

24      Q.    And when did you first learn about Illinois

### DEPOSITION OF NICOLE KARLSON

1    Biometric Information Privacy Act?  If I call it BIPA,

2    can we agree --

3         A.    Yes.

4         Q.    Okay.  Thank you.

5         A.    When it first rolled out in 2017 to our

6    company.

7         Q.    And when you say "when it first rolled

8    out," what is "it" that you are referring to?

9         A.    I'm sorry.  When we received the Act via

10   information from our offices.

11        Q.    And who did you receive that information

12   from?

13        A.    It's a general distribution communications

14   center that sent it out.  It's not a person.

15        Q.    Is there a name for that general

16   distribution center?

17        A.    Not that I know of.  There's a variety of

18   communication centers.

19        Q.    And what information was relayed to you and

20   the rest of Speedway?

21        A.    That the policies were -- or, I'm sorry,

22   that the procedures would be changing in terms of

23   onboarding for new hires, that there would be new pages

24   electronically listed in the processes.

## DEPOSITION OF NICOLE KARLSON

1      Q.      And what changes were going to be made to

2   the procedures?

3      A.      Another page being added for them to review

4   during onboarding.

5      Q.      And, previously, during the onboarding

6   process, there was not this page that you're referring

7   to, to review?

8      A.      We do actually have general policies about

9   confidentiality and privacy information that they are

10  able to review.

11     Q.      Did these previous policies before 2017

12  deal with BIPA?

13     A.      Not to my knowledge, specifically.

14     Q.      This new form or this new additional page

15  that is being rolled out, did that specifically deal

16  with BIPA?

17     A.      Yes.

18     Q.      What is your understanding of BIPA?

19     A.      My knowledge is --

20             MR. WOLFE:  Object to the extent it seeks a

21  legal conclusion.

22                    You can answer.  Just answer the best

23  you can.

24

24

## DEPOSITION OF NICOLE KARLSON

1    not.

2    Q.    Okay.  Did Speedway take any additional

3    measures as a result of this 2017 e-mail that you

4    received?

5    A.    Can you elaborate, I guess --

6    Q.    Sure.  Were there -- in addition to the one

7    form that they included on the onboarding process, did

8    Speedway take any additional measures in an effort to

9    comply with BIPA?

10    A.    We collected consent from current employees.

11    Q.    Anything else?

12    A.    Not to my knowledge.

13    Q.    Okay.  You indicated that you -- or, excuse

14    me, Speedway, secured consents from current employees;

15    is that what you indicated?

16    A.    Written consents.

17    Q.    Is the consent form this additional form

18    that was being added on to the onboarding process?

19    A.    I don't recall.

20    Q.    Was there a consent form that individuals

21    needed to sign prior to 2017 regarding BIPA?

22    A.    Prior to that, it was general policies

23    relating to privacy and confidentiality during --

24    Q.    But was -- I'm sorry.

26

## DEPOSITION OF NICOLE KARLSON

1      A.      During the onboarding program.

2      Q.      Sure.  But was there an actual written

3   consent form that was required to be signed?

4      A.      Not relating specifically to BIPA.

5      Q.      Okay.  Was there a consent form relating to

6   something else that they needed to sign on --

7      A.      The general privacy and confidentiality

8   policies.

9      Q.      Okay.

10     A.      And that would have been electronic.

11     Q.      And you indicated that current employees

12  needed to now sign this form, correct?

13     A.      The BIPA, specifically.

14     Q.      And would new hires also now need to sign

15  this consent form, BIPA consent form?

16     A.      That is now part of the onboarding process.

17  So all new hires would go through that during their

18  hire.

19     Q.      Got you.  Do you know who was responsible

20  for overseeing the rollout process?

21     A.      I do not.

22     Q.      And you may have answered this, but did you

23  have any involvement in the rollout process?

24     A.      I didn't.

## DEPOSITION OF NICOLE KARLSON

1    Q.    You indicated now, as of 2017, that

2    Speedway began circulating a consent form for Illinois

3    employees to sign, correct, a BIPA consent form?

4    A.    Yes.

5    Q.    Can you please explain this onboarding

6    process.

7    A.    Honestly, I have not done it myself, but

8    it's an electronic page that is done when they're doing

9    all of their new hire paperwork.

10   Q.    When you were a manager, would you have to

11   participate in this onboarding process with new hires?

12   A.    When I was a manager, no.

13   Q.    Was there a specific name for the

14   onboarding system?

15   A.    Now, or then?

16   Q.    Let's start with now.

17   A.    Now it's Cadient, C-A-D-I-E-N-T.

18   Q.    Did it have another name before?

19   A.    Kronos.

20   Q.    Would that be the Kronos Workforce

21   Management?

22   A.    I'm not sure.

23   Q.    Okay.  Something Kronos?

24   A.    (Nonverbal response.)

## DEPOSITION OF NICOLE KARLSON

1    the onboarding process?

2         A.    It has all the steps in place so that we

3    could hire a new employee.

4         Q.    Do you know if Speedway currently uses

5    timekeeping devices provided by Kronos?

6         A.    I don't know.

7         Q.    Do you know when Speedway first started

8    using TimeLink?

9         A.    I do not know.

10        Q.    Are you familiar with a Touch ID device?

11        A.    Not to my knowledge.

12        Q.    Would you agree that employees working at

13   Speedway stores in Illinois back in 2017, at the time

14   that the BIPA consent forms were being rolled out, that

15   they were required to clock in and clock out of these

16   timekeeping devices with their finger?

17        A.    Yes.

18        Q.    Do you know if the BIPA consent form that

19   was being rolled out in 2017 used the word

20   "fingerprint" in it?

21        A.    I do not know.

22        Q.    If the consent form did include the word

23   "fingerprint," would there be any issue with that, as

24   far as you are concerned?

## DEPOSITION OF NICOLE KARLSON

1      Q.      What is your basis for your understanding

2  that the timekeeping devices only scanned the shape of

3  the finger?

4      A.      So in the information that was provided so

5  that we could educate employees if they had questions.

6      Q.      And what information are you referring to?

7      A.      In regards to the BIPA act.

8      Q.      So the basis of your knowledge that the

9  timekeeping devices only scanned the shape of the

10  finger is based on the information that was circulated

11  in 2017 regarding BIPA that we have been discussing

12  today?

13      A.      Correct.

14      Q.      Would you agree that at least up to the

15  time that Speedway rolled out the BIPA consent forms in

16  2017, that employees in Illinois would clock in and

17  clock out by putting their finger on the timekeeping

18  device?

19      A.      Can you re-ask the question?

20      Q.      Sure.  You want me to re-ask it; is that

21  what you're saying?

22      A.      Yes, please.

23      Q.      Would you agree that at least up until the

24  time that Speedway rolled out its BIPA consent form in

## DEPOSITION OF NICOLE KARLSON

1    2017, that employees in Illinois would clock in and

2    clock out by putting their finger on the timekeeping

3    device?

4         A.    Yes.

5         Q.    And would you agree that after Speedway

6    rolled out the BIPA consent form in 2017, that

7    employees in Illinois would clock in and clock out by

8    putting their finger on the timekeeping device?

9         A.    Yes.

10        Q.    And would you agree that before they could

11   clock in and clock out, that a Speedway employee would

12   need to be enrolled in a timekeeping device?

13        A.    Yes.

14        Q.    And that was the case prior to the rollout

15   in 2017 of the BIPA consent form, correct?

16        A.    Yes.

17        Q.    And that was also the case after the 2017

18   rollout of the BIPA consent form, correct?

19        A.    Yes.

20        Q.    I believe you may have already answered

21   this.  Have you personally been involved in the

22   enrollment of an employee in Illinois into a

23   timekeeping device?

24        A.    No.

## DEPOSITION OF NICOLE KARLSON

1       Q.      Even as a manager, correct?

2       A.      Not in Illinois.

3       Q.      Not in Illinois?  Okay.

4               Were you involved in the rollout process in

5   a different state?

6       A.      Indiana.

7               MR. WOLFE:  Do you mean enrollment?  You

8   said "rollout"?

9               MR. FICZKO:  Oh.  Enrollment.

10  BY MR. FICZKO:

11      Q.      Sorry.  Enrollment.

12      A.      Yes, enrollment in Indiana.

13      Q.      Do you have personal knowledge how that

14  occurs?

15      A.      I do.

16      Q.      And what is your knowledge?

17      A.      As a manager, I would enter in an

18  employee's ID, or the employee could enter in their own

19  ID, and then the employee scans -- does the finger scan

20  to enroll themselves in the time clock.

21      Q.      Do you know, is that consistent with the

22  enrollment process in Illinois?

23      A.      At this time?

24      Q.      Yes.

## DEPOSITION OF NICOLE KARLSON

1      A.      I'm not sure.

2      Q.      Do you have any reason to believe that it

3  is not consistent with the enrollment process in

4  Illinois?

5      A.      Not to my knowledge.

6      Q.      And was that consistent with the enrollment

7  process prior to 2017 before the BIPA consent forms

8  were circulated?

9      A.      To my knowledge.

10     Q.      Where on the device would an employee who

11  wants to be enrolled in the device place their finger?

12     A.      There's a finger pad that they would put

13  their finger on.

14     Q.      Is there any scanner that is part of this

15  timekeeping device?

16     A.      I have not used the new scanners, so I'm

17  not sure.

18     Q.      What new scanners are you referring to?

19     A.      They're not the same as when I was a store

20  manager.

21     Q.      And when you were a store manager, they

22  were TimeLink, correct?

23     A.      Yes.

24     Q.      Do you know when these new timekeeping

## DEPOSITION OF NICOLE KARLSON

1     Q.     And where did you obtain that knowledge as

2   far as what part of the finger an employee should put

3   on the timekeeping device in order to enroll?

4     A.     What I did on my own.

5     Q.     And what do you mean what you did on your

6   own?

7     A.     When I was hired into the company and I

8   myself logged myself in, in the space provided, common

9   sense says you put your finger on the pad.

10     Q.     You weren't provided any instructions as

11   far as when to enroll --

12     A.     Not to my recollection, no.

13     Q.     Did anyone from TimeLink instruct you on

14   how to enroll an individual?

15     A.     No.

16     Q.     Could employees in Illinois refuse to use

17   their finger to clock in and out each day?

18     A.     I never had it come up.

19     Q.     When you were working as a manager in

20   Indiana, could an employee refuse to use their finger

21   to clock in and out?

22     A.     Similar, I never had it come up.

23     Q.     So when you were a manager, all of the

24   employees that you supervised used their finger to

## DEPOSITION OF NICOLE KARLSON

1  clock in and out?

2       A.     They did.

3       Q.     Do you know, are new employees now able to

4  refuse to use their finger to clock in and out?

5       A.     Not to my knowledge.

6       Q.     So they're required to use their finger now

7  to clock in and out?

8       A.     Yes.

9       Q.     Do you know, today, currently, are all

10 timekeeping devices the same in all stores in Illinois?

11      A.     I do not know.

12      Q.     If you wanted to find that answer out, who

13 can you ask?

14      A.     I don't know.

15      Q.     Are there any documents that you could look

16 at?

17      A.     Not to my knowledge.

18      Q.     Are you familiar with Infor?

19      A.     No.

20      Q.     Since you have been working at Speedway,

21 has Speedway always had at least one timekeeping device

22 per store?

23      A.     To my knowledge.

24      Q.     Prior to the BIPA consent form being rolled

## DEPOSITION OF NICOLE KARLSON

1    out in 2017, did Speedway get Illinois employees'

2    written consent before enrolling them in the time clock

3    devices?

4          A.    Not to my knowledge.

5          Q.    And prior to the rollout of the BIPA

6    consent forms in 2017, did Speedway inform any of its

7    Illinois store employees of their rights under BIPA?

8          A.    We would have general privacy and

9    confidentiality policies that they would have had

10   access to.

11         Q.    But as far as specifically related to BIPA,

12   prior to 2017, did Speedway inform its employees of

13   their rights under BIPA?

14         A.    Not under BIPA, to my knowledge.

15         Q.    Are you aware of Speedway having a written

16   policy that was made available to the public

17   establishing its retention schedule and destruction

18   guidelines for destroying biometric identifiers and/or

19   biometric information?

20         A.    Not to my knowledge.

21               MR. FICZKO:  Take a two-minute break?

22               MR. WOLFE:  Let's take five minutes.

23                     (Whereupon, a short break was

24                     taken.)

## DEPOSITION OF NICOLE KARLSON



VerbalTech Inc. – 312.869.4039
Chicago, Illinois

## DEPOSITION OF NICOLE KARLSON

1      Q.      Based on your own knowledge, what is your

2  own definition of fingerprint?

3      A.      I would say the ability to collect data

4  based off of the fingerprint.

5      Q.      I just want the definition of fingerprint.

6  What's your deposition of "fingerprint"?

7      A.      Oh.  The pattern within your finger, the

8  pattern that's listed on your finger.

9      Q.      So a pattern of an individual's finger?

10     A.      Sure, yes.

11     Q.      Unique to each individual?

12     A.      Yes.

13     Q.      Now, in reference to pattern, would that

14  include the ridges and lines on an individual's finger?

15     A.      I think it could include that.

16     Q.      Could it not include that and still be a

17  fingerprint?

18     A.      I'm not sure.

19     Q.      Based on your own definition though, could

20  a fingerprint not include the ridges and lines on an

21  individual's finger in order for it to still be

22  considered a fingerprint?

23     A.      Possibly.  I don't know.  I guess, can you

24  rephrase the question?

## DEPOSITION OF NICOLE KARLSON

1    capacity.

2         Q.    So it could have been; we just don't know

3    for sure.  Okay.

4         A.    Correct.

5    ████  ████ ████ ████ ████ █ ████ ████ ████

6    ████ ████ ████ ████ ████ ████ ████ ████

7    ████ ████ ████ ████ ████ ████ ████ ████ ██

8    ████ ████ ████ ██ ████████ █

9         ████ ████ ████

10   ██   █ ██

11   ██   ████ ████ ████ ████ ████ ████ ████

12        A.    I do not.

13        Q.    Are you aware of any Speedway employees

14   working for one store and then going to work for

15   another Speedway store?

16        A.    Yes.

17        Q.    When this happens, do they need to

18   re-enroll their fingerprint on a different timekeeping

19   device in order to enroll them in that time clock?

20        A.    They do re-scan their finger, yes.

21   ██   ████ ████ ████ █ ████ ████ ████████ ████

22   ████ ████ ████ ████ ████ ██ ████ ████

23   ██   █ ██

24   ██   ████ ████ ████ ██ ████ ████ ████ ████ ██

## DEPOSITION OF NICOLE KARLSON



## DEPOSITION OF NICOLE KARLSON



## DEPOSITION OF NICOLE KARLSON

1      Q.      Are you aware of anyone at Speedway making

2   any efforts to contest that statement?

3      A.      No.

4      Q.      And then the next section of Exhibit 4, it

5   talks about "effective immediately."  Do you see that?

6      A.      I do.

7      Q.      So after November 1, 2017, would you agree

8   that it was Speedway's policy to require all employees,

9   including store leadership, hired on or after

10  November 2nd, to acknowledge and sign the information

11  release form during the onboarding process?

12     A.      Yes.

13     Q.      And current employees who are already

14  enrolled before November 1st, 2017, were they also

15  required to sign off on the BIPA consent form?

16     A.      Yes.

17     Q.      Now, if you could turn to Page 2 of

18  Exhibit 4, please.  And that would be Bates number

19  2300, correct?

20     A.      Yes.

21     Q.      And do you see at the top, it says

22  "Speedway's Information Collection Policy"?

23     A.      Yes.

24     Q.      And are you familiar with this policy?

## DEPOSITION OF NICOLE KARLSON

1        A.        Not off at the top of my head, no.

2        Q.        Sure.  Have you ever seen this policy

3   before though?

4        A.        I'm sure I have.

5        Q.        Do you know, was this policy also created

6   around the time of November 2017?

7        A.        I'm not sure.

8        Q.        Do you know, did Speedway have an

9   information collection policy prior to November of

10  2017?

11       A.        I'm not sure.

12       Q.        And if you could, looking at Page 2 of

13  Exhibit 4, do you see where it says, "What Information

14  Does Speedway Collect, Why, and Where It is Stored"?

15       A.        Yes.

16       Q.        The first sentence indicates that, During

17  the onboarding process, Speedway uses devices provided

18  by a third party to scan employees' fingerprints."

19                 Do you see that?

20       A.        I do.

21       Q.        And, again, it uses the word "fingerprint,"

22  correct?

23       A.        It does.

24       Q.        Actually, going back under Policy Goals on

## DEPOSITION OF NICOLE KARLSON

1    should have been included with the information

2    collection policy, if you could produce it.

3              MR. WOLFE:  Yeah, we'll make sure that a

4    complete copy of that document was produced.

5              MR. FICZKO:  Sure.  I appreciate it.

6    BY MR. FICZKO:

7        Q.    Now, if you could turn to the third page in

8    Exhibit 4, please.  Are you familiar with this

9    document?

10       A.    Again, not verbatim, but I may have seen it

11   in the past.

12       Q.    Okay.  And what is this documents?

13       A.    It states that it is the acknowledgment and

14   release regarding information collection practices.

15       Q.    And do you know what that's referring to?

16       A.    It looks like it is the signature page for

17   an employee to state that they understand collection

18   practices for Speedway.

19       Q.    And collection of what?

20       A.    If I read on, it states that -- it informs

21   the employee that Speedway uses a third party device to

22   scan employee fingerprints.

23       Q.    Is that the information that you're

24   referring to as far as collection?

## DEPOSITION OF NICOLE KARLSON

1        A.      Per the page, yes.  I don't have any reason

2    to believe otherwise.

3        Q.      Okay.  Do you know, was this document

4    created around November of 2017?

5        A.      I am not sure.

6        Q.      Are you aware of this document being in

7    existence prior to November of 2017?

8        A.      Not that I recall.

9        Q.      Do you know who created this document?

10       A.      I do not.

11       Q.      Did you have any role in creating this

12   document?

13       A.      I did not.

14       Q.      Do you know, is this the document that was

15   provided to store employees when they were being

16   required to sign off on their BIPA rights?

17       A.      I don't recall.

18       Q.      Is this document available online?

19       A.      I am unsure.

20       Q.      Do you know if this documents is available

21   on Speedway's shared drive?

22       A.      I'm not sure.

23       Q.      Now, if you could go down again, Page 3,

24   Exhibit 4, Bates number 2301, to the third full

## DEPOSITION OF NICOLE KARLSON

1      A.    I do.

2      Q.    Do you know what Andrew meant by

3 registered?

4      A.    I do not.

5      Q.    No?  Okay.

6      Would that be the same thing as enrolling?

7      A.    I can assume, but I'm unclear.

8      Q.    Sure.  Fair enough.

9      And then, finally, the top e-mail from you

10 to ssalake162 CC'ing SSA-7117 on 8/29/2014, do you see

11 that?

12      A.    I do.

13

14

15

16

17

18

19

20

21

22

23

24      Q.    And by re-enroll them, they would have to

VerbalTech Inc. - 312.869.4039
Chicago, Illinois

**DEPOSITION OF NICOLE KARLSON**

1   do the whole finger scan process again?

2       A.    They would, correct.

3       Q.    And under your name on that top e-mail, it

4   says region number 44.  Is that your area?

5       A.    It is.

6       Q.    Is that your current area today?

7       A.    It is.

8       Q.    Do you know who Christopher Howe is?

9       A.    I know he was a general manager for us in a

10  neighboring region.

11      Q.    And do you know where he was a general

12  manager?

13      A.    Vicinity, but not a specific store.

14      Q.    And what vicinity are you referring to?

15      A.    Northern Illinois, more northern than my

16  area.

17      Q.    Sure.  Do you know if Christopher only

18  worked in Illinois?

19      A.    I do not.

20      Q.    Do you know, did -- strike that.

21          Do you know if Speedway ever received any

22  written consent from Mr. Howe regarding BIPA or the

23  collection of his biometric information?

24      A.    I do not know.