# EXHIBIT 7

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

CHRISTOPHER HOWE,        :
Individually, and on     :
Behalf of all others     :
Similarly situated,      :
      Plaintiff       :
   -vs-                  : CASE NO. 1:19-cv-01374
SPEEDWAY LLC AND         :
MARATHON PETROLEUM       :
COMPANY,                 :
      Defendants      :
_____

     Deposition of DIANA ANDERSON, a witness herein, taken by the Plaintiff as upon cross-examination and pursuant to the Ohio Rules of Civil Procedure as to the time and place and stipulations hereinafter set forth, at the offices of Britton & Associates, 201 Riverside Drive, Suite 2B, Dayton, Ohio at 11:32 a.m., on January 16, 2020, before Jamie S. Hurley, Court Reporter and Notary Public within and for the State of Ohio.

        \*  \*  \*  \*  \*  \*

Electronically signed by Jamie Hurley (501-205-026-7923)   ea70cc8a-9653-42c2-9bf5-e26b20173d5b

Page 4

```
 1   WHEREUPON:
 2                     DIANA ANDERSON,
 3   of lawful age, a witness herein, being first duly
 4   sworn as hereinafter certified, testified as
 5   follows:
 6                   CROSS-EXAMINATION
 7   BY MR. STEPHAN:
 8         Q.   Good morning, Diana.  Can you please
 9   state and spell your name for the record?
10         A.   Diana Anderson, D-I-A-N-A, Anderson,
11   A-N-D-E-R-S-O-N.
12         Q.   Diana, we're here today Howe versus
13   Speedway, et al. lawsuit.  Have you ever been
14   deposed before?
15         A.   I have.
16         Q.   How many times?
17         A.   Once.
18         Q.   Was the other time that you were
19   deposed in relation to your work at Speedway?
20         A.   Yes.
21         Q.   When was that deposition?
22         A.   Approximately November of 2007, I
23   believe.
24         Q.   Okay.  So it's been a long time?
25         A.   It has.
```

Electronically signed by Jamie Hurley (501-205-026-7923)　　　ea70cc8a-9653-42c2-9bf5-e26b20173d5b

Page 19

1  on that system and find out how many customer
2  service reps have worked at Speedway in Illinois
3  since 2012, couldn't you?
4      A.  I couldn't.  So I don't know if that's
5  possible.  I don't know how.
6      Q.  If you wanted to find out, who would
7  you ask?
8      A.  Probably Kelli Jones.
9      Q.  Okay.  Are you familiar with how the
10 hourly paid workers clock in and clock out each
11 day?
12     A.  Am I, can you repeat that, please?
13     Q.  Sure.  Are you familiar with how hourly
14 paid employees, the customer service reps, clock in
15 and out each day?
16     A.  Yes.  Generally speaking.
17     Q.  How do they do so?
18     A.  They use the TimeLink machine and punch
19 in and out.
20     Q.  Okay.  So there's a time clock in each
21 Speedway store; is that correct?
22     A.  To my knowledge, yes.
23     Q.  Do you ever travel to the field in
24 Illinois as part of your current job?
25     A.  Occasionally.

Electronically signed by Jamie Hurley (501-205-026-7923)    ea70cc8a-9653-42c2-9bf5-e26b20173d5b

Page 39

1  when was that first written consent implemented?
2      A.  I am not sure.
3      Q.  Okay.  Was there a written consent when
4  you started back in 2016?
5      A.  I am not sure.  I don't believe so.
6      Q.  Did you play, did you play any role in
7  implementing or rolling out the consents for
8  employees in Illinois?
9      A.  No.
10     Q.  Do you know who did?
11     A.  I believe our legal in-house counsel.
12     Q.  Who is that?
13     A.  At that time primarily Holly
14  Hollandsworth.
15     Q.  Would anyone else be involved in that
16  process?
17     A.  I don't know.
18     Q.  Did you have any correspondence with
19  any of the management in Illinois, the directors or
20  regional managers about the rollout of these BIPA
21  consent forms?
22     A.  I don't recall.
23     Q.  Other than this consent issue, how else
24  has Speedway complied with BIPA?
25              MR. WOLFE:  Object.  Vague, calls

Page 65

1   A. To my knowledge, yes.
2   Q. Right.  Inside counsel, in-house
3 counsel, and also outside counsel making sure that
4 Speedway is aware of those laws and complies with
5 them, correct?
6   A. Yes.
7   Q. Are you aware of any efforts prior to
8 2017 at Speedway to comply with BIPA?
9   A. I am not aware.
10   Q. Were you ever informed or educated on
11 BIPA back in 2016 or before?
12   A. Probably not before 2016 and I don't
13 recall when I was informed or educated on it.
14   Q. Do you know when, do you know when BIPA
15 was first enacted?
16   A. Not off the top of my head, no.
17   Q. Okay.  Still to this date you don't
18 know?
19   A. No.
20   Q. Are you aware that it was enacted in
21 2008?
22   A. No.
23   Q. Can you think of any reason why
24 Speedway chose not to comply with BIPA before 2017?
25   A. I believe that they were in compliance