**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER HOWE, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | No.  1:19-cv-01374 |
| | ) | |
| v. | ) | Hon. John F. Kness |
| | ) | |
| SPEEDWAY LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**SPEEDWAY LLC'S MEMORANDUM IN SUPPORT OF**
**<u>ITS MOTION FOR SUMMARY JUDGMENT</u>**

Tristan L. Duncan
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO  64108
Tel:  (816) 474-6550
tlduncan@shb.com

Matthew C. Wolfe
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive
Chicago, IL  60606
Tel:  (312) 704-7700
mwolfe@shb.com

*Attorneys for Defendant Speedway LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .............................................................................................................. 1

SUMMARY OF UNDISPUTED FACTS ........................................................................... 3

ARGUMENT ...................................................................................................................... 4

I.      Speedway did not possess or collect "biometric identifiers" or "biometric information," as defined by BIPA. ................................................................................ 5

      A.    The Timeclocks do not collect a fingerprint, and therefore Speedway never collected or possessed "biometric identifiers" or "biometric information." .............................................................................................. 5

           1.    Speedway did not collect or possess fingerprints. .................................... 6

               a.    "Fingerprint" means an entire fingerprint, unique to each human being. ................................................................ 6

               b.    The Timeclocks do not collect a fingerprint. ................................. 7

               c.    Any image captured by the Timeclocks is instantaneously scanned and discarded, which is not "collection" or "possession." ................................................................. 9

           2.    Speedway did not collect or possess "biometric information." ............... 10

      B.    BIPA's text and principles of statutory interpretation all support Speedway's interpretation of the term "fingerprint." ........................................... 11

           1.    By its plain terms, BIPA regulates only "fingerprints." .......................... 11

           2.    The purpose and history of BIPA also show that "biometric identifier" should be construed narrowly in accordance with the statute's text. ...................................................................................... 12

II.     Dr. Daft's testimony should be excluded and Plaintiff cannot survive summary judgment without an expert. ......................................................................................... 13

III.    Plaintiff cannot show that Speedway acted negligently, recklessly, or intentionally. .......................................................................................................... 15

      A.    BIPA is not a strict liability statute.  At this stage, Plaintiff must put forth evidence that Speedway acted negligently, recklessly, or intentionally. .............. 15

B.     Plaintiff cannot demonstrate that Speedway acted negligently. .......................... 16

    1.    Speedway acted reasonably and harm to Plaintiff was not foreseeable. ................................................................................... 16

    2.    Plaintiff cannot meet his burden. ................................................ 17

C.     Plaintiff cannot demonstrate recklessness or intent. ............................................. 19

IV.    The court should construe BIPA narrowly to avoid constitutional problems. ................. 19

V.    A one-year statute of limitations applies to Plaintiff's claims and bars all of them. ........ 21

A.     Plaintiff's Section 15(d) claim for unauthorized disclosure is time-barred. .......... 21

B.     Plaintiff's claims under BIPA sections 15(a) and 15(b) also are untimely. .......... 22

VI.    Plaintiff's claims are preempted by the Illinois Workers' Compensation Act. ................ 24

CONCLUSION ............................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbasi v. Paraskevoulakos,*
    718 N.E.2d 181 (Ill. 1999) ................................................................. 15

*Berz v. City of Evanston,*
    997 N.E.2d 733 (Ill. App. Ct. 2013) ..................................................... 18

*Blair v. Nevada Landing P'ship,*
    859 N.E.2d 1188 (Ill. App. 2006) ....................................................... 22

*BP P.L.C. v. Mayor and City Council of Baltimore,*
    141 S. Ct. 1532 (2021) ......................................................................... 9

*Bybee v. O'Hagen,*
    612 N.E.2d 99 (Ill. App. Ct. 1993) ..................................................... 15

*Carroll v. Lynch,*
    698 F.3d 561 (7th Cir. 2012) .......................................................... 4, 5

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ............................................................................. 4

*Centricut, LLC v. Esab Grp., Inc.,*
    390 F.3d 1361 (Fed. Cir. 2004) .......................................................... 14

*CFTC v. Worth Bullion Grp., Inc.,*
    717 F.3d 545 (7th Cir. 2013) ............................................................. 11

*Clark v. River Metals Recycling, LLC,*
    929 F.3d 434 (7th Cir. 2019) ............................................................. 14

*Cooley v. Power Constr. Co., LLC,*
    107 N.E.3d 435 (Ill. App. Ct. 2018) ................................................... 24

*Cooper Indus., Inc. v. Leatherman Tool Grp.,*
    532 U.S. 424 (2001) ........................................................................... 20

*Diaz v. Illinois Workers' Comp. Comm'n,*
    989 N.E.2d 233 (Ill. App. Ct. 2013) ................................................... 25

*Duley v. Caterpillar Tractor Co.,*
    253 N.E.2d 373 (Ill. 1969) ................................................................. 24

iii

**Page**

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012)......................................................................................20

*First Springfield Bank & Tr. v. Galman*,
  720 N.E.2d 1068 (Ill. 1999)........................................................................3, 16

*Fraley v. Batman*,
  638 F. App'x 594 (9th Cir. 2016) ................................................................21

*Gopalratnam v. Hewlett-Packard Co.*,
  877 F.3d 771 (7th Cir. 2017) ......................................................................14

*Guvenoz v. Target Corp.*,
  30 N.E.3d 404 (Ill. App. Ct. 2015) ............................................................18

*Honda Motor Co. v. Oberg*,
  512 U.S. 415 (1994)....................................................................................21

*Howe v. Speedway LLC*,
  No. 17-CV-07303, 2018 WL 2445541 (N.D. Ill. May 31, 2018)................23

*Indiana Harbor Belt R. Co. v. Am. Cyanamid Co.*,
  916 F.2d 1174 (7th Cir. 1990) ....................................................................16

*Jogi v. Voges*,
  480 F.3d 822 (7th Cir. 2007) ......................................................................12

*Kramer v. Szczepaniak*,
  123 N.E.3d 431 (Ill. App. Ct. 2018) ..........................................................16

*Maddux v. Blagojevich*,
  911 N.E.2d 979 (Ill. 2011)..........................................................................20

*McDonald v. Symphony Park Bronzeville, LLC*,
  No. 126511...................................................................................................25

*McGoveran v. Amazon Web Services, Inc.*,
  C.A. No. 20-1399-LPTS, 2021 WL 4502089 (D. Del. Sept. 30, 2021) ............................12, 13

*Metzger v. DaRosa*,
  805 N.E.2d 1165 (Ill. 2004)........................................................................12

*Miller v. Southwest Airlines Co.*,
  926 F.3d 898 (7th Cir. 2019) ......................................................................23

*Modrowski v. Pigatto*,
  712 F.3d 1166 (7th Cir. 2013) ....................................................................5, 18

**Page**

*Pathfinder Co. v. Industrial Comm'n*,
343 N.E.2d 913 (Ill. 1976) ..............................................................................25

*People v. Cline*,
156 N.E.3d 501 (Ill. App. Ct. 2020) ...................................................................6

*People v. Glenn*,
106 N.E.3d 462 (Ill. App. Ct. 2018) ...........................................................19, 20

*People v. Hanna*,
800 N.E.2d 1201 (Ill. 2003) ............................................................................21

*Pub. Fin. Corp. v. Davis*,
360 N.E.2d 765 (Ill. 1976) ..............................................................................19

*Richardson v. County of Cook*,
621 N.E.2d 114 (Ill. App. Ct. 1993) ................................................................25

*Rosenbach v. Six Flags Ent. Corp.*,
129 N.E.3d 1197 (Ill. 2019) ............................................................18, 23, 24

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
251 U.S. 63 (1919) ..........................................................................................21

*Test Drilling Serv. Co. v. Hanor Co.*,
322 F. Supp. 2d 957 (C.D. Ill. 2003) ..............................................................15

*Texaco, Inc. v. Short*,
454 U.S. 516 (1982) ........................................................................................16

*Tims v. Black Horse Carriers, Inc.*,
2021 IL App (1st) 200563 ..........................................................22, 23, 24

*Travelers Cas. & Sur. Co. v. Bowman*,
893 N.E.2d 583 (Ill. 2008) ..............................................................................21

*United States v. Baines*,
573 F.3d 979 (10th Cir. 2009) ...........................................................................6

*United States v. Herrera*,
704 F.3d 480 (7th Cir. 2013) .............................................................................6

*United States v. Holcomb*,
657 F.3d 445 (7th Cir. 2011) ...........................................................................12

*United States v. Lee*,
502 F.3d 691 (7th Cir. 2007) .......................................................................6, 9

**Page**

*United States v. Williams*,
    553 U.S. 285 (2008)................................................................................11

*West Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*,
    2021 IL 125978.............................................................................23, 24

*Yates v. United States*,
    574 U.S. 528 (2015)................................................................................11

*Zahn v. N. Am. Power & Gas, LLC*,
    815 F.3d 1082 (7th Cir. 2016) ..............................................................24

*Ziarko v. Soo Line R. Co.*,
    641 N.E.2d 402 (Ill. 1994) ....................................................................19

**Statutes**

735 ILCS 5/13-201 .............................................................................22, 23

735 ILCS 5/13-205 .....................................................................................22

820 ILCS 305/5(a) ......................................................................................24

Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*...................... *passim*

Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1 *et seq.* .........................3, 24, 25

**Rules**

Fed. R. Civ. P. 56........................................................................................3, 4

**Other Authorities**

American Heritage Dictionary of the English Language (5th ed. 2011)..........................10

Black's Law Dictionary (11th ed. 2019) ...............................................................6, 10

Chambers Dictionary (13th ed.)...........................................................................6, 10

Dandekar *et al.*, "3-D Finite-Element Models of Human and Monkey Fingertips
    to Investigate the Mechanics of Tactile Sense," *Journal of Biomedical
    Engineering*, Vol. 125 (Oct. 2003) ......................................................8

Jain *et al.*, *Introduction to Biometrics* (Springer 2011) .....................................6

*Legislative Synopsis and Digest*, 95th G.A. 2007-2008 (No. 15), available at
    ftp://12.43.67.2/Digest/95thFinalDigest.pdf.......................................20

**Page**

*Required Posters,* ILLINOIS DEPARTMENT OF LABOR,
https://www2.illinois.gov/idol/Employers/pages/posters.aspx ................................................17

**INTRODUCTION**

Plaintiff Christopher Howe ("Plaintiff" or "Howe") worked as a store manager at Speedway LLC ("Speedway") convenience stores for a little less than two years. When hired, Plaintiff enrolled himself on one of the finger-scan timeclocks used by Speedway in Illinois (the "Timeclocks"). Thereafter, he scanned his finger on a Timeclock multiple times per day, and enrolled others onto a Timeclock. At his deposition, Plaintiff testified that he understood that every time he used a Timeclock, the Timeclock used "the ridges and marks on [Plaintiff's] finger to identify [him] and track [his] hours." With this understanding, Plaintiff continued to use the Timeclocks every day without objection.

In September 2017, after being terminated by Speedway, Plaintiff sued Speedway for allegedly violating the Illinois Biometric Information Privacy Act ("BIPA").[1] BIPA is a notice-and-consent privacy statute intended to facilitate the use of biometrics by regulating the collection of "biometric identifiers" and "biometric information," as narrowly defined in the statute. Plaintiff sued Speedway even though, as he testified at his deposition, he would not have changed his behavior or stopped scanning his finger regardless of whether he received a letter-perfect, BIPA-compliant notice. Speedway previously moved for summary judgment based on this testimony on the grounds that Plaintiff voluntarily relinquished any privacy right that he held in his finger data as to Speedway. Dkt. 60. That motion is fully briefed and pending, and Speedway incorporates it by reference herein.

Since Speedway filed its previous motion for summary judgment, discovery has continued and now concluded. Through that more recent discovery, which has largely been expert discovery, additional bases for summary judgment have become clear. In particular, the

---

[1] Plaintiff appears to allege Speedway violated BIPA sections 15(a), 15(b), and 15(d). The Complaint also alleges an overlapping negligence claim. *See* Dkt. 1-1 ¶¶ 80-82.

undisputed facts show that the Timeclocks do not collect or capture any "biometric identifier" or "biometric information" as defined by BIPA.

In relevant part, BIPA narrowly regulates only a "fingerprint" or information "based on" a fingerprint that is "used to identify an individual." BIPA expressly does not regulate "confidential and sensitive information" like personal identifying numbers, such as driver's license numbers. The Timeclocks cannot and do not collect a fingerprint, because the component of them that scans one's finger (the "scan surface") is smaller than the typical human fingertip. Thus, rather than "collect" a "fingerprint," as they must do for BIPA to apply at all, the Timeclocks scan a <u>portion</u> of the fingertip, identify prominent features on it, and immediately store those features as an alphanumeric code known as a "Template."

Templates are not fingerprints. In fact, they contain much less identifying information than a fingerprint, and unlike a fingerprint, are not unique to one individual among billions in the world. Moreover, they are made of letters and numbers, like, as Plaintiff's proposed expert witness conceded, "a really long driver's license." This process, and the difference between a Template and a fingerprint, is summed up by this illustration:

  

| | | | |
|:---:|:---:|:---:|:---:|
| **Fingerprint** | **Finger portion visible on scan surface** | **Machine scan of prominent features** | **Template** |

BIPA is specific about what is included versus excluded from the statute. Fingerprints are included. Templates derived from a machine scan of part of a finger are not. The Templates

here are thus neither "biometric identifiers" or "biometric information" under BIPA.  Simply put, no fingerprint was collected or possessed by Speedway, and so Speedway owed Plaintiff no duty under BIPA.

Several other separate and independent grounds for summary judgment on Plaintiff's claims also are present in this case.  <u>First</u>, Plaintiff's proposed expert on finger-scan technology should be excluded, because his methodology is unreliable; all he did was review Timeclock user manuals intended for lay users, which is insufficient.  Without an expert, Plaintiff cannot meet his burden to show that the Timeclocks collected data that is regulated by BIPA, and judgment must be entered on his claims.  <u>Second</u>, Plaintiff cannot meet his burden to marshal evidence showing that there is a genuine issue of fact for trial that Speedway acted negligently, recklessly, or intentionally, which he must do under the plain language of BIPA and Rule 56.  <u>Third</u>, Plaintiff's claims are barred by the one-year statute of limitations applicable to privacy claims involving publication of a matter violating a right to privacy.  <u>Fourth</u>, Plaintiff's claims against Speedway are preempted by the Illinois Workers' Compensation Act.

Based on each of the above grounds and those in its prior motion for summary judgment, Speedway respectfully requests that the Court grant summary judgment in its favor.

## SUMMARY OF UNDISPUTED FACTS

The pertinent facts are set out in detail in the accompanying Local Rule 56.1 Statement of Facts ("SOF").  Speedway briefly summarizes them here.

Plaintiff worked for Speedway from September 2015 to May 2017.  SOF ¶ 5.  Plaintiff received training on how to use a Timeclock and scanned his finger on one daily to track his hours worked.  SOF ¶¶ 14-15.  Plaintiff understood that each time he put his finger on a Timeclock, the Timeclock was relying on "the ridges and marks on [Plaintiff's] finger to identify

[him] and track [his] hours." SOF ¶ 18. With this understanding, Plaintiff continued to use a Timeclock every day. *Id*. Plaintiff testified that he does not believe Speedway should have provided him extra compensation in exchange for using finger-scan technology, and that if Speedway had provided him with different disclosures about what it was doing with the finger-scan information, that would not have caused him to change his behavior whatsoever. SOF ¶¶ 19-20.

The Timeclocks do not collect a fingerprint. Rather, they convert data captured from a scan of part of a fingertip, not the entire finger pad, to a "Template." SOF ¶¶ 22-28. A Template is a string of letters and numbers that describes limited prominent features of the finger ridges. SOF ¶ 23. A Template is not a fingerprint or an image of a finger. SOF ¶¶ 31-32. A partial finger-scan Template contains much less identifying data than a fingerprint. SOF ¶ 33. It cannot be reconstituted into a fingerprint. SOF ¶ 35.

At all times, Speedway understood that the Timeclocks collected and stored an "alphanumeric code," not a fingerprint. SOF ¶ 11. The supplier of the Timeclocks, Kronos Inc., concurred. *Id*. While Plaintiff worked for Speedway, Speedway had privacy policies and data-destruction policies in place that covered finger-scan data. SOF ¶¶ 6-10. Those policies were available to all Illinois employees, including Plaintiff. SOF ¶ 8.

## ARGUMENT

Summary judgment must be granted if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant shows that no genuine dispute exists, the burden shifts to the non-moving party to set forth specific facts creating a genuine dispute. FED. R. CIV. P. 56(e); *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir.

2012). "Mere metaphysical doubt as to the material facts is not enough." *Carroll*, 698 F.3d at 564 (internal quotations omitted). Additionally, if "after an adequate opportunity for discovery, the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court *must* enter summary judgment against her." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013) (emphasis in original; internal quotations omitted).

## I.     Speedway did not possess or collect "biometric identifiers" or "biometric information," as defined by BIPA.

BIPA applies only if an entity collects or possesses a "biometric identifier" or "biometric information." 740 ILCS 14/15. "Biometric identifier" is defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. "Biometric information" is defined as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. BIPA also defines "confidential and sensitive information"—information that is <u>not</u> regulated by the statute—to include a "genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number." 740 ILCS 14/10.

Plaintiff's claims are based solely on his use of the Timeclocks. As discussed next, Speedway did not collect or possess any "biometric identifier" or "biometric information" as defined by BIPA. Summary judgment therefore should be granted to Speedway on this basis.

### A.     The Timeclocks do not collect a fingerprint, and therefore Speedway never collected or possessed "biometric identifiers" or "biometric information."

The Timeclocks do not ever collect or capture a fingerprint. Speedway therefore never collected, captured, or possessed any biometric identifier. Because the Timeclocks never collect

or capture a fingerprint, Speedway never collected, captured, or possessed biometric information, either.

        **1.**       **Speedway did not collect or possess fingerprints.**

        **a.**       **"Fingerprint" means an entire fingerprint, unique to each human being.**

A "fingerprint" is "an impression of the ridges of the fingertip, unique to each human being and used as a means of identification, esp. of criminals."[2] CHAMBERS DICTIONARY (13th ed.); *see also* BLACK'S LAW DICTIONARY (11th ed. 2019) ("The distinctive pattern of lines on a human fingertip[;] no two fingerprints are identical"); *United States v. Herrera*, 704 F.3d 480, 487 (7th Cir. 2013) (probability of "two people in the world having identical fingerprints is . . . extremely low" and has been estimated to be 1 in 64 billion).

For a fingerprint to be a fingerprint, and thus unique to each human being, a full fingerprint is required. A full fingerprint is required because finger impressions which reveal "too little information" cannot accurately identify an individual. *United States v. Baines*, 573 F.3d 979, 982–83 (10th Cir. 2009); *People v. Cline*, 156 N.E.3d 501, 507 (Ill. App. Ct. 2020) (holding that "a single, incomplete fingerprint" is not sufficient to identify an individual); *United States v. Lee*, 502 F.3d 691, 698 (7th Cir. 2007) (a partial fingerprint is "suitable for comparison but not for identification purposes"); *see also* Jain *et al*., *Introduction to Biometrics* (Springer 2011) (attached as Exhibit A). For this reason, fingerprints collected and stored by law enforcement in the database known as the Integrated Automated Fingerprint Identification System ("IAFIS") are "rolled" fingerprints that capture the complete fingertip, "nail to nail."[3]

---

[2] This definition was cited and relied upon by Plaintiff's proposed expert witness, Dr. Christopher Daft.
[3] *See* SOF Ex. 15 at 195:21-201:21 (discussing difference between the Timeclocks and IAFIS).

Thus, in common meaning, a fingerprint means an <u>entire fingerprint</u>, because the plain meaning of "fingerprint" includes that it is "unique to each human being."

Against this background, "fingerprint" means an entire fingerprint, not a machine scan of part of a finger.

### b.   The Timeclocks do not collect a fingerprint.

The undisputed facts show that the Timeclocks do not collect a full rolled fingerprint, or even a full impression of a fingerprint pressed flat on the scan surface. SOF ¶¶ 24-28. Rather, they utilize a <u>partial scan</u> of a <u>fraction</u> of the fingertip, which is <u>instantaneously transformed into a Template</u> that identifies <u>limited prominent features of the finger ridge pattern</u>. SOF ¶¶ 22-28, 34.

The following facts are undisputed in the factual record and undisputed by both sides' proposed expert witnesses. The Timeclocks all work in the same basic way. They use a mathematical algorithm to convert data captured from the initial scanned portion of a body part (usually a fingertip) to a biometric "Template." SOF ¶¶ 22-23. A finger-scan Template is a string of letters and numbers that describes limited prominent features of the finger ridges. SOF ¶ 23. A Template contains much less identifying data than a fingerprint, and a Template created from a partial finger-scan contains less identifying data than a Template created from a full finger-scan. SOF ¶¶ 33-34. Importantly, although BIPA includes a "retina or iris scan" and a "scan of hand or face geometry" within the definition of biometric identifier, it conspicuously omits a "finger scan" or a "scan of a finger." *See* 740 ILCS 14/10. Thus, relevant to this case, only fingerprints are "biometric identifiers" and, in turn, "biometric information."

A Template is <u>not an image of a finger</u>. SOF ¶ 31. Rather, a Template <u>is a series of letters and numbers</u>, "like a really long driver's license." SOF ¶ 23 (citing testimony of

7

Plaintiff's proposed expert).  BIPA expressly does not regulate "identifier numbers" like social security and driver's license numbers.  740 ILCS 14/10.

When a user attempts to clock in or out, the user places his finger on the Timeclock.  The Timeclock temporarily generates a new Template and tries to match the new Template to the limited number of Templates stored within the Timeclock.  SOF.  If a match is found, the Timeclock allows the user to clock in or out.  SOF ¶ 25.

A Template is not the same thing as a fingerprint.  SOF ¶ 32 (citing Plaintiff's proposed expert's testimony and other evidence).  Especially important in this case, a Template can be made from a fraction of the fingertip.  SOF ¶ 24.  That is exactly how the Timeclocks work.  The size of the scan surface—the part of the Timeclocks where the user puts his fingertip—dictates whether the whole fingerprint can be captured.  SOF ¶ 26 (citing both sides' experts).  The Timeclocks' scan surface is 14 mm x 22 mm, which is smaller than the typical human fingertip, which is about 20 mm x 30 mm.  SOF ¶ 28 (citing Speedway's expert and Plaintiff's expert's admission that he cannot rebut this fact); *see also* Dandekar *et al*., "3-D Finite-Element Models of Human and Monkey Fingertips to Investigate the Mechanics of Tactile Sense," *Journal of Biomedical Engineering*, Vol. 125, 682, 685 (Oct. 2003) (typical human fingertip is 16 to 20 mm wide) (attached as Exhibit B).  As Plaintiff's expert testified, "if the scan surface is smaller than a typical fingerpad, the scan surface would not capture the whole fingerprint."  SOF ¶ 26.  That is the case here, which Plaintiff's expert could not rebut.  SOF ¶ 28.

Thus, it is undisputed, and indisputable, that the Timeclocks scan less than the full finger to create a Template.  Accordingly, the Timeclocks do not ever capture or even use a fingerprint.  Rather, they generate Templates based on scanning prominent features of a fraction of the

fingertip and convert that into a series of numbers.  Again, the differences can be summed up in this illustration:

  

| **Fingerprint** | **Finger portion visible on scan surface** | **Machine scan of prominent features** | **Template** |

A part is not the same thing as a whole.  *See BP P.L.C.  v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532, 1537 (2021) (construing the term "order" to mean an entire "order," not part of one).  This is especially true in the context of fingerprint collection and storage.  *E.g.*, *Lee*, 502 F.3d at 698 (partial fingerprint "suitable for comparison but not for identification purposes").  Here, it is uncontroverted that the Timeclocks could not and did not capture a fingerprint.  That should end this case.

> **c.**      **Any image captured by the Timeclocks is instantaneously scanned and discarded, which is not "collection" or "possession."**

As explained above, the Timeclocks do not collect a fingerprint.  Despite this, Plaintiff's expert, Dr. Daft, argued at his deposition that an image of part of the fingertip is captured by the Timeclocks and that this transient use of an image should be construed as "collection" of a "fingerprint."  *E.g.*, SOF Ex. 15 at 203:4-204:14.  Because we expect Plaintiff will make exactly that argument in response to this motion, we briefly address the transient use of a partial finger-scan here.

There is no genuine issue of material fact that any image ever collected by the Timeclocks was instantly discarded.  In fact, both sides' experts agreed that the Timeclocks work in the manner used throughout the finger-scan industry, including on devices like cell phones:

They extract finger-ridge features from the original scan and immediately convert those features to a numerical Template. SOF ¶ 22. This process takes less than half a second. *Id*. No finger image is stored, because there is no use for it, no point to keeping it, and significant practical problems with keeping it. SOF ¶¶ 29-30. Templates are used for matching purposes, images are not; and keeping images would waste valuable computer memory space. *Id*. (citing testimony of Plaintiff's proposed expert).

BIPA regulates the collection, capture, and possession of biometric identifiers and biometric information. *See* 740 ILCS 14/15. "Collect," "capture," and "possess" do not mean "store transiently to convert to something else." To the contrary, each of those terms include within them retention or control. *See, e.g.*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2011) (defining capture as "to succeed in preserving in lasting form," collect to mean "to bring together in a group or mass" or "to recover control of," and possess to mean "to have under one's power or control"); BLACK'S LAW DICTIONARY (11th ed. 2019) ("possess" means "to have in one's actual control"). Because the Timeclocks do not retain or control a fingerprint, Speedway has not collected, captured, or possessed a fingerprint.

### 2. Speedway did not collect or possess "biometric information."

"Biometric information" is defined by BIPA as information "based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10. Because the Timeclocks did not collect a "fingerprint," which under BIPA is the only "biometric identifier" possibly relevant here, *a fortiori* Speedway did not collect or possess "biometric information," either.

In addition, although the Court need not reach this issue, the Templates actually collected or possessed by Speedway were not "used to identify an individual." Fingerprints are "unique to each human being." CHAMBERS DICTIONARY (13th ed.); BLACK'S LAW DICTIONARY (11th ed.

2019). Templates are not unique to each human being. In fact, Dr. Daft admitted, and

Speedway's expert and other sources concur, that Template technology is not nearly that good.[4]

**B.** **BIPA's text and principles of statutory interpretation all support Speedway's interpretation of the term "fingerprint."**

**1.** **By its plain terms, BIPA regulates only "fingerprints."**

BIPA's preamble mentions "finger-scan technologies," but the operative text of BIPA

contains no such term. Rather, despite expressly and broadly including "a retina or iris scan" and

a "scan of hand or face geometry" within the definition of "biometric identifier," BIPA does not

regulate "finger scans" or a "scan of the fingertip." Rather, it includes only "fingerprint" within

the definition of "biometric identifier." 740 ILCS 14/10.

The words directly around "fingerprint" in Section 14/10 also suggest that the term

should be interpreted narrowly. Under the *noscitur a sociis* canon of statutory construction,

courts must "avoid ascribing to one word a meaning so broad that it is inconsistent with its

accompanying words." *Yates v. United States*, 574 U.S. 528, 543 (2015); *United States v.*

*Williams*, 553 U.S. 285, 294 (2008) ("[A] word is given more precise content by the neighboring

words with which it is associated"); *CFTC v. Worth Bullion Grp., Inc.*, 717 F.3d 545, 550–51

(7th Cir. 2013) ("[T]he fact that several items in a list share an attribute counsels in favor of

interpreting the other items as possessing that attribute as well") (quotations omitted).

Section 14/10 defines "biometric identifier" as "a retina or iris scan, fingerprint,

voiceprint, or scan of hand or face geometry." In common vernacular, each of these items refers

to the <u>entirety</u> of the item. The scan of a palm is not the same as the scan of a hand, just as the

---

[4] The Timeclocks in this case have a false acceptance rate of 1:10,000. That means that 1 in every 10,000 people will have a Template that is close enough to Christopher Howe's Template that the Timeclocks could misidentify that person as Christopher Howe. And it means that any two people sitting in the same room together could have finger-ridge features similar enough that the Timeclocks could not tell them apart. SOF ¶ 33, Ex. 15 at 114:9-15 (Dr. Daft testimony acknowledging exactly this).

scan of an iris is not the same as a retina scan. Read in the same way, "fingerprint" must be a complete fingerprint. Not a fraction of a fingerprint; the whole thing.

Moreover, "[w]here a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions." *Metzger v. DaRosa*, 805 N.E.2d 1165, 1172 (Ill. 2004). Here, had the Illinois General Assembly wanted to include "finger-scan technologies" in the definition of "biometric identifier," or otherwise broaden the definition of "biometric identifier," it could have done so, as is shown by its use of the term "finger-scan" elsewhere. Instead, the General Assembly defined "biometric identifier" to include just a short list of narrow terms. *McGoveran v. Amazon Web Services, Inc.*, C.A. No. 20-1399-LPTS, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021) (dismissing BIPA case and noting that "voice audio is not the same as a voiceprint, and voice audio does not meet the definition of 'biometric identifier' or 'biometric information' under BIPA"); *see also Jogi v. Voges*, 480 F.3d 822, 835 (7th Cir. 2007) (preamble should not be used to alter specific statutory text). The Court should stick to that list.

### 2. The purpose and history of BIPA also show that "biometric identifier" should be construed narrowly in accordance with the statute's text.

When BIPA's history is considered, the reason for these narrow definitions and limitations becomes clear: legislation often is a compromise among various stakeholders. *See United States v. Holcomb*, 657 F.3d 445, 451 (7th Cir. 2011). Unsurprisingly, that was the case with BIPA. The Illinois legislature enacted BIPA in 2008 to balance the use of new technology against public concerns about the technology. *See* 740 ILCS 14/5.

As a result, BIPA narrowly defines "biometric identifier," excluding other items that are commonly understood to be "biometric." For example, BIPA expressly excludes "human biological samples used for valid scientific testing," "organs," "blood or serum stored on behalf

of recipients . . . [of] transplants," and certain "biological materials." 740 ILCS 14/10. All of those and other forms of biometrics, such as behavioral biometrics and vascular biometrics, are commonly understood to be "biometric," in that they are "biologically unique to the individual." *See* 740 ILCS 14/5. But based on the legislature's considered public policy goal to balance the use of important biometric technology against the need to safeguard sensitive data, they are not regulated by BIPA.

BIPA also carefully defines what <u>is</u> a biometric identifier, limiting it to just a few terms. This careful defining prevents, for example, a common form of data like a recording of "voice audio" from falling within the statute. *McGoveran*, 2021 WL 4502089, at *4 ("voice audio is not the same as a voiceprint, and voice audio does not meet the definition of 'biometric identifier' or 'biometric information' under BIPA"). The same analysis is applicable here: "fingerprint" means "fingerprint" as that term is commonly understood. "Fingerprint" does not mean "a string of letters and numbers generated from the scan of a fraction of the fingertip."

BIPA also excludes numerous other kinds of sensitive information from the definition of "biometric identifier." For example, BIPA references "confidential and sensitive information" ("unique identifier numbers" like account numbers and social security numbers), but <u>does not regulate</u> such information. *See* 740 ILCS 14/10, 14/5. This further demonstrates that Templates, which Dr. Daft acknowledged are, at most, "like a really long driver's license," are not "biometric identifiers." Rather, they are "unique identifier numbers" of the sort not regulated by BIPA.

## II. Dr. Daft's testimony should be excluded and Plaintiff cannot survive summary judgment without an expert.

As explained above, Dr. Daft agreed with or did not dispute all key points necessary to grant summary judgment to Speedway. *See* Section I. But summary judgment can be granted

for an alternative reason as well. Dr. Daft's fundamental opinion that the Timeclocks collect a fingerprint is unreliable and should not be admitted, and without Dr. Daft's flawed and unreliable opinion, Plaintiff has no case.

As explained in the accompanying Motion to Exclude, which Speedway incorporates by reference herein, all of the opinions disclosed by Dr. Daft are predicated on his overall conclusion that the Timeclocks collect a fingerprint. But the methodology he used to reach that conclusion is unreliable. All he did was rely on manuals written for lay users. He did not inspect the Timeclocks or their technical specifications. This glaring gap in methodology leaves him utterly unknowledgeable about key facts. His experience does not solve this problem, because it is insufficient and largely irrelevant.

Plaintiff's case needs Dr. Daft because this case requires an expert to assess whether the Timeclocks collect a fingerprint. The intricate components of the Timeclocks and the complexity involved in creating Templates are highly technical. Lay jurors need expert testimony to understand these processes. In other words, it is not enough for Plaintiff to assert that the Timeclocks collect a "fingerprint." He needs an expert to meet his burden on this "critical element of his case." *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 440 (7th Cir. 2019); *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 790 (7th Cir. 2017) ("because the inner workings of a laptop and its components, including the battery pack and its cells, are highly technical, expert testimony is necessary for plaintiffs to prevail") (quotations omitted); *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004) ("typically expert testimony will be necessary in cases involving complex technology") (quotations omitted).

Without Dr. Daft, Plaintiff cannot meet his burden. Summary judgment "follow[s] naturally." *Clark*, 929 F.3d at 440.

**III.     Plaintiff cannot show that Speedway acted negligently, recklessly, or intentionally.**

   **A.     BIPA is not a strict liability statute.  At this stage, Plaintiff must put forth
   evidence that Speedway acted negligently, recklessly, or intentionally.**

   BIPA only imposes damages when a defendant acts negligently, recklessly, or

intentionally.  740 ILCS 14/20.  To conclude otherwise would effectively transform BIPA into a

strict liability statute, which it is not.

   The Illinois Supreme Court has explained that "violation of a statute is not a strict

liability tort unless . . . the legislature clearly intends to impose strict liability." *Abbasi v.

Paraskevoulakos,* 718 N.E.2d 181, 186 (Ill. 1999).  To determine whether the legislature clearly

intended to impose strict liability, courts look to the plain language of the statute, read as a

whole.  *Abbasi,* 718 N.E.2d at 186; *Bybee v. O'Hagen*, 612 N.E.2d 99 (Ill. App. Ct. 1993).

   If a statute lacks express language imposing strict liability, that shows the legislature did

not intend to impose strict liability.  For example, in *Abbasi*, the plaintiff brought a claim against

her landlord under the Illinois Lead Poisoning Prevention Act.  *Abbasi*, 718 N.E.2d at 182.  The

plaintiff argued that even though the landlord had no notice of the lead hazard, the landlord

should be held strictly liable for the injuries the plaintiff sustained from ingesting lead-based

paint.  *Id.* at 186.  The Supreme Court of Illinois rejected this argument because the statute did

not contain language explicitly stating that it is a strict liability statute.  *Id.*; *see also Test Drilling

Serv. Co. v. Hanor Co.*, 322 F. Supp. 2d 957, 963 (C.D. Ill. 2003) (no strict liability where there

was no "explicit language imposing strict liability nor is there language which shows the

legislature intended to impose strict liability").

   Like the statutes in *Abbasi* and *Test Drilling Services*, BIPA lacks explicit language

imposing strict liability.  In fact, the plain language of the statute shows the Illinois legislature

did not intend to impose strict liability because BIPA permits damages only when a defendant

negligently, recklessly, or intentionally violates the statute. 740 ILCS 14/20. BIPA cannot simultaneously be a strict liability statute and also impose a negligence-based standard. *See Indiana Harbor Belt R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1177 (7th Cir. 1990) ("When [negligence] is a workable regime, because the hazards of an activity can be avoided by being careful (which is to say, nonnegligent), there is no need to switch to strict liability.").

    **B.    Plaintiff cannot demonstrate that Speedway acted negligently.**

        **1.    Speedway acted reasonably and harm to Plaintiff was not foreseeable.**

Legal causation is an element of negligence, and the "touchstone of legal causation is foreseeability." *Kramer v. Szczepaniak*, 123 N.E.3d 431, 440 (Ill. App. Ct. 2018). "The relevant inquiry here is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *First Springfield Bank & Tr. v. Galman*, 720 N.E.2d 1068, 1072 (Ill. 1999). Here, Speedway acted reasonably for several reasons, making the harm alleged by Plaintiff not foreseeable.

First, Speedway had privacy and data-retention policies in place throughout the relevant time period. SOF ¶¶ 6-10. These policies protected Plaintiff's personal data, including his finger-scan data, against disclosure, and provided for its destruction within the time frame required by BIPA. *Id.*; *see also* 740 ILCS 14/15(a). Moreover, Speedway believed in good faith (and correctly) that it was not collecting fingerprints, and thus had no reason to think BIPA applied to it. SOF ¶ 11.

Second, to the extent Plaintiff contends that Speedway's existing policies were not good enough, when enacting a new law, the Illinois legislature is obligated to "afford [Speedway] a reasonable opportunity to familiarize itself with its terms and to comply." *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982). Until the recent wave of BIPA litigation, an employer that takes reasonable care to ascertain Illinois law governing employer-employee relationships would have

no reason to be aware of BIPA's existence and purported obligations. BIPA appears under "Civil Liabilities," in Chapter 740 of the Illinois Code. Laws specifically applicable to employers and their employees are listed in the logically-titled "Employment" section, Chapter 820 of the Illinois Code.

An employer's search for relevant law within BIPA itself would be similarly fruitless. BIPA's "Legislative Findings" section makes no mention of employers or employees. 740 ILCS 14/5. In fact, the terms "employment" and "employee" are mentioned only once in the entirety of BIPA, within the definition of "written release." *Id.* § 10. A reasonable employer might next look to the Illinois Department of Labor's (IDOL) Required Posters List, which lists each Illinois employment statute employers are required to post in employee areas. *See Required Posters*, ILLINOIS DEPARTMENT OF LABOR, https://www2.illinois.gov/idol/Employers/pages/posters.aspx. But BIPA is not a required poster, nor is it mentioned on the IDOL website.

Third, it is not foreseeable that Plaintiff would willingly clock in and out of Speedway's system for almost two years, but later claim Speedway should have provided him with a form of notice that Plaintiff himself admitted would not have made any difference to him. *See* SOF ¶¶ 15-20. To the extent Plaintiff was harmed, his own carelessness was the proximate cause of any harm.

Hundreds of cases have been filed under BIPA in a wave of litigation beginning largely in 2017—nine years after the statute was passed. Plaintiff's argument that Speedway was negligent for failing to take notice of BIPA, when Plaintiff and the plaintiffs' bar also were apparently unaware of the statute's existence, is convenient. It also fails.

### 2. Plaintiff cannot meet his burden.

"A party that does not bear the burden of persuasion may move for summary judgment by showing . . . that there is an absence of evidence to support the nonmoving party's case."

*Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotations omitted)).  Here, especially in light of Speedway's conduct, Plaintiff cannot meet his burden to demonstrate that Speedway acted negligently.

Basic principles of statutory construction require that "negligently" as used in BIPA be interpreted according to its plain and ordinary meaning, and the meaning of "negligence" comes from common law.  *See, e.g.*, *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1204 (Ill. 2019).  In Illinois, to prevail on a claim for negligence a plaintiff must prove (1) duty, (2) breach, (3) causation, and (4) harm.  *E.g.*, *Guvenoz v. Target Corp.*, 30 N.E.3d 404, 422 (Ill. App. Ct. 2015).  Plaintiff cannot meet his burden on any of the four elements.

***Duty and Breach.***  There is no evidence that Speedway violated any duty owed under BIPA, because Plaintiff cannot demonstrate that Speedway collected biometric identifiers or biometric information as defined by BIPA.  *See* Sections I and II *supra*.

***Causation.***  To establish negligence, Plaintiff must demonstrate that Speedway's actions were both the cause-in-fact of Plaintiff's injury and the legal cause of Plaintiff's injury.  Here, Speedway's actions were not the legal cause of Plaintiff's alleged harm, because his alleged injuries were not foreseeable.  *See* Section III.B.1 *supra*.

***Harm.***  Plaintiff bears the burden of proving every element of his prima facie case, including that Speedway's actions caused him harm.  *See, e.g.*, *Berz v. City of Evanston*, 997 N.E.2d 733, 737 (Ill. App. Ct. 2013).  Plaintiff has no evidence to support that he was harmed by Speedway's actions.  At most, Plaintiff claims Speedway did not offer him a chance to refuse providing his fingerprints.  However, Plaintiff testified that even if he had been so informed, he would not have acted differently.  SOF ¶¶ 19-20; *see also* Speedway's motion for summary

judgment on waiver (Dkt. 60), incorporated by reference herein. Because Plaintiff suffered no harm, his claims must be dismissed.

Simply put, Speedway did not act negligently, and this Court should grant summary judgment in its favor.

### C. Plaintiff cannot demonstrate recklessness or intent.

Nor can Plaintiff meet his burden to show that Speedway acted recklessly or intentionally. Intent requires "a desire to cause consequences or at least [a] substantially certain belief that the consequences will result." *Ziarko v. Soo Line R. Co.*, 641 N.E.2d 402, 405 (Ill. 1994) (internal quotations omitted). Similarly, liability for reckless conduct requires that the actor "knows [injury] is certain or substantially certain to result" and arises from "situations in which there is a high degree of probability that [injury] will follow and the actor goes ahead in conscious disregard of it." *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976).

For the reasons in Section III.B above, Speedway plainly did not act with a deliberate intent to harm Plaintiff or in conscious disregard of BIPA.

## IV. The Court should construe BIPA narrowly to avoid constitutional problems.

Particularly relevant to the grounds for summary judgment discussed in Sections I and III above, the meaning of "biometric identifier" and the state of mind required for BIPA liability to attach should be interpreted narrowly to avoid running afoul of constitutional problems, most glaringly Due Process.[5] Courts have a "duty to construe a statute so as to affirm the statute's constitutionality and validity, if reasonably possible." *People v. Glenn*, 106 N.E.3d 462, 466 (Ill. App. Ct. 2018) (citing *People v. Shephard*, 605 N.E.2d 518, 523 (Ill. 1992)). The constitutional-avoidance canon requires the Court to construe BIPA in a way that "promote[s] its essential

---

[5] Speedway incorporates by reference herein the discussions of constitutional issues in its previous Motion for Summary Judgment and Reply. *See* Dkt. 60 at 10-15 and Dkt. 76 at 12-17.

purposes and [avoids], if possible, a construction that would raise doubt as to its validity." *People v. Glenn*, 106 N.E.3d 462, 466 (2018) (citing *People v. Nastasio*, 168 N.E.2d 728, 731 (Ill. 1960)); *see also Maddux v. Blagojevich*, 911 N.E.2d 979, 984 (Ill. 2011) ("the General Assembly cannot acquiesce to a construction that is at odds with the constitution"). Here, construing BIPA as Plaintiff proposes violates the Due Process clause for two reasons: (1) Due Process requires fair notice of the law, and Speedway did not receive fair notice and (2) imposing liability would violate the Due Process clause's prohibition against grossly excessive punishments.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Here, however, Speedway did not receive fair notice of BIPA. Out of the almost 5,000 pages of new bills the Illinois legislature passed in 2007 and 2008, BIPA was a needle in a haystack. *See Legislative Synopsis and Digest*, 95th G.A. 2007-2008 (No. 15), available at ftp://12.43.67.2/Digest/95thFinalDigest.pdf. BIPA did not appear in the "Employment" chapter of the Illinois Code; instead, it was buried in the Code's "Civil Liabilities" chapter. And Speedway believed in good faith that it was not collecting fingerprints, SOF ¶ 11, and therefore had no reason to look for or pay special attention to a statute governing the collection of fingerprints.

Despite all this, Plaintiff claims that Speedway should be held liable for $1,000 per use of the Timeclocks. Such an expansive reading of BIPA is not just wrong—it violates Due Process because it violates principles of fair notice.

Interpreting BIPA broadly would also violate the Due Process clause's prohibition against "'grossly excessive' punishments." *Cooper Indus., Inc. v. Leatherman Tool Grp.*, 532

20

U.S. 424, 434 (2001); *Honda Motor Co. v. Oberg*, 512 U.S. 415, 416 (1994) (noting that the Due Process clause protects individuals and private entities against "arbitrary deprivations of liberty or property"). A statutory award violates due process when it is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66–67 (1919). Where, as here, statutory damages are dissociated from actual harm and then aggregated via class action, they become "essentially penal." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66 (1919). Interpreting "biometric identifier" broadly would authorize massive recoveries for plaintiffs who have suffered no actual damages. To avoid Due Process concerns, this Court should interpret BIPA narrowly. *See Fraley v. Batman*, 638 F. App'x 594, 597 (9th Cir. 2016) (disproportionate statutory award "implicate[s] due process concerns"); *see also People v. Hanna*, 800 N.E.2d 1201, 1208 (Ill. 2003) (emphasizing the "deeply rooted" principle that "statutory language should not be construed to produce an absurd result.").

**V.     A one-year statute of limitations applies to Plaintiff's claims and bars all of them.**

   **A.     Plaintiff's Section 15(d) claim for unauthorized disclosure is time-barred.**

   For the Section 15(d) claim in his Complaint, Plaintiff alleges that when he began working at Speedway, he was "required to scan [his] fingerprint and [was] enrolled" in a "Kronos employee database." Dkt. 1-1 ¶ 2. Plaintiff further alleges that his fingerprint was "systematically and automatically disclosed" to Kronos, apparently throughout his time working at Speedway. Dkt. 1-1 ¶¶ 2, 71-72. Although Speedway denies that it disclosed data regulated by BIPA to a third party, the statute of limitations is determined by looking to the injury claimed by Plaintiff—here, a violation of his BIPA rights. *See Travelers Cas. & Sur. Co. v. Bowman*, 893 N.E.2d 583, 586–87 (Ill. 2008).

In the only appellate opinion to date that addresses this issue, the Illinois Appellate Court recently held that BIPA Section 15(d) claims are governed by the one-year statute of limitations for "[a]ctions for slander, libel, or publication of [a] matter violating the right of privacy." *See* 735 ILCS 5/13-201; *see also Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563. The Appellate Court explained that "publication or disclosure of biometric data is clearly an element of an action under section 15(d) of [BIPA], which is violated by disclosing or otherwise disseminating such data absent specified prerequisites." *Tims*, 2021 IL App (1st) 200563, ¶ 32.

Plaintiff's BIPA claims accrued as soon as facts existed that authorized him to maintain an action. *Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. 2006). Here, Plaintiff first scanned his finger to enroll in the timekeeping system in September 2015. SOF ¶¶ 5, 15; Dkt. 1-1 ¶ 2. At that point, Plaintiff alleges, Speedway violated BIPA, including by systematically and automatically disclosing his data to Kronos. Dkt. 1-1 ¶¶ 2, 71-72. His BIPA claims thus accrued in September 2015, and the statute of limitations expired in September 2016. Plaintiff's Complaint was filed September 1, 2017, a year too late.

### B. Plaintiff's claims under BIPA sections 15(a) and 15(b) also are untimely.

*Tims* correctly decided that Section 15(d) claims are subject to a one-year statute of limitations, but as to Section 15(a) and (b) claims, the *Tims* court got it wrong. Section 15(a) requires entities in possession of biometrics regulated by BIPA to have and adhere to a publicly-available biometrics policy. *See* 740 ILCS 14/15(a). Section 15(b) requires notice and consent before the collection of biometric identifiers or biometric information. *See* 740 ILCS 14/15(b). In *Tims*, the Appellate Court applied the five-year "catch-all" statute of limitations, 735 ILCS 5/13-205, to these claims because, it held, the claims have "no element of publication or dissemination." *Tims*, 2021 IL App (1st) 200563, ¶ 31.

The *Tims* court's analysis was flawed, because the Illinois Supreme Court has repeatedly recognized that <u>all facets</u> of BIPA protect against the disclosure of individuals' biometric identifiers and information. BIPA "protects a secrecy interest—here, the right of an individual to keep his or her personal identifying information like fingerprints secret. Under [BIPA], disclosing a person's biometric identifiers or information without their consent necessarily violates that person's right to privacy in biometric information." *West Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978 ¶ 46. *West Bend* follows and builds upon the Illinois Supreme Court's ruling in *Rosenbach* that the "point of the law" is to prevent the "irreversible harm that could result if biometric identifiers and information are not properly safeguarded." 129 N.E.2d at 1207.

Judge Wood recognized exactly the above early in this case. She explained that Section 15(d) represents BIPA's primary purpose; the other sections are merely ancillary to this goal. *Howe v. Speedway LLC*, No. 17-CV-07303, 2018 WL 2445541 (N.D. Ill. May 31, 2018) (BIPA's specific regulations regarding notice and consent are "ancillary to [its] primary purpose—protecting [individuals'] biometric data . . . ."). BIPA accomplishes this goal in part through Section 15(b)'s procedural "safeguards" to prevent improper disclosure. *Rosenbach*, 129 N.E.2d at 1206–07 (BIPA imposes "safeguards to insure that individuals' and customers' privacy rights . . . [are] protected to begin with, before they are or can be compromised."). Similarly, Section 15(a) requires the deletion of biometric information, which further serves to prevent wrongful disclosure. *See Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). Simply put, BIPA was enacted for a singular purpose: to prevent "publication of matter violating the right of privacy," and the one-year statute of limitations of 735 ILCS 5/13-201 applies to all of Plaintiff's BIPA claims.

23

This Court is not bound by *Tims*. Rather, because the Illinois Supreme Court has not yet ruled directly on the statute of limitations for BIPA claims, this Court must use its own best judgment to estimate how the Illinois Supreme Court would rule. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087–88 (7th Cir. 2016) (although the decisions of a state's intermediate appellate courts are entitled to significant weight, this Court can deviate from those holdings when "there are persuasive indications that the highest court of the state would decide the case differently."). Here, *West Bend* and *Rosenbach* show that the Illinois Supreme Court believes the fundamental injury at issue in a BIPA claim is the loss of control over the secrecy of biometric information. The injury BIPA is designed to protect against is the unauthorized publication to another of biometrics. The Illinois Supreme Court is likely to apply a one-year statute of limitations to all BIPA claims, and this Court should as well. When the one-year statute of limitations is applied, because Howe's claims accrued when he first scanned his finger, *see* Section V.A *supra*, they are all time-barred.

**VI.    Plaintiff's claims are preempted by the Illinois Workers' Compensation Act.**

According to Plaintiff, he has been injured because he used biometric technology during the course of his employment at Speedway for the work-related purpose of tracking his time. Dkt. 1-1 ¶¶ 43–47. The Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1 *et seq.*, provides the exclusive remedy for employment-related injuries absent very limited circumstances, which do not exist here. 820 ILCS 305/5(a); *Cooley v. Power Constr. Co., LLC*, 107 N.E.3d 435, 439 (Ill. App. Ct. 2018) (employees injured at work "do not have a cause of action against their employer . . . their exclusive remedy" is applying for IWCA benefits).

The exclusivity provisions of the IWCA apply to <u>all injuries</u>. The language is intentionally broad and encompasses "the whole ground of the liabilities of the master." *Duley v. Caterpillar Tractor Co.*, 253 N.E.2d 373, 374 (Ill. 1969). No carve-outs exist for particular types

of injuries, and nothing limits exclusivity to injuries that have some physical manifestation.

Rather, claims for invasion of privacy and emotional injuries fall within the IWCA's exclusivity

provision, regardless of whether there are accompanying physical injuries. *Richardson v. County

of Cook*, 621 N.E.2d 114, 116–17 (Ill. App. Ct. 1993) (injury arising from plaintiff being forced

to "disrobe" in front of co-workers compensable if sustained during employment); *Pathfinder

Co. v. Industrial Comm'n*, 343 N.E.2d 913, 916–17 (Ill. 1976) (employee's emotional injuries

preempted even though no physical trauma or injury sustained); *Diaz v. Illinois Workers' Comp.

Comm'n*, 989 N.E.2d 233, 239 (Ill. App. Ct. 2013) (psychological harm without physical injury

is compensable under the IWCA. So long as the injury occurs in the course of employment, the

injury falls within the scope of the exclusivity provision, regardless of the specific type of injury

at issue. Thus, Howe's claims belong in the workers' compensation system, not in this Court.[6]

## CONCLUSION

For the reasons above, Speedway respectfully requests that the Court enter summary

judgment in its favor on all of Plaintiff's claims.

Dated: October 28, 2021                    Respectfully submitted,

                                           SPEEDWAY LLC


                                           By: _/s/ Tristan L. Duncan_____
                                           One of Its Attorneys

Tristan L. Duncan (*pro hac vice*)         Matthew C. Wolfe
SHOOK, HARDY & BACON L.L.P.                SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard                       111 South Wacker Drive
Kansas City, MO  64108                     Chicago, IL  60606
Tel:  (816) 474-6550                       Tel:  (312) 704-7700
tlduncan@shb.com                           mwolfe@shb.com

---

[6] IWCA preemption of BIPA claims is presently before the Illinois Supreme Court in *McDonald v. Symphony Park Bronzeville, LLC*, No. 126511 (argued Sept. 23, 2021). Speedway respectfully submits that the ruling in *McDonald* will be highly instructive on this issue and possibly dispositive of this case.

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew C. Wolfe, an attorney, hereby certify that on **October 28, 2021**, I caused a true and correct copy of **SPEEDWAY LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be served on counsel of record via ECF pursuant to the General Order on Electronic Filing of the United States District Court, Northern District of Illinois.


      */s/ Matthew C. Wolfe*