# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHRISTOPHER HOWE, individually, and on behalf of all others similarly situated,

        Plaintiff,

v.

SPEEDWAY LLC,

        Defendant.

No. 19-cv-01374

Honorable John F. Kness

## PLAINTIFF'S OPPOSITION TO
## <u>SPEEDWAY'S MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

**I. INTRODUCTION** ..........................................................................................................1

**II. FACTUAL BACKGROUND** .....................................................................................2

**III. ARGUMENT** ..............................................................................................................6

    **A. Speedway Captured, Collected, Obtained, Stored, Used, and Disclosed Exactly the Type of Data BIPA Seeks to Protect.** ....................................................6

        1. Under BIPA's Plain Text, Speedway Collected Biometric Identifiers and Biometric Information. ....................................................................................6

        2. Speedway's Self-Serving, Extratextual Spin on the Term "Fingerprint" Is Not a Basis for Summary Judgment. .......................................................8

        3. Speedway's Artificially Narrow Reading of BIPA Cannot Be Reconciled With Its Legislative History or the Events Leading to Its Passage. ...............14

        4. Dr. Daft's testimony should not be excluded.....................................................16

    **B. Speedway's Admitted Refusal to Learn the Law for Nine Years Was Not Merely Negligent, But Reckless Conduct.**............................................................17

        1. Plaintiff's claims arise from Speedway's violation of his statutory rights under BIPA, not a common law tort. .......................................................................18

        2. Speedway's admitted failure to read, or even look for, the existence of any biometric privacy laws overwhelmingly establishes that it violated BIPA negligently.............................................................................................................19

        3. Speedway's uncontested acts and omissions establish recklessness, too. .......20

    **C. The Court Should Reject Speedway's Improper and Repetitive Due Process Challenge.** ....................................................................................................22

    **D. The Court Should Defer Ruling on the Statute of Limitations Issue.**...................22

    **E. Plaintiff's Claims Do Not Fall Under the Workers' Compensation Act's Exclusivity Provision and Are Not Preempted.**........................................................23

**IV. CONCLUSION** ...........................................................................................................24

# **TABLE OF AUTHORITIES**

**United States Supreme Court Cases:**

*BP P.L.C. v. Mayor and City Council of Baltimore*,
    141 S. Ct. 1532 (2021).....................................................................................10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)........................................................................................22

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
    559 U.S. 573 (2010)........................................................................................22

**United States Circuit Court of Appeals:**

*AAR Aircraft & Engine Grp., Inc. v. Edwards*,
    272 F.3d 468 (7th Cir. 2001) .........................................................................23

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*,
    778 F.3d 593 (7th Cir. 2015) ...........................................................................6

*Johnson v. Hix Wrecker Serv., Inc.*,
    651 F.3d 658 (7th Cir. 2011) ...........................................................................6

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006) .........................................................................22

*Myers v. Illinois Central R.R. Co.*,
    629 F.3d 639 (7th Cir. 2010) ...........................................................................7

*Spierer v. Rossman*,
    798 F.3d 502 (7th Cir. 2015) ...........................................................................6

*United States v. Baines*,
    573 F.3d 979 (10th Cir. 2009) ..................................................................10, 11

*United States v. Dish Network L.L.C.*,
    954 F.3d 970 (7th Cir. 2020) ...........................................................................2

*United States v. Herrera*,
    704 F.3d 480 (7th Cir. 2013) .........................................................................10

*United States v. Lee*,
    502 F.3d 691 (7th Cir. 2007) .........................................................................10

*United States v. Vallery*,
    437 F.3d 626 (7th Cir. 2006) ...................................................................14, 15

**United States District Court Cases:**

*Cothron v. White Castle System, Inc.*,
    467 F. Supp. 3d 604 (N.D. Ill. 2020) ..................................................................18

*Figueroa v. Kronos Inc.*,
    454 F. Supp. 3d 772 (N.D. Ill. 2020) ..................................................................20

*Irvine v. 233 Skydeck, LLC*,
    597 F. Supp. 2d 799 (N.D. Ill. 2009) ..................................................................19

*McGoveran v. Amazon Web Services, Inc.*,
    No. 20-1399-LPS, 2021 WL 4502089 (D. Del. Sept. 30, 2021) ......................11

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ....................................................9, 10, 11

*Roberson v. Maestro Consulting Services, LLC*,
    507 F. Supp. 3d 998 (S.D. Ill. 2020) ..................................................................18

*Rogers v. BNSF Railway Co.*,
    No. 19 C 3083, 2019 WL 5635180 (N.D. Ill. Oct. 31, 2019) ...........................20

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
    480 F. Supp. 3d 888 (S.D. Ill. 2020) ..................................................................18

*Treadwell v. Power Sols. Int'l, Inc.*,
    427 F. Supp. 3d 984 (N.D. Ill. 2019) ..................................................................24

*Vance v. Int'l Bus. Mach. Corp.*,
    No. 20-cv-577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020) ...........................9

*Worix v. MedAsets, Inc.*,
    857 F.Supp.2d 699 (N.D. Ill. Mar. 8, 2012) ......................................................21

**Illinois Supreme Court Cases:**

*McDonald v. Symphony Bronzeville Park LLC*,
    No. 126511 (Ill.) ................................................................................................24

*Meerbrey v. Marshall Field & Co.*,
    139 Ill. 2d 455 (1990) ........................................................................................23

*Pathfinder Co. v. Indus. Comm'n*,
  62 Ill. 2d 556 (1976) ...................................................................................24

*People v. Boclair*,
  202 Ill. 2d 89 (2002) ...................................................................................19

*People v. Hollins*,
  2012 IL 112754...........................................................................................20

*Piccioli v. Bd. of Trustees of Teachers' Retirement Sys.*,
  2019 IL 122904...........................................................................................19

*Rosenbach v. Six Flags Ent. Corp.*,
  2019 IL 123186..................................................................................3, 18, 20

**Illinois District Court of Appeals Cases:**

*First Am. Title Ins. Co. v. TCF Bank, F.A.*,
  286 Ill. App. 3d 268 ....................................................................................19

*McDonald v. Symphony Bronzeville Park LLC*,
  2020 IL App (1st) 192398............................................................................23

*People v. Cline*,
  2020 IL App (1st) 172631, 156 N.E.3d 501 (Ill. App. Ct. 2020) ..............10, 11

*Tims v. Black Horse Carriers, Inc.*,
  2021 IL App (1st) 200563.........................................................................2, 22

**Rules and Statutory Provisions:**

28 U.S.C. § 1447...............................................................................................10

Fed. R. Civ. P. 56...............................................................................................6

**Miscellaneous Authority:**

95th Gen. Assem.,
  2008 Reg. Sess. No. 276 .............................................................................14

740 ILCS 14/5(a)-(g); 95th Ill. Gen. Assembly,
  House Proceedings, May 30, 2008 .............................................................21

Biometric Information Privacy Act,
  740 ILCS 14.......................................................................................... *passim*

*Negligent*,
 Black's Law Dictionary (11th ed. 2019) ....................................................................20

*Obtain*,
 Merriam-Webster Online Dictionary, https://www.merriam-
 webster.com/dictionary/obtain (last accessed Dec. 13, 2021) ...........................................12

*Ransomware attack on Kronos could disrupt how companies pay, manage employees for weeks*,
 USA Today (Dec. 13, 2021), available at
 https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-
 2021/6501274001 ...................................................................................................13

# I.    INTRODUCTION

Defendant Speedway, LLC ("Defendant" or "Speedway") has moved for summary judgment on five different grounds, all of which must be rejected. First, it argues that it did not capture, collect, or obtain any "biometric identifiers" or "biometric information," as defined by BIPA, because its fingerprint-scanning timeclocks only collected a 14 mm x 20 mm portion of Plaintiff's fingerprint, and according to Speedway, BIPA only protects 20 mm x 30 mm "full" fingerprints.  But such a restrictive (and illogical) reading of the statue is neither supported by the plain text of BIPA nor its legislative history or intent—rather, they glaringly demonstrate the opposite. BIPA was enacted to give individuals a right to privacy in and control over certain biometric identifiers, including fingerprints, that can be used to identify them, regardless of how they are collected or the size of the scanner that collects them. As discovery has shown, Speedway's timeclocks captured a fingerprint image and converted that fingerprint into template, or a digital representation of a fingerprint, to be stored for (at least) the duration of the employee's time at Speedway. This biometric data falls squarely within BIPA's purview.

Second, Speedway suggests that Plaintiff must prove the common law tort elements of negligence to establish that Speedway "negligently" or "recklessly" violated BIPA. Not so. Plaintiff need only establish that Speedway violated one of BIPA's section 15 requirements to establish liability, and then, to determine the amount of statutory damages he is entitled to, Plaintiff must show that Speedway violated BIPA with either a "negligent" or "reckless" state of mind. Speedway's willful ignorance of BIPA for 9 years, despite its widespread use of biometric timeclocks, establishes that its behavior was negligent, if not reckless. Speedway, like everyone else, is presumed to know the law—it cannot claim ignorance to escape BIPA's statutory damages.

Third, Speedway raises an oddly timed constitutional argument, claiming that it would offend due process to make Speedway pay BIPA's statutory damages, before the Court has even

1

made a damages award. Not only is this argument premature, it has been flatly rejected by the Seventh Circuit.[1]

Fourth, Speedway makes the incredible ask that *all* of Plaintiff's BIPA claims—under sections 15(a), (b), and (d)—be barred by a one-year statute of limitations, by picking and choosing which parts of the Illinois Appellate Court's decision in *Tims v. Black Horse Carriers, Inc.* it wants this Court to follow. The most prudent course, however, is for this Court to wait to decide the limitations issues until the Illinois Supreme Court decides if it will weigh in.[2]

Finally, like nearly every other BIPA employer-defendant, Speedway asks the Court to find that Plaintiff's BIPA claims are preempted by the Illinois Workers' Compensation Act. But Speedway fails to mention that, of the dozens of courts to consider this argument—at both the trial and appellate court levels—all have unanimously rejected it. This Court should too.

Because Speedway fails to satisfy its burden to establish the absence of genuine issue of material fact, or that summary judgement should be decided in its favor on any issue, its Motion should be denied in its entirety.

## II.    FACTUAL BACKGROUND

In 2008, the Illinois Legislature enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, as a result of the growing use of biometric technology across the state, "including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). BIPA codifies basic safeguards for Illinois residents whose biometrics are collected, used, stored and disseminated to ensure their "privacy rights in their biometric identifiers and

---

[1] *See United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020) ("Someone whose maximum penalty reaches the mesosphere only because the number of violations reaches the stratosphere can't complain about the consequences of its own extensive misconduct.").

[2] *See Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563 (petition for leave to appeal pending).

biometric information are properly honored[.]" *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 36. Compliance with BIPA is not difficult. Before collecting biometric data, a private entity, like Speedway, must first inform the individual that their biometric data is being collected, obtained or stored, and secure their written consent. 740 ILCS 14/15(b). When possessing biometric data, entities must create and adhere to a publicly-available, written policy establishing a retention and permanent destruction schedule for this data, 740 ILCS 14/15(a), and they must also secure consent before further disseminating or disclosing the person's biometric data, 740 ILCS 14/15(d).

Defendant Speedway operates gas stations and attached convenience stores throughout Illinois. Plaintiff Christopher Howe ("Plaintiff" or "Howe") began his employment with Speedway in September 2015 as a manager in training, a position he held at various locations throughout Illinois before he was transferred to the Addison, Illinois store in October 2016, when he was promoted to general manager. (PSOF ¶ 1). As a condition of employment, Speedway required all employees, including Howe, to scan their fingers each workday to clock in and out as an authentication method to track work time. (*Id.* ¶ 2). All employees were required to enroll their fingerprints into one of Speedway's biometric timeclocks, and the enrollment process was consistent across all Speedway locations throughout Illinois. (*Id.* ¶ 3).

Speedway first started using biometric timeclocks as early as 2003 as a means to relieve store managers from having to manually input employee hours on timesheets each week and to avoid buddy punching (*i.e.,* for productivity and efficiency purposes). (*Id.* ¶¶ 9-10). However, it was not until its personnel read a news article in August 2017 related to a BIPA lawsuit filed against Kronos, Inc. that Speedway first learned of the law or investigated whether its collection, storage, use, and dissemination of its employees' fingerprints adhered to the law. (*Id.* ¶¶ 11, 13-

3

14). Before Speedway learned of this article, it made no attempt to learn about any laws governing biometric privacy, let alone comply with BIPA, for nearly nine years after the statute was implemented. (*Id.* ¶¶ 12, 16-22).

Speedway rolled out a BIPA consent form for the first time in November 2017. (*Id.* ¶¶ 12, 16). This was the first time Speedway ever (1) sought informed consent from employees or notify them, in writing, that it was collecting, storing, and using their fingerprints; the purposes and length of time for which it was collecting, storing, and using their fingerprints; (2) attempted to secure a written release from its employees to collect, store, and use their fingerprints; or (3) created and adhered to a policy made available to the public, establishing a retention schedule and guidelines for permanently destroying its employees personal and private fingerprint data. (*Id.* ¶¶ 12, 16-22).

BIPA is not a difficult statute to understand, and it certainly does not require some special expertise in some discipline to understand it. (*Id.* ¶ 39). Unsurprisingly, biometrically assisted devices, such as Speedway's biometric timeclocks, collect biometric data. (*Id.* ¶ 40). ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Whether it is a full or partial fingerprint, a biometric reader that may be smaller than the size of a full fingerprint will still produce a truncated fingerprint, which is still a fingerprint. (*Id.* 31). It is through the process of condensed sensing, an engineering technique used in a variety of products on the market such as digital photography and diagnostic imaging, which acquires data on a smaller scale, yet captures the full essence of the image (*i.e.,* fingerprint) for the device, such as Speedway's biometric timeclocks, to function as intended. (*Id.* ¶ 27). ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

While the fingerprint template may contain less information than a full fingerprint, through

compressed sensing, such as what is used in a digital camera, a machine learning system can reconstruct the fingerprint template to recreate the original fingerprint image. (*Id*. ¶ 38).

## III.    ARGUMENT

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The standard for summary judgment is well established: with the court drawing all inferences in the light most favorable to the non-moving party, the moving party must discharge its burden of showing that there are no genuine questions of material fact and that [it] is entitled to judgment as a matter of law." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). "If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *accord. Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 662 (7th Cir. 2011) ("A party opposing summary judgment does not have to rebut factual propositions on which the movant bears the burden of proof and that the movant has not properly supported in the first instance.").

### A.    Speedway Captured, Collected, Obtained, Stored, Used, and Disclosed Exactly the Type of Data BIPA Seeks to Protect.

#### 1.    Under BIPA's Plain Text, Speedway Collected Biometric Identifiers and Biometric Information.

BIPA is a concise, straightforward statute intended to grant Illinois residents with comprehensive protections for their biometric identifiers and biometric information. *See* 740 ILCS 14/1, *et seq*. Intended to be commonly understood and applied by laypeople, BIPA's plain text unambiguously sets forth the type of data the legislature considered "biometric identifiers" and "biometric information" intended for protection. 740 ILCS 14/10. BIPA's expansive statutory protections for "biometric identifiers" expressly include a "retina or iris scan, ***fingerprint***,

voiceprint, or scan of hand or face geometry." *Id.* (emphasis added). BIPA's protections don't stop

there, though: they also encompass "biometric information," broadly defined as "***any information***,

regardless of how it is captured, converted, stored, or shared, ***based on an individual's biometric***

***identifiers used to identify an individual***." 740 ILCS 14/10 (emphasis added).

BIPA's straightforward terminology plainly does not require expert testimony. Rather, any

finder of fact is capable of fully comprehending and evaluating Plaintiff's claims and Speedway's

defenses in the absence of expert testimony. *See Myers v. Illinois Central R.R. Co.*, 629 F.3d 639,

643 (7th Cir. 2010) (explaining that "expert testimony is unnecessary in cases where a layperson

can understand" facts necessary to prove the elements of the claim at issue). ▮ ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see* 740 ILCS

14/10. What the parties don't agree on is what to call the fingerprint information collected.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Speedway executed this process of capturing, collecting, storing, using, and disclosing Plaintiff's and similarly-situated employees' biometric data each time it scanned their fingerprints at Speedway's timekeeping system. *Id.* ¶ 2. As a result, Plaintiff's expert fully and unequivocally avers to the obvious—that Speedway's biometric devices capture and temporarily store a fingerprint image (*i.e.,* a biometric identifier) and create and permanently store a template based on that fingerprint image, which is used to identify the individual (*i.e.,* biometric information).

> **2.    Speedway's Self-Serving, Extratextual Spin on the Term "Fingerprint" Is Not a Basis for Summary Judgment.**

Speedway tries to complicate a clear-cut issue by inventing a new limitation in BIPA's protections: that the statute only protects "full" fingerprints and information based on "full" fingerprints. Dkt. 112-1 at 11-19. Based on this faulty premise, Speedway then concludes that, because its timekeeping devices did not capture "an entire" 20mm x 30mm scan of a fingerprint, but a 14 mm x 22 mm "scan of *part* of a finger," Speedway could not have collected biometric identifiers or biometric information as those terms are defined under BIPA. *Id.* (emphasis added).

The Court must reject this argument, as it is neither supported by the text of BIPA nor its legislative history or intent.

To start, absent from the plain text of the statute is any language limiting or narrowing BIPA's definition of "fingerprint." *See generally* 740 ILCS 14/1, *et seq.* Nowhere among BIPA's comprehensive protections did the legislature suggest or imply that it intended to protect only full fingerprints or data derived from full fingerprints. *Id.* Rather, the term "fingerprint," like all other biometric identifiers protected under BIPA, is all-inclusive, safeguarding any biometric measurements used to identify a person, including full, partial, and "rolled" fingerprints, regardless of how they are captured. *Id.* As Judge Chang explained:

> The definition [of "biometric identifier" in BIPA] simply lists the specific identifiers that are covered. And the particular biometric identifiers can, in fact, be collected in various ways without altering the fact that the measurements still are biometric identifiers. … It is not the how that is important to [BIPA]; what's important is the potential intrusion on privacy posed by the unrestricted gathering of biometric information. The bottom line is that a "biometric identifier" is not the underlying medium itself, or a way of taking measurements, but instead is a set of measurements of a specified physical component (eye, finger, voice, hand, face) used to identify a person.

*Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1095-96 (N.D. Ill. 2017); *see Vance v. Int'l Bus. Mach. Corp.*, No. 20-cv-577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020) (collecting a "'dataset' of "biometric measurements that can be used to identify [p]laintiffs … implicate[s] BIPA"). Here, it doesn't matter that Speedway captured only a portion of Plaintiff's fingerprint. What matters is that Speedway captured enough of Plaintiff's biometric fingerprint measurements to be used to identify him each time he clocked in and out of work. That implicates BIPA.

Speedway struggles to find support from its own expert, who repeatedly concedes that Speedway, through its biometric timekeeping system, captured, collected, stored, used, and disclosed biometrics. ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████ Regardless of how Defendant

wants to phrase it, these are "a set of measurements of a … finger … used to identify a person,"

and thus are biometric identifiers or biometric information subject to BIPA. *See Rivera*, 238 F.

Supp. 3d at 1095.

In fact, the only support Speedway can muster in service of its argument that the data it

captures is insufficient to meet BIPA's definition of the term "biometric identifier" is *dicta* from

decisions on whether expert fingerprint analysis of a latent, partial fingerprint (incomplete,

invisible fingerprints lifted from a smooth surface previously touched) is admissible evidence at a

criminal trial.[3] *See People v. Cline*, 2020 IL App (1st) 172631, ¶ 25 (Ill. App. Ct. 2020); *United*

*States v. Herrera*, 704 F.3d 480, 487 (7th Cir. 2013); *United States v. Lee*, 502 F.3d 691, 698 (7th

Cir. 2007); *United States v. Baines*, 573 F.3d 979, 982 (10th Cir. 2009). But this has nothing to do

with whether Speedway collects "fingerprints" under BIPA. Speedway cannot point to any

evidence, and none exists, that the legislature intended to restrict the "fingerprints" protected under

BIPA to those that could be introduced into evidence at a criminal trial. But, to the extent

Defendant attempts to cast these holdings as persuasive, all but one actually rejects the contention

that fingerprint analysis of latent prints is inadmissible, necessarily finding that partial fingerprints

are fully capable of identifying an individual. *Herrera*, 704 F.3d at 487; *Lee*, 502 F.3d at 698;

*Baines*, 573 F.3d at 979. In the one decision where fingerprint evidence was excluded, the court

---

[3] Defendant additionally points to an inapposite decision construing the term "order" in the context of the scope of an appellate court's reviewing authority under 28 U.S.C. § 1447(d) to show that "a part is not the same as a whole." Dkt. 112-1 at 18; *see BP P.L.C. v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532, 1537 (2021). Defendant's cited authority not only has no bearing on the interpretation of the term "fingerprint" under BIPA, but ignores that the Court's holding actually extends the appellate review authority rather than limiting or narrowing it through the interpretation of the term "order." *Id.*

did so not because the content of the latent, partial fingerprint was insufficient to identify the defendant, but because the expert did not follow recognized and accepted methodology for fingerprint analysis. *See Cline*, 2020 IL App (1st) 172631, ¶ 21.

Speedway also confusingly cites *McGoveran v. Amazon Web Services, Inc.*, C.A. No. 20-1399-LPS, 2021 WL 4502089 (D. Del. Sept. 30, 2021), a Delaware district court opinion on extraterritoriality, for the proposition that, had the legislature intended to include "finger scan technologies" in the definition of biometric identifier, it could have done so. *McGoveran* is not at all instructive on this point, but Judge Chang's opinion in *Rivera* is. 238 F. Supp. 3d at 1095-96. In *Rivera*, the court explained that

> Nothing in [BIPA] says, one way or the other, how the biometric measurements must be obtained (or stored, for that matter) in order to meet the definition of 'biometric identifier.' The definition simply lists the specific identifiers that are covered. The particular biometric identifiers can, in fact, be collected in various ways without altering the fact that the measurements still are biometric identifiers. Consider, for example, fingerprints: the definition is indifferent as between inked fingerprints versus digital images of fingerprints."

*Id.* The term "finger scan technologies" obviously isn't included in the "biometric identifier" definition because it is not a biometric identifier—it is a means by which to capture a biometric identifier (namely, a fingerprint).

Defendant then cites *McGoveran* again to argue that fingerprint templates aren't biometric identifiers, comparing fingerprint templates to non-biometric voice audio recordings. Dkt. 112-1 at 21. But a voice audio recording is fundamentally different than a template, in that a voice audio recording is not biometric in any way but is the raw data used to create a biometric voiceprint template. *See McGoveran*, 2021 WL 4502089, at *2. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Thus, at best, a fingerprint template is a biometric identifier, and at worst, it is biometric information as defined by BIPA.

In a last-ditch effort, Speedway claims that, even if the portion of the fingertip it captured is considered a "fingerprint" (and thus, a biometric identifier) under BIPA, the image captured is "transformed" into a fingerprint template in less than half a second and then "discarded" by the timekeeping devices, such that no biometric identifier is ever "captured," "collected," or "possessed" within the meaning of the statute. Dkt. 112-1 at 16-19. As an initial matter, Defendant ignores that BIPA contains a catch-all for biometric data that is "otherwise obtain[ed]" by private entities like Speedway, and ignores that the definition of "obtain" does not contemplate retention or control.[4] ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████Thus, irrespective of the length of time Speedway stores biometric identifiers, both its collection and storage of the "biometric identifier," and the conversion, storage, and usage of the resulting "biometric information," as specifically defined by BIPA, plainly trigger Speedway's obligation to comply with BIPA. *See* 740 ILCS 14/10; 15(b).

Speedway, though, insists that the templates are but "a series of numbers," "like social security and driver's license numbers." Dkt. 112-1 at 17-18. The fact that virtually all electronic data, by definition, is a series of numbers, is apparently lost on Speedway. ████████████████

---

[4] *Obtain*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/obtain (last accessed Dec. 13, 2021) ("to gain or attain usually by planned action or effort").



As such, templates are plainly distinguishable from other kinds of artificially-created personally-identifying information like social security and driver's license numbers.

Finally, Defendant argues that the fingerprint templates it admittedly collects, stores, and uses to track employee hours are not "used to identify" its employees—and thus aren't "biometric information" under BIPA—because there's a 1 in 10,000 chance that the timeclock could misidentify a person based on a given template. Dkt. 112-1 at 10-11. This is nonsense. The extreme unlikelihood of a Speedway employee being misidentified by a template has no bearing on *what the template is used for*, which is to identify a specific employee. Indeed, the reason Speedway used biometric timeclocks and the templates they generate was to ensure that Speedway employees can only clock in for themselves and thus to eliminate the cost of "buddy punching" for Speedway. PSOF ¶ 10. To now claim that the templates created exactly for this purpose—to identify a specific employee and only that specific employee—are not "used to identify" employees is nonsense.

_____

As biometric information can be used to recreate biometric identifiers, the same risk of irreparable identity theft that motivated BIPA's passage looms over biometric information (and thus, templates) as over biometric identifiers. *See* 740 ILCS 14/5. This threat is particularly heightened for Plaintiff and the class now, because Kronos—who stored their fingerprint templates—announced just yesterday that it was hit with a ransomware attack affecting its Workforce Central system. *See Ransomware attack on Kronos could disrupt how companies pay, manage employees for weeks*, USA TODAY (Dec. 13, 2021), available at https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001.

**3.** **Speedway's Artificially Narrow Reading of BIPA Cannot Be Reconciled With Its Legislative History or the Events Leading to Its Passage.**

Even if the Court accepted that the plain language of BIPA regulates only entities that collect "the entirety of" biometric identifiers (it doesn't), such a reading cannot stand because it "would frustrate the overall purpose of the statutory scheme, lead to absurd results, [and] contravene clearly expressed legislative intent." *United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006). Indeed, the events prompting BIPA's enactment demonstrate why Speedway's request to limit the "fingerprints" it protects to "full fingerprints" is so deeply misguided. In the mid-2000s, a biometrics start-up company called Pay by Touch launched a pilot program that placed fingerprint-scanning devices, not unlike the fingerprint-scanning devices used by Speedway, in checkout lanes at various Illinois retail locations. In fact, like Speedway, Pay by Touch utilized consumer-targeted[6] fingerprint-scanning technology to capture, collect, store, use, and disclose users' fingerprint data as a means to identify them. Using these devices, Pay by Touch captured the fingerprints and fingerprint information of each person who enrolled with the devices. Pay by Touch's pilot program saw mass deployment of its biometric fingerprint-scanning technology throughout Illinois. As a result, Pay by Touch amassed a vast storehouse of fingerprint data from thousands of Illinois residents, quickly becoming the "largest fingerprint scan system in Illinois." *See* 95th Gen. Assem., 2008 Reg. Sess. No. 276, at 249. When Pay by Touch filed for bankruptcy

---

[6] In service of its efforts to distinguish a "partial" fingerprint scan from a full fingerprint scan, Speedway repeatedly refers to differences between biometric technology employed in the consumer context as compared to the law enforcement context (through the Integrated Automated Fingerprint Identification System). Dkt. 112-1 at 15-16. While this comparison is largely irrelevant and meaningless, Plaintiff distinguishes the two only to point out that any distinction further demonstrates that the data collected by Pay by Touch is the exact kind of data collected by Speedway and thus, the exact kind of data BIPA regulates.

in 2007, the Illinois legislature, driven by its concern that Illinois residents' fingerprint data would be sold as an asset in Pay by Touch's bankruptcy proceedings, passed BIPA.

In spite of Speedway's attempts to muddle the statutory language and legislative intent, the Illinois legislature plainly evidenced its intent to regulate the exact kind of data captured by the exact type of technology adopted by Speedway. The legislature even included a preamble to ensure its motivations for BIPA's passage were clear. *See* 740 ILCS 14/5. Incorporating express reference to the kind of fingerprint-scanning technologies employed by Pay by Touch, the Illinois legislature specified that BIPA was enacted in response to the widespread implementation of "finger-scan technologies," akin to the kind implemented by Speedway during the statutory period. *See* 740 ILCS 14/5(b). Even Speedway's expert concedes that BIPA is intended to cover "finger scan solutions," like the solutions employed by Pay by Touch and by Speedway. PSOF ¶ 40. Under Speedway's proposed extra-statutory formulation, though, unless the Pay by Touch devices used a fingerprint scanner larger than 20 mm x 30 mm, which, according to Speedway, is large enough to capture an entire "typical" human fingertip (whatever that means), the data collected by Pay by Touch would be outside BIPA's reach. Thus, according to Speedway, despite passing BIPA to prevent the misappropriation of Pay by Touch user fingerprint data, the Illinois legislature inexplicably was concerned only with machine-scans of fingerprints where the scanning element arbitrarily measures greater than 20 mm x 30 mm. Defendant's nonsensical position runs plainly contrary to the stated intent of the legislature and would lead to absurd results.[7] *Vallery*, 437 F.3d at 630.

---

[7] For example, under Defendant's logic, if a hand scanning technology was designed to capture only a person's palm and four fingers, but not the thumb, the scan would not be subject to BIPA (even if it still identified the individual), because one of the five fingers wasn't utilized.

Simply put, Speedway implemented the very technology utilized by Pay by Touch (*i.e.*, finger-scanning technology) and used it to capture, collect, store, use, and disclose the very kind of fingerprint data that prompted BIPA's passage. Any conflicting contention by Speedway runs contrary to the plain text of the statute, the legislative history motivating the statute's passage, and the undisputed facts. As such, Speedway fails to meet its burden for summary judgment.

### 4. Dr. Daft's testimony should not be excluded.

Finally, Speedway relies on its meritless request to disqualify Plaintiff's expert as a basis to achieve summary judgment. Dkt. 112-1 at 22-23. Dr. Daft's qualifications and the methodologies employed to reach his conclusions are more than sufficient to satisfy the expert witness standard under *Daubert*, which Plaintiff addresses in detail in his Opposition to Defendant's Motion to Exclude, which Plaintiff incorporates by reference herein. Suffice to say, far from agreeing or not disputing "all key points necessary to grant summary judgment,"[8] Dr. Daft repeatedly and unequivocally explained all the facts by which he reached the conclusion that Speedway did capture, collect, store, use, and disclose biometric identifiers and biometric information as those terms are defined under BIPA.

To the extent Defendant's proffered expert offers any basis for serious disagreement, these "conflicting" opinions only underscore why summary judgment must be denied. At the most basic level, Dr. Daft and Mr. Minta reach fundamentally opposing conclusions over the key question at issue: what to call the information Speedway captured and collected from a person's finger using its timekeeping devices. While Mr. Minta's opinions are largely unsupported by academic publications, the testimony of Speedway's own witnesses, or documents produced in discovery,

---

[8] Speedway avoids confronting the substance of Dr. Daft's reports and testimony by citing generally to Section I as its only support for its contention that there is no genuine dispute of material fact presented by expert witness reports and testimony. *See* Dkt. 112-1 at 22.

that he and Dr. Daft have presented conflicting conclusions on the dispositive issue in this case is a clear basis upon which to reject summary judgment.

Ultimately, Defendant's attempts to misconstrue the statutory text and recast the undisputed facts fail, and the Court must deny its Motion.

### B. Speedway's Admitted Refusal to Learn the Law for Nine Years Was Not Merely Negligent, But Reckless Conduct.

As Speedway is forced to admit, for nine years, it repeatedly captured, stored, and disseminated Howe's fingerprints and those of thousands of other employees without their informed consent and without publishing and adhering to a BIPA-compliant retention and destruction schedule, all in direct violation of BIPA. *See* Dkt. No. 112-1 at 10, 12-13; PSOF ¶¶ 2-3, 9, 11-22. Although Speedway had been using biometric technology for several years before BIPA's unanimous enactment in 2008, it made no effort, as it concedes, to familiarize itself with the law, all while failing to receive informed consent from Howe and his coworkers before collecting, storing, disseminating and using their biometric data. *Id.* It was not until November 2017 that Speedway attempted to create a notice and consent policy and began requiring current employees and new hires to sign off on it. PSOF ¶¶ 11, 16-22.

Speedway argues that its disregard of BIPA was reasonable because even if it had undertaken a diligent search for statutes governing the collection of biometrics (which it didn't before harvesting biometrics from its employees for approximately 14 years), it wouldn't have found BIPA anyway because: (1) the Department of Labor didn't reference it on a poster; and, (2) the General Assembly "buried" the statute in a section of the Illinois Code[9] where Speedway could

---

[9] Leaving aside that Speedway was obligated to comply with *all* Illinois statutes, the reason BIPA is not codified in the "Employment" chapter of the Code is, unremarkably, because it does not apply exclusively to employers but to *all* "private entities" that collect or possess biometric identifiers and/or information. *See* 740 ILCS 14/10.

not locate it, and even if did, it had "no reason" to read. Dkt. No. 112-1 at 26-29. But as explained below, Speedway is presumed to know the law, as decades of American jurisprudence establish. Speedway's ignorance of BIPA, despite using biometric timeclocks for years, was certainly negligent, if not reckless.

Because the facts are not on its side, Speedway then seems to ask the Court to convert Plaintiff's BIPA claim to a common law negligence claim, requiring Plaintiff to prove the tort elements of negligence (foreseeability, proximate causation, etc.) to recover BIPA's statutory damages. But these are not recognized elements of a BIPA cause of action. As the Supreme Court held in *Rosenbach*, Plaintiff need only establish that Speedway failed to comply with one of BIPA's section 15 requirements to prove his BIPA claim. 2019 IL 123186, ¶ 33. Then, and only then, Plaintiff must show that the violation was committed with at least a "negligent" state of mind in order to recover BIPA's statutory damages under section 20.

Because Speedway uses the wrong legal elements, and because the facts demonstrate that Speedway violated BIPA negligently, if not recklessly, the Court should deny Speedway's motion.

        **1.**      **Plaintiff's claims arise from Speedway's violation of his statutory rights under BIPA, not a common law tort.**

Speedway incorrectly characterizes Howe's action as a "a claim for negligence." But as the Illinois Supreme Court held in *Rosenbach*, a violation of BIPA, "in itself, is sufficient to support the individual's … statutory cause of action" and a plaintiff "need not allege" anything "beyond violation of his or her rights under the Act, in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages."[10] *Rosenbach*, 2019 IL 123186, ¶¶ 33, 40 ("No

---

[10] This is exactly what Plaintiff pled in his Complaint, which correctly went unchallenged by Speedway. Dkt. No. 1-1 at ¶¶ 2, 5-6, 27-35, 37-47, 71-75; *see also Cothron v. White Castle System, Inc.*, 467 F. Supp. 3d 604, 614-15 (N.D. Ill. 2020); *Roberson v. Maestro Consulting Services, LLC*, 507 F. Supp. 3d 998, 1018 (S.D. Ill. 2020); *Stauffer v. Innovative Heights Fairview Heights, LLC,* 480 F. Supp. 3d 888, 906-07 (S.D. Ill. 2020).

additional consequences need be pleaded or proved."). Only after a plaintiff qualifies as a "person aggrieved" by proving a violation of section 15 of BIPA is it necessary to determine whether the defendant violated BIPA with a "negligent" or "reckless" state of mind for damages purposes. 740 ILCS 14/20(1)-(2). A BIPA plaintiff can, however, obtain attorney's fees, costs, and injunctive relief without ever establishing the defendant's, negligent, reckless, intentional, or any other state of mind. 740 ILCS 14/20(3)-(4).

2. **Speedway's admitted failure to read, or even look for, the existence of any biometric privacy laws overwhelmingly establishes that it violated BIPA negligently.**

Speedway, a sophisticated multinational corporation with a dedicated legal department staffed with attorneys tasked with learning of and advising it on the laws in the jurisdictions where it operates, argues that although it never took steps to learn of BIPA, it had no obligation to do so. Dkt. 112-1 at 25-26.[11] A fundamental maxim of Anglo-American jurisprudence is that parties are presumed to know the law, and ignorance of it is no defense. *See First Am. Title Ins. Co. v. TCF Bank, F.A.,* 286 Ill. App. 3d 268, 277-78 (collecting cases and observing, "[t]his fundamental notion must apply equally to mammoth corporations as it does to the common man."); *see also Piccioli v. Bd. of Trustees of Teachers' Retirement Sys.*, 2019 IL 122904, ¶ 25 ("'It is well-settled that all citizens are presumptively charged with knowledge of the law.'") (quoting *People v. Boclair*, 202 Ill. 2d 89, 104 (2002)). This principle is so deeply-ingrained it applies with equal

---

[11] Speedway complains that the plaintiff's bar failed to teach it about BIPA earlier (with lawsuits), that the Illinois legislature failed to provide "fair notice" of its enactment (by doing something other than publishing the statute as usual), and that the seven-year period before Howe began his employ in 2015 did not afford it a "reasonable opportunity" to learn the law or comply. Dkt. No 112-1 at 25-26, 29. It is well-established that corporate entities cannot sit idly by, hoping a third party comes forward to advise them on whether a chosen course of conduct is lawful. That is because "businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *See Irvine v. 233 Skydeck, LLC*, 597 F. Supp. 2d 799, 803 (N.D. Ill. 2009).

force even in the criminal context, where individual liberty is at stake. *E.g., People v. Hollins*, 2012 IL 112754, ¶ 34.[12] Speedway's proposal to upend centuries of blackletter law and apply an "ignorance *is* an excuse" standard would only motivate it and other lawbreakers to never learn the applicable laws, content that the strategy of burying its head in the sand will absolve it of any liability. There can be no doubt that Speedway violated BIPA negligently. *See Negligent*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defined as the "failure to exercise the degree of care that someone of ordinary prudence would have exercised in the same circumstance").

### 3. Speedway's uncontested acts and omissions establish recklessness, too.

And that's not the worst of it. Speedway's admitted conduct against thousands of employees over nine years shows its BIPA violations were not the result of mere carelessness, but willful blindness to its legal obligations. This is not a situation, for example, where a biometric collector made a good faith effort to comply with BIPA but was only partially unsuccessful (*i.e.,* it secured informed consent but mistakenly failed to publicize a destruction schedule), neglected to secure informed consent from only a small percentage of its employees, or broke the law for just a short period of time. This is also not a case where a biometric collector misinterpreted or misapplied the law or relied on faulty legal advice that caused it to make a bad decision. Rather, Speedway made *no* decision on BIPA compliance whatsoever; its only decision was to ignore all laws governing the collection of biometric data, even though it deployed and used biometric

---

[12] In the context of BIPA, compliance with which "should not be difficult," *Rosenbach,* 2019 IL 123186, ¶ 37, courts have held that a private entity's lengthy failure to adhere to the law, in and of itself, is sufficient to raise the inference of negligence. *See, e.g., Rogers v. BNSF Railway Co.*, No. 19 C 3083, 2019 WL 5635180, at *2 (N.D. Ill. Oct. 31, 2019) ("BIPA took effect more than ten years ago, and if the allegations of [the] complaint are true—as the Court must assume at this stage—[Defendant] made no effort to comply with its requirements. This is certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible"); *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 786 (N.D. Ill. 2020) ("The complaint alleges that Kronos, as late as 2018 or 2019, continued to systematically collect and disseminate biometric data without complying with BIPA, which had been enacted a decade earlier in 2008. From that allegation, a plausible inference may be drawn that Kronos acted negligently").

timeclocks in hundreds of stores across Illinois.[13] *See* Dkt. No. 112-1 at 25-26 ("[Speedway] had no reason to be aware of BIPA's existence and purported obligations."); *Id*. at 29 ("[Speedway] had no reason to look for or pay special attention to a statute governing the collection of fingerprints."); *see also* PSOF ¶¶ 11-22.

Speedway admits that when it came to learning about biometric privacy laws, it never bothered to do anything. *Id.* In other words, notwithstanding the well-publicized threats posed from hackers, identity thieves, and foreign governments building databases of U.S. citizens, the rising use of biometric technology, and the "very serious need" to protect the biometric data of Illinois citizens as expressly conveyed by the Illinois legislature over 13 years ago,[14] Speedway stubbornly plowed ahead with its daily non-consensual collection, storage, and dissemination of the biometric data of thousands of employees, focused more on maximizing profits with increased timekeeping efficiencies and decreased "buddy punching" than with inquiries into applicable laws. PSOF ¶¶ 2-3, 9-22.

Speedway's admitted, casual refusal to investigate whether its conduct comported with the law for nine years evidences willful blindness, which is the functional equivalent of knowledge, a mental state exceeding the threshold reckless mental state required for heightened liquidated damages under BIPA. *See, e.g., Worix v. MedAsets, Inc.,* 857 F.Supp.2d 699, 702 (N.D. Ill. Mar. 8, 2012) (citation omitted) ("The doctrine of willful blindness is well established in criminal law. Many criminal statutes require proof that a defendant acted knowingly or willfully, and courts applying the doctrine of willful blindness hold that defendants cannot escape the reach of these

---

[13] Even Speedway's expert testified that he, along with biometric timeclock manufacturers and their sales and marketing divisions, became aware of BIPA as early as 2009. PSOF ¶ 17.

[14] 740 ILCS 14/5(a)-(g); 95th Ill. Gen. Assembly, House Proceedings, May 30, 2008, at 249.

statutes by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances. The traditional rationale for this doctrine is that defendants who behave in this manner are just as culpable as those who have actual knowledge."); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583 (2010) ("Our law is therefore no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law."); *Global-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 769 (2011) (noting that  the mental state for willful blindness "surpasses recklessness and negligence.").

**C.      The Court Should Reject Speedway's Improper and Repetitive Due Process Challenge.**

Once again, Speedway urges the Court to ignore the merits, find it never received "fair notice" of BIPA, and preemptively rule that any future damages award the Court might enter would violate the Due Process clause as a "grossly excessive" punishment. *Compare* Dkt. No. 112-1 at 28-30 with Dkt. No. 60 at 16-18.  Plaintiff has already addressed Speedway's arguments at length. *See* Dkt. No. 67 at 20-23. Like everyone else, Speedway was presumed to know the law when it went into effect on October 3, 2008. Moreover, it would be premature for this Court, at summary judgment, to rule now on the constitutionality of a hypothetical damages award.  *See, e.g., Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (an issue involving unconstitutionally-excessive damages award best left to be decided after a class has been certified). Following any liability finding, Howe expects the Court will award damages that comport with Due Process. If Speedway has any constitutional challenges at that point, it may raise them.

**D.      The Court Should Defer Ruling on the Statute of Limitations Issue.**

Speedway can't seem to decide whether the Illinois Appellate Court's decision in *Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563, should be followed or ignored, asking the

Court to simultaneously do both. Dkt. No. 112-1 at 31-33. Plaintiff, instead, suggests that the Court reserve ruling on the issue until the Illinois Supreme Court decides whether to rule on the matter, which we should know shortly if it grants the pending petition for leave to appeal.

**E.     Plaintiff's Claims Do Not Fall Under the Workers' Compensation Act's Exclusivity Provision and Are Not Preempted.**

Speedway contends that Howe's claims "are preempted by the Illinois Workers' Compensation Act." Dkt. No. 112-1 at 33-34. This argument ignores both the structure of the WCA, numerous court rulings on the very same issue and common sense. The WCA provides redress for employees who suffer disabling injuries on the job. Although unmentioned by Speedway, the Illinois Appellate Court held that the statutory violations alleged here are neither covered nor compensable under the WCA. *McDonald v. Symphony Bronzeville Park LLC*, 2020 IL App (1st) 192398, ¶ 27. *McDonald* is consistent with dozens of federal and state trial court decisions unanimously rejecting WCA preemption of BIPA claims which Speedway tellingly fails to reference.[15]

This Court should follow the persuasive ruling of the Illinois Appellate Court unless there is a reason to think the Illinois Supreme Court would decide the issue differently. *AAR Aircraft & Engine Grp., Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001). There is no reason, and none is offered by Speedway, to think the Illinois Appellate Court got the issue wrong. Just the opposite: the universe of relevant authority confirms the First District's rejection of the preemption defense. And that makes sense, given Plaintiff does not allege an "accidental" injury. *Meerbrey v. Marshall Field & Co.,* 139 Ill. 2d 455, 462-63 (1990) ("accidental" injuries not preempted). Under the WCA, "[a]ccident[al] is not a technical legal term but encompasses anything that happens without design

---

[15] Every trial court on both the federal and state level (at least 21 different judges in 33 cases) that has addressed the WCA argument has outright rejected it.

or an event which is unforeseen by the person to whom it happens." *Pathfinder Co. v. Indus. Comm'n*, 62 Ill. 2d 556, 563 (1976). Speedway did not accidentally collect, store, and disclose Plaintiff's biometric data; it intentionally did so for a labor-management benefit with presumed knowledge of BIPA's requirements. *E.g., Treadwell v. Power Sols. Int'l, Inc.*, 427 F. Supp. 3d 984, 990 (N.D. Ill. 2019) (finding similar BIPA violations were not accidental for this reason).[16] Thus, Speedway's contention that it is entitled to summary judgment on the basis that Plaintiff's claims are preempted by the WCA is easily rejected.

Plaintiff, alternatively, suggests that the Court reserve ruling on the WCA issue, as it is currently pending before the Illinois Supreme Court in *McDonald v. Symphony Bronzeville Park LLC*, No. 126511 (Ill.). Oral argument was held on September 23, 2021, and Plaintiff's counsel expects the Supreme Court will decide the issue soon.

## IV.     CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests this Court enter an Order denying Defendant's Motion for Summary Judgement.

Dated: December 14, 2021                    Respectfully submitted.

                                            **CHRISTOHER HOWE**, individually, and
                                            on behalf of all others similarly situated,


                                            By: */s/ Andrew C. Ficzko*

                                            One of Plaintiff's Attorneys

---

[16] The explicit text of the statute, moreover, clearly reveals the General Assembly never intended WCA preemption of BIPA claims. BIPA specifically defines its pre-collection "written release" to include "a release executed by an employee as a condition of employment." 740 ILCS 14/10. Thus, the legislature expected BIPA claims to arise in the employment context and provided a single damages scheme for employment and non-employment claims. 740 ILCS 14/20.

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312-233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com


J. Eli Wade-Scott
Alexander G. Tievsky
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
312-589-6370
ewadescott@edelson.com
atievsky@edelson.com

**CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on December 14, 2021, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Andrew C. Ficzko*