**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER HOWE, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:19-CV-01374 |
| SPEEDWAY LLC, | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S LOCAL RULE 56.1(B)(3) RESPONSE TO DEFENDANT'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Christopher Howe ("Plaintiff"), through his attorneys, submits the following response to Defendant Speedway LLC's ("Speedway") Rule 56.1 Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment pursuant to Local Rule 56.1(b)(3).

## JURISDICTION AND VENUE

1.  Plaintiff is a citizen of Illinois and purports to represent a putative class comprised of others who worked for Speedway in Illinois. Complaint ¶ 10 (Dkt. 1-1); Ex. 1 at 2, 4 (Howe Mandatory Initial Discovery Disclosures).

**RESPONSE: Undisputed.**

2.  Speedway is a limited liability company organized under the laws of Delaware with its headquarters in Enon, Ohio. At the time of removal, Speedway's sole member was MPC Investment LLC, which is organized under the laws of Delaware and headquartered in Findlay, Ohio. MPC Investment LLC's sole member was Marathon Petroleum Corporation, a publicly held

1

company that is headquartered in Findlay, Ohio and incorporated in Delaware. Notice of Removal (Dkt. 1); Ex. 2 ¶¶ 2-4 (Declaration of David Ball).

**RESPONSE: Plaintiff objects on the basis that this paragraph fails to comply with the requirement under Local Rule 56.1 that a statement of facts consist of "short numbered paragraphs[.]" *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("[T]he numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.") (internal quotation omitted).**

**Subject to this objection, undisputed.**

3.  Plaintiff worked as a Speedway manager trainee, then a store manager, at various locations within this District from September 2015 until May 2017. Ex. 3 at 13:7-18:16 (Howe testimony). Venue is therefore proper in this District under 28 U.S.C. 1391(b)(2).

**RESPONSE: Disputed in part. When Plaintiff began his employment with Speedway in September 2015, he was hired as a manager trainee, a position he held at various locations throughout Illinois before he was transferred to the Addison, Illinois store in October 2016, when he was promoted to general manager. (Ex. 1, Dep. Tr. of Christopher Howe ("Howe Dep.") 13:10-21; 14:6-17; 15:9-15; 16:12-20.)**

### PLAINTIFF'S EMPLOYMENT AT SPEEDWAY
### AND USE OF THE TIMECLOCKS

4.  From before 2012 through 2018, Speedway used finger-scan timeclocks provided by Timelink and Kronos in Illinois (the "Timeclocks"). Ex. 5 at 45:15-48:14, 63:12-22 (Speedway 30(b)(6) testimony).

**RESPONSE: Disputed in part. Speedway first started using biometric timeclocks between 2003 and 2006. (Ex. 2. Dep. Tr. of Kelli Jones ("Jones Dep.") 47:6-9; 63:16-17; Ex. 3, Dep. Tr. of Matt Green ("Green Dep.") 15:8-9; 18:17-20; 19:17-19.) Speedway purchased its**

biometric timekeeping devices from TimeLink until that company was acquired by Kronos, Inc. in 2013 at which time Kronos began supplying additional biometric timekeeping devices known as "InTouch." (Jones Dep. 47:21-25; 48:1-7; Green Dep. 14:22-15:9; 25:3-19; Ex. 4, Dep. Tr. of Kostas Mallias ("Mallias Dep.") 17:6-8.)

5.     Plaintiff worked at Speedway beginning September 9, 2015 until he was terminated due to disciplinary issues on May 11, 2017. Ex. 3 at 13:7-18:16 (Howe testimony); Ex. 4 (Speedway HR Master Data Report).

**RESPONSE: Disputed in part. Plaintiff's employment with Speedway was terminated as a result of him filing a harassment charge against his new supervisor, Umar, who disciplined Plaintiff for refusing Umar's illegal and unethical directives which included, but were not limited to: (1) instructions to provide vendors with false information in order to benefit Speedway; (2) directives to mislead customers on the sale of lottery tickets; (3) instructions to work off-the-clock, thereby providing free labor for Speedway. (Howe Dep. 18:15-21:8.)**

6.     From at least 2012 through at least 2017, Speedway had a data retention policy that covered all work schedules and timesheet information (the "Data Retention Policy"). The Data Retention Policy did not exclude, and therefore included, finger-scan information. Ex. 5 at 72:3-73:11 (Speedway 30(b)(6) testimony); Ex. 6 (Data Retention Policy).

**RESPONSE: Disputed in part. Just because Speedway's Data Retention Policy did not exclude finger-scan information does not mean it was therefore included. The Data Retention Policy lists and applies only to specific documents or categories of documents, including "Work Schedule/Time Sheets," held by Speedway and provides the applicable retention period for each specific document or categories of documents. (Def.'s Ex. 6.) The Data Retention Policy further states that "any questions about additional document retention**

**should be directed to District Management or the Corporate Records Retention Coordinator[.]" (*Id.*) The Data Retention Policy does not include, mention, or refer to biometrics, fingerprints, finger-scan information, biometric identifiers, biometric information, or any other information derived from employees' fingers. (*Id.*; Jones Dep. 136:2-19.) Before November 2017, Speedway did not have a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying fingerprints, finger-scan information, biometric identifiers, biometric information, or any other information derived from employees' fingers. (Jones Dep. 72:3-14; Green Dep. 32:23-25; 33:1-2; 89:1-8; Ex. 5, Dep. Tr. of Nicole Karlson ("Karlson Dep.") 44:15-20.)**

7.      At all times since it implemented the Timeclocks in Illinois, Speedway also had policies addressing the privacy of employee data and the transmission of employee data to third parties (the "Privacy Policies"), and Code of Business Conduct that incorporated many of the concepts specifically stated in the Privacy Policies. Ex. 5 at 134:24-137:5 (Speedway 30(b)(6) testimony); Ex. 7 (Speedway Policy Statement #10007) Ex. 8 (Speedway Code of Business Conduct); Ex. 9 (Speedway Release of Information Policy); Ex. 10 ¶9 (Declaration of Matthew Green).

**RESPONSE: Disputed in part. Speedway made no attempt to comply with, let alone learn about or investigate, BIPA until November 2017, approximately nine years after BIPA was implemented, six months after Plaintiff's employment ended, and approximately two months after this lawsuit was filed. (Howe Dep. 13:10-12; 37:6-11; Jones Dep. 38:10-11; 47:6-9; 76:18-19; 108:3-8; 112:25-113:14; 135:13-16; 136:11-19; 137:6-17; Ex. 6, Dep. Tr. of Diana Anderson ("Anderson Dep.") 65:7-9; Ex. 7, Dep. Tr. of Mr. Marek Minta ("Minta Dep.") 44:21-45:7.) Before November 2017, Speedway did not provide employees with a written**

**notice informing them of their rights under BIPA. (Jones Dep. 71:5-25; 72:1-2; Karlson Dep. 44:5-14.) Prior to November 2017, Speedway did not have any policies that addressed BIPA, the biometric timekeeping systems, and/or the collection of employees' biometric information for purposes of timekeeping and authentication. (Jones Dep. 136:6-137:17.)**

8.      The Data Retention Policy and the Privacy Policies were available to all Speedway employees in Illinois, and all Speedway employees had to sign off on the Code of Business Conduct. Ex. 5 at 72:3-73:11, 134:24-137:5 (Speedway 30(b)(6) testimony); Ex. 10 ¶ 9 (Declaration of Matthew Green).

**RESPONSE: Undisputed.**

9.      The Data Retention Policy stated that timesheet and related information would be retained for three years. Ex. 6 (Speedway Data Retention Policy).

**RESPONSE: Disputed in part. Plaintiff objects to Defendant's SOF ¶ 9 because "the record evidence that ¶ [9] cites does not support that paragraph's factual assertions." *Klein v. Wexford Health Sources, Inc.*, No. 16-cv-8818, 2019 WL 2435850, at \*2 (N.D. Ill. June 11, 2019). Plaintiff does not dispute that the Data Retention Policy states that "Work Schedule/Time Sheets" would be retained for three years, but does dispute that the Data Retention Policy states that information "related" to timesheets would also be retained for three years—the Data Retention Policy does not state that. (Def.'s Ex. 6.) Rather, the Data Retention Policy states that "any questions about additional document retention should be directed to District Management or the Corporate Records Retention Coordinator[.]" (*Id.*) Before November 2017, Speedway did not have a written policy made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and/or biometric information. (Jones Dep. 72:3-14; Green Dep. 32:23-25; 33:1-2;**

89:1-8; Karlson Dep. 44:15-20.) Before November 2017, Speedway did not provide employees with written notice informing them of their rights under BIPA. (Jones Dep. 71:5-25; 72:1-2; Karlson Dep. 44:5-14.) Before November 2017, Speedway did not secure written consent from its employees in order to collect, store, use and/or disseminate their biometric identifiers and/or biometric information. (Green Dep. 32:18-22; 46:13-17; 47:21-24; 51:7-11; 88:21-25; Karlson Dep. 26:20-24; 27:2-4; 43:24-44:4; Jones Dep. 71:5-14.) Prior to November 2017, Speedway did not have any policies that addressed BIPA, the biometric timekeeping systems, and/or the collection of employees' biometric information for purposes of timekeeping and authentication. (Jones Dep. 136:6-137:17.)

10.     The Privacy Policies stated that Speedway may release only the following information, and only in strict delineated ways: date of employment, job title, occupation, work location, and last day worked. Ex. 7 (Speedway Policy Statement #10007); Ex. 9 (Speedway Release of Information Policy); and Ex. 5 at 134:24-137:5 (Speedway 30(b)(6) testimony).

RESPONSE: Disputed in part. Before November 2017, Speedway did not have a written policy made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and/or biometric information. (Jones Dep. 72:3-14; Green Dep. 32:23-25; 33:1-2; 89:1-8; Karlson Dep. 44:15-20.) Before November 2017, Speedway did not provide employees with written notice informing them of their rights under BIPA. (Jones Dep. 71:5-25; 72:1-2; Karlson Dep. 44:5-14.) Before November 2017, Speedway did not secure written consent from its employees in order to collect, store, use and/or disseminate their biometric identifiers and/or biometric information. (Green Dep. 32:18-22; 46:13-17; 47:21-24; 51:7-11; 88:21-25; Karlson Dep. 26:20-24; 27:2-4; 43:24-44:4; Jones Dep. 71:5-14.) Prior to November 2017, Speedway did not have any policies that

**addressed BIPA, the biometric timekeeping systems, and/or the collection of employees'**
**biometric information for purposes of timekeeping and authentication. (Jones Dep. 136:6-**
**137:17.) Without consent, Speedway disseminated the biometric information collected,**
**stored, and used by its biometric timeclocks to third parties, including but not limited to**
**Kronos, Inc. (Ex. 8, Dep. Tr. of Dr. Christopher Daft ("Daft Dep.") 155:6-157:16; 213:18-**
**214:5, 15-21; Ex. 9, Declaration of Kostas Mallias ("Mallias Decl.") ¶9.)**

11.    When it implemented the Timeclocks and at all times thereafter, Speedway understood that the Timeclocks did not capture a fingerprint; rather, they scanned certain ridges and marks on the finger and immediately converted that scan into an alphanumeric code. Ex. 5 at 46:4-47:19, 101:4-6 (Speedway 30(b)(6) testimony); Ex. 11 at 58:1-59:16, 73:2-74:24 (testimony of Matthew Green); Ex. 12 (Kronos Datasheet); Ex. 13, *Ease Employees' Concerns about Kronos'* *Biometric                        Technology*,                        available                        at https://www.gc4me.com/information_technology/docs/Fingerscan_privacy_concerns.pdf    (last visited October 25, 2021).

**RESPONSE: Disputed. Nicole Karlson, as well as others in management positions at**
**Speedway, do not know what information Speedway's biometric timeclocks collect from**
**employees' fingers or how they collect an image. (Karlson Dep. 40:7-10; 68:5-8; Anderson**
**Dep. 60:10-14.)** █████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████  ████  █████  ██████  ███  ████████  ███████  ██████

████████████████████████████████████████████████

12. Although Speedway did not and still does not believe it ever collected data regulated by the Illinois Biometric Information Privacy Act, once it learned of the Act, it implemented a policy and notice and consent form specific to the Act in Illinois. Ex. 5 at 22:2-44:17 (Speedway 30(b)(6) testimony); Ex. 14 (Speedway Information Collection Practices).

**RESPONSE: Disputed in part. Nicole Karlson, as well as others in management positions at Speedway, do not know what information Speedway's biometric timeclocks collect from employees' fingers or how they collect an image. (Karlson Dep. 40:7-10; 68:5-8; Anderson Dep. 60:10-14.)**

13. Speedway did not require employees to scan their finger to clock in and out. Ex. 5 at 61:3-10 (Speedway 30(b)(6) testimony).

**REPONSE: Disputed. Speedway required Plaintiff and all other putative class members, as a condition of employment, to scan their fingers each day of work to clock in and out as an authentication method to track work time. (Howe Dep. 56:3-8; 80:9-11, 21-22; 91:9-12; 97:2-10; 99:24-100:9; 103:3-8; Jones Dep. 55:23-56:7; 113:11-18; Green Dep. 27:15-29:15; Karlson Dep. 33:12-17; 35:23-36:19; 42:23-43:8; 50:20-24; 80:7-16.)**

14.     Plaintiff received training on how to use the Timeclocks and was enrolled on them. Ex. 3 at 21:9-20, 41:3-22, 55:12-60:16, and 102:2-19 (Howe testimony).

**RESPONSE: Undisputed.**

15.     Plaintiff used the Timeclocks to clock in and out of work each day that he worked for Speedway. Ex. 3 at 21:9-20, 57:1-58:6, and 80:9-11 (Howe testimony).

**RESPONSE: Undisputed.**

16.     Plaintiff understood that the data derived from the Timeclocks was transmitted to a server where it could be edited via computer and eventually transmitted to Speedway's payroll department so he could be paid by Speedway. Ex. 3 at 58:7-59:9 (Howe testimony).

**RESPONSE: Disputed in part. Plaintiff understood he could go to an application called "TimeLink" to correct an employee's time record if, for example, an employee forgot to punch in or out, to correct the time record. (Howe Dep. 58:7-59:9.)**

17.     Plaintiff enrolled other employees on the Timeclocks and trained them on how to use the finger-scan time clocks. Ex. 3 at 59:10-60:12 (Howe testimony).

**RESPONSE: Objection; this statement is irrelevant.**

          **Subject to this objection, undisputed.**

18.     Plaintiff knew and understood that each time he put his finger on a Timeclock, the Timeclock relied on "the ridges and marks on [his] finger to identify [him] and track [his] hours." Ex. 3 at 80:12-22 (Howe testimony). Plaintiff used the time clocks every day with this understanding. *Id.*

**RESPONSE: Objection; these statements are irrelevant.**

          **Subject to this objection, undisputed.**

19.     Plaintiff does not believe that Speedway should have provided him additional compensation in exchange for implementing the Timeclocks. Ex. 3 at 80:23-82:4 (Howe testimony).

**RESPONSE: Objection; this statement is irrelevant and calls for speculation.**

           **Subject to this objection, undisputed.**

20.     Had Speedway provided him with more specific disclosures about its use of the Timeclocks or the information they collected, Plaintiff would not have altered his behavior in any way. Ex. 3 at 80:23-82:4 (Howe testimony). Plaintiff would not have quit his job, asked for more compensation, or protested the use of the finger-scan time clocks. *Id.*

**RESPONSE: Objection; this statement is irrelevant and calls for speculation. Plaintiff also objects on the basis that this paragraph fails to comply with the requirement under Local Rule 56.1 that a statement of facts consist of "short numbered paragraphs[.]" *See Cracco*, 559 F.3d 632 ("[T]he numbered paragraphs should be short; they should contain only one or two individual allegations, thereby, allowing easy response.") (internal quotation omitted).**

           **Subject to this objection, disputed in part. Plaintiff brought this lawsuit to seek redress for Speedway's failure to comply with the Biometric Information Privacy Act ("BIPA"), which requires private entities to provide certain disclosures before collecting, storing, and using biometric identifiers and biometric information. Plaintiff filed suit to redress Speedway's BIPA violations for its failure, in part, to provide such disclosures and failing to inform him of the purposes for collecting his personal and private data, especially considering the unknowns associated with biometric technology. (Howe Dep. 75:8-11; 80:1-7; 81:7-10; 88:19-23.)**

21.     The Timeclocks are materially identical in terms of the hardware inside them and operate in the same manner. Ex. 15 at 110:5-116:3; 149:2-149:7 (testimony of Plaintiff's proposed expert witness); Ex. 17 at 21 (opening report of Speedway's expert witness).

**RESPONSE: Undisputed.**

22.     The Timeclocks scan certain points on an employee's finger pad or another available body part and instantly create an alphanumeric code known as a "template." Ex. 19 at 111:11-114:20 (testimony of Kostas Mallias); Ex. 5 at 56:8-57:3, 59:20-61:2, 62:18-63:11 (Speedway 30(b)(6) testimony); Ex. 11 at 29:16-31:21 (testimony of Matthew Green); Ex. 17 at 14-17 (opening report of Speedway's expert witness); Ex. 15 at 114:16-115:12 (testimony of Plaintiff's proposed expert witness); Ex. 12 (Kronos Datasheet); Ex. 13, *Ease Employees' Concerns about Kronos' Biometric Technology,* available at http://www.gc4me.com/information_technology/docs/Fingerscan_privacy_concerns.pdf (last visited October 25, 2021). This process takes a half second or less. Ex. 15 at 179:17-181:2 (testimony of Plaintiff's proposed expert witness); Ex. 16 at 25-26 (opening report of Speedway's expert witness).

**RESPONSE: Plaintiff objects to the extent that nothing in the record supports that the biometric timeclocks at issue "scan[ned] . . . another available body part" other than a finger. *See Klein*, 2019 WL 2435850, at \*2.**

**Subject to this objection, disputed in part. Plaintiff disputes that the biometric timeclocks only "scan portions on an employee's finger pad or another available body part." First, the word "finger pad" is not defined.** ▆▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

**Other parts of the human body do not have ridges and valleys that have evolved for use like a hand. (Daft Dep. 136:12-137:18.) Plaintiff further disputes that a template is simply an "alphanumeric code."**

23.    A template is a string of letters and numbers that describes limited prominent features of the finger ridges. Ex. 19 at 111:11-114:20 (testimony of Kostas Mallias); Ex. 16 at 105:3-107:15 (testimony of Speedway's expert witness); Ex. 17 at 14-17 (opening report of Speedway's expert witness); Ex. 15 at 234:11-235:10 (testimony of Plaintiff's proposed expert witness) (template in readable form is a series of letter and numbers, "like a really long driver's license").

**RESPONSE: Plaintiff objects on the basis that this paragraph fails to comply with the requirement under Local Rule 56.1 that a statement of facts consist of "short numbered paragraphs[.]" *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("[T]he**

numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.") (internal quotation omitted).

Subject to this objection, disputed. Plaintiff disputes that a template is simply "a string of letters and numbers." ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ If a human wanted to undermine a biometric system, an individual would use a binary data editor to convert the template data into a human readable format, or hexadecimal data, which can look like a "really long driver's license" to the untrained eye. (Daft Dep. 231:11-232:23; 235:4-9.)

24.     A template can be made from a partial scan of a finger. Ex. 15 at 86:16-87:14 (testimony of Plaintiff's proposed expert witness) (Q: "So you could create a template from the scan of a fraction of a fingerprint, right?" A: "That's possible"); Ex. 17 at 14-17 (opening report of Speedway's expert witness); Ex. 18 at 7-12 (rebuttal report of Speedway's expert witness).

RESPONSE: Plaintiff objects on the basis that this paragraph fails to comply with the requirement under Local Rule 56.1 that a statement of facts consist of "short numbered paragraphs[.]" *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("[T]he

**numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.") (internal quotation omitted).**

> **Subject to this objection, undisputed.**

25.     When a user attempts to clock in or out, the user places his finger on the Timeclock. The Timeclock temporarily generates a new template and tries to match the new template to the limited number of templates stored within the Timeclock. If a match is found, the Timeclock allows the user to clock in or out. Ex. 17 at 25-27 (opening report of Speedway's expert witness); Ex. 15 at 114:16-115:12 (testimony of Plaintiff's proposed expert witness).

**RESPONSE: Plaintiff objects on the basis that this paragraph fails to comply with the requirement under Local Rule 56.1 that a statement of facts consist of "short numbered paragraphs[.]" *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("[T]he numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.") (internal quotation omitted).**

> **Subject to this objection, disputed in part.**



26.     The size of the scan surface on a Timeclock will dictate whether an entire fingerprint can be scanned or captured. Ex. 15 at 139:7-142:11 ("if the scan surface is smaller than a typical fingerpad, the scan surface would not capture the whole fingerprint"), 177:20-178:2 ("Obviously only the portion of the finger that is on the sensor is going to be recorded") (testimony

of Plaintiff's proposed expert witness); Ex. 17 at 14-17 (opening report of Speedway's expert witness); Ex. 18 at 7-12 (rebuttal report of Speedway's expert witness).

**RESPONSE: Plaintiff objects on the basis that this paragraph fails to comply with the requirement under Local Rule 56.1 that a statement of facts consist of "short numbered paragraphs[.]"** *See Cracco v. Vitran Exp., Inc.*, **559 F.3d 625, 632 (7th Cir. 2009) ("[T]he numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.") (internal quotation omitted).**

**Subject to this objection, disputed in part. The size of the fingerprint image captured by Speedway's biometric timeclocks is determined not only by the dimension of the fingerprint reader surface but also by the resolution of the fingerprint reader. (Daft Dep. 137:22-138:7.) Whether it is a full fingerprint or something less, a biometric reader smaller than the size of a full fingerprint will produce a truncated fingerprint which is still a fingerprint. (Daft Dep. 211:20-212:5.)**

27.     The Timeclocks scan a fixed location on an employee's finger pad, which is less than the entire surface of an employee's finger pad. Ex. 20 at 3 (TimeLink Manual); Ex. 21 (Kronos Quick Reference Guide); Ex. 15 at 133:8-136:11 (testimony of Plaintiff's proposed expert witness); Ex. 17 at 14-17 (opening report of Speedway's expert witness); Ex. 18 at 7-12 (rebuttal report of Speedway's expert witness).

**RESPONSE: Disputed in part. The word "finger pad" is not defined. Although Speedway's biometric timeclocks may not scan an individual's entire fingerprint, it scans fingerprints.**

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

**The process of compressed sensing is an engineering technique used in a variety of products on the market such as digital photography and diagnosis imaging which acquires data on a smaller scale yet captures the full essence of the image for a device such as Speedway's biometric timeclocks to function properly and as intended. (Daft Dep. 103:12-105:2.) Whether it is a full fingerprint or something less, a biometric reader smaller than the size of a full fingerprint will produce a truncated fingerprint which is still a fingerprint. (Daft Dep. 211:20-212:5.)**

28.    The Timeclocks' scan surface, the location an employee places his finger to be scanned, is smaller than a typical fingerprint. Ex. 18 at 7-12 (rebuttal report of Speedway's expert witness); Ex. 15 at 139:7-142:11 (testimony of Plaintiff's proposed expert).

**RESPONSE: Objection; this statement is irrelevant and calls for speculation as to the size of a "typical fingerprint."**

**Subject to this objection, undisputed.**

29.    The Timeclocks do not collect an image of a fingerprint. Ex. 16 at 92:9-95:10 (testimony of Speedway's expert witness) ("the devices involved in [this] case do not do that. First of all, they never saw this big part of a finger, and they did not retain the imprinted part … it would only see a portion of finger ridges. … So it is far from a fingerprint in its strict understanding is. So I don't agree it was a fingerprint; it was a scan of portion of ridges that was used to process the details."; Ex. 5 at 101:4-6 (Speedway 30(b)(6) testimony); Ex. 11 at 58:1-59, 73:2-74:24 (testimony of Matthew Green); Ex. 17 at 14-17 (opening report of Speedway's expert witness); Ex. 18 at 7-12 (rebuttal report of Speedway's expert witness); Ex. 12 (Kronos Datasheet); Ex. 13,

*Ease Employees' Concerns about Kronos' Biometric Technology,* available at https://www.gc4me.com/information_technology/docs/Fingerscan_privacy_concerns.pdf (last visited October 25, 2021).

**RESPONSE: Plaintiff objects on the basis that this paragraph fails to comply with the requirement under Local Rule 56.1 that a statement of facts consist of "short numbered paragraphs[.]"** *See Cracco v. Vitran Exp., Inc.***, 559 F.3d 625, 632 (7th Cir. 2009) ("[T]he numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.") (internal quotation omitted).**

**Subject to this objection, disputed.** ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████

30.     There are significant practical problems with storing a finger image on a timeclock or other similar device, particularly that doing so would use up storage unnecessarily. Templates are used for matching purposes, images are not; and keeping images would waste valuable computer memory space. Ex. 15 at 107:10-108:4 (testimony of Plaintiff's proposed expert).

RESPONSE: Plaintiff objects on the basis that this paragraph fails to comply with the requirement under Local Rule 56.1 that a statement of facts consist of "short numbered paragraphs[.]" *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("[T]he numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.") (internal quotation omitted).

Subject to this objection, disputed in part. Plaintiff disputes that an employee's fingerprint, or fingerprint image, was not used for matching purposes. █████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████

31. A template stored by the Timeclocks is not an image of a finger. Ex. 15 at 80:2-81:3, 109:12-109:22, 111:8-113:1 (testimony of Plaintiff's proposed expert); Ex. 16 at 92:9-95:10 (testimony of Speedway's expert witness); Ex. 17 at 14-17 (opening report of Speedway's expert witness); Ex. 18 at 7-12 (rebuttal report of Speedway's expert witness).

RESPONSE: Undisputed.

32. A template stored by the Timeclocks is not a fingerprint. Ex. 15 at 80:2-81:3, 109:12-109:22, 111:8-113:1 (testimony of Plaintiff's proposed expert); Ex. 5 at 101:4-6 (Speedway 30(b)(6) testimony); Ex. 11 at 58:1-59:16, 73:2-74:24 (testimony of Matthew Green); Ex. 17 at 14-17 (opening report of Speedway's expert witness); Ex. 18 at 7-12 (rebuttal report of Speedway's expert witness); Ex. 12 (Kronos Datasheet); Ex. 13, *Ease Employees' Concerns about Kronos' Biometric Technology*, available at

http://www.gc4me.com/information_technology/docs/Fingerscan_privacy_concerns.pdf (last visited October 25, 2021).

**RESPONSE: Disputed.** ██████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████ **When you have a**

biometrically assisted device, such as Speedway's biometric timeclocks, there is no question it collects and uses biometric data. (Minta Dep. 33:6-9; 49:15-19.)

33.     A template contains much less identifying data than a fingerprint. Ex. 15 at 80:2-81:3, 112:10-113:1, 114:9-15, 139:7-142:11, 177:13-179:15 (testimony of Plaintiff's proposed expert witness); Ex. 16 at 92:9-95:10 (testimony of Speedway's expert witness); Ex. 17 at 14-17, 27 (opening report of Speedway's expert witness); Ex. 18 at 7-12 (rebuttal report of Speedway's expert witness).

**RESPONSE: Plaintiff objects to the extent that nothing in the record supports that a template contains "less *identifying data* than a fingerprint." *See Klein*, 2019 WL 2435850, at \*2.**

**Subject to this objection, disputed. To be clear, Plaintiff does not dispute that a template contains less *information* than the subject fingerprint it is based on (Daft Dep. 112:10-113:1), but Plaintiff does dispute that a template contains less *identifying data* than a fingerprint image. The process of compressed sensing is an engineering technique used in a variety of products on the market such as digital photography and diagnosis imaging which acquires data on a smaller scale yet captures the full essence of the image for a device such as Speedway's biometric timeclocks to function properly and as intended. (Daft Dep. 103:12-105:2.)** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**████** **While a fingerprint template may be smaller than a full fingerprint, through compressed sensing, such as what is used in a digital camera, a machine learning system can reconstruct the fingerprint template to recreate the original fingerprint data or image. (Daft Dep. 240:11-24; 242:14-19; 259:6-24.)**

34.     A template created from the scan of part of a finger pad contains less identifying data than a template created from the scan of a full finger pad. Ex. 15 at 139:7-142:11 ("Q: If the scan surface is smaller than a typical fingerpad, the scan surface would not capture the whole fingerprint, right? A: That's right.") (testimony of Plaintiff's proposed expert witness); *see also* Ex. 15 80:2-81:3, 112:10-113:1, 114:9-15, 139:7-142:11, 177:13-179:15 (testimony of Plaintiff's proposed expert witness); Ex. 16 at 92:9-95:10 (testimony of Speedway's expert witness); Ex. 17 at 14-17 (opening report of Speedway's expert witness); Ex. 18 at 7-12 (rebuttal report of Speedway's expert witness).

**RESPONSE: Plaintiff objects on the basis that this paragraph fails to comply with the requirement under Local Rule 56.1 that a statement of facts consist of "short numbered paragraphs[.]" *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("[T]he numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.") (internal quotation omitted). Plaintiff further objects to the extent that nothing in the record supports that a template "created from the scan of part of a finger pad contains less *identifying data* than a template created from the scan of a full finger pad." *See Klein*, 2019 WL 2435850, at *2.**

Subject to this objection, disputed. The word "finger pad" is not defined. To be clear, Plaintiff does not dispute that a template created from part of a fingerprint contains less *information* than a template created from a full fingerprint (Daft Dep. 112:10-113:1), but Plaintiff does dispute that such a template contains less *identifying data*. The process of compressed sensing is an engineering technique used in a variety of products on the market such as digital photography and diagnosis imaging which acquires data on a smaller scale yet captures the full essence of the image for a device such as Speedway's biometric timeclocks to function properly and as intended. (Daft Dep. 103:12-105:2.) ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ While a fingerprint template may be smaller than a full fingerprint, through compressed sensing, such as what is used in a digital camera, a machine learning system can reconstruct the fingerprint template to get back to the original fingerprint data or image. (Daft Dep. 240:11-24; 242:14-19; 259:6-24.)

35.    A partial finger-scan Template like that captured by the Timeclocks cannot be reconstituted into a fingerprint image. Ex. 16 at 134:9-137:24 (testimony of Speedway's expert

witness); Ex. 17 at 27-28 (opening report of Speedway's expert witness); Ex. 18 at 4-5 (rebuttal report of Speedway's expert witness); Ex. 19 at 115:6-117:9 (testimony of Kostas Mallias).

**RESPONSE:  Disputed.** ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███ ██ ███ ██ ██ ███ █ █ ████ ██ ██ ████████ ████ ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█ ██ ███ ████ ███ ███ ███ ████ ██ ██ ███ ██ █ ██ ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

Date:   December 14, 2021                    Respectfully submitted,

                                             By: s/ *Andrew C. Ficzko*
                                             One of Plaintiff's Attorneys

                                             Ryan F. Stephan

James B. Zouras
Andrew C. Ficzko
STEPHAN ZOURAS, LLP
100 N. Michigan Avenue, Suite 2150
Chicago, Illinois 60606
312-233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com


J. Eli Wade-Scott
Alexander G. Tievsky
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, IL 60654
Telephone: 312-589-6370
Facsimile: 312-589-6378
ewadescott@edelson.com
atievsky@edelson.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on December 14, 2021, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Andrew C. Ficzko*