# EXHIBIT 7

**DEPOSITION OF MAREK MINTA**

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF ILLINOIS

 3

 4   CHRISTOPHER HOWE,                 )
     Individually and on behalf        )
 5   of all others similarly           )
     situated,                         )
 6                                     )
              Plaintiffs,              )
 7                                     )
          vs.                          ) No. 1:19-cv-01374
 8                                     )
     SPEEDWAY LLC,                     )
 9                                     )
              Defendant.               )
10

11

12        THE DEPOSITION OF MAREK MINTA, taken remotely

13   in the above-entitled cause via Zoom electronic

14   videoconferencing platform by Andrew R. Pitts,

15   Certified Shorthand Reporter of the State of Illinois,

16   on Thursday, September 23, 2021, pursuant to Notice at

17   the hour of 10:30 a.m. EDT.

18

19

20

21

22

23                       REPORTED BY:
                   ANDREW R. PITTS, CSR, RPR
24                  LICENSE NO.:  084-4575
```

**VerbalTech Inc.**
312.869.4039
*csrdirect.nsp@gmail.com*

**DEPOSITION OF MAREK MINTA**

1  MAREK MINTA,
2 called as a witness herein, having been first
3 administered an oath, was examined and testified
4 remotely via videoconferencing as follows:
5  EXAMINATION
6 BY MR. ZOURAS:
7  **Q.** Good morning, sir. Can you hear me okay?
8  **A. I can.**
9  **Q.** Can you tell us your full name and spell
10 your last name for the record.
11  **A. My name is Marek Minta, spelled**
12 **M-I-N-T-A.**
13  **Q.** Mr. Minta, have you ever been deposed
14 before?
15  **A. I have not.**
16  **Q.** There's a few sort of ground rules we
17 have to go over to make this a smooth process. As
18 you have been doing, you have to answer out loud.
19 That means you can't respond with things like shrugs
20 of the shoulder or nods of the head or any other
21 non-verbal response.
22  Please allow me to complete my question
23 before you attempt to answer it. That is for the
24 sake of the court reporter who can only take down one

**DEPOSITION OF MAREK MINTA**

1  **mirror of that, BIPA is far more precise in talking**
2  **about face scan, but when it comes to the actual one**
3  **word of fingerprint, BIPA is grossly not precise.**
4      **Q.**    All right.
5      **A.**    **And that, in context -- in contrast to**
6  **its intent quoted. The intent is based on finger**
7  **scan solutions in public payment systems, from which**
8  **flows out the statute, whatever details, and then in**
9  **the contrast to that, imprecision of fingerprint.**
10     **Q.**    And in your opinion, what is imprecise
11 about the term fingerprint as used in the BIPA
12 statute?
13     **A.**    **The imprecision of that, that fingerprint**
14 **does not -- the meaning of fingerprint, the strict**
15 **meaning of fingerprint does not relate to the**
16 **regulated items that BIPA specifies, cannot relate to**
17 **those items, as defined by BIPA.**
18     **Q.**    Does the word fingerprint, if you know,
19 have a definition in BIPA?
20     **A.**    **It does not.**
21     **Q.**    So if it does not define the word
22 fingerprint, how could it be grossly imprecise, as
23 you testified?
24     **A.**    **Because it equates fingerprint to a**

33

**DEPOSITION OF MAREK MINTA**

1     **Q.**    Biometric identifiers can include a
2 retina scan; is that fair?
3     **A.**    **Fair.**
4     **Q.**    Well --
5     **A.**    **Well, no, retinas, I'm sorry, I would**
6 **disagree with that because in my view, a retina scan**
7 **by itself has no information about -- that can**
8 **identify a person.**
9     **Q.**    Okay. How about an iris scan?
10     MR. WOLFE: And is -- Jim, is this line of
11 questioning about the statute or about Mr. Minta's
12 personal opinion of what those terms mean?
13     MR. ZOURAS: His personal opinion about
14 what the term, the phrase biometric identifier
15 consists of.
16     MR. WOLFE: I understand. Okay.
17     Andrew, do you want to read the last
18 question back.
19     (Whereupon, the record was read by
20     the reporter as requested.)
21 BY THE WITNESS:
22     **A.**    **Iris scan in general is the same as**
23 **retina scan.**
24

35

**DEPOSITION OF MAREK MINTA**

1   Q.   Well, I'm not really asking you for your
2   opinion.  I'm just asking you if you understood the
3   nature of the claim that was being made.
4   **A.   Oh, yeah.  Yeah.  Yeah.  Yeah.  Yeah.**
5   Q.   Okay.
6   **A.   Yes, I do.**
7   Q.   What was your -- yeah, what was your
8   understanding?
9   **A.   That it is a class action suit against**
10  **Speedway based on the violation of the BIPA statute.**
11  Q.   Before this time, had you ever heard of a
12  BIPA statute?
13  **A.   Yes, I had, in the course of my**
14  **employment at Authentec, but I didn't pay attention**
15  **to it then.**
16  Q.   Okay.  So the first time you became aware
17  of the statute was when you were employed by
18  Authentec; is that correct?
19  **A.   In vague terms, but really for the deep**
20  **understanding, it's during the course of this case.**
21  Q.   Okay.  Well, as far as even a vague
22  understanding of the statute, do you recall the
23  approximate time frame you would have first heard of
24  the BIPA statute?

44

**DEPOSITION OF MAREK MINTA**

1  **A.  I want to say around 2009 and '10 when**
2  **time clock manufacturers and access control people**
3  **started to be freaked out and the temperature of the**
4  **market went down, so our marketing and sales were**
5  **concerned that maybe adoption rate of the technology**
6  **will be slowed down, not just by BIPA, but also by**
7  **the EU regulatory things and privacy considerations.**
8      Q.  So can you identify any specific what you
9  call adopters who were freaked out, in your words, by
10 the BIPA statute?
11     **A.  No, not off the top of my head.  I'd have**
12 **to go read through some e-mails.  Perhaps it's there.**
13     Q.  Okay.  So you first -- is it fair to say
14 you first heard of the BIPA statute because certain
15 adopters brought it to your attention?
16     **A.  It would have been more like salespeople**
17 **were worried that they will -- you know, in a company**
18 **like Authentec, there were sales segments, mobile**
19 **phones, PCs, access control.  So the access control**
20 **sales guys were projecting difficulties in their**
21 **territory.**
22     Q.  Okay.
23     **A.  So that's how I would have experienced**
24 **it, not directly, but just hearing of it.**

45

**DEPOSITION OF MAREK MINTA**

1 did not receive certain materials, you believe you're
2 still able to render the opinions you have in this
3 case, correct?
4     **A.**     **As stated in my expert report.**
5     Q.     Okay. Did you say you actually got the
6 devices themselves?
7     **A.**     **Yes, I did.**
8     Q.     Did you inspect the devices?
9     **A.**     **Yes, I did.**
10     Q.     How did you do that?
11     **A.**     **I opened them up. I tried to use them as**
12 **a user. I opened them up, I looked inside them, how**
13 **they are constructed to reach further conclusions**
14 **what were they capable of.**
15     Q.     Okay. Before you inspected the devices,
16 did you have any opinions as to whether they were
17 collecting biometrics?
18     **A.**     **Well, yeah, when you have a biometrically**
19 **assistive device, it collects biometrics.**
20     Q.     And which specific devices did you
21 inspect?
22     **A.**     **I inspected the TimeLink punch clock and**
23 **two Kronos punch clocks and Synel punch clock, yeah.**
24     Q.     Okay. These were separate devices, just

**DEPOSITION OF MAREK MINTA**

1    **A.    The technology employed by Speedway and**
2    **supplied by Kronos TimeLink definitely had not in any**
3    **way offended BIPA statute.**
4    Q.    Do you consider that a legal opinion?
5    **A.    No, it's just technical opinion.**
6    Q.    You're not qualified to render legal
7    opinions, correct?
8    **A.    Correct.**
9    Q.    But you claim to have the qualifications
10   to render what you call a technical opinion on
11   whether the technology used by Speedway violates
12   BIPA, correct?
13   **A.    Correct.**
14   Q.    And does that mean one requires a
15   technical background in order to interpret the BIPA
16   statute?
17   **A.    I don't see how the two clauses and your**
18   **question psychologically link.  So I am not able to**
19   **answer this question.  Basically the last part of**
20   **your question does not flow from the first part of**
21   **the question.**
22   Q.    Why not?
23   **A.    Because they are unrelated.  Anyone can**
24   **read and understand BIPA.  That's a sixth grader**

-56-

**DEPOSITION OF MAREK MINTA**

1 **understanding level.  However, if one wants to decide**
2 **whether the technology in question actually did the**
3 **things that BIPA guards against, that for that, one**
4 **needs to be an expert.**
5      Q.     Why?
6      **A.     Because a layperson at a 20,000 foot view**
7 **is unqualified to decide whether the device, for**
8 **example, collected biometric identifier.**
9      Q.     In formulating your conclusion that the
10 technology used by Speedway did not run afoul of the
11 BIPA statute, did you accept the definition of
12 biometric identifier as used in the statute?
13      **A.     Yes.**
14      Q.     And in formulating that opinion, did you
15 accept the definition of biometric information as
16 used in the statute?
17      **A.     Yes.**
18      Q.     Did you rely on any technical knowledge
19 to interpret the term biometric identifier as used in
20 the statute?
21      **A.     No, that's pretty simple definition.**
22      Q.     Okay.  Okay.  Same question for biometric
23 identifier?
24      **A.     Yes.**

57

**DEPOSITION OF MAREK MINTA**

1     **Q.**    Same question for the word fingerprint?

2     **A.**    **What would be the question about the**
3 **fingerprint?**

4     **Q.**    Well, did you rely on any technical
5 knowledge or expertise to interpret the word
6 fingerprint, which is used in the BIPA statute?

7     **A.**    **Yes, I relied on the dictionary**
8 **definition of fingerprint.**

9     **Q.**    Okay.  When you say dictionary, any
10 particular one?

11     **A.**    **I provided two examples, to my knowledge,**
12 **in my reports.**

13     **Q.**    Okay.  Okay.  Other than what you've
14 testified to, did you do anything else to carry out
15 the assignment that you were given in this case?

16     **A.**    **Anything else, as in an examination and**
17 **interpretation of the evidence record, confirmation**
18 **of the commonly used definitions, experience with the**
19 **technology, I can't see what anything else would be.**

20     **Q.**    Okay.

21     **A.**    **Yes, actually, I want to put it on the**
22 **record as your expert is aware of as well, I used a**
23 **monography on the subject for various definitions.**

24     **Q.**    You mean this (indicating)?

**DEPOSITION OF MAREK MINTA**

1     MR. ZOURAS: Okay.
2  BY MR. ZOURAS:
3     Q.   Mr. Minta, when an employee first enrolls
4  their finger in the system, do you agree with me that
5  some data is collected?
6     A.   **Yes.**
7     Q.   What do you call that data?
8     A.   **A scan of human finger ridges in the case**
9  **of these clocks.**
10    Q.   Right. That's all I'm asking.
11    A.   **Yeah.**
12    Q.   Okay. So it's scan of human finger
13 ridges data; is that fair?
14    A.   **Fair.**
15    Q.   And when the employee later uses the
16 device to clock in or out, do you agree that data is
17 collected at that time?
18    A.   **Yes.**
19    Q.   And what is your term for that data?
20    A.   **It's the same data.**
21    Q.   Same data. Okay. Okay. And is that
22 data stored anywhere?
23    A.   **No.**
24    Q.   So if the enrollment data is not stored,

**DEPOSITION OF MAREK MINTA**

1  person would not need to have a scientific background
2  to construe the statute; do you remember to?
3       **A.**     **Right.**
4       Q.     All right.  So do you stand by that
5  testimony?
6       **A.**     **I see you're splitting hairs here, but**
7  **yes.  Yes, I stand by this testimony.**
8       Q.     You stand by what's in your report or
9  what you told me earlier about how a sixth grader
10 could interpret the statute?
11      **A.**     **I think sixth grader can interpret the**
12 **statute, but I also stand by my report stating that**
13 **what the machine collected was not a fingerprint.**
14      Q.     And you stand by that principle in your
15 report because you don't believe a fingerprint
16 satisfies the scientific definition of that term as
17 it's used in the statute, correct?
18             MR. WOLFE:  Object to form.
19 BY THE WITNESS:
20      **A.**     **Well -- yeah --**
21             MR. WOLFE:  Go ahead.  I just need to make
22 a record.
23             THE WITNESS:  Okay.
24