## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CHRISTOPHER HOWE, individually, and on
behalf of all others similarly situated,

        Plaintiff,

v.                                                                    No. 19-cv-01374

SPEEDWAY LLC,                                        Honorable John F. Kness

        Defendant.

## <u>PLAINTIFF'S REPLY IN SUPPORT OF HIS RENEWED MOTION FOR RULE 23 CLASS CERTIFICATION</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ......................................................................................... 1

II.    HOWE'S CLAIMS ARE IDENTICAL TO THOSE OF THE CLASS HE SEEKS TO REPRESENT AND HE WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS. ........................................................................................... 2

    A.    Waiver and Assumption of the Risk Are Not Proper Defenses to BIPA Claims. .......... 2

    B.    Plaintiff's Claims Are Timely..................................................................................... 7

    C.    Speedway's So-Called "Individualized Defenses" Have No Bearing in This Litigation, and Do Not Predominate Over the Common Issues. ............................................................ 8

    D.    Howe Has Vigorously and Adequately Protected the Interests of the Class. ............... 10

III.    A CLASS ACTION IS THE SUPERIOR METHOD ................................................... 13

    A.    BIPA's Damages Regime Does Not Offend Due Process and Is Not a Basis to Deny Class Certification................................................................................................................... 13

    B.    The "Immature Tort Theory" Does Not Apply to BIPA Cases. .................................... 16

IV.    CONCLUSION............................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*601 W. 81st St. Corp. v. City of Chicago,*
   129 Ill. App. 3d 410 (1st Dist. 1984) ................................................................. 3

*AAR Aircraft & Engine Grp., Inc., v. Edwards,*
   272 F.3d 468 (7th Cir. 2001) ......................................................................... 7

*Adams v. Emps. Ins. Co. of Wausau,*
   2016 IL App (3d) 150418 ............................................................................ 3

*Al Haj v. Pfizer Inc.,*
   2020 WL 1330367 (N.D. Ill. Mar. 23, 2020) ........................................................ 6

*Alvarado v. International Laser Products, Inc.,*
   2019 WL 3337995 (N.D. Ill. June 19, 2019) .............................................. 10, 17

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ................................................................................. 12

*Armes v. Shanta Enter., Inc.,*
   No. 07C5766, 2009 WL 2020781 (N.D. Ill. July 8, 2009) ........................................ 15

*Beaton v. SpeedyPC Software,*
   907 F.3d 1018 (7th Cir. 2018) ...................................................................... 9

*Bryant v. Compass Group USA, Inc.,*
   958 F.3d 617 (7th Cir. 2020) ........................................................................ 4

*Castano v. Am. Tobacco Co.,*
   84 F.3d 734 (5th Cir. 1996) .................................................................. 16, 17

*CE Design Ltd. v. King Architectural Metals, Inc.,*
   637 F.3d 721 (7th Cir. 2011) ........................................................................ 6

*Checkley v. Illinois Cent. R. Co.,*
   257 Ill. 491 (1913) ................................................................................. 15

*Creative Montessori Learning Centers v. Ashford Gear LLC,*
   662 F.3d 913 (7th Cir. 2011) ...................................................................... 12

*Edwards v. Lombardi,*
   2013 IL App (3d) 120518 ............................................................................ 4

*Eubank v. Pella Corp.,*
   753 F.3d 718 (7th Cir. 2014) ...................................................................... 12

*Feltmeier v. Feltmeier,*
   207 Ill. 2d 263 (2003) ................................................................................ 8

*Geier v. Hamer Enters., Inc.,*
   226 Ill. App. 3d 372 (1st Dist. 1992) ............................................................... 2

*Greene v. Mizuho Bank, LTD,*
   327 F.R.D. 190 (N.D. Ill. 2018) ..................................................................... 5

*Hillis v. Equifax Consumer Servs., Inc.,*
   237 F.R.D. 491 (N.D. Ga. 2006) .................................................................. 15

*Home Ins. Co. v. Cincinnati Ins. Co.,*
   213 Ill. 2d 307 (2004) ................................................................................ 2

*In re Facebook Biometric Info. Priv. Litig.,*
   326 F.R.D. 535 (N.D. Cal. 2018) ................................................................. 15

*In re Facebook Biometric Information Privacy Litig.*,
  2018 WL 1794295 (N.D. Cal. Apr. 16, 2018) ................................................................ 10, 17
*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ..................................................................................... 16
*Lipton v. Chattem, Inc.*,
  289 F.R.D. 456 (N.D. Ill. 2013) ...................................................................................... 6
*Messner v. Northshore Univ. Healthsystem*,
  669 F.3d 802 (7th Cir. 2012) ........................................................................................... 9
*Morris v. Wow Bao, LLC*,
  17-CH-12029 (Cir. Ct. Cook Cnty., Dec. 15, 2021) ................................................. 9, 17
*Murray v. E*Trade Fin. Corp.*,
  240 F.R.D. 392 (N.D. Ill. 2006) ..................................................................................... 13
*Murray v. GMAC Mortg. Corp.*,
  434 F.3d 948 (7th Cir. 2006) ........................................................................... 13, 14, 15
*Murray. In re Trans Union Corp. Priv. Litig.*,
  211 F.R.D. 328 (N.D. Ill. 2002) ..................................................................................... 15
*Patel v. Facebook Inc.*,
  2019 WL 3727424 (9th Cir. Aug. 8, 2019) ............................................................. 10, 17
*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) ....................................................................................... 15
*Phillips v. Asset Acceptance, LLC*,
  736 F.3d 1076 (7th Cir. 2013) ................................................................................. 10, 13
*Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*,
  254 F. Supp. 3d 1007 (N.D. Ill. 2017) ..................................................................... 11, 12
*Picerno v. 1400 Museum Park Condo. Ass'n*,
  2011 IL App (1st) 103505 ................................................................................................. 2
*Pielet v. Hiffman*,
  407 Ill. App. 3d 788 (1st Dist. 2011) ............................................................................... 4
*Pruitt v. Pers. Staffing Grp., LLC*,
  No. 16-CV-5079, 2020 WL 3050330 (N.D. Ill. June 8, 2020) ...................................... 11
*Robertson v. Symphony Post Acute Care*,
  No. 17-L-733 (Cir. Ct. St. Clair County, Mar. 12, 2019) ....................................... 10, 17
*Robertson v. Symphony Post Acute Care*,
  2019 IL App (5th) 190144-U (Nov. 2, 2019) .......................................................... 10, 17
*Rosenbach v. Six Flags Ent. Corp.*,
  2019 IL 123186 ..................................................................................................... 3, 6, 14
*Ryder v. Bank of Hickory Hills*,
  146 Ill. 2d 98 (1991) ......................................................................................................... 4
*Sherwin v. Samsung Elec. Am., Inc.*,
  2019 WL 10854535 (N.D. Ill. 2019) ................................................................................ 6
*Stone v. Gardner*,
  20 Ill. 304 (1858) ............................................................................................................. 3
*Sullivan-Coughlin v. Palos Country Club, Inc.*,
  349 Ill. App. 3d 553 (1st Dist. 2004) ............................................................................... 4
*The People United for Child., Inc. v. City of New York*,
  214 F.R.D. 252 (S.D.N.Y. 2003) .................................................................................... 12

*Tims v. Black Horse Carriers, Inc.*,
  2021 IL App (1st) 200563 ........................................................................... 7
*Vanderlei v. Heideman*,
  83 Ill. App. 3d 158 (2d Dist. 1980) .......................................................... 5
*Watson v. Legacy Healthcare Financial, Servs., LLC et al.*,
  2021 IL App (1st) 210279 ....................................................................... 7, 8

**Statutes**
35 ILCS 200/23 .......................................................................................... 14
735 ILCS 5/13-205 ..................................................................................... 7
740 ILCS 14/15 ....................................................................................... 3, 9
740 ILCS 14/20 ........................................................................................... 9
740 ILCS 14/5 ............................................................................................. 8

**Other Authorities**
7AA Charles Alan Wright & Arthur R. Miller,
  Federal Practice and Procedure (3d ed. 2011) ....................................... 9

**Treatises**
1 McLaughlin on Class Action ............................................................... 10

# I.    INTRODUCTION

In his opening motion, Plaintiff demonstrated that this was a straightforward case to certify: Speedway subjected the proposed class to the same course of conduct and, Plaintiff will argue at trial, violated the Biometric Information Privacy Act ("BIPA") in the same way. Speedway, for at least nine years after BIPA's enactment and as a condition of employment, required all employees, including Plaintiff Christopher Howe, to scan their fingers each workday to clock in and out on its biometric timeclocks. Speedway made no effort to familiarize itself or comply with the law during this period, as shown by its admitted failure to provide employees with notice or secure their informed written consent before collecting their biometric identifiers and/or biometric information (collectively referred to herein as "biometric data"). Plaintiff's proposed class thus easily meets the requirements for certification: all individuals who used a finger scanner on a timeclock while working for Speedway in the State of Illinois between September 1, 2012, and November 1, 2017.

Nevertheless, Speedway attempts to convince the Court that the motion should be denied on four different grounds, none of which hit the mark. First, it invents defenses that are not applicable to BIPA—equitable waiver and assumption of risk—in order to argue that Howe's claims are not typical. Those defenses are in direct conflict with the statutory text and should be rejected on the merits, but even if they did exist, they would also apply to virtually every class member. Speedway's repeat of the argument, later in the brief as one concerning predominance, all but concedes that. And Speedway's arguments about the statute of limitations are in conflict with virtually every Court to consider this question, including under recent Illinois Appellate Court precedent.

Second, Speedway argues Howe is an inadequate representative, but far understates Howe's adequacy and overstates the hurdles actually imposed by law. Howe has participated

actively in the case, is familiar with the claims, facts, and his responsibilities as a representative, and will more than adequately represent the interests of the class. Howe is in the same position as every member of the class and has no conflicts—even in Speedway's view—with any of them.

Finally, Speedway says that this case can't be a class action because it might be on the hook for a lot of damages. But that is not a genuine offramp to this litigation. As numerous courts have noted—and every court to consider this question in the context of BIPA has held—violating the rights of too many people should not be a procedural escape from liability.

Because Plaintiff's claims and those of all other putative class members arise from the same actions or omissions, and material facts and issues of law, this Court should certify Plaintiff's BIPA claims as a class action under Rule 23.

## II. HOWE'S CLAIMS ARE IDENTICAL TO THOSE OF THE CLASS HE SEEKS TO REPRESENT AND HE WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS.

### A. Waiver and Assumption of the Risk Are Not Proper Defenses to BIPA Claims.

Speedway first contends, in conclusory fashion, that Howe is an inadequate class representative because he implicitly waived his rights under BIPA by "knowingly and voluntarily us[ing] the finger-scan timeclocks." *See* Dkt. No. 144 at 7. But this supposed equitable defense is contrary to the text of the law, and accordingly is no defense to a BIPA case. Waiver is not a defense at common law but "is an equitable doctrine invoked to further the interests of justice[.]" *Geier v. Hamer Enters., Inc.,* 226 Ill. App. 3d 372, 390 (1st Dist. 1992); *accord Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill. 2d 307, 328 (2004) (recognizing that courts are "guided by equitable principles" in determining whether there has been a waiver). "It is axiomatic that equity follows the law and cannot be invoked to destroy or supplant a legal right." *Picerno v. 1400 Museum Park Condo. Ass'n,* 2011 IL App (1st) 103505, ¶ 16. Thus, "[t]he equitable powers of a court may not

be exercised to direct a remedy in contradiction to the plain requirements of a statute." *601 W. 81st St. Corp. v. City of Chicago*, 129 Ill. App. 3d 410, 418 (1st Dist. 1984).

The Illinois Legislature has provided the sole means by which an individual can "waive" their rights under BIPA and allow the collection of biometric data which is by executing a written release after receiving required disclosures. 740 ILCS 14/15(b)(3). There is no other way. Equity does not allow a court to forego the statute's plain text and create a new procedure—implied consent through repeated use of a fingerprint scanner—that would supplant the statutorily prescribed informed written consent as suggest by Speedway. *See Adams v. Emps. Ins. Co. of Wausau*, 2016 IL App (3d) 150418, ¶ 18 (quoting *Stone v. Gardner*, 20 Ill. 304, 309 (1858)) ("When a statute has prescribed a plain rule, free from doubt and ambiguity, it is as well usurpation in a court of equity as in a court of law, to adjudge against it; and for a court of equity to relieve against its provisions, is the same as to repeal it."). The Act places the burden of notification of the collection, use, and storage of biometric data on Speedway rather than Howe, the person from whom the information was sought. *See* 740 ILCS 14/15(b) (private entities must "inform[ ] the subject" that biometric data is being collected, stored, and used, and the specific purposes, length of time, and destruction guidelines). As noted in *Rosenbach*, "when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person." *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 33. "The violation, in itself, is sufficient to the individual's … statutory cause of action." *Id.* The purpose of the Act is to protect the public by ensuring, with a statutory regime, that "entities have the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone." *Id.* at ¶ 37.

Instead of private entities being incentivized to proactively comply with the Act by securing informed consent, Speedway's waiver argument would require its employees to proactively seek information provided by the statute to avoid waiving their rights, exactly the opposite of what the Illinois Supreme Court held in *Rosenbach.* Furthermore, waiver involves an intentional relinquishment of a known right, "require[ing] the party to be aware of the right[.]" *Pielet v. Hiffman*, 407 Ill. App. 3d 788, 798 (1st Dist. 2011); *accord Ryder v. Bank of Hickory Hills,* 146 Ill. 2d 98, 105 (1991) (party asserting waiver "ha[s] the burden of proving at trial that the [opposing party] knew of its … rights, and those facts which evidenced an intention by the [opposing party] to waive such rights."). The very purpose of BIPA, "is to ensure that consumers understand, *before providing their biometric data*, how that information will be used, who will have access to it, and for how long it will be retained." *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020) (emphasis added). Speedway provided none of this information before harvesting Howe's biometric data. Howe, unsurprisingly as an hourly paid gas station employee, has no technical knowledge of how the time clocks work and was unaware he had been harmed until after he hired an attorney. Exhibit 1, Dep. Tr. of Christopher Howe ("Howe Tr.") at 73:4-8; 82:5-20. Accordingly, Speedway's purported waiver argument is not a valid BIPA defense and thus, not a basis to deny certification.

Speedway's assumption of the risk argument fares no better. "Primary implied assumption of risk exists when a plaintiff assumes known risks inherent in a particular activity or situation." *Sullivan-Coughlin v. Palos Country Club, Inc.,* 349 Ill. App. 3d 553, 560 (1st Dist. 2004). "The defense is based on the theory that a plaintiff will not be heard to complain of a risk which he encountered voluntarily, or brought upon himself with full knowledge and appreciation of the danger." *Edwards v. Lombardi*, 2013 IL App (3d) 120518, ¶ 18 (cleaned up). In the employment

4

context, the assumption of risk defense only applies "where the risk was so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated it." *Vanderlei v. Heideman*, 83 Ill. App. 3d 158, 162 (2d Dist. 1980). Given that Speedway, to this day, denies the existence of any risks related to its collection of biometric data or duty to secure informed consent as mandated by BIPA (*see* Dkt. No. 144 at 19), it cannot complain – even if it were a valid defense – that Howe assumed those risks. Even if assumption of the risk were a valid defense to BIPA claims, Speedway would assert it, like its waiver defense, in the exact same way with respect to every class member.[1]

Struggling to find any support in the BIPA realm for its suggestion that individualized defenses concerning Howe's conduct make him an inadequate class representative, Speedway relies on several cases involving different claims that actually included elements that might differ from class member to class member. First, Speedway cites *Greene v. Mizuho Bank, LTD,* 327 F.R.D. 190, 191-92 (N.D. Ill. 2018), a case involving financial losses arising from the demise of a cryptocurrency exchange that alleged tortious interference with a contract, unjust enrichment, and fraudulent concealment. Unlike BIPA, proving injury (*i.e.,* actual damages or detriment) from defendant's conduct was an element of the plaintiff's common law tortious inference claim. *Id.* at 195. The plaintiff did have different damages, as he testified he was not injured by the defendant's actions. This holding has no relevance to BIPA claims where injury beyond violation of the statute is plainly not required. As the Illinois Supreme Court held in *Rosenbach*, a violation of BIPA, "in

---

[1] Without any evidentiary support, Speedway, in a single conclusory sentence, claims that "Howe's actions and testimony likewise show that his purported injury was not foreseeable and therefore Speedway did not act negligently or recklessly." *See* Dkt. No. 144 at 10. This suggestion is specious. As Plaintiff previously noted, common law tort elements like foreseeability are not elements of a BIPA cause of action. *See* Dkt. No. 140 at 24-25. And Speedway's admitted failure to learn the law for nine years was both negligent and reckless—a fact to be proved at trial and not relevant for class certification. *Id.* at 23-24.

itself, is sufficient to support the individual's or customer's statutory cause of action" and a plaintiff "need not allege" anything "beyond violation of his or her rights under the Act, in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages …." *Rosenbach*, 2019 IL 123186, ¶¶ 33, 40.

Speedway's cases involving the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") and the Telephone Consumer Protection Act ("TCPA"), are unhelpful to its cause for the same reasons: the statutes actually had requirements that might have differed between the class members. In *Al Haj v. Pfizer Inc.*, 2020 WL 1330367 (N.D. Ill. Mar. 23, 2020), the plaintiff provided harmful testimony that bore directly on the materiality and causation elements of her ICFA claim (and related unjust enrichment claim) that was unique only to the plaintiff, rendering her an inadequate class representative. *See also Lipton v. Chattem, Inc.*, 289 F.R.D. 456, 459-61 (N.D. Ill. 2013) (plaintiff would be unable to prove materiality and causation were the same). In *Sherwin v. Samsung Elec. Am., Inc.*, 2019 WL 10854535, at *3 (N.D. Ill. 2019), another ICFA matter, the court struck class allegations because the class representative could not show proximate causation, an element under the ICFA, because he was aware of the defects on the product at issue and therefore could not show proximate causation because he knew the truth and was not deceived as required by the ICFA Finally, in *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011), a case involving the TCPA, which forbids fax advertisements without the recipients' consent, the Seventh Circuit vacated class certification and remanded the matter to the district court to determine whether the plaintiff actually did provide consent to the faxes at issue which would make him an improper class representative. No such question of consent—the "written release" required by the statute—is present here for Howe or any of the class members.

**B. Plaintiff's Claims Are Timely.**

Speedway next contends that "Howe's claims, which accrued when he first scanned his finger, were asserted past the applicable one-year deadline." *See* Dkt. No. 144 at 11. According to Speedway, "[t]he question of when Howe's claims first accrued is a factual question unique to him." *Id.* This argument is contrary to every court that has considered this question. Every state and federal trial court—at least two dozen and counting—as well as the only appellate court to entertain the statute of limitations issue for Sections 15(a) and (b) of BIPA, have held a five-year statute of limitations applies. *See Tims v. Black Horse Carriers, Inc.,* 2021 IL App (1st) 200563, ¶¶ 1, 33 ("section 13-205 governs actions under section 15(a), (b), and (e) of the Act.").[2] Speedway's suggestions that Sections 15(a) and (b) of BIPA are subject to a one-year limitations period runs in the face of numerous opinions to the contrary.

Second, on December 15, 2021, the only appellate court to date that has decided the issue of accrual reversed the trial court's finding that BIPA claims accrue only once, at the first collection of biometric data in violation of the statute. *See Watson v. Legacy Healthcare Financial, Servs., LLC et al.,* 2021 IL App (1st) 210279, ¶¶ 2, 4. This Court should follow the persuasive ruling of the Illinois Appellate Court unless there is a reason to think the Illinois Supreme Court would decide the issue differently. *AAR Aircraft & Engine Grp., Inc., v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001). There is no reason to think the Illinois Appellate Court got it wrong. The Illinois Appellate Court explained, "the plain language of the statute establishes that it applies to each and every capture and use of plaintiff's fingerprint or hand scan. Almost every substantive section of the Act supports this finding." *Watson*, 2021 IL App (1st) 210279, ¶ 46. The Appellate

---

[2] Section 13-205 provides for a five-year limitation period for, in relevant part, "all civil actions not otherwise provided for." 735 ILCS 5/13-205.

Court went on to note how the "legislative purpose [of the Act] is easy to discern" and that the "stated purpose, then, is to regulate not simply the 'collection' but also everything that follows, including the subsequent 'use' and 'storage' of the collected information." *Id*. at ¶ 49 (citing 740 ILCS 14/5(g)). This makes sense since "the goal of this regulation is to reassure a skeptical public and protect 'the individuals' who otherwise would have 'no recourse.'" *Id*. (citing 740 ILCS 14/5(c), (d)). Speedway harvested Plaintiff's biometric data every day during his employment, through his last day. Howe's employment ended in May 2017 and he filed the Class Action Complaint in September 2017, clearly within the five-year statute of limitations period. Howe's claims are timely and the issue of accrual is no basis to deny that he is an adequate class representative.[3]

### C. Speedway's So-Called "Individualized Defenses" Have No Bearing in This Litigation, and Do Not Predominate Over the Common Issues.

In sum, Speedway's arguments against class certification are based on non-existent defenses. Because the defenses that Speedway relies on do not exist, they also do not require any individualized inquiry as to the Plaintiff. Speedway brings the argument back far later in its brief in the guise of Rule 23(b)(3) predominance, again arguing that the defenses of waiver and the statute of limitations would predominate over the common questions posed in the case. *See* Dkt. No. 144 at 10–13. But again, Speedway's entire argument is contingent on the merit of these defenses, and as discussed above, there is none.

---

[3] Speedway relies on *Feltmeier v. Feltmeier*, 207 Ill. 2d 263 (2003) for its argument that "a claim accrues, and the limitations period begins to run, when 'facts exist that authorize one party to maintain an action against another.'" *See* Dkt. No. 144 at 11 (quoting *Feltmeier*, 207 Ill. 2d at 278). The Illinois Appellate Court explains in length why this case and this argument is flawed and does not apply to BIPA cases. *Watson,* 2021 IL App (1st) 210279, ¶¶ 67-69.

"The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018). The Seventh Circuit has instructed courts that the "predominance requirement is satisfied when 'common questions represent a significant aspect of [a] case and … can be resolved for all members of [a] class in a single adjudication." *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (3d ed. 2011)). However, this does not mean that individual questions must not exist. "The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Id*. Where the purportedly-individualized issues are not elements of a claim, they carry no weight in the Court's determination. *Beaton*, 907 F.3d at 1029 ("Speedy insists that the court needs to inquire individually about each customer's level of satisfaction with the product. But dissatisfaction is not an element of any of the certified claims.").

Every element of the class's claims will be the same across the class: (1) whether Speedway collected and stored their biometric data, and (2) whether Speedway had BIPA-compliant policies in place to receive written consent and publish a retention policy. 740 ILCS 14/15(a), (b). And because Speedway's course of conduct was common as to the entire class—it did not have any policies in place—the culpability determination for $1,000 versus $5,000 damages will be exactly the same. *See* 740 ILCS 14/20. Speedway provides no on-point citations to counsel against certification here and fails to grapple with the several courts that have already certified BIPA classes as straightforward examples of properly-certified cases. *See Morris v. Wow Bao, LLC*, 17-CH-12029 (Cir. Ct. Cook Cnty., Dec. 15, 2021) (Exhibit 2); *Alvarado v. International Laser*

9

*Products, Inc.,* 2019 WL 3337995 (N.D. Ill. June 19, 2019); *In re Facebook Biometric Information Privacy Litig.,* 2018 WL 1794295, at *10 (N.D. Cal. Apr. 16, 2018); *Patel v. Facebook Inc.,* 2019 WL 3727424, at *8 (9th Cir. Aug. 8, 2019); *Robertson v. Symphony Post Acute Care,* No. 17-L-733 (Cir. Ct. St. Clair County, Mar. 12, 2019), *aff'd as modified*, 2019 IL App (5th) 190144-U (Nov. 2, 2019). The class should be certified.

### D. Howe Has Vigorously and Adequately Protected the Interests of the Class.

Speedway further contends—casting about for some reason that class certification should be denied—that Howe is not an adequate class representative. The basis of Speedway's argument against Howe is that he has somehow fallen short of the standard, despite actively participating in discovery, being completely familiar with his claims in the case and his role as a class representative. Even Speedway's preferred treatise on this point makes clear that Howe has well cleared that hurdle. 1 MCLAUGHLIN ON CLASS ACTIONS § 4:29 ("An adequate class representative must have an understanding of the basic facts underlying the claims, some general knowledge of the case, and a demonstrated willingness and ability to participate in discovery."); *accord Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080 (7th Cir. 2013) ("To question her adequacy is to be unrealistic about the role of the class representative in a class action suit. The role is nominal."). Howe testified that he sued the defendants in the case to require them to abide by BIPA, and understands the damages at issue in the case. (Howe Tr. 75:9–14; 78:20–23; 79:3–5.) He demonstrated familiarity, unprompted, with particular requirements of the law. (Howe Tr. 81:7–10.) He demonstrated a clear understanding of his role as class representative and who he seeks to represent, well beyond what is required by a layperson:

Q: [Y]ou understand you are the class representative in the case, right?

A: Correct.

Q: What does that mean to you?

A: That I'm responsible for the actions of the class. I'm looking out for their best interest.

Q: And you are aware that you're seeking damages on behalf of all of these other class members, might be thousands of people?

A: Correct.

Q: Are their damages the same as yours? [OBJECTION]

A: Yes.

(*Id.* at 90:17–91:12.)  He also accurately described the membership of the class. (*Id.* at 97:2–8.)

Speedway's citations are to cases where putative class representatives have no idea who they sued or why, have no idea *what* a complaint even is, and have failed to take an "active and honest and attentive role in discovery"—read otherwise, lied. *See Pruitt v. Pers. Staffing Grp., LLC*, No. 16-CV-5079, 2020 WL 3050330, at *6 (N.D. Ill. June 8, 2020) ("Peterson does not know basic information about the case, about the complaint, or even what a complaint is," and discussing Plaintiff's dilatory and misleading discovery tactics); *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1023 (N.D. Ill. 2017) ("Even though [the named plaintiff] had to have known the answer (like so many others) was false, he gave the false answer under oath. Initially he testified that he read the answers that were given to him, as prepared by his lawyers supposedly without his input."). Comparing Howe to these plaintiffs borders on the offensive: he has been involved with the case from day one, well understands the claims that he is bringing both on behalf of himself and the class, and has been truthful and attentive in discovery— both involved in preparing written responses and document production, as well as sitting for his deposition. Speedway's requirement that a plaintiff must have reviewed a ready-for-filing version of a complaint is an invented one, extrapolated from cases where the plaintiff has no involvement

in the preparation of the complaint and has done nothing but put his name to it. *See id.* To the contrary here—which should be obvious from Howe's deposition testimony—Howe was actively involved in the preparation of the complaint and the allegations therein. *See* Exhibit 3, Declaration of Christopher Howe ("Howe Decl.") at ¶¶ 4-5. He spoke at length with counsel about the allegations, the claims, his responsibilities as a class representative, and his particular experience. (*Id.*) He submitted a declaration in an earlier motion for class certification filed immediately after the complaint's filing. (*Id.*) The fact that he does not recall having reviewed the document that counsel put in front of him at his deposition is not relevant—what is relevant is whether he has met every *actual* requirement for being an adequate class representative, which he plainly has. *See, e.g., The People United for Child., Inc. v. City of New York*, 214 F.R.D. 252, 265 (S.D.N.Y. 2003). Howe is more than adequate, and should be appointed the class representative.

Leaning again on invented adequacy hurdles, Speedway insists that Howe must have monitored every filing by class counsel in the ensuing years of litigation. Again, no such requirement exists. Speedway's citations on this point are outright misleading, with cases that in no way establish a requirement for general litigation monitoring but instead discuss the problems with conflicted class representatives or class counsel. *See Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (discussing need for *court* to monitor settlements entered into by conflicted class representatives); *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011) (discussing unethical class counsel). As the Supreme Court has held, absent any conflict between the interests of the representative and other class members, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). There is no argument here from Speedway on those points, nor could there be. In any

event, Howe testified at his deposition that he was frequently in touch with his counsel (Howe Tr. at 33:13–16), and he has remained involved in the litigation since then, (Howe Decl. at ¶ 7). It is of course counsel's job, not Howe's, to lead the litigation. *See Phillips*, 736 F.3d at 1080.[4] There is no failure of adequacy here, and Plaintiff's motion should be granted.

## III.    A CLASS ACTION IS THE SUPERIOR METHOD

### A.   BIPA's Damages Regime Does Not Offend Due Process and Is Not a Basis to Deny Class Certification.

Next, Speedway's view is that this case alleges a "procedural" violation of the BIPA statute and having to face BIPA's damages on a class-wide basis would produce "grossly disproportionate" damages. *See* Dkt. No. 144 at 19. Speedway characterizes this as a violation of the superiority requirement and, accordingly, precludes class certification under Rule 23. *Id.* at 19-21 The problem with Speedway's argument is that it is directly contrary to on-point Seventh Circuit precedent. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Speedway inexcusably failed to cite this case or its progeny.

In *Murray*, the district court had denied certification of a class under the Fair Credit Reporting Act, remarking that "GMAC would face a potential liability in the billions of dollars for purely technical violations of the FCRA ... Rule 23 is not intended to encourage such abuses of the class action mechanism." *Id.* at 953. At issue was a class of more than a million people, each of whom were entitled to seek damages for $1,000. *Id.* The Seventh Circuit reversed. *Id.* The Court noted that "[t]he reason that damages can be substantial, however, does not lie in an 'abuse' of

---

[4] Similarly, Speedway's insistence that Howe recall off the top of his head what Class Counsel might ask for as a fee is, to belabor the point, made up. *See* Dkt. No. 144 at 9–10. Speedway's sole support for this argument undercuts it: there, a Court approved as adequate a class representative who said he "does not care" about fees or costs in the suit. *Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 399 (N.D. Ill. 2006). Far better than that, Howe testified that he wants to be involved in any settlement of this action, (Howe Tr. at 105:24–106:1), and surely, the Court will be.

Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person . . . combined with GMACM's decision to obtain the credit scores of more than a million persons." *Id.* The Court particularly noted that the "technical" nature of the statutory violation was no basis to deny certification: "The district judge sought to curtail the aggregate damages for violations he deemed trivial. Yet it is not appropriate to use procedural devices to undermine laws of which a judge disapproves." *Id.* at 953–54. In no uncertain terms, then, the Seventh Circuit held that concerns about large aggregate damages had no place in class certification decisions. *Id.* at 954 ("Reducing recoveries by forcing everyone to litigate independently—so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims— has little to recommend it.").

Precisely as in *Murray*, Speedway argues here that the violation is a "technical" one. And precisely as in *Murray*, the legislature could not have been clearer about its intentions with BIPA, as the statute has been (bindingly) interpreted by the Illinois Supreme Court. As the Illinois Supreme Court explained in *Rosenbach* (also not cited a single time in Speedway's opposition), it was the legislature's intent to "subject[] private entities who fail to follow the statute's requirements to substantial potential liability, including liquidated damages, injunctions, attorney fees, and litigation expenses 'for each violation' of the law (*id.* § 20) whether or not actual damages, beyond violation of the law's provisions, can be shown." *Rosenbach*, 2019 IL 123186, ¶ 36. Conversely, where an Illinois law intends to preclude class litigation, it has used clear language. *E.g.,* 35 ILCS 200/23-15(a) ("no complaint [under this law] shall be filed as a class action"). *Murray*'s directive not to undue a legislative judgment about damages with the class action mechanism could not more clearly apply. District courts in the Seventh Circuit, in light of this binding authority, continuously reject Speedway's precise argument. *Armes v. Shanta Enter.,*

*Inc.*, No. 07C5766, 2009 WL 2020781, at *7 (N.D. Ill. July 8, 2009) (rejecting superiority argument and collecting cases). And, as Speedway recognizes, the *Facebook* court—the only court to consider this argument in the BIPA context, and concerning far greater damages—rejected it as well. *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019).

Speedway's argument relies, consequently, on older, out-of-circuit authority or a Northern District of Illinois case that itself predates *Murray*. *In re Trans Union Corp. Priv. Litig.*, 211 F.R.D. 328, 351 (N.D. Ill. 2002) (pre-*Murray*, considering the Truth in Lending Act, about which the legislative intent was far less clear in any event); *Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 504 (N.D. Ga. 2006). It appeals to common-law principles enshrined in cases in 1913. *Checkley v. Illinois Cent. R. Co.*, 257 Ill. 491 (1913). None of this undoes *Murray*.

Finally, Speedway intersperses Due Process argument throughout, but *Murray* also explains this. If Speedway can credibly argue that the damages award at trial is "unconstitutionally excessive," it can—but the time to do that is at trial. *Murray*, 434 F.3d at 954. Using the *procedural* device of denying class certification to effectively amend BIPA, on the other hand, is prohibited. *Id.* Again, courts following *Murray*, and particularly in connection with BIPA, have said precisely the same thing. *Armes* 2009 WL 2020781, at *8 ("The Seventh Circuit has clearly held that considerations of due process and disproportionality of damage awards resulting from awards pursuant to § 1681 n(a)(1)(A) should be applied after a class has been certified."); *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. at 549 , *aff'd sub nom. Patel*, 932 F.3d 1264 (court maintains discretion at later stage of proceedings). Speedway's argument is foreclosed

## B. The "Immature Tort Theory" Does Not Apply to BIPA Cases.

Finally, scraping the bottom of the barrel, Speedway attempts to refute the propriety of class certification by relying on the "immature tort theory." *See* Dkt. No. 144 at 22-23. The phrase "immature tort" has, so far as Plaintiff can tell, never appeared in a case in the Seventh Circuit, district courts included. The Fifth Circuit case cited by Speedway considered whether a district court properly certified a class of "all nicotine-dependent persons in the United States," their estates, and their surviving families. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 737 (5th Cir. 1996) (describing the case as "what may be the largest class action ever attempted in federal court"). In describing numerous reasons for reversal, the Fifth Circuit observed that "mass torts" were not good candidates for certification without the benefit of prior individual trials (which the plaintiff's counsel in the case had promised to bring), because "certification of an immature tort results in a higher than normal risk that the class action may not be superior to individual adjudication." *Id.* at 746–47. But the mass torts to which the court referred included numerous complex issues, unlike BIPA, such as asbestos cases, pharmaceutical cases, and disasters resulting in personal injury. *Id.* at 746 & n. 23 ("It is no surprise then, that historically, certification of mass tort litigation classes has been disfavored.").

Those circuits that have discussed the "immature tort theory" have not come to agreement among themselves on its merit. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1272 (11th Cir. 2004) ("None of our cases has ever held the 'maturity' of a tort to be a proper consideration in the certification decision. . . . [W]e reject this as a legitimate consideration in making a "superiority" determination."). But in any event, the immature tort theory has nothing to do with the circumstances presented here. Without class certification, the possibility of a series of useful, individual BIPA trials is slim: the very reason for class certification is that claims of this size are

appropriately aggregated, and there are unlikely to be wrongful death cases arising from BIPA violations. *See Castano*, 84 F.3d at 746. And as discussed at length in Plaintiff's opening motion and in this brief, the liability questions posed by BIPA cases are straightforward and common across a class. Speedway has done its best to identify the supposed predominance issues and has found only inapplicable, equity defenses. The *Castano* court was primarily concerned about the possible unknown predominance and superiority issues lurking in a nationwide class of any nicotine-dependent individual or their survivors. *See id.* at 747. Speedway has demonstrated absolutely no basis for that concern here.

Indeed, the lack of a prior track record of trials has not prevented courts from granting class certification for BIPA actions. *See Morris*, 17-CH-12029) (Exhibit 2); *Alvarado.,* 2019 WL 3337995; *In re Facebook Biometric Information Privacy Litig.,* 2018 WL 1794295, at *10; *Patel.,* 2019 WL 3727424, at *8 ; *Roberson,* No. 17-L-733), *aff'd as modified*, 2019 IL App (5th) 190144-U (Nov. 2, 2019). As such, Speedway's arguments should be rejected, and the Court should grant Plaintiff's motion for class certification.

## IV.     CONCLUSION

For all the reasons stated above and in his [Renewed] Motion for Rule 23 Class Certification, Named Plaintiff respectfully requests this Honorable Court enter an Order: (1) certifying Plaintiff's claims as a class action; (2) appointing Named Plaintiff Christopher Howe as Class Representative; and (3) appointing Stephan Zouras, LLP and Edelson PC as Class Counsel.


Dated: January 11, 2022                                  Respectfully submitted.

                                                         **CHRISTOHER HOWE**, individually, and
                                                         on behalf of all others similarly situated,

                                                         By: /s/_Andrew C. Ficzko_____

One of Plaintiff's Attorneys

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312-233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com


J. Eli Wade-Scott
Alexander G. Tievsky
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
312-589-6370
ewadescott@edelson.com
atievsky@edelson.com

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on January 11, 2022, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Andrew C. Ficzko*