# EXHIBIT 1

```
 1           IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3   CHRISTOPHER HOWE,              )
     individually and on behalf     )
 4   of all others similarly        )
     situated,                      )
 5                                  )   Case No.
          Plaintiff,                )   1:19-cv-01374
 6                                  )   Hon. Andrea R.
           vs.                      )   Wood
 7                                  )   Magistrate
     SPEEDWAY LLC and MARATHON      )   Judge Hon.
 8   PETROLEUM COMPANY,             )   Susan E. Cox
                                    )
 9        Defendants.               )
```

10　　　　　The videotaped deposition of CHRISTOPHER

11　HOWE, called by the Defendant for examination,

12　pursuant to Notice, and pursuant to the Rules of

13　Civil Procedure for the United States District

14　Courts, taken before Renee E. Brass, CSR, RPR at

15　111 South Wacker Drive, 47th Floor, Chicago,

16　Illinois, on June 13, 2019, at the hour of

17　10:15 a.m.

18

19

20

21

22

23

24

```
 1      PRESENT:

 2            STEPHAN ZOURAS, LLP
              BY: MR. ANDREW C. FICZKO
 3                 aficzko@stephanzouras.com
                   100 North Riverside, Suite 2150
 4                 Chicago, IL 60606
                   312.233.1550
 5
                        on behalf of the Plaintiffs;
 6
              SHOOK, HARDY & BACON, LLP
 7            BY: MR. MATTHEW C. WOLFE
                   mwolfe@shb.com
 8                 111 South Wacker Drive, 47th Floor
                   Chicago, IL 60606
 9                 312.704.7700

10                      on behalf of the Defendant.

11      ALSO PRESENT:

12          David Dominiak, videographer

13

14

15

16

17

18      Reported by:  Renee E. Brass, CSR, RPR
        CSR No. 084-004119 - Expiration Date:  May 31, 2021.
19

20

21

22

23

24
```

```
 1      A.    Yeah.
 2      Q.    Okay.  Let's -- let's back up, because I
 3  think my questions weren't very good.
 4            So the first six pages --
 5      A.    Okay.
 6      Q.    -- are typed up, and at the end they're
 7  signed by, I think, Mr. Ficzko.
 8            Do you know who prepared these written
 9  responses?
10      A.    Yes.
11      Q.    Who?
12      A.    Andy.
13      Q.    Okay.  Have you met Andy before today?
14      A.    Yes.
15      Q.    How many times?
16      A.    Maybe a dozen times.
17      Q.    Okay.  Has he represented you in any
18  case besides this case?
19      A.    No.
20      Q.    So not like in an employment case or
21  wage and hour case or anything like that?
22      A.    No.
23      Q.    Just this case about time clocks?
24      A.    Yes.
```

1    Q.    Anything that you thought was based on a
2    fingerprint?
3    A.    No.
4    Q.    You don't have any technical knowledge
5    of how the time clock actually works, right?
6    A.    Technical?
7    Q.    Yeah.
8    A.    No.
9    Q.    We've talked -- let's go back to
10   Exhibit 1 for a minute, and I want to look at that
11   picture of the clock again.
12         We talked about how the clock worked
13   from your perspective and how you clock in and out
14   and how you enrolled employees.
15         Is there any other feature of the clock
16   that you used that we haven't covered already?
17   Talking about the clock itself now.
18   A.    Not that I used.
19   Q.    Is there any other feature of the clock
20   that you are aware of that you --
21   A.    That other employees would try and have
22   to use.
23   Q.    Like -- okay.  Tell me about those.
24   A.    Two symbols on the bottom.

1     Q.     But you did not take them?

2     A.     No.

3     Q.     Okay. Besides the break feature, are
4 there any other features on the clock that you are
5 aware of that anyone at Speedway, you or the people
6 you supervised or anybody else would have used?

7     A.     No.

8     Q.     Okay. What are you -- what are you
9 suing for in this case?

10     A.     I am suing for Speedway and Marathon to
11 abide by the law.

12     Q.     And the law that you want Speedway and
13 Marathon to abide by is the BIPA law?

14     A.     Correct.

15     Q.     You worked for Speedway, right?

16     A.     Correct.

17     Q.     Why did you sue Marathon Petroleum
18 Company?

19     MR. FICZKO: Objection, seeks a legal
20     conclusion.

21 BY MR. WOLFE:

22     Q.     You can answer.

23     A.     Marathon owns Speedway.

24     Q.     So your understanding is Marathon

```
 1   say anything outside of what you and Mr. Ficzko
 2   talked about?
 3        A.    No.
 4        Q.    Okay.  I'll withdraw it.
 5              MR. WOLFE:  This will be 4, Andy.
 6                    (Exhibit 4 marked for
 7                     identification.)
 8   BY MR. WOLFE:
 9        Q.    Mr. Howe, this is Exhibit 4.  It's the
10   class action complaint filed in this case.
11              Do you remember, did you review the
12   complaint before it was filed?
13        A.    No.
14        Q.    Do you know if any information provided
15   by you to your lawyers was used in preparing the
16   complaint?
17        A.    I don't know.  I'd have to look it over.
18        Q.    Have you ever seen it before?
19        A.    No.
20        Q.    What are you looking to receive from the
21   lawsuit?
22        A.    That laws are abided by for the safety
23   of myself, the class, anyone else.
24        Q.    Are you seeking money damages?
```

```
 1     A.    After -- yes.
 2     Q.    How much are you looking for?
 3     A.    After doing some research and Googling
 4  things and looking, my understanding it could be
 5  anywhere from 1,000 to maybe 5,000.
 6     Q.    Would you take $1,000 to settle the
 7  case?
 8     A.    I don't know.
 9     Q.    Would you take $5,000?
10     A.    I don't know.
11     Q.    You were paid a salary when you were a
12  GM at Speedway, correct?
13     A.    Correct.
14     Q.    Do you think Speedway should have paid
15  you more in exchange for having you put your finger
16  on the time clock every day?
17         MR. FICZKO:  Objection, seeks a legal
18     conclusion.
19         THE WITNESS:  No.
20  BY MR. WOLFE:
21     Q.    Is it your position that Speedway didn't
22  disclose to you that the time clock was relying on
23  scanning your finger to track your hours?
24     A.    I'm sorry?
```

```
 1   have, you know, taken away the need for you to file
 2   the lawsuit?
 3              MR. FICZKO:  Objection, seeks a legal
 4        conclusion.
 5              THE WITNESS:  Yes.
 6   BY MR. WOLFE:
 7        Q.   What do you think Speedway should have
 8   done differently?
 9        A.   Told me what they were doing with my
10   personal information.
11        Q.   So that's -- I'm going to -- taking that
12   assumption, okay, let's say that Speedway should
13   have told you what they were doing with your
14   personal -- with your personal information.  Would
15   you have then done something differently?
16              MR. FICZKO:  Objection, hypothetical.
17              THE WITNESS:  If they would have told
18        me?
19   BY MR. WOLFE:
20        Q.   Yeah.
21        A.   No.
22        Q.   You wouldn't have quit?
23        A.   No.
24        Q.   You wouldn't have asked for more money?
```

```
 1      A.   No.
 2      Q.   You wouldn't have protested the use of
 3 those clocks?
 4      A.   No.
 5      Q.   When did you realize that you had been
 6 harmed by putting your finger on the clocks?
 7      A.   After doing some research.
 8      Q.   Tell me about the research.
 9      A.   Just Googling.
10      Q.   Was that your idea?
11      A.   Yes.
12      Q.   So you were -- you were curious about
13 these time clocks and how they worked?
14      A.   Yes.
15      Q.   Was there something specific that caused
16 you to do the Google research about the law and the
17 clocks?
18      A.   After talking to my attorney.
19      Q.   Is that Mr. Ficzko?
20      A.   Yes.
21      Q.   How do you know Mr. Ficzko?
22      A.   Googling and looking for an attorney and
23 hired him.
24      Q.   So when you were looking for a lawyer,
```

```
 1     A.    Yes.
 2     Q.    So how did they keep track of your time?
 3     A.    Maybe it -- maybe it was good faith
 4  then, back then.  I'm not -- I'm not -- maybe it
 5  was -- maybe we had a paper one.  I -- you're --
 6     Q.    Long time ago I know.
 7     A.    -- you're talking 1995.  I don't know.
 8     Q.    But it wasn't a finger scan?
 9     A.    No, sir.
10     Q.    Have you ever worked anywhere besides
11  Speedway that had a finger scan time clock?
12     A.    No, sir.
13     Q.    Ms. Wagner works at 7-Eleven now?
14     A.    Yes.
15     Q.    Do they use a finger scan time clock?
16     A.    I don't know.
17     Q.    You -- you understand you are the class
18  representative in this case, right?
19     A.    Correct.
20     Q.    What does that mean to you?
21     A.    That I'm responsible for the actions of
22  the class.  I'm looking out for their best
23  interest.
24     Q.    And you are aware that you're seeking
```

```
 1   damages on behalf of all of these other class
 2   members, might be thousands of people?
 3        A.   Correct.
 4        Q.   Are their damages the same as yours?
 5             MR. FICZKO:  Objection, seeks a legal
 6        conclusion.
 7             THE WITNESS:  Yes.
 8   BY MR. WOLFE:
 9        Q.   And is that because the people in the
10   proposed class all used the clock in the same
11   manner you did?
12        A.   Yes.
13             MR. FICZKO:  Same objection.  Sorry.
14   BY MR. WOLFE:
15        Q.   When you applied to work at Speedway,
16   did you have to provide your Social Security
17   number?
18        A.   Yes.
19        Q.   Your birthday?
20        A.   Yes.
21        Q.   Your address?
22        A.   Yes.
23        Q.   To get paid by Speedway, you had to give
24   them your bank information, right?
```

```
 1   BY MR. WOLFE:
 2       Q.   Yeah.  Who would be in the class?  If
 3   the -- you know, the Court hasn't certified the
 4   class, but...
 5       A.   Myself.
 6       Q.   Uh-huh.
 7       A.   And every employee up until they
 8   released that paper.
 9       Q.   Up until they put a policy in place?
10       A.   Correct.
11       Q.   And when you say "they," you mean
12   Speedway?
13       A.   Speedway and Marathon.
14       Q.   Okay.  Do you know -- and your position
15   is that Speedway -- Marathon is being sued because
16   Marathon owns Speedway?
17            MR. FICZKO:  Objection, seeks a legal
18       conclusion.
19            THE WITNESS:  Yes.
20   BY MR. WOLFE:
21       Q.   Now, the class -- the class definition
22   in the complaint, it says:  All individuals who
23   worked for defendants in the State of Illinois who
24   had their fingerprints collected, captured,
```

```
 1      Q.    What are your expectations?
 2      A.    Just looking on Google and seeing what
 3  it says.  It could range from -- you know, what it
 4  will range.
 5      Q.    What's the range you saw on Google?
 6      A.    I think it was anywhere from, like, I
 7  think 5,000 to 10,000 I think it said or something
 8  like that.
 9      Q.    Did you do that research yourself?
10      A.    Yes.
11      Q.    Did anybody else tell you you should --
12      A.    No.
13      Q.    -- look at it?  Did you do that before
14  or after you hired Mr. Ficzko?
15      A.    After.
16      Q.    Before or after the lawsuit was filed?
17      A.    After.
18      Q.    If this case was being settled, you
19  would want to know about that, right?
20      A.    Yes.
21      Q.    And you would expect to have input in
22  the settlement?
23      A.    I'm sorry?
24      Q.    You would expect to have input into the
```

```
 1  settlement?
 2      A.   Yes.
 3      Q.   Me too.
 4           So we talked about Kronos earlier.  Do
 5  you know that Kronos bought TimeLink?
 6      A.   No.
 7      Q.   So I'm just going to represent to you
 8  that Kronos acquired TimeLink and so TimeLink is
 9  Kronos for purposes of this.  Okay?
10      A.   Okay.
11      Q.   Do you know that there are lawsuits
12  pending just Kronos as a clock manufacturer?
13      A.   No.
14      Q.   Do you know that those lawsuits seek to
15  certify a class of everybody who used a Kronos time
16  clock in Illinois?
17      A.   I'm sorry?
18      Q.   Those lawsuits seek to certify a class
19  of everybody who used a Kronos time clock in
20  Illinois.
21      A.   Did I know that?
22      Q.   Yeah.
23      A.   No.
24      Q.   Did you know that you could be a member
```