# EXHIBIT 2

1          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

2              COUNTY DEPARTMENT, CHANCERY DIVISION

3

4   REGINA MORRIS, on behalf of        )
    herself and all others similarly   )
5   situated,                          )
                                       )
6              Plaintiff,              )
                                       )
7         vs.                          )No. 17-CH-12029
                                       )
8   WOW BAO LLC, WOW BAO FRANCHISING   )
    LLC and LETTUCE ENTERTAIN YOU      )
9   ENTERPRISES, INC.,                 )
                                       )
10             Defendants.             )

11

12

13             TRANSCRIPT OF PROCEEDINGS

14  at the hearing in the above-entitled cause before

15  THE HONORABLE ALLEN P. WALKER, Judge of said Court,

16  on December 14, 2021, via Zoom remote videoconference

17  platform, reported by Nohemi Salazar-Pitts, Certified

18  Shorthand Reporter for the State of Illinois,

19  commencing at 2:00 p.m. Central Time.

20

21

22

23

24

1 | REMOTE APPEARANCES:

2

3 | STEPHAN ZOURAS, LLP
BY:  MR. ANDREW C. FICZKO, ESQUIRE
4 | 100 North Riverside Plaza
Suite 2150
5 | Chicago, Illinois  60606
Phone:  (312) 233-1550
6 | E-mail:  aficzko@stephanzouras.com

7 |         Appeared on behalf of the Plaintiffs;

8

9 | FOLEY & LARDNER LLP
BY:  MR. CHRISTOPHER G. WARD, ESQUIRE
10 | 321 North Clark Street
Chicago, Illinois  60654
11 | Phone:  (312) 832-4364
E-mail:  cward@foley.com

12

        Appeared on behalf of Defendant Wow
13 |         Bao LLC.

14

15

16

17

18

19

20

21

22

23

24

1              (The following proceedings were had
2              via remote videoconferencing:)
3         THE CLERK:  Morris vs. Wow Bao,
4    17-CH-12029.
5         MR. FICZKO:  Good afternoon, your Honor.
6    Andy Ficzko on behalf of the Plaintiff.
7         MR. WARD:  And Christopher Ward on behalf
8    of the Defendant.
9         THE COURT:  Good afternoon.  All right
10   there's also a Jessica.
11              (Whereupon, a discussion was had
12              off the record.)
13        THE COURT:  This is on the Plaintiff's
14   petition to certify a class?
15        MR. FICZKO:  Correct, your Honor.
16        THE COURT:  You may proceed.
17        MR. FICZKO:  Thank you, your Honor.  As
18   you just indicated before the court, it is Plaintiff's
19   motion to certify a class of a little over 1300
20   Illinois consumers asserting identical claims under
21   the Biometric Information Privacy Act, or BIPA.
22              Specifically, these individuals were
23   customers of a Wow Bao restaurant who used facial
24   recognition at an ordering kiosk at one of Wow Bao's

1    stores from approximately 2016 through 2017.  To

2    facilitate faster checkouts and higher sales volume,

3    while minimizing payroll costs, the Defendants

4    implemented facial recognition self-ordering kiosks at

5    three of its restaurants that used a customer's facial

6    geometry as a means of identification for ordering

7    food and drinks.

8                    When a customer chooses the facial

9    recognition feature, the kiosk built-in facial

10   recognition camera collects the customer's facial

11   geometry and stores the data on its database.  When a

12   customer returns to place a later order, they can

13   recall their previous orders with facial recognition.

14                   The facial recognition cameras

15   compare basically the live image of a customer's face

16   with the facial geometry stored in the cloud database

17   until it makes a match.  When a match is found, the

18   kiosk pulls up the customer's orders associated with

19   the customer's guest account.  So basically what

20   happens is a customer would simply walk up to the

21   kiosk and the kiosk would recognize them from their

22   facial geometry for purposes of recalling and placing

23   orders.

24                   Through this biometric tracking

1   system, the Defendants collected, used, stored, and

2   disclosed its customers' facial geometry when they

3   were customers at their restaurants, all while failing

4   to comply with the simple, easy-to-follow BIPA

5   requirements.

6              For example, Defendants did not

7   inform them of the purpose and the length of time that

8   their biometric data was being collected, stored, and

9   used, and it did not make available to the public a

10  retention schedule and guidelines for the destruction

11  of its customers' biometric data, and they did not

12  receive a release to collect, store, and use their

13  biometric information, nor did they receive consent to

14  disclose this biometric data to third parties such as

15  Nextep Systems Inc. in this case which hosted the

16  biometric data.

17             The same evidence, the same common

18  evidence shows that the Defendants uniformly violated

19  BIPA in the same way for all 1,369 customers who used

20  their facial recognition kiosk by collecting and

21  disclosing their biometric data.  And what I mean by

22  "biometric data" is biometric information and

23  biometric identifiers as defined by BIPA, all without

24  complying with BIPA.

1          Basically, the Defendants concede

2 that this case meets the requirements for class

3 certification; they only argue that this motion should

4 be denied because it may be more difficult than they

5 anticipated to compile a class list.  But the law is

6 clear:  We don't need to name specific individuals who

7 are possible class members.  There's no such rule that

8 requires a so-called administrative feasibility

9 requirement.

10          Policy reasons also call for this

11 court to reject such a requirement because it's

12 inconsistent with the general rule that direct notice

13 to the class is not required by due process.  In fact,

14 there are a number of ways to identify class members,

15 including through self-identification.  Notice can

16 also be made by publication if necessary.

17          With all that said, these means

18 shouldn't even be necessary here.  All we need here is

19 the transaction data to call a class list, and

20 discovery showed that the necessary data was collected

21 and stored through the kiosk and the software used

22 therein.

23          Nextep and Defendants had a cloud

24 system that they can access that contains not only

1  facial geometry data of its customers but also

2  connects the customers' facial geometry to their

3  credit card numbers and phone numbers in what's called

4  a guest account.

5            Discovery also revealed that the

6  ordering kiosk housed what's called a transaction

7  manager software on the computer within the actual

8  kiosk that store log files, credit card transaction

9  files, and order transaction files which communicate

10 up to the cloud.

11           The kiosk also interfaced with the

12 point of sale system for the purposes of communicating

13 customer information.  All we need to do here is

14 simply connect a user facial geometry file to their

15 order history, get the dates and store locations of

16 these user orders, which would obviously then be

17 connected to other data such as payment data which we

18 could then use to identify class members or even

19 contact them for the purposes of sending notice.

20           With that said, though, what's

21 concerning is that after the lawsuit was filed, there

22 were a total of six facial recognition kiosks used at

23 Wow Bao at the three locations, but all but one or two

24 of these kiosks have either been destroyed or lost,

1    and not a single representative of Defendants could

2    testify as to who ordered the kiosk to be destroyed or

3    why they were destroyed despite the obligation to

4    preserve evidence for litigation purposes.

5                    Finally, Defendants submit a

6    declaration from Brian Leary, an employee of Nextep.

7    Mr. Leary attempts to contradict all of the evidence

8    in the record that confirms a customer's facial

9    geometry data is linked in guest accounts to their

10   credit card numbers, phone numbers, in addition to

11   their order history.

12                   It's worth noting, though, that

13   there's a pending BIPA lawsuit against Nextep, so

14   Mr. Leary clearly has an interest in ensuring that no

15   precedent is set in this case that may impact the case

16   against his company.  But again, there simply is zero

17   evidence to support his contentions.  Nextep's own

18   documents and employee testimony clearly contradict

19   Mr. Leary's unsupported assertions.

20                   At the end of the day, Defendants do

21   not challenge that Plaintiff failed to satisfy the

22   actual prerequisites to class certification.  This

23   class should be certified as a class action,

24   Ms. Morris should be appointed as class

1  representative, counsel for Plaintiff should be

2  appointed class counsel, and notice should go out to

3  the 1,369 customers who had their personal and private

4  biometric data illegally collected, used, stored, and

5  disseminated by Defendants in violation of BIPA.

6              THE COURT:  Thank you.

7                   Mr. Ward?

8              MR. WARD:  Your Honor, I won't call it

9  omission, but I think it's certainly a downplaying of

10 the critical detail in this case.  Mr. Ficzko said and

11 he alluded to Nextep multiple times, but tried to sort

12 of convolute the Defendants in this case with Nextep

13 and calls Nextep as hosting the data.

14                  The reality and the evidence on this

15 across the entire record is clear that Defendants in

16 this case have no access to that data, it's entirely

17 captive within the Nextep system.  So what happens is

18 the Nextep technology captures the data at issue here,

19 uploads it to the Nextep cloud, and there's simply a

20 series of Nextep -- or, I'm sorry, files within the

21 Nextep cloud that is solely within the control of

22 Nextep.

23              THE COURT:  Why does that matter?

24              MR. WARD:  It matters because here is the

1    way this works out.  If you look at the Brian Leary

2    declaration, he's the only one with actual personal

3    knowledge in this case that has provided testimony

4    evidence as to how this technology works.  The other

5    two individuals to whom Mr. Ficzko alluded, both

6    testified at their deposition that they have no

7    personal knowledge of how these systems work.

8                    One guy is a sales person who does

9    not have any sense of the technology, the other was an

10   installer, essentially, who wrote one e-mail which is

11   what Mr. Ficzko alluded to, and then during his

12   deposition contradicted that e-mail, which is cited in

13   footnote 3 of our brief, the specific testimony he

14   gave saying, no, there is not a link between any

15   identifying data and these facial geometry files.

16                    But this is important because the way

17   the system works is -- and this is all laid out very

18   clearly in the Brian Leary declaration -- there's no

19   identifying information within these 1369 files.

20   They're not individuals, by the way, your Honor,

21   they're simply files, they're just facial geometry

22   files.  We have no idea if that, in fact, corresponds

23   to 1369 people or less than that, but it's simply an

24   algorithmic file, and Nextep is in complete possession

1   of those data, and it has testified it has no way to

2   unpack those files to identify any single individual.

3              So the only putative class member who

4   we can absolutely identify in this case is the

5   Plaintiff, and that's simply because she's the named

6   party here.

7              Now, I'm not saying that this is a

8   heightened ascertainability standard as they have

9   argued in their reply, and I'm not saying that the

10  court needs to be able to identify all of the class

11  representatives -- or all of the putative class

12  members rather, before it can certify the class.  What

13  I am saying is the court's got to be able to identify

14  at least some of them or have some process --

15             THE COURT:  But the process would

16  simply -- there are two ways to, in the court's

17  mind -- notwithstanding Plaintiff's argument, there

18  are two ways or methodologies that immediately come to

19  mind, number one is publication, number two is simply

20  putting up a sign in the stores, assuming they still

21  exist, inviting anyone who within the time period in

22  question was a customer and submitted themselves to

23  providing their biometric data by facial recognition.

24             MR. WARD:  Sure.

1      THE COURT:  Why is that a problem?

2      MR. WARD:  Well, let me just make the

3  first point, your Honor, which is if there is a

4  mechanism to identify any class members, that

5  should've been part of the Plaintiff's burden.  This

6  issue and the key part of why this case is not

7  certifiable was not even addressed in their moving

8  papers.  This is now scrambling on reply.

9           So this should have all been vetted

10  ahead of time, this should have been sorted in

11  discovery.  If they thought that there was a

12  contradiction in the evidence between what we have

13  always asserted, which is you can't identify class

14  members here, and they can think the evidence clearly

15  shows that you can, then that needed to be vetted in

16  discovery and proven in their moving papers.  And if

17  we need a supplemental briefing on that, then so be

18  it, but that is their burden to sort.

19           As to the question of publication or

20  posting, couple things that I think are really

21  important.  The time period here is 2016 to 2017; we

22  are nearing 2022 at this point.  These three stores --

23  well, one of them no longer exists; that was the one

24  near 900 North Michigan Avenue.  The other two are

1   within Water Tower and at State and Lake, which is

2   incredibly high traffic areas, incredibly high traffic

3   areas for individuals who are tourists, who are

4   itinerant in Chicago.

5                   The likelihood that we would capture

6   a representative and sufficient number of

7   self-identified individuals who used this technology

8   of Nextep almost five years ago in these high traffic

9   locations is very unreliable.  And if you look at the

10  authority on this, the courts don't say that

11  publication or a posting is sufficient in all

12  circumstances, right, it's going to be case-specific.

13                  And while I agree -- for example,

14  there's a Seventh Circuit case that deals with a bar

15  and a couple of ATMs in a college town where you're

16  going to have much more repeat traffic, there was not

17  nearly the amount of time gap between the

18  certification issue.  And important in that case, by

19  the way, the Seventh Circuit also said we're not even

20  sure what records they do have, versus here we're

21  talking about something 500 years ago -- or, I'm

22  sorry, five years ago in Water Tower and at State and

23  Lake where the amount of traffic and the amount of

24  capture or false hits we might get here, right, what

1    is the court going to do if we publish this and we get

2    zero response?

3                    You know, I mean, these are issues

4    that are coming down the path potentially in this

5    case, and I think they needed to be vetted at this

6    stage in class certification and they weren't.  And

7    that's the reason why I bring up the Plaintiff's

8    burden, is because this stuff should have been vetted

9    out or we still need to vet it out, because I think

10   this is really important and we can't simply say, oh,

11   it's a simple combination of looking at the cloud and

12   corresponding it to a transaction data, because I

13   believe the evidence says that's not how it works and

14   it's impossible to get to that stage.

15                   So if we have a contradiction in how

16   we look at what the evidence shows, then either the

17   Plaintiff needed to sort that out in their moving

18   papers and satisfy their burden when they sought class

19   certification or, at a minimum, we need to have

20   supplemental briefing on it.

21                   THE COURT:  Can I ask you a follow-up

22   question?

23                   MR. WARD:  Sure.

24                   THE COURT:  It seems to me that the

1  company would have kept data on how many people -- and

2  I think this is argued -- how many people used the

3  facial recognition software, how many orders were

4  placed as a consequence of it, if for no other reason,

5  to monitor its effectiveness, and wouldn't that be a

6  source of information in terms of the parameters of

7  how many people would be in this class.

8          MR. WARD:  So, your Honor, the answer to

9  that is Nextep did keep that data, and during the time

10 that our clients were customers of Nextep --

11         THE COURT:  Yeah, but did Nextep destroy

12 that information?

13         MR. WARD:  No.  As I understand it, from

14 my information --

15         THE COURT:  They're subject to subpoena;

16 aren't they?

17         MR. WARD:  They are subject to subpoena,

18 and they are subject to exploration of these issues

19 that I have been raising in terms of whether these

20 1369 files can be linked to 1300-and-some individuals

21 or whatever.

22             My point is that that was never

23 discovered by the Plaintiff, they never went down that

24 route to search that from Nextep; we did.  I

1  interviewed Mr. Leary, and he was willing to provide

2  the affidavit that he provided.  He is the only one

3  with the personal knowledge on this that we have been

4  able to identify.

5                    So I agree with you, this should have

6  been addressed, but --

7                    THE COURT:  Let me ask you one more

8  question, and it's really one of certification,

9  because are you suggesting to the court that the

10  parent company, Lettuce Entertain You, is saying they

11  never kept this kind of information for its stores,

12  and particularly Wow Bao, in particular; that Wow Bao,

13  the management company or the management folks at

14  Wow Bao never within their own -- within the confines

15  of their own facilities never kept this kind of data

16  on who was using this biometric data and whether it

17  was effective and how effective of a marketing tool it

18  was and how effective of a tool for tracking foot

19  traffic in and out of its stores and its customers?

20                    MR. WARD:  Your Honor, I think my answer

21  to that is sort of.  Right?  I guess I take issue with

22  the verb "kept," because that meant that they had

23  access to these data at some point, and the reality

24  is -- and again, I have explored this extensively, it

1 wasn't really addressed in the Plaintiff's moving

2 papers, but our clients never had access to their

3 data.  The way these kiosks worked is that they would

4 literally take this process and immediately upload it

5 to the cloud --

6             THE COURT:  So they never got reports?

7             MR. WARD:  I'm sorry?

8             THE COURT:  They never got reports?

9             MR. WARD:  What they could do is go onto a

10 dashboard.  That was, again, maintained by Nextep to

11 get some basic customer data, but when Nextep

12 discontinued that service, our clients no longer had

13 access to that.

14             But, again, nothing from that

15 dashboard, your Honor, would provide the customer

16 information.  It's the same issue, it was -- it would

17 simply be sort of bland data about the number of

18 transactions without any idea, any mechanism to trail

19 any single transaction to a user.

20             THE COURT:  Well, yes, but part of this

21 discussion is about how many people are actually in

22 this class, and the transactional data would give you

23 some indication, correct?

24             MR. WARD:  What I understand, your Honor,

 1 from Nextep is that it can say it has 1369 files.  As
 2 far as whether those are 1369 --
 3            THE COURT:  No.  No.  No.  My question
 4 goes to the reports that Wow Bao could get off, as you
 5 described it, the dashboard as to how many people on a
 6 given day or in given month could use this particular
 7 system, correct?
 8            MR. WARD:  I don't know the answer to that
 9 question.  I presume that would have been available in
10 real time, your Honor.  It's not available now because
11 it would correlate back to the Nextep data, but it
12 still would suffer from the same problem, which is
13 it's just very superficial data about a number of
14 transactions, not a number of users and without any
15 ability to identify a specific user to a specific
16 transaction.
17            THE COURT:  Yeah, but the court finds it
18 relatively hard to believe that this would be
19 superficial data in light of the fact that they're
20 doing this anyway.  I mean, they're collecting data.
21 Usually when people collect data, they collect all
22 kinds of data, and that's sort of why the statute is
23 in place in the first place, because of the basic
24 overreaching of companies who are collecting data,

1  biometric or otherwise.

2               So the court finds it somewhat hard

3  to believe that, nah, it's just a limited amount of

4  data relative to the folks who were using this system,

5  and it no longer exists.  That seems fairly

6  implausible to the court.  Tell me why that's the case

7  when we are at this juncture, a data-driven society in

8  every aspect.

9               MR. WARD:  Sure.  And at a superficial

10 level, your Honor, I totally understand the

11 skepticism, right, but again, we go back to this idea

12 of the distinction between my client and Nextep

13 Systems.

14               Nextep has all of the data, has all

15 of the relevant data, and it could have been

16 discovered, it could have been disclosed or explored

17 in discovery by the other side prior to bringing this

18 motion, and they didn't.  So we are left to explain

19 why something seems implausible because, to my view,

20 this record hasn't been totally established and

21 developed by the Plaintiff to show they've met their

22 burden.

23               THE COURT:  Okay.  Humor me one more time,

24 Counsel, because I don't know why your client wouldn't

1   have tons of data, because your client put this system

2   up in the first place, and they did it for a reason.

3                   They did it because they thought

4   that, number one, it would improve customer service,

5   presumably that it would make their operation go

6   faster; and I would imagine there was a whole host of

7   other data that they were going to get, biometric,

8   demographic, and so forth, that they thought would be

9   useful to them in marketing their store, in traffic in

10  and out of their store, and what their company is

11  buying when they come in, what their favorites are,

12  what they come in and order all the time, how often

13  they do it, when they do it, where they do it, whether

14  it gets delivered or they pick it up, or any number of

15  data points.

16                  So, again, I'm just struggling with

17  this notion that, nah, we don't have a whole lot of

18  stuff, most of it is with the company who provided the

19  software.  That seems to be contrary to the point of

20  putting this system in in the first place so they

21  don't get a lot of data.

22                  MR. WARD:  Sure.  And I think part of the

23  court's understandable skepticism again comes from the

24  fact that this record is underdeveloped.

 1                    The way that this all happened is
 2     that Nextep had actually been providing kiosks to the
 3     Wow Bao stores for a number of years before.  As part
 4     of a scheduled upgrade -- and, you know, all this
 5     evidence is out there if we need to demonstrate it
 6     through briefing or whatever -- before a scheduled
 7     upgrade, Nextep installed these three kiosks at
 8     these -- it's actually six kiosks at three stores.
 9     Without any request to do so from our client, they
10     essentially put facial recognition in as an upgrade.
11                    Our clients protested if they were
12     going to have to pay more for it, and Nextep said no.
13     And the evidence fully developed in this case through
14     multiple depositions basically says our clients had no
15     involvement in the process.  Literally, the only thing
16     they did was provide power to the kiosks, a network
17     connection, and then Nextep did everything from there.
18     All of the data are theirs, all of the processes are
19     within their software and their hardware.
20                    And so any time -- and this is what
21     our client's witnesses consistently testified to, is
22     anytime they needed any information at all about what
23     was going on with these systems, they had to go to
24     Nextep.  So it's not accurate that our clients put

1    these machines with facial recognition into their

2    stores trying to gather additional data and take

3    additional biometrics; they were put in by Nextep at

4    Nextep's choice.  And, yeah, they got used for a

5    little while, although not that well as people

6    testified.

7                    But I go back to this point that I

8    think these are important questions; I think these are

9    important aspects of whether this is a certifiable

10   class.  And I have these explanations, your Honor, but

11   ultimately the legal burden is for the Plaintiff to

12   answer that and show why this class can be certified

13   in light of these concerns, and that was never

14   addressed in their moving papers and only scrambled to

15   in response to our opposition.

16                   So either the motion should be denied

17   for failure to carry the burden, or at least they

18   should be ordered to brief these issues and

19   demonstrate why these concerns are not surmountable.

20              THE COURT:  All right.  Thank you.

21              Counsel?

22         MR. FICZKO:  Your Honor, just to reiterate

23   my point, Defendant simply has not to this point

24   challenged any of the requirements that we need for

1  class certification.  The so-called ascertainability

2  is not a reason to deny class certification.

3           Defense counsel kept harping on that

4  his client has limited data.  Well, the reason why

5  they have limited data is for -- they have to blame

6  themselves because there is no reason why four, five,

7  all of the kiosks have been destroyed or lost.  We

8  simply -- and no one at Nex- -- or excuse me, at Wow

9  Bao could indicate where they were, why they were

10 destroyed or otherwise.

11           Defendants also contradict what was

12 indicated in Mr. Leary's declaration.

13       THE COURT:  Can I ask you a question?  A

14 question, Mr. --

15       MR. FICZKO:  Sure.

16       THE COURT:  Why does the kiosk having been

17 destroyed matter?  All the data, it sounds to me,

18 would have been uploaded to the cloud, so who cares

19 whether or not the kiosk exists?  Isn't the ultimate

20 issue whether the data itself exists?

21       MR. FICZKO:  That's inaccurate.  There is

22 what's called a Transaction Manager Software that is

23 installed in each computer within the kiosk which

24 stores transaction files, credit card transaction

1  files, log files.  This all goes to connect to the
2  facial geometry, which --
3              THE COURT:  But that data doesn't get
4  uploaded to the cloud?  Those files don't get uploaded
5  to the cloud; they remain resident on the hard drive
6  in the kiosk?  That doesn't make sense to me.
7              MR. FICZKO:  I believe it may be both,
8  your Honor.
9              THE COURT:  Well, if it's both, again, my
10 question is why does it matter where the kiosk is if
11 the data exists somewhere?
12             MR. FICZKO:  Well, we're saying both, that
13 the data exists both in the cloud and it would exist
14 in the computers if Defendants would have kept them.
15             THE COURT:  Okay.
16             MR. WARD:  Your Honor, may I respond on
17 that point?
18             THE COURT:  Just a second, Counsel.  I'll
19 give you an opportunity.
20             MR. WARD.  Sure.  Thank you.
21             MR. FICZKO:  And we did, your Honor,
22 explore this.  And as I indicated, before we filed a
23 lawsuit against Nextep and conveniently this
24 declaration was submitted, all of the evidentiary

1   evidence indicates that the geometries, the facial

2   geometries, are linked to the customer's credit card

3   and phone number, and there's documents from Nextep

4   that clearly show that, which we submitted that

5   describe how their facial recognition kiosks worked,

6   and how it's link to tender, and how it even says that

7   one of the whole purposes is now that the customer

8   doesn't even have to bring back a credit card for the

9   next time use because it's already saved in the kiosk.

10              THE COURT:  Okay.  Anything else?

11              MR. FICZKO:  No, your Honor.  Thank you.

12              THE COURT:  All right.  Mr. Ward?

13              MR. WARD:  Your Honor, this is just

14  another issue of underdeveloped or misleading of the

15  evidence.  It's not what the evidence shows here from

16  Nextep's own documents.  In fact, the witnesses

17  testified that they never linked credit card to facial

18  recognition because they couldn't either get it to

19  work or it wasn't something they were deploying at

20  Wow Bao.

21              But I think it's critical on this

22  kiosk question because I think you've hit on an

23  important point.  Again, our understanding, and I

24  hired a forensic expert to investigate this once we

1 learned that some of these kiosks had gone because I
2 wanted to determine did we lose anything of importance
3 to this case, we spent quite a bit of money to do it.
4            Mr. Ficzko had the opportunity to
5 depose individuals on it, and what we know is that
6 because everything is cloud-based, there isn't
7 anything lost.  And, in fact, our expert said there is
8 nothing stored on these local hard drives that relates
9 to facial geometry whatsoever.
10            And, again, if the other side wants
11 to contest that point, that's something they have the
12 burden to establish.  So we either need to brief it
13 and they can try and show you the evidence, or we need
14 to deny certification of these -- this is a critical
15 point.  But it's not accurate that we have no one but
16 ourselves to blame here, because we made sure before
17 we made these arguments to the court that we had a
18 full understanding of what we were dealing with, with
19 these data.
20            And Mr. Ficzko just said all of the
21 evidence says that, you know, you can link these
22 things.  Well, then they should have showed it.  They
23 should have showed it in their briefing instead of
24 arguing it in a scrambled reply and making a bunch of

1  assertions in oral argument when the actual evidence
2  and testimony says otherwise.

3              So, again, either we need to deny
4  this motion because not being able to identify a
5  single class member and not having had a mechanism
6  proposed for how we could administer this class that
7  is actually feasible is a critical part of the
8  certification inquiry, and that was not met.  So
9  either we need to deny the motion or at least give the
10 Plaintiff the opportunity to certify these burdens.

11          THE COURT:  All right.  Mr. Ficzko, it's
12 your motion, you have the last word.

13          MR. FICZKO:  Thank you, your Honor.

14              As I indicated, ascertainability is
15 not a means to deny a motion for class certification.
16 At this stage, we do not need to identify every
17 individual.  There are means that do not violate due
18 process through which direct notice is not necessary.

19              For example, the Defendants cannot
20 produce the credit card transaction data, the parties
21 may need to subpoena credit card companies, or the
22 parties may need to rely on class member
23 self-identification at the claims stage, or notice, as
24 we previously discussed, by publication or by posting

1    it at these Wow Bao restaurants.

2                    Class members can simply be

3    identified during the claims administration process.

4    This is not a reason to deny class certification at

5    this stage.

6                    THE COURT:  All right.  The court is going

7    to grant the motion for class certification.  The

8    court finds that the Plaintiff has met the

9    requirements of identifying that the class is so

10   numerous that joinder of all members is impracticable,

11   that there are questions of fact and law that are

12   common to the class that predominate over any

13   questions affecting only individual members, that the

14   representative parties will fairly and adequately

15   protect the interest of the class, and that the class

16   action is an appropriate method for the fair and

17   efficient adjudication of controversy.  The court also

18   grants class counsel as well as the motion to appoint

19   class representative.

20                    So, gentlemen, where does that leave

21   us in terms of next steps?

22                    MR. FICZKO:  The next steps will be the

23   notice process, your Honor, which we'll need to decide

24   how to best go about that business.

1          THE COURT:  All right.  Let's have a

2  status 60 days out or so.

3               Mark, do we have a date that's

4  available 60 days out?

5          THE CLERK:  Yes, Judge, we can do

6  March 15th at 10:00 a.m.

7          MR. WARD:  Your Honor, I'll be in trial in

8  California on that date.  If we can either go a week

9  before or a couple weeks after, I'd appreciate it.

10          THE COURT:  A couple weeks after, Mark?

11          THE CLERK:  Would April 4th work for

12  counsel?

13          MR. WARD:  That should be fine for me,

14  your Honor.  I appreciate it.

15          MR. FICZKO:  That works for Plaintiff.

16          THE COURT:  April 4th at 10:00.

17               All right?

18          MR. FICZKO:  Yes, your Honor.

19               Should we write an order?

20          THE COURT:  Yes.

21          MR. FICZKO:  Will do.

22          THE COURT:  Ms. Pitts, is there anything

23  you need from the court?

24          THE REPORTER:  There isn't.  Thank you,

1    your Honor.

2            THE COURT:  All right.  Then, gentlemen,

3    thank you.  You folks have a great holiday.

4                    (Which were all the proceedings

5                    that were had in the above-entitled

6                    cause on this date.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1   STATE OF ILLINOIS    )
                       )   SS:
2   COUNTY OF C O O K    )

3

4          I, NOHEMI SALAZAR-PITTS, a Certified

5   Shorthand Reporter doing business in the City of

6   Chicago, certify that I reported in shorthand the

7   proceedings of said hearing, and that the foregoing is

8   a true and correct transcript of my shorthand notes so

9   taken as aforesaid and contains the proceedings given

10   at said hearing.

11

12

13          _____

            Certified Shorthand Reporter

14            LICENSE NO.:  084-4648

15

16

17

18

19

20

21

22

23

24

**A**

**a.m** 29:6
**ability** 18:15
**able** 11:10,13
    16:4 27:4
**above-entitled**
    1:14 30:5
**absolutely** 11:4
**access** 6:24 9:16
    16:23 17:2,13
**account** 4:19 7:4
**accounts** 8:9
**accurate** 21:24
    26:15
**Act** 3:21
**action** 8:23
    28:16
**actual** 7:7 8:22
    10:2 27:1
**addition** 8:10
**additional** 22:2
    22:3
**addressed** 12:7
    16:6 17:1
    22:14
**adequately**
    28:14
**adjudication**
    28:17
**administer** 27:6
**administration**
    28:3
**administrative**
    6:8
**affidavit** 16:2
**aficzko@step...**
    2:6
**aforesaid** 31:9
**afternoon** 3:5,9
**ago** 13:8,21,22
**agree** 13:13 16:5
**ahead** 12:10
**algorithmic**
    10:24

**ALLEN** 1:15
**alluded** 9:11
    10:5,11
**amount** 13:17
    13:23,23 19:3
**ANDREW** 2:3
**Andy** 3:6
**answer** 15:8
    16:20 18:8
    22:12
**anticipated** 6:5
**anytime** 21:22
**anyway** 18:20
**APPEARAN...**
    2:1
**Appeared** 2:7
    2:12
**appoint** 28:18
**appointed** 8:24
    9:2
**appreciate** 29:9
    29:14
**appropriate**
    28:16
**approximately**
    4:1
**April** 29:11,16
**areas** 13:2,3
**argue** 6:3
**argued** 11:9
    15:2
**arguing** 26:24
**argument** 11:17
    27:1
**arguments**
    26:17
**ascertainability**
    11:8 23:1
    27:14
**aspect** 19:8
**aspects** 22:9
**asserted** 12:13
**asserting** 3:20
**assertions** 8:19

27:1
**associated** 4:18
**assuming** 11:20
**ATMs** 13:15
**attempts** 8:7
**authority** 13:10
**available** 5:9
    18:9,10 29:4
**Avenue** 12:24

**B**

**back** 18:11
    19:11 22:7
    25:8
**Bao** 1:8,8 2:13
    3:3,23 7:23
    16:12,12,14
    18:4 21:3 23:9
    25:20 28:1
**Bao's** 3:24
**bar** 13:14
**basic** 17:11
    18:23
**basically** 4:15
    4:19 6:1 21:14
**behalf** 1:4 2:7
    2:12 3:6,7
**believe** 14:13
    18:18 19:3
    24:7
**best** 28:24
**biometric** 3:21
    4:24 5:8,11,13
    5:14,16,21,22
    5:22,23 9:4
    11:23 16:16
    19:1 20:7
**biometrics** 22:3
**BIPA** 3:21 5:4
    5:19,23,24
    8:13 9:5
**bit** 26:3
**blame** 23:5
    26:16

**bland** 17:17
**Brian** 8:6 10:1
    10:18
**brief** 10:13
    22:18 26:12
**briefing** 12:17
    14:20 21:6
    26:23
**bring** 14:7 25:8
**bringing** 19:17
**built-in** 4:9
**bunch** 26:24
**burden** 12:5,18
    14:8,18 19:22
    22:11,17 26:12
**burdens** 27:10
**business** 28:24
    31:5
**buying** 20:11

**C**

**C** 2:3 31:2
**California** 29:8
**call** 6:10,19 9:8
**called** 7:3,6
    23:22
**calls** 9:13
**camera** 4:10
**cameras** 4:14
**captive** 9:17
**capture** 13:5,24
**captures** 9:18
**card** 7:3,8 8:10
    23:24 25:2,8
    25:17 27:20,21
**cares** 23:18
**carry** 22:17
**case** 5:15 6:2
    8:15,15 9:10
    9:12,16 10:3
    11:4 12:6
    13:14,18 14:5
    19:6 21:13
    26:3

**case-specific**
    13:12
**cause** 1:14 30:6
**Central** 1:19
**certainly** 9:9
**certifiable** 12:7
    22:9
**certification** 6:3
    8:22 13:18
    14:6,19 16:8
    23:1,2 26:14
    27:8,15 28:4,7
**certified** 1:17
    8:23 22:12
    31:4,13
**certify** 3:14,19
    11:12 27:10
    31:6
**challenge** 8:21
**challenged**
    22:24
**CHANCERY**
    1:2
**checkouts** 4:2
**Chicago** 2:5,10
    13:4 31:6
**choice** 22:4
**chooses** 4:8
**Christopher** 2:9
    3:7
**Circuit** 1:1
    13:14,19
**circumstances**
    13:12
**cited** 10:12
**City** 31:5
**claims** 3:20
    27:23 28:3
**Clark** 2:10
**class** 3:14,19 6:2
    6:5,7,13,14,19
    7:18 8:22,23
    8:23,24 9:2
    11:3,10,11,12

12:4,13 14:6
14:18 15:7
17:22 22:10,12
23:1,2 27:5,6
27:15,22 28:2
28:4,7,9,12,15
28:15,18,19
clear 6:6 9:15
clearly 8:14,18
10:18 12:14
25:4
CLERK 3:3
29:5,11
client 19:12,24
20:1 21:9 23:4
client's 21:21
clients 15:10
17:2,12 21:11
21:14,24
cloud 4:16 6:23
7:10 9:19,21
14:11 17:5
23:18 24:4,5
24:13
cloud-based
26:6
collect 5:12
18:21,21
collected 5:1,8
6:20 9:4
collecting 5:20
18:20,24
collects 4:10
college 13:15
combination
14:11
come 11:18
20:11,12
comes 20:23
coming 14:4
commencing
1:19
common 5:17
28:12

communicate
7:9
communicating
7:12
companies
18:24 27:21
company 8:16
15:1 16:10,13
20:10,18
compare 4:15
compile 6:5
complete 10:24
comply 5:4
complying 5:24
computer 7:7
23:23
computers
24:14
concede 6:1
concerning 7:21
concerns 22:13
22:19
confines 16:14
confirms 8:8
connect 7:14
24:1
connected 7:17
connection
21:17
connects 7:2
consent 5:13
consequence
15:4
consistently
21:21
consumers 3:20
contact 7:19
contains 6:24
31:9
contentions 8:17
contest 26:11
contradict 8:7
8:18 23:11
contradicted

10:12
contradiction
12:12 14:15
contrary 20:19
control 9:21
controversy
28:17
conveniently
24:23
convolute 9:12
COOK 1:1
correct 3:15
17:23 18:7
31:8
correlate 18:11
corresponding
14:12
corresponds
10:22
costs 4:3
counsel 9:1,2
19:24 22:21
23:3 24:18
28:18 29:12
COUNTY 1:1,2
31:2
couple 12:20
13:15 29:9,10
court 1:1,15 3:9
3:13,16,18
6:11 9:6,23
11:10,15 12:1
14:1,21,24
15:11,15 16:7
16:9 17:6,8,20
18:3,17,17
19:2,6,23
22:20 23:13,16
24:3,9,15,18
25:10,12 26:17
27:11 28:6,6,8
28:17 29:1,10
29:16,20,22,23
30:2

court's 11:13,16
20:23
courts 13:10
credit 7:3,8 8:10
23:24 25:2,8
25:17 27:20,21
critical 9:10
25:21 26:14
27:7
customer 4:8,12
4:20 7:13
11:22 17:11,15
20:4 25:7
customer's 4:5
4:10,15,18,19
8:8 25:2
customers 3:23
5:3,19 7:1 9:3
15:10 16:19
customers' 5:2
5:11 7:2
cward@foley....
2:11

D

dashboard
17:10,15 18:5
data 4:11 5:8,11
5:14,16,21,22
6:19,20 7:1,17
7:17 8:9 9:4,13
9:16,18 10:15
11:1,23 14:12
15:1,9 16:15
16:16,23 17:3
17:11,17,22
18:11,13,19,20
18:21,22,24
19:4,14,15
20:1,7,15,21
21:18 22:2
23:4,5,17,20
24:3,11,13
26:19 27:20

data-driven
19:7
database 4:11
4:16
date 29:3,8 30:6
dates 7:15
day 8:20 18:6
days 29:2,4
dealing 26:18
deals 13:14
December 1:16
decide 28:23
declaration 8:6
10:2,18 23:12
24:24
Defendant 2:12
3:8 22:23
Defendants 1:10
4:3 5:1,6,18
6:1,23 8:1,5,20
9:5,12,15
23:11 24:14
27:19
Defense 23:3
defined 5:23
delivered 20:14
demographic
20:8
demonstrate
21:5 22:19
denied 6:4 22:16
deny 23:2 26:14
27:3,9,15 28:4
DEPARTME...
1:2
deploying 25:19
depose 26:5
deposition 10:6
10:12
depositions
21:14
describe 25:5
described 18:5
despite 8:3

destroy 15:11
destroyed 7:24
  8:2,3 23:7,10
  23:17
destruction 5:10
detail 9:10
determine 26:2
developed 19:21
  21:13
difficult 6:4
direct 6:12
  27:18
disclose 5:14
disclosed 5:2
  19:16
disclosing 5:21
discontinued
  17:12
discovered
  15:23 19:16
discovery 6:20
  7:5 12:11,16
  19:17
discussed 27:24
discussion 3:11
  17:21
disseminated
  9:5
distinction
  19:12
DIVISION 1:2
documents 8:18
  25:3,16
doing 18:20 31:5
downplaying
  9:9
drinks 4:7
drive 24:5
drives 26:8
due 6:13 27:17

**E**

e-mail 2:6,11
  10:10,12

easy-to-follow
  5:4
effective 16:17
  16:17,18
effectiveness
  15:5
efficient 28:17
either 7:24
  14:16 22:16
  25:18 26:12
  27:3,9 29:8
employee 8:6,18
ensuring 8:14
ENTERPRIS...
  1:9
Entertain 1:8
  16:10
entire 9:15
entirely 9:16
ESQUIRE 2:3,9
essentially 10:10
  21:10
establish 26:12
established
  19:20
evidence 5:17,18
  8:4,7,17 9:14
  10:4 12:12,14
  14:13,16 21:5
  21:13 25:1,15
  25:15 26:13,21
  27:1
evidentiary
  24:24
example 5:6
  13:13 27:19
excuse 23:8
exist 11:21
  24:13
exists 12:23 19:5
  23:19,20 24:11
  24:13
expert 25:24
  26:7

explain 19:18
explanations
  22:10
exploration
  15:18
explore 24:22
explored 16:24
  19:16
extensively
  16:24

**F**

face 4:15
facial 3:23 4:4,5
  4:8,9,10,13,14
  4:16,22 5:2,20
  7:1,2,14,22 8:8
  10:15,21 11:23
  15:3 21:10
  22:1 24:2 25:1
  25:5,17 26:9
facilitate 4:2
facilities 16:15
fact 6:13 10:22
  18:19 20:24
  25:16 26:7
  28:11
failed 8:21
failing 5:3
failure 22:17
fair 28:16
fairly 19:5 28:14
false 13:24
far 18:2
faster 4:2 20:6
favorites 20:11
feasibility 6:8
feasible 27:7
feature 4:9
Ficzko 2:3 3:5,6
  3:15,17 9:10
  10:5,11 22:22
  23:15,21 24:7
  24:12,21 25:11

  26:4,20 27:11
  27:13 28:22
  29:15,18,21
file 7:14 10:24
filed 7:21 24:22
files 7:8,9,9 9:20
  10:15,19,21,22
  11:2 15:20
  18:1 23:24
  24:1,1,4
Finally 8:5
finds 18:17 19:2
  28:8
fine 29:13
first 12:3 18:23
  20:2,20
five 13:8,22 23:6
FOLEY 2:9
folks 16:13 19:4
  30:3
follow-up 14:21
following 3:1
food 4:7
foot 16:18
footnote 10:13
foregoing 31:7
forensic 25:24
forth 20:8
found 4:17
four 23:6
FRANCHISI...
  1:8
full 26:18
fully 21:13

**G**

G 2:9
gap 13:17
gather 22:2
general 6:12
gentlemen 28:20
  30:2
geometries 25:1
  25:2

geometry 4:6,11
  4:16,22 5:2 7:1
  7:2,14 8:9
  10:15,21 24:2
  26:9
give 17:22 24:19
  27:9
given 18:6,6
  31:9
go 9:2 17:9
  19:11 20:5
  21:23 22:7
  28:24 29:8
goes 18:4 24:1
going 13:12,16
  14:1 20:7
  21:12,23 28:6
Good 3:5,9
grant 28:7
grants 28:18
great 30:3
guess 16:21
guest 4:19 7:4
  8:9
guidelines 5:10
guy 10:8

**H**

happened 21:1
happens 4:20
  9:17
hard 18:18 19:2
  24:5 26:8
hardware 21:19
harping 23:3
hearing 1:14
  31:7,10
heightened 11:8
high 13:2,2,8
higher 4:2
hired 25:24
history 7:15
  8:11
hit 25:22

hits 13:24
holiday 30:3
Honor 3:5,15,17
  9:8 10:20 12:3
  15:8 16:20
  17:15,24 18:10
  19:10 22:10,22
  24:8,16,21
  25:11,13 27:13
  28:23 29:7,14
  29:18 30:1
HONORABLE
  1:15
host 20:6
hosted 5:15
hosting 9:13
housed 7:6
Humor 19:23

**I**

idea 10:22 17:18
  19:11
identical 3:20
identification
  4:6
identified 28:3
identifiers 5:23
identify 6:14
  7:18 11:2,4,10
  11:13 12:4,13
  16:4 18:15
  27:4,16
identifying
  10:15,19 28:9
illegally 9:4
Illinois 1:1,18
  2:5,10 3:20
  31:1
image 4:15
imagine 20:6
immediately
  11:18 17:4
impact 8:15
implausible 19:6

19:19
implemented
  4:4
importance 26:2
important 10:16
  12:21 13:18
  14:10 22:8,9
  25:23
impossible
  14:14
impracticable
  28:10
improve 20:4
inaccurate
  23:21
including 6:15
inconsistent
  6:12
incredibly 13:2
  13:2
indicate 23:9
indicated 3:18
  23:12 24:22
  27:14
indicates 25:1
indication 17:23
individual 11:2
  27:17 28:13
individuals 3:22
  6:6 10:5,20
  13:3,7 15:20
  26:5
inform 5:7
information
  3:21 5:13,22
  7:13 10:19
  15:6,12,14
  16:11 17:16
  21:22
inquiry 27:8
installed 21:7
  23:23
installer 10:10
interest 8:14

28:15
interfaced 7:11
interviewed
  16:1
investigate
  25:24
inviting 11:21
involvement
  21:15
issue 9:18 12:6
  13:18 16:21
  17:16 23:20
  25:14
issues 14:3
  15:18 22:18
itinerant 13:4

**J**

Jessica 3:10
joinder 28:10
Judge 1:15 29:5
juncture 19:7

**K**

K 31:2
keep 15:9
kept 15:1 16:11
  16:15,22 23:3
  24:14
key 12:6
kind 16:11,15
kinds 18:22
kiosk 3:24 4:9
  4:18,21,21
  5:20 6:21 7:6,8
  7:11 8:2 23:16
  23:19,23 24:6
  24:10 25:9,22
kiosks 4:4 7:22
  7:24 17:3 21:2
  21:7,8,16 23:7
  25:5 26:1
know 14:3 18:8
  19:24 21:4
  26:5,21

knowledge 10:3
  10:7 16:3

**L**

laid 10:17
Lake 13:1,23
LARDNER 2:9
law 6:5 28:11
lawsuit 7:21
  8:13 24:23
learned 26:1
Leary 8:6,7,14
  10:1,18 16:1
Leary's 8:19
  23:12
leave 28:20
left 19:18
legal 22:11
length 5:7
Let's 29:1
Lettuce 1:8
  16:10
level 19:10
LICENSE 31:14
light 18:19
  22:13
likelihood 13:5
limited 19:3
  23:4,5
link 10:14 25:6
  26:21
linked 8:9 15:20
  25:2,17
list 6:5,19
literally 17:4
  21:15
litigation 8:4
little 3:19 22:5
live 4:15
LLC 1:8,8 2:13
LLP 2:3,9
local 26:8
locations 7:15
  7:23 13:9

log 7:8 24:1
longer 12:23
  17:12 19:5
look 10:1 13:9
  14:16
looking 14:11
lose 26:2
lost 7:24 23:7
  26:7
lot 20:17,21

**M**

machines 22:1
maintained
  17:10
making 26:24
management
  16:13,13
manager 7:7
  23:22
March 29:6
Mark 29:3,10
marketing 16:17
  20:9
match 4:17,17
matter 9:23
  23:17 24:10
matters 9:24
mean 5:21 14:3
  18:20
means 4:6 6:17
  27:15,17
meant 16:22
mechanism 12:4
  17:18 27:5
meets 6:2
member 11:3
  27:5,22
members 6:7,14
  7:18 11:12
  12:4,14 28:2
  28:10,13
met 19:21 27:8
  28:8

method 28:16
methodologies
 11:18
Michigan 12:24
mind 11:17,19
minimizing 4:3
minimum 14:19
misleading
 25:14
money 26:3
monitor 15:5
month 18:6
Morris 1:4 3:3
 8:24
motion 3:19 6:3
 19:18 22:16
 27:4,9,12,15
 28:7,18
moving 12:7,16
 14:17 17:1
 22:14
multiple 9:11
 21:14

_____ N _____
nah 19:3 20:17
name 6:6
named 11:5
near 12:24
nearing 12:22
nearly 13:17
necessary 6:16
 6:18,20 27:18
need 6:6,18 7:13
 12:17 14:9,19
 21:5 22:24
 26:12,13 27:3
 27:9,16,21,22
 28:23 29:23
needed 12:15
 14:5,17 21:22
needs 11:10
network 21:16
never 15:22,23

16:11,14,15
 17:2,6,8 22:13
 25:17
Nex- 23:8
Nextep 5:15
 6:23 8:6,13
 9:11,12,13,17
 9:18,19,20,21
 9:22 10:24
 13:8 15:9,10
 15:11,24 17:10
 17:11 18:1,11
 19:12,14 21:2
 21:7,12,17,24
 22:3 24:23
 25:3
Nextep's 8:17
 22:4 25:16
Nohemi 1:17
 31:4
North 2:4,10
 12:24
notes 31:8
notice 6:12,15
 7:19 9:2 27:18
 27:23 28:23
noting 8:12
notion 20:17
notwithstandi...
 11:17
number 6:14
 11:19,19 13:6
 17:17 18:13,14
 20:4,14 21:3
 25:3
numbers 7:3,3
 8:10,10
numerous 28:10

_____ O _____
O 31:2,2
obligation 8:3
obviously 7:16
oh 14:10

Okay 19:23
 24:15 25:10
omission 9:9
once 25:24
operation 20:5
opportunity
 24:19 26:4
 27:10
opposition
 22:15
oral 27:1
order 4:12 7:9
 7:15 8:11
 20:12 29:19
ordered 8:2
 22:18
ordering 3:24
 4:6 7:6
orders 4:13,18
 4:23 7:16 15:3
overreaching
 18:24

_____ P _____
P 1:15
p.m 1:19
papers 12:8,16
 14:18 17:2
 22:14
parameters 15:6
parent 16:10
part 12:5,6
 17:20 20:22
 21:3 27:7
particular 16:12
 18:6
particularly
 16:12
parties 5:14
 27:20,22 28:14
party 11:6
path 14:4
pay 21:12
payment 7:17

payroll 4:3
pending 8:13
people 10:23
 15:1,2,7 17:21
 18:5,21 22:5
period 11:21
 12:21
person 10:8
personal 9:3
 10:2,7 16:3
petition 3:14
phone 2:5,11 7:3
 8:10 25:3
pick 20:14
Pitts 29:22
place 4:12 18:23
 18:23 20:2,20
placed 15:4
placing 4:22
Plaintiff 1:6 3:6
 8:21 9:1 11:5
 14:17 15:23
 19:21 22:11
 27:10 28:8
 29:15
Plaintiff's 3:13
 3:18 11:17
 12:5 14:7 17:1
Plaintiffs 2:7
platform 1:17
Plaza 2:4
point 7:12 12:3
 12:22 15:22
 16:23 20:19
 22:7,23,23
 24:17 25:23
 26:11,15
points 20:15
Policy 6:10
possession 10:24
possible 6:7
posting 12:20
 13:11 27:24
potentially 14:4

power 21:16
precedent 8:15
predominate
 28:12
prerequisites
 8:22
preserve 8:4
presumably
 20:5
presume 18:9
previous 4:13
previously 27:24
prior 19:17
Privacy 3:21
private 9:3
problem 12:1
 18:12
proceed 3:16
proceedings
 1:13 3:1 30:4
 31:7,9
process 6:13
 11:14,15 17:4
 21:15 27:18
 28:3,23
processes 21:18
produce 27:20
proposed 27:6
protect 28:15
protested 21:11
proven 12:16
provide 16:1
 17:15 21:16
provided 10:3
 16:2 20:18
providing 11:23
 21:2
public 5:9
publication 6:16
 11:19 12:19
 13:11 27:24
publish 14:1
pulls 4:18
purpose 5:7

purposes 4:22
  7:12,19 8:4
  25:7
put 20:1 21:10
  21:24 22:3
putative 11:3,11
putting 11:20
  20:20

**Q**

question 11:22
  12:19 14:22
  16:8 18:3,9
  23:13,14 24:10
  25:22
questions 22:8
  28:11,13
quite 26:3

**R**

raising 15:19
real 18:10
reality 9:14
  16:23
really 12:20
  14:10 16:8
  17:1
reason 14:7 15:4
  20:2 23:2,4,6
  28:4
reasons 6:10
recall 4:13
recalling 4:22
receive 5:12,13
recognition 3:24
  4:4,9,10,13,14
  5:20 7:22
  11:23 15:3
  21:10 22:1
  25:5,18
recognize 4:21
record 3:12 8:8
  9:15 19:20
  20:24
records 13:20

**REGINA** 1:4
reiterate 22:22
reject 6:11
relates 26:8
relative 19:4
relatively 18:18
release 5:12
relevant 19:15
rely 27:22
remain 24:5
remote 1:16 2:1
  3:2
repeat 13:16
reply 11:9 12:8
  26:24
reported 1:17
  31:6
**Reporter** 1:18
  29:24 31:5,13
reports 17:6,8
  18:4
representative
  8:1 9:1 13:6
  28:14,19
representatives
  11:11
request 21:9
required 6:13
requirement 6:9
  6:11
requirements
  5:5 6:2 22:24
  28:9
requires 6:8
resident 24:5
respond 24:16
response 14:2
  22:15
restaurant 3:23
restaurants 4:5
  5:3 28:1
retention 5:10
returns 4:12
revealed 7:5

right 3:9 13:12
  13:24 16:21
  19:11 22:20
  25:12 27:11
  28:6 29:1,17
  30:2
**Riverside** 2:4
route 15:24
rule 6:7,12

**S**

**Salazar-Pitts**
  1:17 31:4
sale 7:12
sales 4:2 10:8
satisfy 8:21
  14:18
saved 25:9
saying 10:14
  11:7,9,13
  16:10 24:12
says 14:13 21:14
  25:6 26:21
  27:2
schedule 5:10
scheduled 21:4
  21:6
scrambled 22:14
  26:24
scrambling 12:8
search 15:24
second 24:18
self-identificat...
  6:15 27:23
self-identified
  13:7
self-ordering
  4:4
sending 7:19
sense 10:9 24:6
series 9:20
service 17:12
  20:4
set 8:15

**Seventh** 13:14
  13:19
shorthand 1:18
  31:5,6,8,13
should've 12:5
show 19:21
  22:12 25:4
  26:13
showed 6:20
  26:22,23
shows 5:18
  12:15 14:16
  25:15
side 19:17 26:10
sign 11:20
similarly 1:4
simple 5:4 14:11
simply 4:20 7:14
  8:16 9:19
  10:21,23 11:5
  11:16,19 14:10
  17:17 22:23
  23:8 28:2
single 8:1 11:2
  17:19 27:5
situated 1:5
six 7:22 21:8
skepticism
  19:11 20:23
so-called 6:8
  23:1
society 19:7
software 6:21
  7:7 15:3 20:19
  21:19 23:22
solely 9:21
somewhat 19:2
sorry 9:20 13:22
  17:7
sort 9:11 12:18
  14:17 16:21
  17:17 18:22
sorted 12:10
sought 14:18

sounds 23:17
source 15:6
specific 6:6
  10:13 18:15,15
**Specifically** 3:22
spent 26:3
**SS** 31:1
stage 14:6,14
  27:16,23 28:5
standard 11:8
**State** 1:18 13:1
  13:22 31:1
status 29:2
statute 18:22
**STEPHAN** 2:3
steps 28:21,22
store 5:12 7:8,15
  20:9,10
stored 4:16 5:1,8
  6:21 9:4 26:8
stores 4:1,11
  11:20 12:22
  16:11,19 21:3
  21:8 22:2
  23:24
**Street** 2:10
struggling 20:16
stuff 14:8 20:18
subject 15:15,17
  15:18
submit 8:5
submitted 11:22
  24:24 25:4
subpoena 15:15
  15:17 27:21
suffer 18:12
sufficient 13:6
  13:11
suggesting 16:9
**Suite** 2:4
superficial
  18:13,19 19:9
supplemental
  12:17 14:20

support 8:17
sure 11:24 13:20
  14:23 19:9
  20:22 23:15
  24:20 26:16
surmountable
  22:19
system 5:1 6:24
  7:12 9:17
  10:17 18:7
  19:4 20:1,20
systems 5:15
  10:7 19:13
  21:23

**T**
take 16:21 17:4
  22:2
taken 31:9
talking 13:21
technology 9:18
  10:4,9 13:7
Tell 19:6
tender 25:6
terms 15:6,19
  28:21
testified 10:6
  11:1 21:21
  22:6 25:17
testify 8:2
testimony 8:18
  10:3,13 27:2
thank 3:17 9:6
  22:20 24:20
  25:11 27:13
  29:24 30:3
theirs 21:18
thing 21:15
things 12:20
  26:22
think 9:9 12:14
  12:20 14:5,9
  15:2 16:20
  20:22 22:8,8

25:21,22
third 5:14
thought 12:11
  20:3,8
three 4:5 7:23
  12:22 21:7,8
time 1:19 5:7
  11:21 12:10,21
  13:17 15:9
  18:10 19:23
  20:12 21:20
  25:9
times 9:11
tons 20:1
tool 16:17,18
total 7:22
totally 19:10,20
tourists 13:3
Tower 13:1,22
town 13:15
tracking 4:24
  16:18
traffic 13:2,2,8
  13:16,23 16:19
  20:9
trail 17:18
transaction 6:19
  7:6,8,9 14:12
  17:19 18:16
  23:22,24,24
  27:20
transactional
  17:22
transactions
  17:18 18:14
transcript 1:13
  31:8
trial 29:7
tried 9:11
true 31:8
try 26:13
trying 22:2
two 7:23 10:5
  11:16,18,19

12:24
**U**
ultimate 23:19
ultimately 22:11
underdeveloped
  20:24 25:14
understand
  15:13 17:24
  19:10
understandable
  20:23
understanding
  25:23 26:18
uniformly 5:18
unpack 11:2
unreliable 13:9
unsupported
  8:19
upgrade 21:4,7
  21:10
upload 17:4
uploaded 23:18
  24:4,4
uploads 9:19
use 5:12 7:18
  18:6 25:9
useful 20:9
user 7:14,16
  17:19 18:15
users 18:14
Usually 18:21

**V**
verb 16:22
versus 13:20
vet 14:9
vetted 12:9,15
  14:5,8
videoconference
  1:16
videoconferen...
  3:2
view 19:19
violate 27:17

violated 5:18
violation 9:5
volume 4:2
vs 1:7 3:3

**W**
walk 4:20
WALKER 1:15
wanted 26:2
wants 26:10
Ward 2:9 3:7,7
  9:7,8,24 11:24
  12:2 14:23
  15:8,13,17
  16:20 17:7,9
  17:24 18:8
  19:9 20:22
  24:16,20 25:12
  25:13 29:7,13
wasn't 17:1
  25:19
Water 13:1,22
way 5:19 10:1
  10:16,20 11:1
  13:19 17:3
  21:1
ways 6:14 11:16
  11:18
we'll 28:23
we're 13:19,20
  24:12
week 29:8
weeks 29:9,10
went 15:23
weren't 14:6
whatsoever 26:9
willing 16:1
witnesses 21:21
  25:16
word 27:12
work 10:7 25:19
  29:11
worked 17:3
  25:5

works 10:1,4,17
  14:13 29:15
worth 8:12
wouldn't 15:5
  19:24
Wow 1:8,8 2:12
  3:3,23,24 7:23
  16:12,12,14
  18:4 21:3 23:8
  25:20 28:1
write 29:19
wrote 10:10

**X**

**Y**
yeah 15:11
  18:17 22:4
years 13:8,21,22
  21:3

**Z**
zero 8:16 14:2
Zoom 1:16
ZOURAS 2:3

**0**
084-4648 31:14

**1**
1,369 5:19 9:3
10:00 29:6,16
100 2:4
1300 3:19
1300-and-some
  15:20
1369 10:19,23
  15:20 18:1,2
14 1:16
15th 29:6
17-CH-12029
  1:7 3:4

**2**
2:00 1:19