**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER HOWE, individually, and on behalf of all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 1:19-cv-01374** |
| **vs.** | ) ) ) | |
| **SPEEDWAY, LLC,** | ) ) ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................... 3

    A.  The Illinois Biometric Information Privacy Act. ................................. 3

    B.  Plaintiff's Allegations and Procedural History. ................................... 4

III.  TERMS OF THE SETTLEMENT AGREEMENT ........................................ 6

    A.  Class Definition. ..................................................................................... 6

    B.  Settlement Payments............................................................................... 7

    C.  Payment of Settlement Notice and Administrative Costs. ................... 7

    D.  Payment of Attorneys' Fees, Costs, and Incentive Award. ................. 8

    E.  Release of Liability.................................................................................. 8

IV.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ... 9

    A.  Plaintiff and Class Counsel Have Adequately Represented the Class. .......... 10

    B.  The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties.................................................................. 12

    C.  The Settlement Treats All Class Members Equally........................... 13

    D.  The Relief Secured for the Class Is Adequate and Warrants Approval........ 14

        1.  The Settlement relief to the Class is outstanding ..................... 14

        2.  The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval. .................................. 16

        3.  The method of distributing relief to the Class Members is effective and supports preliminary approval................................. 17

        4.  The terms of the requested attorneys' fees are reasonable.................... 18

V.  THE PROPOSED NOTICE PLAN SHOULD BE PRELIMINARILY APPROVED IN FORM AND SUBSTANCE ........................................................ 19

VI.  CONCLUSION ................................................................................................ 21

## TABLE OF AUTHORITIES

### Cases

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 ................ 11

*Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cnty. June 25, 2018) ......... 2

*Cothron v. White Castle System, Inc. d/b/a White Castle*, 1:19-cv-00382 (N.D. Ill. Aug. 2, 2024) ................................................................................................................................................ 18

*Cothron v. White Castle System, Inc.*, 2023 IL 128004 ........................................................... 16

*Davis v. Heartland Employment Services, LLC*, 19-cv-00680 (N.D. Ill.) ............................... 2, 15

*Dixon v. Washington & Jane Smith Cmty.-Beverly*, No. 17-cv-8033 (N.D. Ill. May 31, 2018) .. 14

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) ....................................................................... 18

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ..................................................................... 9

*Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 1700959 (N.D. Ill. Oct. 10, 1995) ....... 16

*Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16) ................................................................................................................................................ 10

*In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935 (N.D. Ill. 2011) ......................................... 17

*In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ...................................................................................................................................... 15

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202 (N.D. Ill. 2019) ....................................................................................................................... 10

*Jones v. CBC Restaurants Corp.*, 19-cv-6736 (N.D. Ill.) ......................................................... 2, 15

*Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546 ......... 12

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ................................................................. 15

*Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cnty) ............................... 2, 15

*Rogers v. BNSF Ry. Co.*, 680 F. Supp. 3d 1027 (N.D. Ill. 2023) ......................................... 15, 16

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................ 17

*Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289 ............................................ 13

*Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ............................................................................................................................ 9, 10, 13

*Starts v. Little Caesar Enterprises Inc.*, 1:19-cv-01575 (N.D. Ill.) ......................................... 2, 15

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ........................ 10

*Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629 (7th Cir. 2011) ..................................... 18

*Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ................................................................................................................................................ 12

*Young v. Rolling in the Dough, Inc*, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ......................... 12

### Statutes

740 ILCS 14/1, *et seq.* ................................................................................................................. 1

740 ILCS 14/15(a) ........................................................................................................................ 4

740 ILCS 14/15(b) ........................................................................................................................ 4

740 ILCS 14/15(d) ........................................................................................................................ 4

740 ILCS 14/20 ....................................................................................................................... 4, 16

740 ILCS 14/5 ............................................................................................................................... 3

Fed. R. Civ. P. 23(c) ................................................................................................................... 19

Fed. R. Civ. P. 23(e) ............................................................................................................. passim

**<u>Other Authorities</u>**

4 Newberg and Rubenstein on Class Actions § 13:1 (6th ed.) ................................. 9

4 Newberg on Class Actions § 13:53 (5th ed.) ........................................................ 17

5 Newberg on Class Actions § 15:83 (5th ed.) ........................................................ 19

Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment ............................. 10, 16

Ill. House Transcript, 2008 Reg. Sess. No. 276 ........................................................ 3

## I. __INTRODUCTION__

Eight years ago, Plaintiff Christopher Howe ("Plaintiff") brought this case against Defendant Speedway, LLC ("Defendant" or "Speedway") (collectively, the "Parties") asserting claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq.* Specifically, Plaintiff alleges Speedway utilized a Biometric Timekeeping System requiring its workers to produce their biometric data for purposes of identity authentication and to record their time worked. However, Plaintiff alleges that in doing so, Speedway violated BIPA by: (1) failing to inform workers in writing of the specific purpose and length of time for which their biometric data were being collected, stored, and used, prior to doing so; (2) failing to provide and adhere to a publicly available retention schedule and guidelines for permanently destroying workers' biometric data; (3) failing to obtain a written release from workers to collect, store, or otherwise use their biometric data; and (4) failing to obtain consent prior to disseminating workers' biometric data to third parties. Speedway denies Plaintiff's allegations, denies violation of any law, and denies all liability.

After Plaintiff successfully certified the class and defeated Speedway's motion for summary judgment on the issue of whether finger scan data is biometric data under BIPA, the Parties engaged in extensive settlement negotiations, including private mediation with the Honorable Judge Morton Denlow (ret.) of JAMS. As a result of the mediation, the Parties reached a class-wide, non-reversionary settlement that, if approved, will provide outstanding monetary relief to the Class,[1] with each Class Member receiving an equal share of the proposed Settlement Fund without having to submit a claim form. (*See* Settlement Agreement, Exhibit 1.) Specifically,

---

[1] The capitalized terms used in this motion are those used in the Class Action Settlement Agreement and Release (the "Settlement," "Settlement Agreement," and/or "Agreement"), attached hereto as Exhibit 1.

the Settlement Agreement establishes a cash Settlement Fund of $12,122,775.00 for the estimated 7,697 members of the Class.[2] After all estimated fees and costs are deducted, each and every Class Member will be sent a Settlement Payment for approximately $970 via a direct check in the mail. If approved, the Settlement will bring certainty, closure, and outstanding relief for individuals as opposed to more lengthy, contentious, and costly litigation regarding Speedway's alleged unlawful collection, use, storage, retention, dissemination, and/or disclosure of workers' biometric data.

When compared against other BIPA cases, this Settlement provides among the best monetary relief ever secured for a class of this size (*i.e.*, those including thousands of class members). *E.g., Starts v. Little Caesar Enterprises Inc.*, 1:19-cv-01575 (N.D. Ill.) ($6,900,000 fund for 8,407 class members); *Davis v. Heartland Employment Services, LLC*, 19-cv-00680 (N.D. Ill.) ($5,418,000 fund for 11,048 class members); *Jones v. CBC Restaurants Corp.,* 19-cv-6736 (N.D. Ill.) ($3,242,400 fund for 4,053 class members). This recovery stands in stark contrast to past BIPA settlements that have settled for very little monetary relief, if any, *e.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cnty. June 25, 2018) ) (providing only credit monitoring), or that have capped monetary relief at a certain amount with the inevitable remaining settlement funds reverting to the defendant. *E.g.*, *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cnty.) ($270 per claimant with credit monitoring, reverting funds to defendant).

Given the exceptional relief proposed by the Settlement, the Court should not hesitate to find that the Settlement is well within the range of possible approval. Accordingly, Plaintiff

---

[2] If it is determined that the class size exceeds 7,697 individuals, the Settlement Fund shall increase on a *pro rata* basis for each additional Class Member. (Settlement, p. 9, ¶ 28.) By way of example, if the class size is later determined to be 8,000 individuals, then the Settlement Fund will be $12,600,000.00. (*Id.*)

respectfully requests that the Court grant his motion for preliminary approval in its entirety, direct that the proposed Notice be disseminated to the Class, and set a Final Approval Hearing.

## II.     <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

### A.     The Illinois Biometric Information Privacy Act.

In the early 2000s, a company called Pay by Touch began installing fingerprint-based checkout terminals at grocery stores and gas stations in major retailers throughout the state of Illinois to facilitate consumer transactions. (Class Action Complaint, ("Compl."), Dkt. 1-1, ¶¶ 16-17.) The principle was simple: swipe your credit card and let the machine scan your finger, and the next time you buy groceries or gas, you will not need to bring your wallet—you will just need to provide your fingerprint. However, by the end of 2007, Pay by Touch filed for bankruptcy. (*Id.* ¶ 17.) Thereafter, Solidus, Pay by Touch's parent company, began shopping its database of Illinois consumers' fingerprints as an asset to its creditors and a public outcry erupted. Though the bankruptcy court eventually ordered Pay by Touch to destroy its database of fingerprints (and their ties to credit card numbers), the Illinois legislature took note of the grave dangers posed by the irresponsible collection and storage of biometric data without any notice, consent, or other protections. *See* Ill. House Transcript, 2008 Reg. Sess. No. 276.

Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information,"—which includes retina scans, fingerprints, voiceprints, and scans of hand or face geometry—in 2008, the Illinois legislature unanimously enacted BIPA to provide individuals recourse when companies fail to appropriately treat their biometric data in accordance with the statute. (*See* Dkt. 1-1, ¶ 18; 740 ILCS § 14/5.) Thus, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information . . . "

740 ILCS § 14/15(b). BIPA also establishes standards for how companies must handle individuals' biometric data, requiring companies to develop and comply with a written policy establishing a retention schedule and guidelines for permanently destroying biometric data. 740 ILCS § 14/15(a). Furthermore, BIPA prohibits companies from disclosing, redisclosing, or otherwise disseminating biometric data except with consent or under limited circumstances. 740 ILCS § 14/15(d). To enforce the statute, BIPA provides a civil private right of action and allows for the recovery of actual or statutory damages in the amount of $1,000 for negligent violations, or actual or $5,000 for reckless or intentional violations. *See* 740 ILCS § 14/20.

## B. Plaintiff's Allegations and Procedural History.

Plaintiff makes the following allegations: Plaintiff worked for Speedway in Addison, Illinois from September 2015 to May 2017. (Dkt. 148 at ¶ 1.) As an employee, Plaintiff was required to scan his fingerprint to enable Speedway to use it as an authentication method and to track his time worked. (*Id.,* ¶ 2.) Speedway subsequently stored Plaintiff's fingerprint data (*i.e.,* Plaintiff's personal, private, and proprietary biometric data) in its employee database(s). (*Id*., ¶¶ 23-29.) However, Speedway failed to inform its workers of the extent of the purposes for which it collected and used their sensitive biometric data or the extent to whom the data is disclosed. (*Id*., ¶¶ 11-22.) Furthermore, even though BIPA requires entities to obtain written consent before collecting biometric data from Illinois citizens, Speedway failed to secure any consent and/or

release from workers before collecting their biometric data until November 2017. (*Id.*) Plaintiff alleges that because Speedway failed to inform its workers of the specific purpose(s) and length of time for which it collected, stored, and used their fingerprints, and failed to provide a publicly available retention schedule and guidelines for permanently destroying workers' biometric data, workers are unaware if Speedway will destroy their fingerprints within three years of their last interaction with the company as required by BIPA. (Dkt. 1-1 at ¶¶ 5, 30-31, 34, 40-41, 46, 73-74.) Thus, Plaintiff alleges Speedway failed to comply with BIPA by failing to: (1) develop and adhere to a publicly available retention schedule or guidelines for permanent destruction of the biometric data by Speedway; (2) inform Plaintiff and other similarly-situated workers in writing of the purposes and length of time for which their fingerprint data is being collected, stored, and used by Speedway; (3) provide Plaintiff and other similarly-situated workers a written release for Speedway to collect, store, and use their fingerprints; and (4) ask for consent before disclosing, redisclosing, or otherwise disseminating their fingerprint data to third parties.

After this case was filed in the Circuit Court of Cook County, it was removed to the Northern District of Illinois under the Class Action Fairness Act ("CAFA"). (Dkt. 1.) On May 29, 2019, Speedway filed its first amended answer to the Class Action Complaint, denying all material allegations and asserting 17 affirmative defenses. (Dkt. 21.) After the pleadings were closed, the Parties engaged in significant fact and expert discovery. Thereafter, Speedway filed two motions for summary judgment, the first on August 18, 2020 (Dkts, 59-61, 67-69, 76-77), and the second motion on October 25, 2021 (Dkts. 111-114, 118, 125, 140-142, 146-148, 149-150), both of which Plaintiff opposed and the Parties fully briefed. On October 25, 2021, Speedway also filed a motion to exclude testimony of Christopher Daft, which Plaintiff opposed and was also fully briefed. (Dkts. 115-117, 119, 139, 145, 151-153.) Finally, on October 25, 2021, Plaintiff moved to certify

the class under Rule 23(b)(3) and filed a renewed motion for class certification on October 29, 2021, which Speedway contested and the Parties fully briefed. (Dkts. 121-122, 126, 144, 155, 174.)

On September 29, 2024, the Court issued a Memorandum Opinion and Order denying Speedway's two motions for summary judgment, granting in part and denying in part Speedway's motion to exclude the opinions of Christopher Daft, and granting Plaintiff's motion for class certification. (Dkt. 188.) In the Court's summary judgment ruling, it found that "[b]ased on the factual record as it stands, no reasonable juror could find that the timeclocks' finger scan is not a fingerprint under the statute." (Dkt. 188 at 22.) Following the Court's Order, the Parties engaged in settlement negotiations and ultimately agreed to participate in private mediation with the Honorable Judge Morton Denlow (ret.) of JAMS, which was held on March 20, 2025. As a result of the mediation, the Parties agreed to and executed a Class Action Settlement Term Sheet, which set forth the principal terms of a class-wide settlement, that ultimately led to a fully-executed Settlement Agreement on May 28, 2025, attached hereto as Exhibit 1.

## III.   TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Settlement Agreement, and are briefly summarized here:

### A.   Class Definition.

The Settlement covers the same Class certified by the Court, which includes all individuals who used a finger scanner on a timeclock while working for Speedway in the state of Illinois between September 1, 2012, and November 1, 2017. (*See* Settlement Agreement, p. 5, ¶ 4.) Excluded from the Class are: (1) the Court and members of their families, (2) persons who properly execute a timely request for exclusion from the Class, and (3) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released. (*Id.*)

**B.      Settlement Payments.**

The Settlement provides that Speedway will establish a non-reversionary Settlement Fund of at least $12,122,775.00, which will increase by $1,575.00 per class member if it is later determined that there are more than 7,697 Class Members. (*Id*.) By way of example, if the class size is later determined to be 8,000 individuals, then the Settlement Fund will be $12,600,000.00. (*Id*.) After paying all Administrative Expenses, costs, attorneys' fees, and any incentive award from the Settlement Fund, the Settlement Administrator will distribute Settlement Payments *pro rata* directly to every Class Member without the need for a claims process. Each Settlement Payment is estimated to be about $970. The Settlement Fund shall satisfy all monetary obligations of Speedway (and any other Released Party) under the Settlement Agreement, including Settlement Payments, Administrative Expenses, a Fee Award, litigation costs and expenses, any Incentive Award, taxes, and any other payments or other monetary obligations contemplated by the Settlement Agreement. (*Id.*)

If the total remaining in the Settlement Fund as a result of uncashed checks at the end of the 120-day check cashing period exceeds $350,000.00, the Settlement Administrator will initiate a second round of *pro rata* distribution to those Class Members who participated in the settlement by cashing their initial checks. (*Id.,* p. 20, ¶ 5.) If the total amount remaining is less than $350,000.00 after the initial round of distribution, or if there is any amount remaining after a second round of distribution after providing the same 120-day check cashing period, such amounts will be transferred to a mutually agreeable *cy pres* that is approved by the Court. (*Id.*)

**C.      Payment of Settlement Notice and Administrative Costs.**

Settlement notice and all Administrative Expenses, including fees and costs establishing an escrow account for the Settlement Fund, setting up and managing a settlement website,

providing Notice to the Class, handling the required CAFA notices, verifying addresses, skip tracing as necessary, communicating with Class Members, disbursing payments to Class Members who do not exclude themselves from the Settlement, related tax reporting and expenses, fees of the escrow agent, and other such related expenses, will be paid from the Settlement Fund. (*Id.*, p. 12, ¶ 2.)

**D.    Payment of Attorneys' Fees, Costs, and Incentive Award.**

No later than thirty-one days after Notice is disseminated and two weeks prior to the deadline for objections, Class Counsel shall file a Fee Petition seeking approval of the award of attorneys' fees and litigation costs relating to their representation of the Class, and an Incentive Award for the Class Representative. (*Id.,* p. 16, ¶ 1.) Class Counsel's Fee Petition will seek: (1) an award of attorneys' fees not to exceed 37.5% of the Settlement Fund, after the cost of Notice, Administrative Expenses, and the Incentive Award are deducted, plus reasonable litigation costs incurred in their representation of Plaintiff and the Class Members, (2) Administrative Expenses to the Settlement Administrator (estimated to be $45,000.00 if there is a second round of check distribution), and (3) an Incentive Award to the Plaintiff, not to exceed $10,000.00, as payment for his efforts on behalf of the Class, including assisting Class Counsel with the prosecution of the Action. The amounts approved by the Court will be deducted from the gross Settlement Fund, and the remaining amount shall be distributed to the Class in accordance with the Settlement Agreement. (*Id.,* p. 16, ¶ 2.)

**E.    Release of Liability.**

In exchange for the relief described above, Speedway and its affiliated companies will be released from any and all losses, liabilities, rights, remedies, claims, suits, actions controversies, demands, causes of action, damages, costs, or attorneys' fees, whether actual, potential, filed,

unfiled, known, or unknown, legal or equitable, arising out of the allegations set forth in the pleadings in the Action, including claims for negligence and those arising under BIPA and any similar law that were brought or could have been brought in the Action or that were brought or could have been brought in the Action relating to the Biometric Timekeeping System used at or by any Released Party. (*Id.,* p. 8, ¶ 24.)

## IV. <u>THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL</u>

Rule 23(e) requires judicial approval of all proposed class action settlements. The procedure for review of a proposed class action settlement is a familiar two-step process— preliminary and final approval—which was codified under Rule 23(e) in 2018. Fed. R. Civ. P. 23(e)(1)-(2) (eff. Dec. 1, 2018); *see* 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:1 (6th ed.). The first step—preliminary approval—is a pre-notification inquiry to determine whether the court "will likely be able to approve the proposal under Rule 23(e)(2)," finding that it is sufficiently fair, reasonable, and adequate. Fed. R. Civ. P. 23(e) 1)(B). In other words, at this stage, the Court needs to determine whether the proposed settlement is "within the range of possible approval" such that there is "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 & n.3 (7th Cir. 1982). Once preliminary approval is granted, class members are notified of the settlement, and the court and parties proceed to the second step: the final fairness determination. *Id.* at 621.

In deciding whether to approve a proposed settlement, Rule 23(e)(2) directs courts to consider whether: (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's-length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); ) *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379,

at *4 (N.D. Ill. May 14, 2019).[3]

The proposed settlement here will provide outstanding monetary relief to Class Members and should be preliminarily approved.

### A. Plaintiff and Class Counsel Have Adequately Represented the Class.

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The focus of this analysis is "on the actual performance of counsel acting on behalf of the class" throughout the litigation and in settlement negotiations. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment; *see In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.,* 332 F.R.D. 202, 215 (N.D. Ill. 2019). In considering this factor, courts are to examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account (i) the nature and amount of discovery completed, whether formally or informally, and (ii) the "actual outcomes" of other, similar cases. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment. Ultimately, this factor is generally satisfied where the named plaintiff participated in the case diligently, and where class counsel fought hard on behalf of plaintiff and the class throughout the litigation. *See Snyder*, 2019 WL 2103379, at *4.

---

[3] Notably, the factors to be considered under the amended Rule 23 "overlap with the factors previously articulated by the Seventh Circuit, which include: (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *2 (S.D. Ill. Dec. 16), 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006)); *see also* Fed. R. Civ. P. 23, Advisory Committee's Note to 2018 Amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). For this reason, decisions prior to the amendment can still provide guidance to the Court.

Plaintiff has been involved in nearly every aspect of this case, including by helping his attorneys investigate his BIPA claims, conferring with counsel throughout the litigation, responding to written discovery, sitting for a deposition, actively participating in the mediation, and reviewing and approving the Settlement Agreement before signing it. Without Plaintiff stepping up to represent the class and taking on these tasks, the relief secured for the Class wouldn't have been possible. Given his efforts and aligned interest with the Class, there can be no doubt that Plaintiff has only acted in the best interest of the Class and has adequately represented them.

As far as Class Counsel is concerned, the Court has already determined that Stephan Zouras, LLC and Edelson PC are well-qualified to lead this Action as Class Counsel. (Dkt. 188 at 42) ("Howe's attorneys are adequate to represent the class. Stephan Zouras, LLP (sic) and Edelson PC have been appointed class counsel in many other employment cases, including cases under BIPA, and have satisfactorily litigated this case on behalf of both Howe and the proposed class, including by successfully defending multiple motions for summary judgment."), Dkt. 126 at 16-17). Nothing has changed since then.

Furthermore, Class Counsel's performance in this case demonstrates that their representation has been beyond adequate, especially when considering (i) the quality of the investigation and discovery conducted and (ii) the benefits of the Settlement compared to similar privacy settlements, including those under BIPA. By the time the Settlement was agreed to in principle, Class Counsel ensured that they had adequate information to assess the strength of the case and negotiate a fair deal. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the court and parties have enough information "to evaluate the merits of this case"). The issues in this litigation have crystallized

11

sufficiently for Plaintiff and Class Counsel to assess the strengths and weaknesses of their negotiating position and evaluate the appropriateness of any proposed resolution. *See Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at *10 (N.D. Ill. Mar. 2, 2016).

If the Settlement is preliminarily approved, the Class will reap its valuable benefits thanks to Plaintiff's and Class Counsel's hard work litigating this case for almost eight years and representing their interests. The adequate representation factor is well satisfied.

**B. The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties.**

The second Rule 23(e)(2) factor looks to whether the parties negotiated the settlement at arm's-length. Fed. R. Civ. P. 23(e)(2)(B). The answer here is easy: yes. Plaintiff actively litigated this case for almost eight years—which included obtaining significant written, oral, and expert discovery, adversarially certifying the Class under Rule 23(b)(3), and defeating Speedway's motions for summary judgment—before the Parties agreed to mediate with Judge Denlow. *See Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (finding no collusion or unfairness where "the parties have vigorously defended their positions throughout the litigation, participated in two prior mediations, and engaged in discovery" prior to reaching settlement). As a result of the Parties' extensive negotiations and with the assistance of Judge Denlow, their efforts culminated in an agreement to resolve this matter in principle on March 20, 2025. The Parties then spent the next couple of months drafting and negotiating the finer deal points of the final Settlement Agreement before fully executing it on May 28, 2025. *See Young v. Rolling in the Dough, Inc*, 2020 WL 969616, at *4 (N.D. Ill. Feb. 27, 2020) (finding the settlement agreement is "clearly" the product of arm's-length negotiations after

it was agreed to after a contested motion, extensive discovery and discovery disputes, and a settlement conference).

The arm's-length nature of these negotiations is further confirmed by the Settlement Agreement itself: it is non-reversionary, provides significant cash payments to Class Members, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4.

For these reasons, there should be no question that the Settlement Agreement was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### C. The Settlement Treats All Class Members Equally.

The next Rule 23(e)(2) factor considers whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, given that each Class Member has nearly identical BIPA claims against Speedway, the proposed Settlement treats each of them identically. Speedway has agreed to create a non-reversionary Settlement Fund from which each Class Member shall be entitled to a payment of an equal *pro rata* share of the Settlement Fund without having to submit a claim form.

Likewise, the provision of an Incentive Award to Plaintiff for serving as Class Representative is consistent with the equitable treatment of class members. The requested $10,000 Incentive Award is not only modest relative to the Settlement Fund that Plaintiff has helped secure for the Class, it also reflects the significant work he has done for the Class, which as described above, included conferring with counsel regularly for (almost) eight years while the litigation has

been pending, responding to written discovery, preparing for and sitting for a four hour deposition, and actively participating in the settlement process, including mediation. Moreover, an award of this size is squarely in line with other incentive awards given to class representatives in BIPA cases. *See Dixon v. Washington & Jane Smith Cmty.-Beverly*, No. 17-cv-8033, Dkt. 103 (N.D. Ill. May 31, 2018) ($10,000 incentive award) (Kennelly, J.). Given that Plaintiff's efforts were key to securing the outstanding relief provided by the Settlement, the proposed Incentive Award is fully consistent with equity. Because the Settlement treats each Class Member equitably, this factor is well satisfied.

### D.     The Relief Secured for the Class Is Adequate and Warrants Approval.

The final and most substantive factor under Rule 23(e)(2) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e) (2)(C). In making this determination, Rule 23 instructs courts to consider several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. *Id.* As explained below, each of these sub-factors preliminarily demonstrate that the relief provided by the Settlement is excellent—well beyond adequate—and should be approved.

### 1.     The Settlement relief to the Class is outstanding

The monetary relief achieved in the Settlement excels in comparison to other statutory privacy settlements, including the vast majority of BIPA settlements with comparable class sizes. The Settlement here provides material benefits to the Class: every Class Member who does not timely exclude himself or herself will be sent a Settlement Payment of approximately $970, after all fees and costs are deducted. This amount far exceeds the amounts recovered in many other statutory privacy class actions, particularly against a backdrop where settlements have commonly

secured no relief to the class or only *cy pres* relief. *See*, *e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement—amounting to pennies per class member—where $10,000 in statutory damages were available per claim); *In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (resolving tens of millions of claims, again under the ECPA, for $8.5 million *cy pres*-only settlement). Some BIPA settlements, too, have depressed the amount defendants have to pay with credit monitoring and caps on the amount claiming class members can recover. *E.g.*, *Carroll*, 2017-CH-01624 (credit monitoring only); *Marshall*, 2017-CH-14262 (paying a cap of $270 to individuals who filed claims and reverting the remainder to defendant).

Even compared to the leading BIPA settlements, this Settlement stands out as it provides among the highest per person payments in a BIPA case with at least one thousand class members to date. *See e.g.*, *Starts v. Little Caesar Enterprises Inc.*, 1:19-cv-01575 (N.D. Ill.) ($6,900,000 fund for 8,407 class members); *Davis v. Heartland Employment Services, LLC*, 19-cv-00680 (N.D. Ill.) ($5,418,000 fund for 11,048 class members); *Jones v. CBC Restaurants Corp.*, 19-cv-6736 (N.D. Ill.) ($3,242,400 fund for 4,053 class members).[4] Thus, the relief secured by this Settlement—$12,122,775 for the 7,697 Class Members—is extraordinary.

---

[4] To Class Counsel's knowledge, the only similarly-sized BIPA settlement that slightly surpasses the per-person relief here is *Rogers v. BNSF*, which was the first (and only) BIPA case to go to trial. That case eventually settled for $75,000,000 for 45,600 class members, only after a jury found that every one of the 45,600 violations of BIPA was reckless, the Court entered a $5,000 per person verdict (or $232,500,000), and the verdict was vacated for the jury to decide the amount of damages. *See Rogers v. BNSF Ry. Co.*, 680 F. Supp. 3d 1027, 1032 (N.D. Ill. 2023) (explaining that the jury returned a verdict finding that BNSF recklessly committed 45,600 BIPA violations and the court entered a judgment of $228 million (45,600 multiplied by $5,000)); *id.* at 1042 (vacating verdict for jury to decide appropriate damages); *Rogers v. BNSF Ry. Co.* Final Order and J., June 18, 2024 (granting final approval of class settlement). Given all that, settling this case slightly under the *Rogers* per capita number is remarkable.

### 2. The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval.

In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursuing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment.

The Settlement here warrants preliminary approval because it provides immediate relief to the Class while avoiding potentially years of more complex litigation and appeals and the risk that comes along with it. *See Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). Speedway asserted 17 affirmative defenses, some of which could have precluded a finding of liability outright. (Dkt. 21.) For example, Speedway asserts several defenses suggesting that even though it may not have obtained the consent Plaintiff contends is required by the plain language of the statute, some other form of express and/or implied consent still precludes its liability because the Class Members voluntarily, knowingly, and repeatedly used the Biometric Timekeeping System. Plaintiff puts little stock in this argument, but it could come down to a battle for the jury to decide at a trial. Moreover, the Illinois Supreme Court has emphasized that obtaining any relief under BIPA, including statutory damages, is discretionary, not mandatory. *Cothron v. White Castle System, Inc.*, 2023 IL 128004, ¶ 42 ("[T]here is no language in the Act suggesting legislative intent to authorize a damages award that would result in the financial destruction of a business."); *see* 740 ILCS § 14/20 (private right of action stating that "[a] prevailing party may recover" each type of relief) (emphasis added). That means Plaintiff still faced the risk that even if he established liability and defeated any appeals, the court or a jury could adjust a damages award. *See Rogers*, No. 19 C 3083, 2023 WL 4297654, at *10 (N.D. Ill. June 30, 2023) (vacating pre-*Cothron* damages award of $5,000 per class member

16

and ordering new trial for jury to determine the amount of damages). At bottom, the determination of complex factual and/or legal issues by the Court or jury is an inherently uncertain proposition, particularly compared with the certain relief offered by this Settlement.

Protracted litigation would also consume significant resources, including the time and cost associated with trial and any appeals. It is possible that "this drawn-out, complex, and costly litigation process . . . would provide Class Members with either no in-court recovery or some recovery many years from now[.]" *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). Because the proposed Settlement offers immediate—and substantial—monetary relief to the Class while avoiding the need for further extensive and drawn-out litigation, preliminary approval is appropriate. *See, e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 3. The method of distributing relief to the Class Members is effective and supports preliminary approval.

The next sub-factor evaluates whether the settlement's proposed method of distributing relief to the class is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while also ensuring that only "legitimate claims" are paid. 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.). The proposed Settlement here readily satisfies this factor by sending checks directly and automatically to *each and every* Class Member, without a claims process. As further described below, Speedway has an address for every Class Member, and the Settlement Administrator will run those addresses against several databases to ensure the most up-to-date addresses as possible before sending notice and mailing Settlement Payments. The Settlement website will also include a feature that allows Class Members to update their address,

or Class Members can call or email the Settlement Administrator to update it. This distribution method is effective and supports approval.

### 4. The terms of the requested attorneys' fees are reasonable.

The third and final relevant sub-factor[5] considers the adequacy of the relief provided to the class taking into account "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved, proposed Class Counsel plan to petition the Court for an award of reasonable attorneys' fees no later than 31 days after Notice is disseminated to the Class (*i.e.,* 14 days prior to the Objection and Exclusion Deadlines). The Settlement's contemplated method of calculating attorneys' fees (*i.e.,* the percentage-of-the-fund method), and its limit on attorneys' fees (*i.e.,* no more than 37.5% of the non-reversionary Settlement Fund after the cost of Notice, Administrative Expenses, and the Incentive Award are deducted)) is reasonable and predicated on both Class Counsel's work and victories in this case, as well as the outstanding relief provided to the Class. (Settlement Agreement, p. 16, ¶¶ 1-2.) In fact, the percentage-of-the-fund method has been used to determine a reasonable fee award in every BIPA class action settlement creating a common fund to date, and a 37.5% award will adequately capture the hypothetical *ex ante* agreement that the Class would have entered into with Class Counsel had they sought them out in the market, given the risks in the case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011); *see also Gaskill v. Gordon,* 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *Cothron v. White Castle System, Inc. d/b/a White Castle,* 1:19-cv-00382 (N.D. Ill. Aug. 2, 2024)

---

[5] The fourth sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, Fed. R. Civ. P. 23(e)(2)(C)(iv), is not applicable here as the written Settlement Agreement provided to the Court represents the entirety of the Parties' proposed Settlement. Since there are no side agreements to be identified, this sub-factor weighs in favor of preliminary approval.

(awarding 37.5% of a BIPA class action settlement fund); *see also* 5 NEWBERG ON CLASS ACTIONS § 15:83 (5th ed.) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund"). Accordingly, that the Settlement permits the Court to award 37.5% of the fund in attorneys' fees is appropriate. Finally, if approved, the Settlement provides that attorneys' fees will be paid within 14 calendar days after the Effective Date. (Settlement Agreement, pp. 18-19, ¶ 1(c).) These terms are reasonable and should be preliminarily approved.

For these reasons, Plaintiff and Class Counsel submit that the monetary relief provided by the Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of possible approval. The Court should grant preliminary approval.

## V.   **THE PROPOSED NOTICE PLAN SHOULD BE PRELIMINARILY APPROVED IN FORM AND SUBSTANCE**

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a [proposed settlement, voluntary dismissal, or compromise.]" Fed. R. Civ. P. 23(e)(1). Notice may be provided to the class via "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) (eff. Dec. 1, 2018). The substance of the notice to the Class must describe in plain language the nature of the action, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the Settlement, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23(c).

Here, the Settlement contemplates a comprehensive Notice plan. The Settlement Administrator will send the Notice to the Class Members via email (if available) and First-Class U.S. Mail to their mailing addresses as updated using the U.S.P.S. database of verifiable mailing addresses and the National Change-of-Address database. (Settlement Agreement, p. 13, ¶ 6.) If any such mailing is returned as undeliverable with an indication of a more current address, the

19

Settlement Administrator will mail the Notice to the new address. (*Id*.) If any such mailing is returned as undeliverable without an indication of a more current address, the Settlement Administrator will perform a reverse look up or skip trace using social security numbers to find an updated address, and if one is so identified, will mail the Notice to the new address. (*Id*.) For any Notice sent to members of the Class that are returned as undeliverable, the Class Member will have the longer of the remaining period or 14 calendar days from the date of any re-mailing to seek exclusion or object. (*Id*.)

The Notice is also written in plain, easily-understood language. The Notice will inform Class Members, prior to the Final Approval Hearing, that there is a pending Settlement, and to further inform Class Members how they may: (1) participate in the Settlement, (2) request exclusion from the proposed Settlement, if desired, (3) object to any aspect of the proposed Settlement, if desired, while remaining a Class Member, and (4) participate in the Final Approval Hearing, if desired and if they don't request exclusion. (*See Id.,* Exhibit 1-A.) The Notice makes clear the binding effect of the Settlement on all persons who do not timely request exclusion. (*Id.*) Finally, the Settlement Administrator will create, launch, and maintain a settlement website, which will provide access to relevant settlement administration documents, including the Notice and relevant court filings, and the ability for Class Members to log in to update their addresses for payment. (*Id*.)

Because the proposed Notice plan effectuates Notice in the best practicable manner under the circumstances and fully apprises Class Members of their rights, it comports with both Rule 23 and Due Process. Consequently, the Court should preliminarily approve the Parties' proposed Notice plan.

## VI.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (1) granting preliminary approval of the Parties' proposed Class Action Settlement Agreement and Release, (2) naming Plaintiff as the Class Representative, (3) preliminarily approving the form and content of the Notice to the members of the Class, (4) appointing Simpluris, Inc. as the Settlement Administrator, (5) ordering the issuance of Notice, (6) enter the proposed Preliminary Approval Order[6], (7) scheduling a final fairness hearing in this matter, and (8) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**Christopher Howe**, individually, and on behalf of the certified Class

Dated: June 18, 2025

By: */s/ Andrew C. Ficzko*
One of Plaintiffs' attorneys

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**Stephan Zouras, LLC**
222 W. Adams Street
Suite 2020
Chicago, Illinois 60606
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

J. Eli Wade-Scott
Schuyler Ufkes
**Edelson PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
ewadescott@edelson.com
sufkes@edelson.com

---

[6] Plaintiff will submit a proposed Preliminary Approval Order in advance of the preliminary approval hearing for the Court's convenience and to propose future case deadlines.

**ATTORNEYS FOR PLAINTIFF**
**AND THE CERTIFIED CLASS**


## <u>CERTIFICATE OF SERVICE</u>

I, the attorney, hereby certify that on June 18, 2025, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

_/s/ Andrew C. Ficzko_