**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER HOWE, individually and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| | ) | **Case No. 1:19-cv-01374** |
| **v.** | ) ) | |
| **SPEEDWAY, LLC,** | ) ) | |
| **Defendant.** | ) ) | |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM OF LAW FOR ATTORNEYS'**
**FEES, COSTS, AND INCENTIVE AWARD TO THE CLASS REPRESENTATIVE**

i

I.    **INTRODUCTION**

Over eight years ago, Plaintiff Christopher Howe ("Plaintiff") filed this class action lawsuit against Defendant Speedway, LLC ("Defendant" or "Speedway") alleging Speedway collected his and thousands of other Illinois workers' biometric identifiers and biometric information (collectively, "biometric data") in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq.* Plaintiff and Class Counsel have spent considerable time, effort, and money advancing BIPA claims on behalf of the Class, including defeating two motions for summary judgment, successfully certifying the Class, opposing and largely prevailing on Defendant's motion to exclude the expert opinions of Christopher Daft, participating in the Mandatory Discovery Pilot Program ("MDPP"), engaging in significant written discovery, taking seven depositions, conducting expert discovery, briefing multiple discovery motions, and participating in mediation with the Honorable Judge Morton Denlow (ret.) of JAMS. As a result of these efforts, Class Counsel secured a remarkable Settlement which creates a non-reversionary $12,122,775.00 Settlement Fund for the benefit of 7,697 Class Members with each Class Member entitled to an equal share of the Settlement Fund without having to submit a claim form to receive their Settlement Payment. After any approved fees and expenses are deducted, every Class Member will be sent a net Settlement Payment of approximately $970 via a check in the mail.

In light of this excellent result, Class Counsel respectfully move for an award of attorneys' fees in the amount of $4,525,045.56, or 37.5% of the Settlement Fund (less Administrative Expenses and Incentive Award), and reimbursement of litigation expenses in the amount of $67,876.64. The requested Fee Award accurately reflects the fee arrangement a class member would have entered into with Class Counsel had they made an *ex ante* bargain before heading into litigation, given the risks in the case. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir.

1

2001). Thus, the requested percentage Fee Award is in line with common fund fee awards in BIPA cases in this District and is in fact less as a percentage than that commonly awarded in BIPA cases.

Additionally, Plaintiff Christopher Howe ("Class Representative," "Plaintiff," and/or "Howe") moves the Court for an Incentive Award of $10,000.00 in recognition of the significant time he expended on behalf of the Class to obtain the Settlement Fund. Finally, Plaintiff requests that the Court approve Administrative Expenses incurred by the Settlement Administrator, Simpluris, Inc., not to exceed $45,986.84.

## II.    BACKGROUND

Class Counsel have vigorously litigated this case for over eight years. Plaintiff filed his Class Action Complaint ("Complaint") in the Circuit Court of Cook County on September 1, 2017, seeking redress for himself and all other Speedway workers who used a Biometric Timekeeping System while employed at Speedway in Illinois. Plaintiff alleges Defendant violated BIPA by collecting, otherwise obtaining, storing, using, and disseminating workers' biometric data while not complying with BIPA's notice and consent requirements. Specifically, the Complaint alleges Speedway violated Sections 15(a), (b), and (d) of BIPA – its publicly-available policy, informed consent, and unauthorized disclosure requirements. *See* 740 ILCS § 14/15(a), (b), and (d).

After the case was filed in the Circuit Court of Cook County, it was timely removed to the Northern District of Illinois under the Class Action Fairness Act ("CAFA"). (Dkt. 1.) On May 29, 2019, Speedway filed its First Amended Answer to the Complaint, denying all material allegations and asserting 17 Affirmative Defenses. (Dkt. 21.) On November 21, 2019, then-Defendant Marathon Petroleum Company filed a motion for summary judgment. (Dkt. 26.) Since the Parties were unable to reach an agreed plan for limited discovery related to the motion for summary judgment, Plaintiff was required to file a Rule 56(d) motion for discovery, which was ultimately

granted, permitting Plaintiff to proceed with the requested Rule 30(b)(6) deposition of the corporate representative for then-Defendant Marathon Petroleum Company.[1] (Dkts. 34, 37.) After the pleadings were closed, the Parties engaged in multiple years of discovery, requiring Class Counsel to participate in the MDPP, propound and respond to written fact discovery, review thousands of documents produced by Speedway, subpoena third-party timekeeping and payroll provider Kronos, Inc., and brief (and defeat) a motion to quash, as well as take expert discovery, which included taking and defending full-day expert depositions.

On August 18, 2020, Speedway filed its first motion for summary judgment, which the Parties fully briefed. (Dkts. 59-61, 67-69, 76-77.) On October 25, 2021, Speedway filed a second motion for summary judgment and the Parties fully briefed it too. (Dkts. 111-114, 118, 125, 140-142, 146-148, 149-150.) On October 25, 2021, Speedway also moved to exclude the testimony of Christopher Daft, which Plaintiff opposed, and the Parties briefed. (Dkts. 115-117, 119, 139, 145, 151-153.) On October 29, 2021, Plaintiff filed a renewed motion for class certification, which Speedway contested, and the Parties briefed. (Dkts. 121-122, 126, 144, 155, 174.)

On September 29, 2024, the Court issued a Memorandum Opinion and Order denying Speedway's two motions for summary judgment, granting in part and denying in part Speedway's motion to exclude the expert opinions of Christopher Daft, and granting Plaintiff's motion for class certification. (Dkt. 188.) Following the Court's Order, the Parties engaged in settlement negotiations and agreed to participate in private mediation with the Honorable Judge Morton Denlow (ret.) of JAMS, which was held on March 20, 2025. As a result of the mediation, the Parties agreed to a Class Action Settlement Term Sheet, which set forth the principal terms of a

---

[1] Upon completion of the deposition, the Parties agreed to stipulate to the voluntary dismissal of Marathon Petroleum Company. (Dkt. 44.)

class-wide settlement. After negotiating terms of the settlement, the Parties executed the Agreement now before the Court on May 28, 2025, attached hereto as Exhibit 1. On June 18, 2025, Plaintiff filed his Preliminary Approval Motion (Dkt. 205), which the Court granted. (Dkt. 211.)

Per the Court's Preliminary Approval Order, Class Counsel worked with the Settlement Administrator, Simpluris, Inc., to send notice to the Class, which was disseminated on July 31, 2025. The notice documents inform the Class Members that Class Counsel is seeking up to 37.5% of the Settlement Fund in attorneys' fees, reimbursement of their expenses, and a $10,000 Incentive Award for Plaintiff. (Exhibit 2, Class Notice.) Class Counsel will upload this motion to the Settlement Website, www.SpeedwayBIPASettlement.com, promptly after it is filed.

## III. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED

Rule 23 authorizes courts to "award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In common fund settlements like this one, the attorneys' fee award is typically made as a share of the fund. The Seventh Circuit has consistently directed that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services," *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013), taking into account "the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007); *see also In re Synthroid*, 264 F.3d at 719 (cautioning that "any method other than looking to prevailing market rates assures random and potentially perverse results").

Ultimately, district courts "must set a fee by approximating the terms that [the class and class counsel] would have been agreed to *ex ante*, had negotiations occurred." *Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 246–47 (7th Cir. 2014). Because "[s]uch estimation is inherently conjectural," *In re Trans Union Corp. Privacy Litig.*, 629

4

F.3d 741, 744 (7th Cir. 2011), and the Seventh Circuit doesn't prescribe a preferred method, "in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court." *Americana Art*, 743 F.3d at 247 (citation omitted).

Finally, notice and administration costs or incentive awards are not included as part of the fund in making percentage-of-the-fund fee awards. *See Redman*, 768 F.3d at 630. Here, the $4,525,045.56 fee request represents 37.5% of the "Net Settlement Fund," that is, after deducting from the Settlement Fund (1) the $45,986.84 in expected total Administrative Expenses, and (2) the $10,000 proposed Incentive Award to Plaintiff. (Exhibit 3, Ficzko Decl. ¶ 22.)

Class Counsel took this case on a contingent basis despite the high risks of no recovery at the outset. (Exhibit 3, Ficzko Decl. ¶¶ 15-16.) Now that Class Counsel have achieved the results that they did for the Class, they respectfully request the Court to award Class Counsel 37.5% of the Net Settlement Fund, or $4,525,045.56, in attorneys' fees. As explained below, this request is well in line with what other Illinois courts, including in this District, have found a hypothetical *ex ante* bargain to be in BIPA cases. Accordingly, the requested fees should be approved.

### A. Percentage-of-the-Fund Should be Used to Determine Fees Here.

In the Seventh Circuit, district courts deciding common fund cases may choose one of two methods for awarding attorneys' fees: (1) percentage-of-the-fund or (2) lodestar approach. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500 (N.D. Ill. 2015). Under the percentage-of-the-fund approach, "plaintiffs' attorneys . . . petition the court to recover its fees" as a percentage of the available fund. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994). The reasoning for the percentage of the fund method is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988) (internal quotation marks

omitted)); *see also Boeing*, 444 U.S. at 478 (prevents inequity "by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit"). In contrast, the lodestar approach requires courts to determine the reasonable value of the services rendered and increase that amount by a multiplier that factors in various considerations. Under the lodestar approach, the court first determines a "reasonable hourly rate allowable for each attorney . . . involved in the case." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). Then, the court multiplies "the hours reasonably expended by the reasonable hourly rates" to produce the lodestar. *Id.* Finally, the court adjusts the lodestar by a multiplier that accounts for other considerations, such as the risk in bringing the case or the complexity of the issues. *See id.*

While the court has discretion over whether to use the percentage-of-the-fund or lodestar approach, courts typically select a method by looking "to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred." *Kolinek*, 311 F.R.D. at 501. The overwhelming practice in BIPA class actions is to agree to "a fee arrangement based on a percentage of the plaintiffs' ultimate recovery." *Id.*; *see Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the prevailing method of compensating lawyers for similar services is the contingent fee, then the contingent fee *is* the market rate.") (internal quotes omitted). Because the percentage-of-the-fund approach best mirrors typical contingency agreements, it makes sense that "the vast majority of courts in the Seventh Circuit" use it in common fund cases. *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *7 (S.D. Ill. Dec. 16, 2018) (quotation omitted); *see also* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811, 814 (2010) ("Most federal judges chose to award fees by using the highly discretionary percentage-of-the-settlement method.").

A percentage-of-the-fund, contingent approach is what the Class would have negotiated with Class Counsel at the outset in a hypothetical *ex ante* bargain; in fact, it has been used to determine a reasonable fee award in virtually every BIPA class action settlement in both federal and state courts. *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp.3d 904 (N.D. Ill. 2022); *Cothron v. White Castle System, Inc.,* 1:19-cv-00383 (N.D. Ill. Aug. 5, 2024); *Sosa v. Onfido,* 20-cv-04247 (N.D. Ill.). In contrast, the lodestar approach has never been used to evaluate fees in any BIPA case where the class received a monetary benefit.[2] That makes sense because the lodestar method would have "required a level of monitoring the class members were not interested in or capable of providing," and the percentage approach best "align[s] the incentives of the class[es] and [their] counsel." *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015). While courts in the Seventh Circuit are not required to "crosscheck" the percentage fee award by examining counsel's lodestar, Class Counsel provides their lodestar below to further demonstrate the reasonableness of the requested fee. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011). The percentage-of-the-recovery is the most appropriate method.

## B. A 37.5% Fee Award Is Appropriate Here.

The Seventh Circuit has instructed district courts to award reasonable attorneys' fees, and that "the measure of what is reasonable is what an attorney would receive from a paying client in a similar case." *Montgomery v. Aetna Plywood*, 231 F.3d 399, 408 (7th Cir. 2000); *see also* 5 William Rubenstein, NEWBERG ON CLASS ACTIONS § 15:83 (6th ed.) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund"). Courts consider the benefit achieved for the class, the fee awards made in similar cases, the risks that the particular case presented, the quality of the legal work provided, the anticipated work necessary to resolve

---

[2] The one time the lodestar method was used was in *Carroll v. Crème de la Crème*, 2017-CH-01624 (Cir. Ct. Cook Cnty.), which produced no monetary recovery for the class and instead provided credit monitoring.

the litigation, and the stakes of the case. *See Redman*, 768 F.3d at 633; *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) ("[A]ttorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees awarded by the district court.").

Considering these factors, the Court can find that a hypothetical *ex ante* negotiation would have resulted in at least the 37.5% of the net fund Class Counsel now seek. Indeed, in similar BIPA cases, courts in this District have awarded the same percentage, *see Cothron v. White Castle System, Inc.,* 1:19-cv-00383 (N.D. Ill. Aug. 5, 2024) (approving 37.5% of the BIPA fund); *Kardos v. Abt Electronics, Inc.,* 2019-CH-01235 (Cook Cty. July 30, 2024) (approving 37.5% of a BIPA fund); *Fields v. Abra Auto Body & Glass LP,* 2017-CH-12271 (Cook Cty. June 27, 2024) (same), and other Illinois courts have awarded up to 40% of the fund in state court where this case originated before it was removed, *see Kusinski v. ADP LLC,* 2017-CH-12364 (approving 40% of a BIPA fund); *Zhirovetskiy v. Zayo Group, LLC,* 2017-CH-09323 (same); *Tims v. Black Horse Carriers, Inc.,* 2019-CH-03522 (Cook Cty. October 4, 2023) (same); *Prelipceanu v. Jumio Corp.,* 2018-CH-15883 (Cook Cty. July 21, 2020) (same); *Zhirovetskiy v. Zayo,* 2017-CH-09323 (Cook Cty. April 8, 2019) (same); *McGee v. LSC Commc'ns, Inc.*, 2017-CH-12818 (Cir. Ct. Cook Cty. Nov. 11, 2019) (same); *Sekura v. L.A. Tan Enters., Inc*., 2015-CH-16694 (Cir. Ct. Cook Cty. Dec. 1, 2016) (same). Accordingly, the requested award is more than appropriate and is what the class would have agreed to in an *ex ante* negotiation.

The appropriateness of a 37.5% fee award here is further justified by (1) the near record-setting relief Class Counsel ultimately obtained for the Class, and (2) the substantial risk that Class Counsel took on in accepting the case.

1.     **The results and benefits conferred upon the class justify the fee award.**

It is appropriate, too, for the Court to consider the actual result achieved—both as a function of the quality of Class Counsel's work, and because litigants often consider the ultimate degree of success in determining a fee schedule. *See Americana Art*, 743 F.3d at 247; *Redman*, 768 F.3d at 633 ("[I]n determining the reasonableness of the attorneys' fee…the central consideration is what class counsel achieved for the members of the class"). Here, the relief secured for the Class can't be understated—the non-reversionary $12,122,775 fund for 7,697 Class Members is among the highest per-person relief secured in a BIPA case of this size (*i.e.,* thousands of class members).[3] *E.g., Starts v. Little Caesar Enterprises Inc.*, 1:19-cv-01575 (N.D. Ill.) ($6,900,000 fund for 8,407 class members or $547 net per class member); *Davis v. Heartland Employment Services, LLC*, 19-cv-00680 (N.D. Ill.) ($5,418,000 fund for 11,048 class members or $312 net per class member); *Jones v. CBC Restaurants Corp.,* 19-cv-6736 (N.D. Ill.) ($3,242,400 fund for 4,053 class members or $532 net per class member). If the Fee Award, Administrative Expenses, and Incentive Award are approved, Class Members will receive approximately $970 (and potentially a second check if Members don't cash their initial checks).

---

[3] To Class Counsel's knowledge, the only similarly-sized BIPA settlement that slightly surpasses the per-person relief here is *Rogers v. BNSF*, which was the first (and only) BIPA case to go to trial. That case eventually settled for $75,000,000 for 45,600 class members, only after a jury found that every one of the 45,600 violations of BIPA was reckless, the Court entered a $5,000 per person verdict (or $232,500,000), and the verdict was vacated for the jury to decide the amount of damages. *See Rogers v. BNSF Ry. Co.,* 680 F. Supp. 3d 1027, 1032 (N.D. Ill. 2023) (explaining that the jury returned a verdict finding that BNSF recklessly committed 45,600 BIPA violations and the court entered a judgment of $228 million (45,600 multiplied by $5,000)); *id.* at 1042 (vacating verdict for jury to decide appropriate damages); *Rogers v. BNSF Ry. Co.* Final Order and J., June 18, 2024 (granting final approval of class settlement). Given all that, settling this case slightly under the *Rogers* per capita number is remarkable.

2. **Class Counsel litigated this case despite significant obstacles and the substantial risk of no recovery.**

In a hypothetical *ex ante* negotiation, it would be apparent to the client that a 37.5% contingent fee would be appropriate considering the significant risk Class Counsel took in litigating this case in 2017, at a time when BIPA cases were in their infancy. *See Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1106 (N.D. Ill. 2015) ("The BIPA was enacted in 2008, and to this date, the Court is unaware of any judicial interpretation of the statute."). Compared to typical contingent-fee litigation, the risks here were particularly acute at the outset because the Parties were likely to litigate issues that are either still being resolved by the courts or were matters of first impression, as demonstrated by the number of issues Class Counsel have already litigated in this case, like whether a finger scan "template" derived from a partial finger scan is "biometric information" under BIPA. *See Silverman*, 739 F.3d at 958 ("Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."). Class Counsel were aware of these risks but confident in their ability to achieve a superior result—which they ultimately did.

At the outset of this case, the biggest obstacle to recovery was whether Plaintiff's lack of consequential damages meant he wasn't a "person aggrieved" entitled to recover under BIPA. At the time, the prevailing law in Illinois suggested Plaintiff would lose on this issue. *Rosenbach v. Six Flags Ent. Corp.*, 2017 IL App (2d) 170317 (holding that to be "aggrieved" within the meaning of the statute required an actual injury or harm). Nevertheless, Class Counsel forged ahead, taking this same issue to the First District Appellate Court in a separate case, *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, where Class Counsel created a split among the districts, obtaining the first appellate authority holding that a violation of BIPA alone made a person "aggrieved" within the meaning of the statute. The Illinois Supreme Court later followed

10

suit, resolving the issue in line with the First District. *See Rosenbach*, 2019 IL 123186, ¶ 40. Had this issue gone in Speedway's favor, Plaintiff's case likely would have been defeated entirely.

As another example, when this case was filed, it was still unclear whether a one-, two- or five-year statute of limitations applied to BIPA claims. Class Counsel nonetheless expended significant resources knowing that if a one-year limitations period applied, many Class Members' claims would be time-barred, which would reduce the size of the Class and, in turn, the potential fees to Class Counsel. Again, it was Class Counsel who took a different BIPA case up to the Illinois Supreme Court, successfully arguing that a five-year statute of limitations applies to all BIPA claims, and reversed the First District's decision that a one-year period applied to claims under sections 15(c) and (d) of BIPA. *Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801. Similarly, until the Illinois Supreme Court's 2023 decision in *Cothron v. White Castle System, Inc*., 2023 IL 128004—another case Class Counsel litigated and won—it was unclear whether BIPA claims accrue for limitations purposes based on the first or last time a defendant collects biometric data. Similar to *Tims*, had the Court in *Cothron* held that a claim accrues only upon the first collection, many class members' claims could have been extinguished, decreasing the value of this case.

Class Counsel also took on this case knowing that obtaining *any* relief under BIPA, including statutory damages, is discretionary, not mandatory—a point that the Illinois Supreme Court recently emphasized in *Cothron*, 2023 IL 128004, ¶ 42. *See* 740 ILCS 14/20 (private right of action stating "[a] prevailing party *may* recover" each type of relief) (emphasis added). That means Class Counsel took on this case aware of the risk that, even if they certified a class (check), defeated Speedway's motion for summary judgment (check), won at trial, and defeated any appeals along the way, a court could adjust a damages award and any resulting fee. *See Rogers v. BNSF*

*Ry. Co.*, No. 19 C 3083, 2023 WL 4297654, at \*10 (N.D. Ill. June 30, 2023) (vacating pre-*Cothron* damages award of $5,000 per class member and ordering new trial for jury to determine damages).

Class Counsel accepted this case understanding that a single loss on any of these fronts would decimate the Class's—and Class Counsel's—ability to recover. In light of those risks, Class Counsel submit that their requested attorneys' fees are appropriate and reasonable. *See Kolinek*, 311 F.R.D. at 502–03 (adding 6% risk premium to attorneys' fees "based on the degree of effort the attorneys would need to put in, the likelihood of success, and the risks associated with undertaking class representation" when case was filed).

C.    **A Lodestar Analysis Confirms the Reasonableness of the Requested Fees.**

While the Class would not have agreed to calculate fees using the lodestar method *ex ante*, and the Court need not perform a lodestar "cross-check", *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011), it only highlights the reasonableness of the requested fees. To date, and excluding time spent on this motion, Class Counsel have expended over 2,683 attorney and staff hours already, which totals $1,716,527.50[4] in services based on Class Counsel's current hourly rates.[5] Class Counsel will spend additional time seeing the Settlement through final approval, drafting a final approval brief, and overseeing the distribution of the Settlement Fund.

The efforts of the individuals who worked on this case, their rates, and the hours reasonably worked are provided in the attached declarations. (Exhibit 3, Ficzko Decl. ¶¶ 18-21; Exhibit 4, Ufkes Decl. ¶ 9.) As reflected in the declarations, Class Counsel's rates correlate to their respective experience, are consistent with the rates of attorneys with similar backgrounds and experience practicing in the Chicago legal market, and have consistently been approved by courts, including

---

[4] Class Counsel will supply detailed billing records for *in camera* review upon request.

[5] A lodestar analysis is properly based on Class Counsel's current hourly rates. *See Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 647 (7th Cir. 2016).

those in the Seventh Circuit. (Exhibit 3, Ficzko Decl. ¶¶ 18-21; Exhibit 4, Ufkes Decl. ¶¶ 9-10.)

Next, the base lodestar amount is increased by a risk "multiplier . . . designed to reflect the fact that, no matter how many hours were invested, there was, at the outset, the possibility of no recovery." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991). As explained above, recovery in this case was far from certain. Typically, courts apply a risk multiplier of between 1 and 4. *See* 5 William B. Rubenstein, Newberg Class Actions § 15:87 (5th ed.); *see also Harman*, 945 F.2d at 976 ("Multipliers anywhere between one and four … have been approved.").

Here, the fee request represents a 2.6 multiplier to Class Counsel's lodestar, which is well-within the appropriate range, especially given the substantial risk of non-recovery. *See In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021) (approving 4.71 multiplier in BIPA case); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 (9th Cir. 2002) (surveying class actions nationwide and finding the average multiplier to be 3.32); *Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*, 1986 WL 10791, at *3-4 (E.D. Pa. Sept. 30, 1986) (approving multiplier of 8.3 in a consumer class action involving novel issues and where the "legal ground … was uncharted"). The Court should approve Class Counsel's fee request.

## IV. CLASS COUNSEL'S EXPENSES SHOULD BE APPROVED.

The common fund doctrine authorizes the "expenses of attorneys [to] be paid from the entire fund" so that all class members who benefit from the fund pay "a proportionate part of those expenses." *Holbrook v. Pitt*, 748 F.2d 1168, 1176 (7th Cir. 1984). Here, Class Counsel request $67,876.64 in litigation expenses reasonably incurred in this case. As reflected in the attached declaration, the primary expenses were expert fees, the cost of the parties' mediation, and deposition and transcript costs. (Exhibit 3, Ficzko Decl. ¶¶ 27-29.) These expenses were reasonable and thus warrant reimbursement.

## V.     PLAINTIFF'S INCENTIVE AWARD SHOULD BE APPROVED.

Finally, the Class Representative requests an Incentive Award of $10,000.00 for his efforts in this case. Courts may make separate awards to class representatives in recognition of their risks taken, time expended and benefits to the class. *See Espenscheid v. Direct Sat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). Named plaintiffs in class action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See, e.g.*, *Espenscheid*, 688 F.3d at 876-77; *Cook*, 142 F.3d at 1016. In examining the reasonableness of a requested incentive award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012).

The role of Howe in this litigation was crucial. For over eight years, he sacrificed dozens of hours of his time to prosecute this lawsuit. (Exhibit 3, Ficzko Decl. ¶ 32.) He met, conferred, and corresponded with Class Counsel on a regular basis. *(Id.)* He responded to interrogatories, collected documents to produce in discovery, and prepared for and sat for a four hour deposition. *(Id.)* Finally, Howe participated in the settlement efforts that led to resolution of this case and reviewed and approved the Settlement Agreement before signing it. *(Id.)* In short, Howe provided invaluable information and assistance to Class Counsel which provided for the successful

14

conclusion of this lawsuit. Therefore, Howe, as the Class Representative, requests an Incentive Award of $10,000, in addition to any *pro rata* share of the Settlement Fund to which he is entitled. *See Boyd v. Lazer Point*, No. 19-cv-08173, dkt. 207, 210, (ND. Ill. Oct. 25, 2023) (approving $10,000 incentive award in BIPA case); *Dixon v. Washington & Jane Smith Cmty.-Beverly*, No. 17-cv-8033, dkt. 103 (N.D. Ill. May 31, 2018) (same); *Davis v. Heartland Emp. Servs., LLC*, No. 19-cv-00680, dkt. 130 (N.D. Ill. Oct. 25, 2021) (same); *Bryant v. Loews Chicago Hotel, Inc.*, No. 19-cv-03195, dkt. 78 (N.D. Ill. Oct. 30, 2020) (same); *Bedford v. Lifespace Communities, Inc.*, No. 20-cv-04574, dkt. 31 (N.D. Ill. May 12, 2021) (same).

## VI.     **THE COURT SHOULD APPROVE THE ADMINISTRATIVE EXPENSES.**

Lastly, Plaintiff asks the Court to approve Administrative Expenses not to exceed $45,986.84[6] to be paid to Simpluris, Inc. from the Settlement Fund, for its work administering the Settlement, including distributing Notice, answering Class Member questions, establishing and administering the qualified Settlement Fund, and distributing payments. (Exhibit 3, Ficzko Decl. ¶ 30.) A settlement administrator performs a crucial function in class settlements, and the Court should award the reasonable payment requested from the Settlement Fund.

## VII.     CONCLUSION

For these reasons, Class Counsel respectfully request the Court (1) approve Class Counsel attorneys' fees in the amount of $4,525,045.56; (2) approve Class Counsel's litigation expenses and costs in the amount of $67,876.64; (3) approve an Incentive Award of $10,000.00 to the Class Representative, in addition to the share of the Settlement Fund to which he is entitled, and (4) approve settlement Administrative Expenses of no more than $45,986.84.

Date:     September 2, 2025                               Respectfully Submitted,

---

[6] This figure takes into account the additional administration costs for a potential second round of settlement checks distribution.

/s/ Andrew C. Ficzko
Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
STEPHAN ZOURAS, LLC
222 W. Adams Street
Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 ƒ
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

J. Eli Wade-Scott
Schuyler Ufkes
**Edelson PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
ewadescott@edelson.com
sufkes@edelson.com

ATTORNEYS FOR PLAINTIFF AND THE
CERTIFIED CLASS

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on September 2, 2025, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

/s/ Andrew C. Ficzko

16